**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE MORRISON, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>TRADER JOE'S COMPANY,<br><br>Defendant. | Case No: **'23 CV0061 RBM KSC**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br>**CAL. BUS. & PROF. CODE §§17200 *et seq.*;**<br>**CAL. BUS. & PROF. CODE §§17500 *et seq.*;**<br>**CAL. CIV. CODE §§ 1750 *et seq.*;**<br>**BREACH OF IMPLIED WARRANTIES ; and**<br>**UNJUST ENRICHMENT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Eva Grausz, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues Trader Joe's Company ("Trader Joe's"), and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief, including the investigation of her counsel.

## INTRODUCTION

1. Trader Joe's markets and sells The Dark Chocolate Lover's Chocolate 85% Cacao and Dark Chocolate 72% Cacao dark chocolate bars [hereafter the "Products"]. Trader Joe's sells the Products throughout the United States, including in California.

2. A December 2022 report by Consumer Reports states that "[r]esearch has found that some dark chocolate bars contain cadmium and lead—two heavy metals linked to a host of health problems in children and adults," in amounts such that "eating just an ounce a day would put an adult over a level that public health authorities and [Consumer Report's] experts say may be harmful for at least one of those heavy metals." Among those containing substantial levels of lead and cadmium are the Products, as pictured below.





3. As shown above, the 85% cacao Dark Chocolate Lover's bar tested at 127% of "California's maximum allowable dose level (MADL) for lead" and 229% of California's maximum allowable dose level for cadmium. The Trader Joe's 72% Cacao product tested

even higher for lead, at 192% of California's MADL, with the cadmium content below the MADL, at 36%.

4.       Lead and cadmium are heavy metals and their presence in food, alone or combined, poses a serious safety risk to consumers because they can cause cancer and serious and often irreversible damage to brain development, liver, kidneys, bones, and other serious health problems. As Consumer Reports noted, "both cadmium and lead pose serious health risks" and, with respect to lead specifically, "no amount of it is considered safe."

5.       As described more fully below, consumers who purchased the Products were injured by Trader Joe's acts and omissions concerning the presence of lead and cadmium. No reasonable consumer would know, or have reason to know, that the Products contained heavy metals, including lead and cadmium. Worse, as companies across the industry have adopted methods to limit heavy metals in their dark chocolate products, Trader Joe's has stood idly by with a reckless disregard for its consumers' health and well-being.

6.       Plaintiff brings this action against Trader Joe's on behalf of herself, similarly-situated Class Members, and the general public to enjoin Trader Joe's from deceptively marketing the Products, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

7.       This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Trader Joe's. In addition, more than two-thirds of the members of the class reside in states other than the state in which Trader Joe's is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

8.       The Court has personal jurisdiction over Trader Joe's as a result of Trader Joe's substantial, continuous and systematic contacts with the State, and because Trader Joe's has purposely availed itself of the benefits and privileges of conducting business activities within

1    the State, including by marketing, distributing, and selling the Products in California. Trader

2    Joe's is also headquartered and has its principal place of business in California.

3        9.    Venue is proper in this Southern District of California pursuant to 28 U.S.C. §

4    1391(b) and (c), because Trader Joe's resides (*i.e.*, is subject to personal jurisdiction) in this

5    district, and because a substantial part of the events or omissions giving rise to the claims

6    occurred in this district.

7                                    **PARTIES**

8        10.   Plaintiff Valerie Morrison is a resident of San Diego County, California.

9        11.   Defendant Trader Joe's is a California corporation with its principal place of

10   business in Monrovia, California.

11                                    **FACTS**

12   **I.    Lead and Cadmium are Toxic and are Present in the Trader Joe's Products at**

13   **Unsafe Levels**

14       12.   California recognizes that certain chemicals and elements are "known to the

15   state to cause cancer or reproductive toxicity . . . if in the opinion of the state's qualified

16   experts it has been clearly shown through scientifically valid testing according to generally

17   accepted principles to cause cancer or reproductive toxicity." *See* Cal. Health & Safety Code

18   § 25249.8(b). Lead and cadmium, in the amounts found in the Products, are on the list of

19   chemicals known to cause cancer and/or reproductive harm.

20       13.   The harmful effects of lead are well-documented, particularly on children.

21   Exposure puts children at risk for lowered IQ, behavioral problems (such as attention deficit

22   hyperactivity disorder (ADHD)), type 2 diabetes, and cancer, among other health issues.

23   Heavy metals also pose risks to adults. Even modest amounts of heavy metals can increase

24   the risk of cancer, cognitive and reproductive problems, and other adverse conditions. As

25   such, it is important to limit exposure.

26

27

28

14.     "No amount of lead is known to be safe."[1] Exposure to lead may cause anemia, weakness, and kidney and brain damage.[2] Lead affects almost every organ and system in the body and accumulates over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[3] Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth.[4] Lead exposure is also harmful to adults as more than 90 percent of the total body burden of lead is accumulated in the bones, where it is stored.[5] Lead in bones may be released into the blood, re-exposing organ systems long after the original exposure.[6]

15.     Cadmium, also a heavy metal, likewise poses a serious safety risk to consumers because it can cause cancer and is a known teratogen, an agent which causes malformation of an embryo. Exposure to cadmium can affect the kidneys, lungs and bones.[7] There may be no safe level of exposure to a carcinogen, so all contact should be reduced to the lowest possible level.[8] It is considered a class 1 carcinogen by the World Health Organization.[9] Even at low exposure, cadmium can cause nausea, vomiting, diarrhea and abdominal pain.

---

[1] *See* https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epalimits-can-still-impact-your-health

[2] https://www.cdc.gov/niosh/topics/lead/health.html

[3] *Id*.

[4] *See* https://www.cdc.gov/nceh/lead/prevention/pregnant.htm

[5] *See* State of New York Department of Health, "Lead Exposure in Adults: A Guide for Health Care Providers," available online at https://www.health.ny.gov/publications/2584.pdf.

[6] *Id*.

[7] https://www.betterhealth.vic.gov.au/health/healthyliving/cadmium

[8] New Jersey Department of Health Fact Sheet (available online at https://www.nj.gov/health/eoh/rtkweb/documents/fs/0305.pdf)

[9] https://www.unep.org/explore-topics/chemicals-waste/what-we-do/emerging-issues/lead-and-cadmium

And, because cadmium builds up in the body, even at low dosage, repeated exposure can cause liver and kidney damage, anemia and loss of smell. According to the Centers for Disease Control, "exposure to low levels of cadmium in . . . food . . . over time may build up cadmium in the kidneys and cause kidney disease and fragile bones" and is indisputably "considered a cancer-causing agent."[10]

16.     It is undisputed that the Products contain lead and cadmium, and that Trader Joe's has known as much for at least the last six years. In 2016, Trader Joe's (and several other manufacturers and distributors of dark chocolate products) received notice that at least some of its dark chocolate products, including specifically the Trader Joe's bars that are the subject of this lawsuit, contained excessive cadmium and/or lead, or both, including by being provided with certificates of merit that independent experts confirmed the presence of heavy metals in the Trader Joe's Products. However, Trader Joe's failed to warn consumers that consuming the Products exposes consumers to those chemicals.

17.     Moreover, in December 2022, Consumer Reports ["CR"], a consumer protection and advocacy organization dedicated to independent product testing, consumer-oriented research, and investigative journalism, tested 28 different dark chocolate bars for lead and cadmium. The results showed that, for example, the Trader Joe's Dark Chocolate Lover's Bar 85% cacao contained 0.635mcg of lead and 9.39mcg of cadmium per ounce, which is more than 1.2x the Maximum Allowable Dose Level ["MADL"] for lead, and more than 2.2x the MADL for cadmium set by the California Office of Environmental Health Hazard Assessment ["OEHHA"].

18.     Notably, the lead is getting into the Trader Joe's Products *after* harvesting. As Consumer Reports notes, "lead seems to get into cacao after beans are harvested. The researchers found that the metal was typically on the outer shell of the cocoa bean, not in the bean itself. Moreover, lead levels were low soon after beans were picked and removed from pods but increased as beans dried in the sun for days. During that time, lead-filled dust and

[10] https://tinyurl.com/y4f2kku7

dirt accumulated on the beans." Thus, on information and belief, Trader Joe's itself is responsible for lead being present in the Products, at least in the levels at which they are found in the Products.

## II.   Reasonable Consumers Do Not Expect Heavy Metals in the Trader Joe's Products; Trader Joe's Nevertheless Failed to Disclose the Presence of Lead or Cadmium in the Products

19.   The global dark chocolate market has witnessed significant growth in recent years and is expected to continue growing into 2023.[11]

20.   The growth of dark chocolate sales is premised, in part, on reasonable consumers' belief that dark chocolate is actually *healthier* than other food choices, and especially healthier than other confectionaries and milk chocolates. "The pervasive health and wellness trend continues to influence dark chocolate market, with manufacturers incorporating organic ingredients and natural sweeteners. The preference for dark chocolate over milk chocolates on accounts its health benefits continues to remain intact," especially as demand for healthy products, generally, increases.[12] Thus, the safety and health effects of the Products are material facts to reasonable consumers.

21.   Given the negative effects of toxic lead and cadmium on human development, especially in embryos and children, and on adult health, the presence of toxic heavy metals in the Products is a material fact to reasonable consumers, including Plaintiff and members of the Class.

22.   A company as ubiquitous as Trader Joe's has earned significant public trust that its foods are safe and fit for regular consumption. Reasonable consumers believe that Trader Joe's would not sell products that are unsafe.

---

[11] https://www.persistencemarketresearch.com/market-research/dark-chocolate-market.asp

[12] *Id.*

23.     Trader Joe's knew that if the presence of toxic heavy metals in its Products were disclosed to Plaintiff and the Class members, they would be unwilling to purchase the Products or would pay less for them.

24.     In light of Trader Joe's knowledge that Plaintiff and the Class members would be unwilling to purchase the Products or would pay less for the Products if they knew that the Products contained toxic heavy metals, Trader Joe's intentionally and knowingly concealed this fact from Plaintiff and the Class Members and did not disclose the presence of lead or cadmium on the label of the Products.

25.     Trader Joe's knew or should have known that Plaintiff and the Class members would rely upon the packaging of the Products and intended for them to do so but failed to disclose the presence of lead or cadmium.

26.     Trader Joe's knew or should have known that it owed consumers a duty of care to adequately test for lead, cadmium, and other heavy metals, particularly considering that it was provided notice of independent expert testing of the Products. Had Trader Joe's done so, it would have known that its Products contained significant levels of lead and cadmium. Alternatively, Trader Joe's *did* know that its Products contained significant levels of heavy metals and purposely hid that fact from consumers.

27.     Additionally, Trader Joe's knew or should have been aware that a reasonable consumer would consume the Products regularly, and possibly multiple Products daily, leading to repeated exposure to both lead and cadmium, which each independently accumulate in the body and its systems over time.

28.     Trader Joe's knew or should have known it could control the levels of lead and cadmium in the Products by properly monitoring for heavy metal presence, sourcing ingredients with less heavy metals, or none at all, adjusting its formulation to reduce or eliminate heavy metals, or improve its manufacturing process to eliminate introduction of lead caused by Trader Joe's itself.

29.    Prior to purchasing the Products, Plaintiff and the Class members were exposed to, saw, read, and understood the labels of the Products, and relied upon the same in purchasing the Products, but Trader Joe's failed to disclose the presence of heavy metals.

30.    As a result of Trader Joe's concealment of the fact that the Products contained toxic heavy metals, including lead and cadmium, Plaintiff and the Class members reasonably believed the Products were free from substances that would negatively affect children's development as well as their own health.

31.    Plaintiff and the Class members purchased the Trader Joe's Products in reliance upon Trader Joe's labels that contained omissions.

32.    Had Plaintiff and the Class members known that the Products contained toxic heavy metals, rendering them unsafe for consumption, they would not have been willing to purchase the Products or would have paid less for them.

33.    Therefore, as a direct and proximate result of Trader Joe's omissions concerning the Products, Plaintiff and the Class Members purchased the Products and paid more than they were worth.

34.    Plaintiff and the Class members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth about the Products. Since the presence of toxic heavy metals, including lead and cadmium, in the Products renders them unsafe for human consumption, the Products that Plaintiff and the Class members purchased are worthless, or at a minimum are worth less than Plaintiff and the Class paid for them.

**III.    The Products' Labeling Violates California and Federal Food Labeling Law**

35.    The Products' labeling violates California Health and Safety Code §§ 109875, *et. seq.* (the "Sherman Law"), which has expressly adopted the federal food labeling requirements as its own. *See*, *e.g.*, *id.* § 110100; *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulation adopted pursuant thereto."). Specifically, Trader Joe's "fail[ed] to reveal facts that are material in light of other

representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such facts include the detrimental health consequences of consuming the Products given that they contain lead and cadmium, which is unsafe in any amount. In addition, such facts include the detrimental health consequences of consuming the Products, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death, which are all material to a consumer choosing a food product.

## IV. Plaintiff's Purchase, Reliance, And Injury

36.    Ms. Morrison regularly purchased both Trader Joe's dark chocolate Products during the Class Period, often making her purchases from Trader Joe's stores in San Diego, including at least the location at 1640 Garnet Ave. and 9850 Hilbert St., both in San Diego, California.

37.    When purchasing the Products, Plaintiff was seeking chocolate bars she believed to be healthier than other confectionaries, by virtue of their higher cocoa (and thus lesser sugar) content. Moreover, Plaintiff would have avoided any food she knew contained toxic ingredients, especially heavy metals like lead and cadmium. She would also have avoided purchasing any food she knew could increase her risk of inhibited neurological function, anemia, kidney damage, seizures, coma, or death.

38.    Plaintiff acted reasonably in purchasing the Products, whose labels did not disclose the presence of lead or cadmium, or the attendant health risks in consuming the Products.

39.    By omitting that its Products contains lead or cadmium, Trader Joe's was able to gain a greater share of the snack market, specifically the confectionary and dark chocolate market, than it would have otherwise and to increase the size of the market.

40.    Plaintiff paid more for the Products, and would only have been willing to pay less, or unwilling to purchase them at all, absent Trader Joe's omissions regarding the lead and cadmium content described herein.

41.     Plaintiff would not have purchased the Products if she had known that they were misbranded pursuant to California and FDA regulations, or that they contained toxic lead or cadmium in the amounts found in the Products.

42.     For these reasons, the Products were worth less than what Plaintiff and the Class Members paid for them.

43.     Plaintiff and the Class lost money as a result of Trader Joe's omissions and unfair practices in that they did not receive what they paid for when purchasing the Products.

44.     Plaintiff still wishes to purchase snack foods, including dark chocolate, and continues to see Trader Joe's dark chocolate products at the Trader Joe's she regularly shops. She would purchase the Trader Joe's dark chocolate bars that are the subject of this Complaint in the future if, because of an injunction requiring Trader Joe's to disclose lead or cadmium when present, she could be assured by the absence of a disclosure that the Products no longer contained lead or cadmium. But unless Trader Joe's is enjoined in the manner Plaintiff requests, she may not be able to reasonably determine whether the lead or cadmium in the Products has been addressed, or whether Trader Joe's is continuing to omit their presence.

45.     Plaintiff's substantive right to a marketplace free of fraud, where she is entitled to rely with confidence on representations such as those made by Trader Joe's, continues to be violated every time Plaintiff is exposed to the Products' labels.

46.     Plaintiff's legal remedies are inadequate to prevent these future injuries.

## CLASS ACTION ALLEGATIONS

47.     While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in the United States, or alternatively in California, who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, the Trader Joe's Products (the "Class").

48.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

49.     Questions of law and fact common to Plaintiff and the Class include:

a.      whether the omissions on the Products' labels with respect to lead content is material, or likely to be material, to a reasonable consumer;

b.      whether the omissions on the Products' labels with respect to cadmium content is material, or likely to be material, to a reasonable consumer;

c.      whether the omissions regarding lead content was reasonably likely to deceive a reasonable consumer;

d.      whether the omissions regarding cadmium content was reasonably likely to deceive a reasonable consumer;

e.      whether Trader Joe's conduct violates public policy;

f.      whether Trader Joe's conduct violates state or federal food statutes or regulations;

g.      whether Trader Joe's made and breached warranties;

h.      the proper amount of damages, including punitive damages;

i.      the proper amount of restitution;

j.      the proper scope of injunctive relief; and

k.      the proper amount of attorneys' fees.

50.     These common questions of law and fact predominate over questions that affect only individual Class Members.

51.     Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Trader Joe's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Products and suffered economic injury because the Products are misrepresented. Absent Trader Joe's business practice of deceptively and unlawfully labeling the Products by omitting material information regarding

their toxic lead and cadmium content, Plaintiff and Class Members would not have purchased the Products or would have paid less for them.

52.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods and beverages.

53.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

54.     Trader Joe's has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

55.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

56.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

57.      The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

58.     Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

59.     The acts, omissions, misrepresentations, practices, and non-disclosures of as alleged herein constitute business acts and practices.

**Fraudulent**

60.     A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

61.     As set forth herein, Trader Joe's omissions regarding the toxic lead and cadmium content of the Products is likely to deceive reasonable consumers and the public.

**Unlawful**

62.     As set forth herein, Trader Joe's omissions are "unlawful" under the UCL in that they violate at least the following laws:

•        The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

•        The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

•        The Song-Beverly Act, Cal. Civ. Code, §§ 1790 *et seq.*;

•        The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

•        The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq*.

63.     By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

**Unfair**

64.     Trader Joe's conduct with respect to the labeling, advertising, and sale of the Products was unfair because Trader Joe's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

65.     Trader Joe's conduct with respect to the labeling, advertising, and sale of the Products was also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, the Song Beverly Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

66.     Trader Joe's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Trader Joe's through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Products unaware that they contain toxic lead or cadmium and are of the type that can increase the risk of poor health. Consumers could not have reasonably avoided the harm because this would have required that they conduct their own research into the lead and/or cadmium content of the Products, which could only feasibly be revealed by laboratory testing, which is not a reasonable expectation. Further, the harm could have easily been avoided by Trader Joe's as it would have cost them only minimally to place a warning on the label that the Products contain toxic lead and/or cadmium. Alternatively, Trader Joe's could have done more to ensure heavy metals, including lead and cadmium, were not in the Products.

67.     Trader Joe's profited from the sale of the falsely, deceptively, and unlawfully advertised the Trader Joe's Products to unwary consumers.

68.     Plaintiff and Class Members are likely to continue to be damaged by Trader Joe's deceptive trade practices, because Trader Joe's continues to disseminate misleading information. Thus, injunctive relief enjoining Trader Joe's deceptive practices is proper.

69.     Trader Joe's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of Trader Joe's unlawful conduct.

70.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Trader Joe's from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices.

71.     Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

72.     Because Plaintiff's claims under the "unfair" prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Trader Joe's challenged behavior.

### SECOND CAUSE OF ACTION
### Violations of the False Advertising Law
### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

73.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

74.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

75.     As set forth herein, the Plaintiff purchased Products based on the labels, which constituted advertising and which omitted the presence of toxic lead and cadmium in the Products.

76.     Plaintiff and the Class Members paid money for the Trader Joe's Products. However, they did not obtain the full value or any value of the Products due to Trader Joe's omissions regarding the nature of the Products. Accordingly, Plaintiff and the Class Members suffered an injury in fact and lost money or property as a direct result of Trader Joe's omissions.

77.     Trader Joe's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase the Products in the future and hopes to rely in the future on Trader Joe's marketing and packaging.

78.     Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

79.     Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Products is determined to be an amount less than the premium price of the Products. Without

1  compensation for the full premium price of the Products, Plaintiff would be left without the

2  parity in purchasing power to which they are entitled.

3         80.    Injunctive relief is also appropriate, and indeed necessary, to require Trader

4  Joe's to provide full and accurate disclosures regarding the Products so that Plaintiff and

5  Class members can reasonably rely on the Products' packaging as well as those of Trader

6  Joe's competitors who may then have an incentive to follow Trader Joe's deceptive practices,

7  further misleading consumers.

8         81.    Restitution and/or injunctive relief may also be more certain, prompt, and

9  efficient than other legal remedies requested herein. The return of the full price or full

10  premium price, and an injunction requiring either (1) adequate disclosures of the existence

11  of toxic lead and cadmium in the Products or (2) the removal of lead and cadmium from the

12  Products, will ensure that Plaintiff and other Class Members are in the same place they would

13  have been in had Trader Joe's wrongful conduct not occurred, *i.e.*, in the position to make

14  an informed decision about the purchase of the Products absent omissions.

15         82.    Because the Court has broad discretion to award restitution under the FAL and

16  could, when assessing restitution under the FAL, apply a standard different than that applied

17  to assessing damages under the CLRA or commercial code (for Plaintiff's breach of warranty

18  claims), and restitution is not limited to returning to Plaintiff and class members monies in

19  which they have an interest, but more broadly serves to deter the offender and others from

20  future violations, the legal remedies available under the CLRA and commercial code are

21  more limited than the equitable remedies available under the FAL, and are therefore

22  inadequate.

23  **THIRD CAUSE OF ACTION**

24  **Violations of the Consumers Legal Remedies Act**

25  **Cal. Civ. Code §§ 1750 *et seq.***

26         83.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint

27  as if set forth fully herein.

28

84.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

85.   Trader Joe's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Trader Joe's Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

   a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

   b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

86.   Trader Joe's profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

87.   Trader Joe's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

88.   Plaintiff and the Class have suffered harm and seek only injunctive relief and restitution, at this time.

89.   In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue is filed concurrently herewith.

### FOURTH CAUSE OF ACTION

### Breach of Implied Warranty Under the Song-Berverly Act

### Cal. Civ. Code §§ 1790 *et seq.*

90.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

91.   Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*, every sale of consumer goods in this State is accompanied by both a manufacturer's

and retail seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

92.   The Products are a "consumer good" within the meaning of Cal. Civ. Code § 1791(a).

93.   Plaintiff and the Class Members who purchased one or more of the Trader Joe's Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

94.   Trader Joe's is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

95.   Trader Joe's impliedly warranted to retail buyers that the Products were merchantable in that they (a) would pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products is used. For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements. Trader Joe's breached these implied warranties because the Products were unsafe in that they contained toxic lead and cadmium. Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used, which is consumption by consumers, including children.

96.   Plaintiff and the Class purchased the Products in reliance upon Trader Joe's skill and judgment in properly packaging and labeling the Products.

97.   The Products were not altered by Plaintiff or other Class Members.

98.   Trader Joe's knew that the Products would be purchased and used without additional testing by Plaintiff and the Class.

99.   As a direct and proximate cause of Trader Joe's breach of the implied warranty, Plaintiff and the Class have been injured and harmed because they would not have purchased

the Products or would have paid less for the Products if they knew the truth about the Products, namely, that they contained toxic lead and cadmium.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314

100. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

101. As set forth herein, Trader Joe's manufactured and sold the Products, and prior to the time the Products were purchased by Plaintiff and other Class Members, impliedly warranted that the Products were of merchantable quality and fit for their ordinary use, consumption by consumers, including children.

102. Trader Joe's is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there were, in the sale to Plaintiff and the Class, implied warranties that those goods were merchantable.

103. Trader Joe's impliedly warranted to retail buyers that the Products were merchantable in that they (a) would pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used. Defendant breached this implied warranty because the Products were unsafe in that it contained toxic lead and cadmium. Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used, which is consumption by consumers, including children.

104. Trader Joe's was on notice of this breach as it was aware of the lead and cadmium in the Products, including based on receiving notice in at least 2016.

105. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the Class members have been injured and harmed because they would not have purchased the Products or would have paid less for it if they knew the truth about the Products, namely, that they contained lead and cadmium.

106. As a result, Plaintiff seeks actual damages, including, without limitation, expectation damages.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

107.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

108.   Trader Joe's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' purchases of the Products, and the economic benefits conferred on Trader Joe's are a direct and proximate result of its unlawful and inequitable conduct.

109.   It would be inequitable, unconscionable, and unjust for Trader Joe's to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

110.   As a result, Plaintiff and Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Trader Joe's as a result of such business practices.

### PRAYER FOR RELIEF

111.   Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Trader Joe's as to each and every cause of action, and the following remedies:

      a.   An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

      b.   An Order requiring Trader Joe's to bear the cost of Class Notice;

      c.   An Order compelling Trader Joe's to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending Products;

      d.   An Order requiring Trader Joe's to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

*Morrison v. Trader Joe's Company*
CLASS ACTION COMPLAINT

e.    An Order requiring Trader Joe's to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

f.    An Order requiring Trader Joe's to pay compensatory damages and punitive damages as permitted by law;

g.    An award of attorneys' fees and costs; and

h.    Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

112.  Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  January 12, 2023

/s/   Trevor Flynn

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***

*Morrison v. Trader Joe's Company*
CLASS ACTION COMPLAINT