LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
E-mail: rapeterson@locklaw.com

*Attorney for Plaintiffs*
*(Additional Counsel listed on Signature Page)*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRADER JOE'S COMPANY DARK CHOCOLATE LITIGATION | Case No.  3:23-cv-00061-RBM-KSC<br><br>Hon. Ruth Bermudez Montenegro<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br>1.  Calif. Unfair Competition Law, Calif. Business & Professions Code §§17200, *et seq.*<br>2.  Calif. False Advertising Law, Calif. Business & Professions Code §§17500, *et seq.*<br>3.  Calif. Consumers Legal Remedies Act, Calif. Code §§1750, *et seq.*<br>4.  Breach of Implied Warranty of Merchantability<br>5.  Unjust Enrichment<br>6.  Wash. Unfair Business Practices and Consumer Protection Act, RCW §§19.86.010, *et seq.*<br>7.  Ill. Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Compiled Statute §§505/1, *et seq.*<br>8.  Deceptive Practices Act, NY General Business Law §349<br>9.  NY General Business Law §350<br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.     Plaintiffs Valerie Morrison, Tamakia Herd, Vyacheslav Shausmanov, Robert Waring, Rita Ade, Lillian Brennessel, Rome Ish-Hurwitz, Adam Thaler, Ginger Chapman, Louis Salerno, Rob Costin, Ahana Ganguly, and Thomas Ferrante ("Plaintiffs") individually and on behalf of all others similarly situated bring this Consolidated Class Action Complaint against defendant Trader Joe's Company ("Defendant" or "Trader Joe's") for Defendant's reckless, and/or intentional practice of failing to disclose the presence of arsenic, cadmium, and lead (collectively "Heavy Metals") in its dark chocolate products, including Trader Joe's 72% Cacao Dark Chocolate Bar, Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao), Trader Joe's Dark Chocolate Bar with Almonds (73% Cacao), Trader Joe's Uganda Dark Chocolate Bar (85% Cacao), Trader Joe's Mini 70% Cacao Dark Chocolate Bars, Trader Joe's 73% Cacao Super Dark Dark Chocolate Bar, Trader Joe's Swiss 72% Cacao Dark Chocolate Bar, and Trader Joe's Pound Plus 72% Cacao Dark Chocolate Bar, among others (collectively, the "Products").

2.     This action seeks both injunctive and monetary relief on behalf of the proposed Classes (as defined herein), including requiring full disclosure of all such substances on the Products' packaging and restoring monies to the members of the proposed Classes, who would not have purchased the Products had they known they contained (or were at risk of containing) the Heavy Metals and/or would not have paid premium prices for the Products had they known the Products contain Heavy Metals.

3.     Plaintiffs allege the following based upon personal knowledge, as well as investigation by their counsel as to themselves, and as to all other matters, upon information and belief.  Plaintiffs believe substantial evidentiary support exists for the allegations set forth herein, which will become available after a reasonable opportunity for discovery.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

## **NATURE OF THE ACTION**

4.      Trader Joe's makes specific representations to consumers, including, "We want to make absolutely clear that we would never sell any product we believe to be unsafe.  We take these matters seriously—personally, even, as our families eat and drink TJ's products too."[1]   Consistent with such promises, reasonable consumers, like Plaintiffs, trust manufacturers like Defendant to sell dark chocolate products that do not contain or have a material risk of containing Heavy Metals.

5.      Reasonable consumers expect the dark chocolate products they purchase for their individual and family consumption will not be contaminated (or have a material risk of being contaminated) with Heavy Metals, substances that are known to accumulate in the body and pose significant and dangerous health consequences.

6.      Consumers lack the scientific knowledge necessary to determine whether Defendant's Products do in fact contain Heavy Metals, or to ascertain the true nature of the ingredients and quality of the Products.  Accordingly, reasonable consumers must and do rely on Defendant to: (1) know what its Products contain; (2) regularly test the Products to confirm their compositions; and (3) properly and fully disclose those contents to consumers prior to purchase.  Product contents, particularly contents like Heavy Metals, are material to a reasonable consumer's purchasing decisions.

7.      Defendant is involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products throughout the United States, including in this District.

8.      Defendant fails to disclose on its packaging that the Products contain (or have a material risk of containing) Heavy Metals.

---

[1]   https://www.traderjoes.com/home/FAQ/product-faqs (last accessed May 11, 2023).

9.    No reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing Heavy Metals.

10.    Defendant touts on its website the safety and quality of the Products. For example, on its website's "About Us" page, Defendant states:

> Trader Joe's is a national chain of neighborhood grocery stores. We are committed to providing our customers outstanding value in the form of the best quality products at the best everyday prices. Through our rewarding products and knowledgeable, friendly Crew Members, we have been transforming grocery shopping into a welcoming journey full of discovery and fun since 1967.
>
> …
>
> To earn a spot on our shelves, each product is submitted to a rigorous tasting panel process, in which every aspect of quality is investigated in context of the price we can offer. If a product is assessed as an outstanding value, it becomes an essential part of the Trader Joe's shopping adventure.[2]

11.    Further, Defendant also touts the safety and quality of the Products in the "FAQs" section of its website. In response to the question "[w]hat can I expect from Trader Joe's private label products?" Defendant claims:

> When you see our name on a label, you can be assured that the product contains:
>
> - YES quality ingredients
> - NO artificial flavors
> - NO artificial preservatives
> - YES colors derived only from naturally available products
> - NO MSG
> - NO genetically modified ingredients
> - NO partially hydrogenated oils (artificial trans-fats)
> - NO "marketing" costs

---

[2] https://www.traderjoes.com/home/about-us (last accessed May 11, 2023).

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

- YES tasting panel approval
- YES great price[3]

12.    The statements above also appear in Defendant's stores and marketing materials.

13.    Defendant's website contains assurances that "nothing is more important than the health and safety of [its] customers and Crew Members," and a promise that Trader Joe's would "never sell any product [it] believe[s] to be unsafe."[4]

14.    In addition, Defendant's website also includes a statement "related to the California Transparency in Supply Chains Act of 2010 (SB 657)."[5] Defendant ostensibly requires its suppliers to:

> represent and warrant that the goods sold to TJ's were produced, harvested, manufactured, processed, packaged, labeled, transported, delivered, and sold in compliance with all applicable federal, state, and local laws and regulations of the United States of America and all of its subdivisions and, if applicable, the laws of any other country, state, or international governing body.[6]

15.    Defendant further elaborates in this statement that it "monitor[s] compliance with our agreement through scheduled and unannounced visits and audits of our suppliers' facilities, using our own Crew Members and third-party groups." And, although made in the context of avoiding child labor and slavery, this would necessarily apply to Defendant's alleged monitoring of supply lines for its

---

[3] https://www.traderjoes.com/home/FAQ/product-faqs (last accessed May 11, 2023).

[4] *Id.*

[5] https://www.traderjoes.com/home/transparency-in-supply-chains-act (last accessed May 11, 2023).

[6] *Id.*

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

chocolate products, as child labor, slavery, and chocolate are unfortunately intertwined in some parts of the world.[7]

16.     However, contrary to Defendant's assurances that its Products are manufactured under strict quality standards, the Products have been shown to contain detectable levels of Heavy Metals which are known to pose human health risks.[8]

17.     Defendant fails to disclose to consumers that the Products contain (or have a material risk of containing) Heavy Metals.  Nowhere on the Products' packaging is it disclosed that they contain (or have a material risk of containing) Heavy Metals (hereinafter collectively referred to as "Omissions").  It was only through testing conducted by Consumer Reports that the general public became aware of the Heavy Metal content in Defendant's Products.

18.     Based on the Omissions, no reasonable consumer had any reason to know, suspect, or expect that the Products contained Heavy Metals.  Furthermore, reasonable consumers like Plaintiffs, who were purchasing the Products for consumption by themselves and their families, would consider the presence (or risk) of Heavy Metals to be a material fact when considering whether to purchase the Products.  Accordingly, Plaintiffs and other reasonable consumers would not have purchased the Products or would have paid substantially less for them but for the Omissions.

19.     Defendant knows its customers trust the quality of its Products and would not expect the Products to contain or have a material risk of containing Heavy

---

[7] https://foodispower.org/human-labor-slavery/slavery-chocolate/ (last accessed May 11, 2023).

[8] Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, Consumer Reports, Dec. 15, 2022 (the "Consumer Reports Article"), available at https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last accessed May 11, 2023).

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

Metals. Defendant also knows that reasonable consumers seek out and wish to purchase products with ingredients free of toxins or contaminants, and that these consumers will pay more for products they believe meet these standards. Defendant further knows that reasonable consumers would not knowingly consume, or feed to their families, products that contain Heavy Metals.

20. Defendant knew the consumers to whom it markets the Products would find its Omissions material and that it was in a special position of public trust to those consumers.

21. The Omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed Heavy Metals.

22. The Omissions allowed Defendant to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiffs who paid a premium price for the Products that omitted material information as to the Products' true quality and value. Reasonable consumers, including Plaintiffs, paid more for the Products than they would have had they known the truth about the Products, and Defendant continues to wrongfully induce consumers to purchase the Products.

23. Plaintiffs bring this proposed consumer class action individually and on behalf of all other members of the Classes (as defined herein), who, during the Class Period, purchased for use and not resale any of Defendant's Products.

## JURISDICTION AND VENUE

24. This Court has original jurisdiction over all causes of action herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and more than two-thirds of the Classes reside in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

25.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of California, and contracts to supply goods within the state of California, such that it has had continuous and systematic contacts with the state of California.  Further, Defendant resides in the state of California.

26.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this District, and because Plaintiffs and Defendant have agreed to consolidate the actions together in this District.

## **PARTIES**

**Plaintiff Morrison**

27.     Plaintiff Valerie Morrison ("Plaintiff Morrison") is, and at all times relevant hereto has been, a citizen of the state of California.  She purchased the Products, including Trader Joe's 72% Cacao Dark Chocolate Bar and Trader Joe's Dark Chocolate Bar with Almonds (73% Cacao), from Trader Joe's stores in San Diego, California.

28.     Plaintiff Morrison purchased these Products beginning in approximately 2019.  Plaintiff Morrison last purchased the Products shortly before she learned of the issues with Heavy Metals in the Products in early 2023.

29.     Plaintiff Morrison believed that she was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Morrison saw and relied upon the packaging of the Products.  During the time she purchased and ate the Products, and due to the Omissions by Defendant, she was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

Morrison would be willing to purchase Trader Joe's dark chocolate products in the future if she could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Herd**

30.    Plaintiff Tamakia Herd ("Plaintiff Herd") is, and at all times relevant hereto has been, a citizen of the state of New York.  She purchased the Products, including Trader Joe's 72% Cacao Dark Chocolate Bar, Trader Joe's 70% Cacao Dark Chocolate Bar, and Trader Joe's Dark Chocolate Bar with Almonds (73% Cacao), from Trader Joe's stores in New York, New York.

31.    Plaintiff Herd purchased these Products beginning in approximately 2012 and last purchased the Products in September 2022.

32.    Plaintiff Herd believed that she was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Herd saw and relied upon the packaging of the Products.  During the time she purchased and ate the Products, and due to the Omissions by Defendant, she was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff Herd would be willing to purchase Trader Joe's dark chocolate products in the future if she could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Brennessel**

33.    Plaintiff Lillian Brennessel ("Plaintiff Brennessel") is currently a citizen of the state of California.  In recent years, she has also been a citizen of the state of Washington.  She purchased the Products, including Trader Joe's 72% Cacao Dark Chocolate Bar, Trader Joe's 70% Cacao Dark Chocolate Bar, Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao), and Trader Joe's Dark

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

Chocolate Bar with Almonds (73% Cacao), from Trader Joe's stores in Oakland, Emeryville, and Walnut Creek, California, and also in Seattle, Washington.

34.    Plaintiff Brennessel purchased these Products beginning in approximately 2019. Plaintiff Brennessel last purchased the Products before she learned of the issues with Heavy Metals in the Products in early 2023.

35.    Plaintiff Brennessel believed that she was purchasing high quality dark chocolate products from Trader Joe's. Prior to purchasing the Products, Plaintiff Brennessel saw and relied upon the packaging of the Products. During the time she purchased and ate the Products, and due to the Omissions by Defendant, she was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed. Plaintiff Brennessel would be willing to purchase Trader Joe's dark chocolate products in the future if she could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Thaler**

36.    Plaintiff Adam Thaler ("Plaintiff Thaler") is, and at all times relevant hereto has been, a citizen of the state of California. He purchased the Products, including Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao) and Trader Joe's Uganda Dark Chocolate Bar (85% Cacao), from Trader Joe's stores primarily in San Francisco, California, and also in New York.

37.    Plaintiff Thaler purchased these Products beginning in approximately 2014. Plaintiff Thaler last purchased the Products before he learned of the issues with Heavy Metals in the Products in early 2023.

38.    Plaintiff Thaler believed that he was purchasing high quality dark chocolate products from Trader Joe's. Prior to purchasing the Products, Plaintiff Thaler saw and relied upon the packaging of the Products. During the time he

9

purchased and ate the Products, and due to the Omissions by Defendant, he was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff Thaler would be willing to purchase Trader Joe's dark chocolate products in the future if he could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Chapman**

39.     Plaintiff Ginger Chapman ("Plaintiff Chapman") is, and at all times relevant hereto has been, a citizen of the state of California.  She purchased the Products, including Trader Joe's 72% Cacao Dark Chocolate Bar, from Trader Joe's stores in Davis, California, and also from Trader Joe's stores in Los Angeles and Santa Monica, California.

40.     Plaintiff Chapman purchased these Products beginning in approximately 2021.  Plaintiff Chapman last purchased the Products before she learned of the issues with Heavy Metals in the Products in early 2023.

41.     Plaintiff Chapman believed that she was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Chapman saw and relied upon the packaging of the Products.  During the time she purchased and ate the Products, and due to the Omissions by Defendant, she was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff would be willing to purchase Trader Joe's dark chocolate products in the future if she could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Costin**

42.     Plaintiff Rob Costin ("Plaintiff Costin") is, and at all times relevant hereto has been, a citizen of the state of California.  He purchased the Products, including Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao) and Trader Joe's Uganda Dark Chocolate (85% Cacao), from Trader Joe's stores in San Francisco, California.

43.     Plaintiff Costin purchased these Products beginning in approximately 2022 and last purchased the Products before he learned of the issues with Heavy Metals in the Products in early 2023.

44.     Plaintiff Costin believed that he was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Costin saw and relied upon the packaging of the Products.  During the time he purchased and ate the Products, and due to the Omissions by Defendant, he was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff Costin would be willing to purchase Trader Joe's dark chocolate products in the future if he could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Waring**

45.     Plaintiff Robert Waring ("Plaintiff Waring") is, and at all times relevant hereto has been, a citizen of the state of California.  He purchased the Products, including Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao), from Trader Joe's stores in Menlo Park, California and San Carlos, California.

46.     Plaintiff Waring has regularly purchased these Products since approximately 2018.  Plaintiff Waring last purchased the Products before he learned of the issues with Heavy Metals in the Products in early 2023.

47.    Plaintiff Waring believed that he was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Waring saw and relied upon the packaging of the Products.  During the time he purchased and ate the Products, and due to the Omissions by Defendant, he was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff would be willing to purchase Trader Joe's dark chocolate products in the future if he could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Ish-Hurwitz**

48.    Plaintiff Rome Ish-Hurwitz ("Plaintiff Ish-Hurwitz") is, and at all times relevant hereto has been, a citizen of the state of Illinois.  He purchased the Products, including Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao), from Trader Joe's stores in Chicago, Illinois and Northbrook, Illinois.

49.    Plaintiff Ish-Hurwitz has regularly purchased these Products since approximately 2017.  Plaintiff Ish-Hurwitz last purchased the Products before he learned of the issues with Heavy Metals in the Products in early 2023.

50.    Plaintiff Ish-Hurwitz believed that he was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Ish-Hurwitz saw and relied upon the packaging of the Products.  During the time he purchased and ate the Products, and due to the Omissions by Defendant, he was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff Ish-Hurwitz would be willing to purchase Trader Joe's dark chocolate products in the

future if he could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Shausmanov**

51.    Plaintiff Vyacheslav Shausmanov ("Plaintiff Shausmanov") is, and at all times relevant hereto has been, a citizen of the state of New Jersey.  He purchased the Products, including Trader Joe's 72% Cacao Dark Chocolate Bar, from Trader Joe's stores in New York, New York and Parasmus, Clifton, and Hoboken, New Jersey.

52.    Plaintiff Shausmanov has regularly purchased these Products since approximately 2008 but has not purchased the Products since he learned of the issues with Heavy Metals in the Products in early 2023.

53.    Plaintiff Shausmanov believed that he was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Shausmanov saw and relied upon the packaging of the Products.  During the time he purchased and ate the Products, and due to the Omissions by Defendant, he was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff Shausmanov would be willing to purchase Trader Joe's dark chocolate products in the future if he could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Salerno**

54.    Plaintiff Louis Salerno ("Plaintiff Salerno") is, and at all times relevant hereto has been, a citizen of the state of California.  He purchased the Products, including Trader Joe's Uganda Dark Chocolate Bar (85% Cacao), Trader Joe's Pound Plus 72% Cacao Dark Chocolate Bar, and Trader Joe's The Dark Chocolate

Lover's Chocolate Bar (85% Cacao), from Trader Joe's stores in Berkeley, California and South Shore, California.

55.    Plaintiff Salerno has regularly purchased these Products since approximately the early 1990s and last purchased the Products in late 2022 before he learned of the issues with Heavy Metals in the Products.

56.    Plaintiff Salerno believed that he was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Salerno saw and relied upon the packaging of the Products.  During the time he purchased and ate the Products, and due to the Omissions by Defendant, he was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff Salerno will not purchase Trader Joe's dark chocolate products in the future even if he could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Ade**

57.    Plaintiff Rita Ade ("Plaintiff Ade") is, and at all times relevant hereto has been, a citizen of the state of Maryland.  She purchased the Products, including Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao), Trader Joe's Dark Chocolate Bar 73% Cacao, and Trader Joe's Uganda Dark Chocolate Bar (85% Cacao), from Trader Joe's stores in Elkridge, Maryland and the District of Columbia.

58.    Plaintiff Ade has regularly purchased these Products beginning in approximately 2022.  Plaintiff Ade last purchased the Products before she learned of the issues with Heavy Metals in the Products in early 2023.

59.    Plaintiff Ade believed that she was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Ade saw and relied upon the packaging of the Products.  During the time she

purchased and ate the Products, and due to the Omissions by Defendant, she was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed. Plaintiff Ade would be willing to purchase Trader Joe's dark chocolate products in the future if she could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Plaintiff Ganguly**

60. Plaintiff Ahana Ganguly ("Plaintiff Ganguly") is a citizen of the state of New York. In recent years, she has also been a citizen of the state of California. She purchased the Products, including Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao) and Trader Joe's Pound Plus 72% Cacao Dark Chocolate Bar, from Trader Joe's stores in Palo Alto, California and New York, New York.

61. Plaintiff Ganguly purchased these Products beginning in approximately 2017. Plaintiff Ganguly last purchased the Products shortly before she learned of the issues with Heavy Metals in the Products in early 2023.

62. Plaintiff Ganguly believed that she was purchasing high quality dark chocolate products from Trader Joe's. Prior to purchasing the Products, Plaintiff Ganguly saw and relied upon the packaging of the Products. During the time she purchased and ate the Products, and due to the Omissions by Defendant, she was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed. Plaintiff Ganguly would be willing to purchase Trader Joe's dark chocolate products in the future if she could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

**Plaintiff Ferrante**

63.    Plaintiff Thomas Ferrante ("Plaintiff Ferrante") is a citizen of the state of New York.  He purchased the Products, including Trader Joe's 72% Cacao Dark Chocolate Bar and Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao) from Trader Joe's stores in Garden City, New York and Merrick, New York.

64.    Plaintiff Ferrante has regularly purchased these Products beginning in approximately 2021.  Plaintiff Ferrante last purchased the Products before he learned of the issues with Heavy Metals in the Products in early 2023.

65.    Plaintiff Ferrante believed that he was purchasing high quality dark chocolate products from Trader Joe's.  Prior to purchasing the Products, Plaintiff Ferrante saw and relied upon the packaging of the Products.  During the time he purchased and ate the Products, and due to the Omissions by Defendant, he was unaware the Products contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.  Plaintiff Ferrante will not purchase Trader Joe's dark chocolate products in the future even if he could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

**Defendant**

66.    Defendant Trader Joe's Company is a well-known national chain of grocery stores whose headquarters and principal address is located at 800 South Shamrock Avenue in Monrovia, California.  Defendant is involved in the production, marketing, distribution, and sale of a variety of dark chocolate products throughout California and the United States.

67.    During the relevant time, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution,

and sales of its Products. Defendant therefore had control over how to label its Products as to their contents.

68.    Defendant has been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products under the Trader Joe's name throughout the United States, including in this District. It has done so continuously throughout the Class Period. Defendant knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Products that did not disclose the presence of Heavy Metals. Defendant is also involved in the sourcing of ingredients, manufacturing of products, and conducting of all relevant quality assurance protocols, including testing of both the ingredients and finished products.

69.    The Products, at a minimum, include:

a.  72% Cacao Dark Chocolate Bar;



CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

b.  The Dark Chocolate Lover's Chocolate Bar;



c.  Dark Chocolate Bar with Almonds;



d.  Uganda Dark Chocolate Bar;



e.  70% Cacao Dark Chocolate Bar;



19

f.  73% Cacao Super Dark Dark Chocolate Bar;



g.  Swiss 72% Cacao Dark Chocolate Bar; and



h.  Pound Plus 72% Cacao Dark Chocolate Bar.



70.     Plaintiffs relied upon the material Omissions missing from the Products' packaging, which was prepared, reviewed, and/or approved by Defendant and its agents and disseminated by Defendant and its agents through packaging that contained the Omissions.  The Omissions were nondisclosed material content that a reasonable consumer would consider important in purchasing the Products.

## FACTUAL ALLEGATIONS

## I.     Consumer Reports' Investigation Demonstrates the Presence of Heavy Metals in the Products

71.     In December 2022, Consumer Reports published a blockbuster report detailing the prevalence of Heavy Metals in dark chocolate products.[9]  Consumer Reports tested 28 dark chocolate bars for lead and cadmium from a variety of brands.[10]

72.     The tested dark chocolate included Defendant's 72% Cacao Dark Chocolate Bar and The Dark Chocolate Lover's Chocolate Bar (85% Cacao).[11]

73.     Using reliable and accepted testing techniques, Consumer Reports showed that the Products contain undisclosed levels of lead and/or cadmium.[12]

74.     As noted in the Consumer Reports Article, consumers "choose dark chocolate in particular for its potential health benefits, thanks to studies that suggest its rich supply of antioxidants may improve heart health and other conditions, and

---

[9] Consumer Reports Article.

[10] *Id.*

[11] *Id.*

[12] *See Heavy Metals in Chocolate Bars: Test Methodology*, Consumer Reports, Jan. 2023, available at https://article.images.consumerreports.org/image/upload/v1672933163/prod/content/dam/CRO-Images-2022/Special%20Projects/Consumer_Reports_Test_Methodology_for_Heavy_Metals_in_Chocolate_Bars_-_January_2023.pdf (last accessed May 11, 2023).

for its relatively low levels of sugar."[13]   A recent survey from the National Confectioners Association, referenced in the Consumer Reports Article, found that more than half of the survey participants described dark chocolate as a "better for you" candy.[14]

75.    The Consumer Reports Article concluded that "[f]or 23 of the bars tested, eating just an ounce a day would put an adult over a level that public health authorities and CR's experts say may be harmful for at least one of those heavy metals.  Five of the bars were above those levels for both cadmium and lead."[15]

76.    For example, Consumer Reports tested two of Trader Joe's dark chocolate products. First, Trader Joe's 72% Cacao Dark Chocolate Bar was found to contain cadmium and lead, with cadmium at 192% above the MADL.  Second, Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao) was also found to contain both lead and cadmium at 127% and 229% above the MADL, respectively.[16]





---

[13] Consumer Reports Article.

[14] *Id*.

[15] *Id*.

[16] *Id*.; *Proposition 65 No Significant Risk Levels (NSRLs) and Maximum Allowable Dose Levels (MADLs)*, California Office of Environmental Health Hazard Assessment, Oct. 1, 2021, available at https://oehha.ca.gov/proposition-65/general-info/current-proposition-65-no-significant-risk-levels-nsrls-maximum (last accessed May 11, 2023).

77.    The Consumer Reports Article warned consumers that dark chocolate tends to be higher in heavy metals than milk chocolate, likely because of its higher cacao content.[17]  "[C]acao plants take up cadmium from the soil, with the metal accumulating in cacao beans as the tree grows."[18]  Lead on the other hand appears to get into cacao after the cacao beans are harvested.[19]

78.    Further, the Consumer Reports Article identified potential solutions to minimize or omit the presence of lead in cacao, including changes in harvesting and manufacturing practices.[20]  Such practices include "minimizing soil contact with [cacao] beans as they lie in the sun, and drying beans on tables or clean tarps away from roads or with protective covers, so lead-contaminated dust won't land on [the cacao beans]."[21]  Another option is implementing procedures and/or methods to remove metal contaminants when beans are cleaned at factories.[22]

79.    Getting cadmium out of cacao is also possible by carefully breeding or genetically engineering plants to absorb less of the heavy metal.[23]  "Other potential options include replacing older cacao trees with younger ones, because cadmium levels tend to increase as the plants get older, and removing or treating soil known to be contaminated with cadmium."[24]

80.    More immediately, in order to minimize levels of cadmium in their products, chocolate makers, such as Defendant, could survey their cacao-growing

---

[17] Consumer Reports Article.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

areas to determine cadmium levels and favor beans from places with lower levels.[25] They could then blend beans from higher-cadmium areas with beans with lower levels, which some manufacturers are already doing.[26]

81.    For example, the CEO at Taza, which makes one of the products found to have lower levels of both lead and cadmium in the Consumer Reports' tests, stated that his company mixes beans from "different origins to ensure that the final product" has lower levels.[27]

## II.    Defendant Omits Any Mention of Heavy Metals on Its Packaging

82.    Defendant manufactures, designs, tests, packages, labels, markets, advertises, promotes, distributes, and sells its Products throughout the United States, including in California.

83.    Defendant's Products are available at numerous retail and online outlets throughout the United States, including California.

84.    Defendant touts its commitment to providing its customers with "outstanding value in the form of the best quality products"[28] and further claims "nothing is more important than the health and safety of our customers," stating that it ensures its products "meet our stringent quality and safety expectations."[29]

85.    However, inconsistent with such assertions about the quality of its products, Defendant knows or should know that the Products contain or have a material risk of containing Heavy Metals yet failed to disclose this fact to consumers.

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] https://www.traderjoes.com/home/about-us (last accessed May 11, 2023).

[29] https://www.traderjoes.com/home/FAQ/product-faqs (last accessed May 11, 2023).

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

86.    Defendant intentionally omitted the presence or material risk of Heavy Metals in the Products in order to induce and mislead reasonable consumers to purchase the Products and pay a price premium for them.

87.    As a result of the material Omissions, a reasonable consumer would have no reason to suspect the presence of or material risk of Heavy Metals in the Products without conducting his or her own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing of the Products.

88.    Information regarding the true nature and/or presence of Heavy Metals in the Products was and is in the exclusive possession of Defendant and not available to consumers.  Defendant chose to not disclose such information to consumers and thus concealed the presence and risk of Heavy Metals in the Products from Plaintiffs and Class members.

## III.    Due to the Presence and/or Material Risk of the Presence of Heavy Metals in the Products, the Omissions are Misleading

### A.    Heavy Metals

89.    Arsenic, cadmium, and lead are heavy metals whose harmful effects are well-documented, particularly in children.  Exposure to heavy metals puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues.  Heavy metals also pose health risks to adults.  Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions.  These facts underscore the importance of limiting heavy metal exposure and consumption.

90.    Given the negative effects of heavy metals (such as arsenic, cadmium, and lead) on child development and adult health, the presence of these substances in food is material to reasonable consumers, including Plaintiffs and members of the Classes, as it relates to their purchasing decisions.

91.     Defendant knows that the presence (or material risk) of Heavy Metals in its Products is material to reasonable consumers, including Plaintiffs and the Class members.

92.     At all times during the relevant period, Defendant knew or should have known the Products included undisclosed levels of Heavy Metals and were not sufficiently tested for the presence and material risk of Heavy Metals.

93.     The December 2022 Consumer Reports Article was not the first time that Defendant has been alerted to the fact that its Products contain detectable levels of cadmium and lead.

94.     In 2014, Defendant's products were tested by a non-profit consumer advocacy organization, which informed Defendant that its dark chocolate products contained levels of cadmium and lead, a subject of concern for the group and for consumers at large.

95.     Therefore, at least since 2014 Defendant knew that the presence (or risk) of Heavy Metals in its Products is material to reasonable consumers, including Plaintiffs and the Class members.

96.     Defendant's Products included undisclosed levels of Heavy Metals due to Defendant's failure to sufficiently monitor for their presence in the ingredients and finished products.  Defendant was or should have been aware of this risk.

97.     Defendant knew or should have known that Heavy Metals pose health risks to consumers.

98.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Products to the extent reasonably possible.

99.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals in the Products and the contributing ingredients.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

100.    Based, in part, on Defendant's own representation that it manufactured the Products using the highest standards, Defendant knew or should have known consumers reasonably expect that the Products do not contain (or have a material risk of containing) Heavy Metals.

101.    The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, cadmium, and lead "dangerous to human health."[30]

102.    The FDA has acknowledged that "exposure to these [heavy metals] are likely to have the most significant impact on public health" and has prioritized them in connection with its Toxic Elements Working Group to look at reducing the risks associated with human consumption of heavy metals.[31]

103.    Lead and cadmium are neurotoxins, or poisons, which affect the nervous system.  As explained by the Consumer Reports Article:

> Consistent, long-term exposure to even small amounts of heavy metals can lead to a variety of health problems.  The danger is greatest for pregnant people and young children because the metals can cause developmental problems, affect brain development, and lead to lower IQ, says Tunde Akinleye, the CR food safety researcher who led this testing project.

---

[30] *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, U.S. House of Representatives Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Feb. 4, 2021 ("House Report") at 2, available at https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed May 11, 2023).

[31] *Environmental Contaminants in Food*, U.S. Food & Drug Administration, available at https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed May 11, 2023).

"But there are risks for people of any age," he says. Frequent exposure to lead in adults, for example, can lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues.[32]

104.   Heavy Metals bioaccumulate in the body, meaning the body cannot excrete the toxins as quickly as they are absorbed and the risk they pose increases over time and can remain in one's body for years.[33]

105.   Concerns over exposure to Heavy Metals, and the knowledge of such risks associated with exposure, are not a new phenomenon, and Defendant knew or should have known of the risks associated with the presence of Heavy Metals in foods it sells to consumers.[34]

106.   Despite the known risks of exposure to Heavy Metals, Defendant has recklessly and/or knowingly sold the Products without disclosing to consumers like Plaintiffs and members of the Classes that the Products contain (or have a material risk of containing) Heavy Metals.

**B.    Arsenic**

107.   The Products contain (or have a material risk of containing) arsenic, which can cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, and neurological and immunological effects.[35] Exposure to arsenic can also cause

---

[32] Consumer Reports Article.

[33] *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, Aug. 16, 2018 (updated Sept. 29, 2021), available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed May 11, 2023).

[34] *See e.g.*, *FDA Compliance Program Guidance Manual: Toxic Elements in Food and Foodware, and Radionuclides in Food – Import and Domestic*, available at http://wayback.archive-it.org/7993/20170404233343/https://www.fda.gov/downloads/Food/ComplianceEnforcement/UCM073204.pdf (last accessed May 11, 2023); *see also* 21 CFR 172, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?CFRPart=172&showFR=1 (last accessed May 11, 2023).

[35] House Report at 10.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

diabetes, atherosclerosis, and cardiovascular disease.[36] "There is no evidence that the harm caused by arsenic is reversible."[37]

108.    Inorganic arsenic is highly toxic and a known cause of human cancers.

109.    "Studies have shown that consuming products with arsenic over time can lead to impaired brain development, growth problems, breathing problems, and a compromised immune system."[38]

110.    Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and FDA have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA) as a maximum contaminant level.

---

[36] J. Christopher States et al., *Prenatal Arsenic Exposure Alters Gene Expression in the Adult Liver to a Proinflammatory State Contributing to Accelerated Atherosclerosis*, PLOS ONE, June 15, 2012, available at https://doi.org/10.1371/journal.pone.0038713 (last accessed May 11, 2023).

[37] *What's in my baby's food?*, Healthy Babies Bright Futures, Oct. 2019, at 13, available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed May 11, 2023).

[38] Letter to FDA Acting Commissioner Janet Woodcock, signed by Senators Klobuchar, Blumenthal, Leahy, Duckworth, and Booker, June 22, 2021, available at https://www.klobuchar.senate.gov/public/_cache/files/9/9/996f2cad-5295-432b-a543-f69312988a78/37D015A1AC9DDF0E31B341F629469169.6.22.2021-formatted-letter-to-fda-on-baby-food-recall.pdf (last accessed May 11, 2023) (citing *Arsenic and Children*, Dartmouth Toxic Metals Superfund Research Program, 2021, available at https://sites.dartmouth.edu/arsenicandyou/arsenic-and-children/ (last accessed May 11, 2023)).

111.    Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[39] The FDA has issued an action level guidance for inorganic arsenic in infant rice cereals of 100 ppb.[40]

### C.    Cadmium

112.    The Products contain (or have a material risk of containing) cadmium, which is considered a cancer-causing agent.[41]

113.    "[A]ny cadmium exposure should be avoided."[42]  Exposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and bone loss.[43]

114.    Cadmium exposure can affect the gastrointestinal system, as well as lead to hemorrhagic gastroenteritis, liver and kidney necrosis, cardiomyopathy, and metabolic acidosis.[44]

---

[39] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post, Feb. 4, 2021, available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed May 11, 2023).

[40] *Inorganic Arsenic in Rice Cereals for Infants: Action Level Guidance for Industry*, FDA, Aug. 2020, available at https://www.fda.gov/media/97234/download#:~:text=The%20action%20level%20for%20inorganic,on%20sampling%20and%20testing%20results (last accessed May 11, 2023).

[41] *Cadmium Factsheet*, Centers for Disease Control and Prevention, available at https://www.cdc.gov/biomonitoring/cadmium_factsheet.html (last accessed May 11, 2023).

[42] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection*? Environmental Health Perspectives, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed May 11, 2023).

[43] *Id*.

[44] *Cadmium Toxicity: What Health Effects are Associated with Acute High-Dose Cadmium Exposure?* Agency for Toxic Substances and Disease Registry, available at https://www.atsdr.cdc.gov/csem/cadmium/Acute-Effects.html (last accessed

115.    Exposure to cadmium is also linked to cardiovascular disease and cancer.[45]

116.    Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at exposure levels common among U.S. children."[46]

117.    Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure."[47]    The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[48]

118.    Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequester[s] in [human] tissue."[49]

---

May 11, 2023).

[45] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection?* Environmental Health Perspectives, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed May 11, 2023).

[46] *Is Homemade Baby Food Better? A New Investigation: Tests Compare Toxic Heavy Metal Contamination in Homemade Versus Store-Bought Foods for Babies*, Healthy Babies Bright Futures, Aug. 2022, at 69 ("Healthy Babies Bright Futures Report"), available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2022-08/StoreVsHomemade_2022.pdf (last accessed May 11, 2023).

[47] *Id.*

[48] *Public Health Statement for Cadmium*, Agency for Toxic Substances and Disease Registry, available at https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=46&toxid=15 (last accessed May 11, 2023).

[49] Stephen J. Genius et al., *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations*, PLOS ONE, Nov. 21, 2012, available at https://doi.org/10.1371/journal.pone.0049676 (last accessed May 11, 2023).

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

### D.    Lead

119.    The Products contain (or have a material risk of containing) lead, which is extremely toxic. "No amount of lead is known to be safe,"[50] and its harmful effects cannot be reversed or remediated.[51]

120.    Exposure to lead can result in neuropathy and brain damage, hypertension, decreased renal function, increased blood pressure, and gastrointestinal and cardiovascular effects, and can also cause reduced fetal growth or lower birth weights in pregnant women.[52]

121.    Lead is a carcinogen and lead exposure can seriously harm the brain and nervous system in children. Lead is also associated with a range of negative health outcomes such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.

122.    Exposure to lead in foods builds up over time.  Lead build-up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

---

[50] *Lead Levels Below EPA Limits Can Still Impact Your Health*, NPR, Aug. 13, 2016, available at https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epalimits-can-still-impact-your-health (last accessed May 11, 2023).

[51] *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, Aug. 16 2018 (updated Sept. 29, 2021), available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed May 11, 2023).

[52] *What are Possible Health Effects from Lead Exposure?* Agency for Toxic Substances and Disease Registry, available at https://www.atsdr.cdc.gov/csem/leadtoxicity/physiological_effects.html (last accessed May 11, 2023).

123.   Even very low exposure levels to lead can "cause lower academic achievement, attention deficits, and behavior problems.  No safe level of exposure has been identified."[53]

## IV.   Dark Chocolate Can Be Manufactured with Heavy Metals Below California's Maximum Allowable Dose Levels

124.   Dark chocolate manufacturers, such as Taza, are able to produce dark chocolate products with levels of lead and cadmium below California's MADL.[54]

125.   The Consumer Reports Article noted that "while most of the chocolate bars in CR's tests had concerning levels of lead, cadmium, or both, five of them were relatively low in both," showing it is possible to make products with lower amounts of heavy metals.[55] Furthermore, the Consumer Reports Article continued to say that "while contamination with heavy metals is common, *it is not inevitable*."[56]

126.   In addition, as a result of public health efforts, exposure to lead has consistently and notably decreased over the past 40 years.[57]  These efforts include increasing awareness of the dangers of even low levels of lead exposure to young children.[58]  The progress towards decreasing childhood exposure to lead was so impressive that the Centers for Disease Control and Prevention ("CDC") identified

---

[53] Healthy Babies Bright Futures Report at 18; *see also* House Report at 11.

[54] Consumer Reports Article.

[55] *Id*.

[56] *Id*. (emphasis added).

[57] Timothy Dignam et al., *Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure,* Journal of Public Health Management and Practice, Jan.-Feb. 2019, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/#R6 (last accessed May 11, 2023).

[58] *Id*.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

"childhood lead poisoning prevention as 1 of 10 great US public health achievements during 2001 to 2010."[59]

## V.    The Material Omissions Misled and Deceived Reasonable Consumers

127.   The popularity of dark chocolate has been on the rise in recent years due to its health benefits, which include being densely packed with antioxidants that can help protect against heart disease and stroke, and flavonoids that have been shown to lower blood pressure and improve blood flow to the brain.  Cocoa beans, or the seeds from cacao trees, are one of the best-known sources of dietary polyphenols, containing more phenolic antioxidants than most foods inducing positive effects on blood pressure, insulin resistance, and vascular function.[60]

128.   Indeed, the growth of dark chocolate sales has been driven by its popularity among health-conscious consumers and increasing awareness regarding potential health benefits associated with its consumption.  The health attributes of dark chocolate and their positive effects on well-being are material to reasonable consumers.  By extension, the deleterious effects of consuming known carcinogens such as Heavy Metals are material to reasonable consumers.

129.   The Omissions wrongfully convey to consumers that Defendant's Products are of a superior quality and have certain characteristics that they do not actually possess.

130.   Defendant misleadingly causes consumers to believe its Products do not contain Heavy Metals due to the material Omissions, when in fact the Products

---

[59] *Id*.

[60] Valeria Ludovici et al., *Cocoa, Blood Pressure, and Vascular Function*, Frontiers in Nutrition, Aug. 2, 2017, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5539137/ (last accessed May 11, 2023).

contain or have a material risk of containing undisclosed levels of Heavy Metals, which is material information to reasonable consumers and Plaintiffs.

131. For example, the testing conducted by Consumer Reports of Defendant's Products showed that each of the tested Products contained undisclosed levels of Heavy Metals.[61]




132. Recent testing conducted for Plaintiffs by an independent laboratory further confirmed the presence of undisclosed Heavy Metals in the Products:

| Product | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) |
|---|---|---|---|
| 72% Cacao Dark Chocolate Bar | 29 | 102 | 69 |
| The Dark Chocolate Lover's Chocolate Bar | 11 | 522 | 67 |
| Dark Chocolate Bar with Almonds | 375 | 246 | 43 |
| Uganda Dark Chocolate Bar | 16 | 186 | 95 |
| 70% Cacao Dark Chocolate Bar | 31 | 61 | 37 |

---

[61] *See* Consumer Reports Article.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

133.   Additionally, testing conducted for a non-profit consumer advocacy organization by independent, state-certified laboratories also disclosed the presence of Heavy Metals in the Products:[62]

| Product | Lead (µg/serving) | Cadmium (µg/serving) |
|---|---|---|
| The Dark Chocolate Lover's Chocolate Bar | 0.6 | 10.3 |
| 73% Cacao Super Dark Dark Chocolate Bar | 0.6 | 6.9 |
| Swiss 72% Cacao Dark Chocolate Bar | 1.4 | 2.5 |
| Pound Plus 72% Cacao Dark Chocolate Bar | 1.1 | 1.6 |

134.   Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence of (or material risk of) Heavy Metals in the Products.

135.   Due to the Omissions, reasonable consumers, like Plaintiffs, would not suspect the presence of Heavy Metals in the Products.  Unlike Defendant, reasonable consumers are not able to independently detect the presence of Heavy Metals in the Products and are generally without the means to conduct their own scientific tests or to review scientific testing conducted on the Products.  Moreover, information regarding the presence of Heavy Metals in the Products is in the exclusive possession of Defendant and not available to consumers.  Defendant chose to not disclose such information to consumers and thus actively concealed the presence and risk of Heavy Metals in the Products.

---

[62] *Toxins in Chocolate*, As You Sow, available at https://www.asyousow.org/environmental-health/toxic-enforcement/toxic-chocolate#chocolate-tables (last accessed May 11, 2023).

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

136.    Reasonable consumers must and do rely on Defendant to honestly report what its Products contain.

137.    Based on the impression created by the failure to disclose the Heavy Metals on the packaging, no reasonable consumer would expect, suspect, or understand that the Products contained or had a material risk of containing Heavy Metals.

138.    Plaintiffs' expectations and reliance are consistent with reasonable consumers as shown by a survey recently conducted by Plaintiffs' counsel:[63]

| Expectations Survey of Reasonable Consumers | |
|---|---|
| Based on the labels, consumers would expect the dark chocolate products to contain arsenic. | 1.9% |
| Based on the labels, consumers would expect the dark chocolate products to contain lead. | 2.1% |
| Based on the labels, consumers would expect the dark chocolate products to contain cadmium. | 3.9% |
| After seeing the labels, consumers would not expect there to be a presence or material risk of Heavy Metals in the dark chocolate products. | 78.9% |
| Consumers would expect a company to disclose if its dark chocolate products contained detectable levels or a risk of Heavy Metals. | 86.7% |
| Consumers would expect a company to test for Heavy Metals in its dark chocolate products. | 86.8% |

---

[63] The consumer survey included 402 respondents from 46 states and tested the following products: Trader Joe's 72% Cacao Dark Chocolate Bar, Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao), Trader Joe's Dark Chocolate Bar with Almonds (73% Cacao), Trader Joe's Uganda Dark Chocolate Bar (85% Cacao), and Trader Joe's Mini 70% Cacao Dark Chocolate Bars. Percentages reflected in the first four results in the survey table represent averages across the tested products.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

| Expectations Survey of Reasonable Consumers | |
|---|---|
| Consumers believe a company should disclose Heavy Metals testing results to consumers. | 93.3% |

139.    In light of Defendant's statements regarding the quality of the Products, including its supposed comprehensive quality controls, Defendant knew or should have known the Products contained or had a material risk of containing Heavy Metals.

140.    Defendant had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

141.    Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive packaging based on the material Omissions.

142.    Defendant knew that properly and sufficiently monitoring the Products for Heavy Metals in the ingredients and finished products was critical.

143.    In addition, Defendant knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of Heavy Metals.

144.    Defendant knew or should have known it could control the levels of Heavy Metals in the Products by properly monitoring and testing for Heavy Metals at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

145.    The Omissions are material and reasonably likely to deceive reasonable consumers in their purchasing decisions, such as Plaintiffs.  This is true especially considering Defendant's long-standing campaign to market the Products as "best quality products" that meet Defendant's "stringent quality and safety expectations" as Defendant claims "nothing is more important than the health and safety of our

customer."  Such statements were made to induce reasonable consumers, such as Plaintiffs, to purchase the Products and/or to purchase the Products at premium prices.

146.   The Omissions make the Products' packaging deceptive based on the presence or risk of Heavy Metals in the Products.  Reasonable consumers, like Plaintiffs, would consider the presence or risk of Heavy Metals in the Products a material fact when considering which dark chocolate products to purchase.

147.   Defendant knew, yet failed to disclose, that it was not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for Heavy Metals.

148.   The Omissions were misleading due to Defendant's failure to sufficiently or adequately monitor or test for and disclose the presence (or material risk) of Heavy Metals in the Products.

149.   Defendant knew or should have known that the Products contained or may contain undisclosed levels of Heavy Metals that were not disclosed on the packaging.

150.   Defendant knew or should have known that reasonable consumers expected Defendant to sufficiently monitor and test the Products and ingredients for Heavy Metals to ensure the quality of the Products.

151.   Defendant knew or should have known that reasonable consumers paid higher prices for the Products and expected Defendant to sufficiently test and monitor the Products and ingredients for the presence of Heavy Metals.

152.   The Omissions are material and render the Products' packaging deceptive because without full disclosure, reasonable consumers believe the Products are "safe, high-quality products," that would not contain or have a material risk of containing Heavy Metals.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

153.    The Omissions were intended to and did, in fact, cause consumers like Plaintiffs and the members of the Classes to purchase products they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price.

154.    As a result of Defendant's Omissions, Defendant was able to generate substantial sales, which allowed Defendant to capitalize on, and reap enormous profits from, Plaintiffs and similarly situated consumers who paid the purchase price or premium for the Products.

155.    Plaintiffs and other reasonable consumers would not have purchased the Products or would have paid less for them but for Defendant's Omissions concerning the presence (or material risk of the presence) of Heavy Metals in the Products.

## VI.    Defendant's Omissions Violate California and Other Similar State Laws

156.    California law is designed to ensure that a company's claims about its products are truthful and accurate.

157.    Defendant violated California law by recklessly, unfairly, and/or intentionally claiming that the Products were "best quality products" that meet Defendant's "stringent quality and safety expectations," and by not accurately detailing that the Products contain or have a material risk of containing Heavy Metals.

158.    Defendant has engaged in this long-term advertising campaign omitting the fact that the Products contain (or have a material risk of containing) Heavy Metals.

## VII.    Plaintiffs' Reliance Was Reasonable and Foreseeable by Defendant

159.    Plaintiffs read and relied upon the packaging of the Products when making their purchasing decisions.  Had they known Defendant omitted and failed

to disclose the presence of Heavy Metals on the Products' packaging, they would not have purchased the Products.

160.    Reasonable consumers, like Plaintiffs, would consider the packaging of a product when deciding whether to purchase it.

## VIII.  Defendant's Knowledge and Notice of Its Breach of Implied Warranties

161.    Defendant had sufficient notice of its breach of implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Products.   Defendant also had exclusive knowledge of its suppliers, and whether any suppliers provided ingredients that contained Heavy Metals.

162.    Furthermore, Defendant was put on notice by, *inter alia*, the consent judgment it was subject to in *As You Sow v. Trader Joe's, Inc.*, No. CGC-15-548791 (Cal. Sup. Ct. Feb. 15, 2018).   As You Sow, a nonprofit organization, filed suit against Trader Joe's for its failure to warn California residents of the presence of lead and cadmium in its products.  The parties reached a Consent Judgment whereby the defendants, including Trader Joe's, were required to include Product Trigger Warnings should they exceed an agreed upon concentration of lead, cadmium, or both.  In order to comply, regular testing for lead and cadmium levels were required. Thus, Defendant had knowledge that its products contained Heavy Metals.

163.    Defendant was also put on notice by, *inter alia*, the December 2022 Consumer Reports Article that identified the presence of Heavy Metals in Defendant's Products.

164.    Defendant has not changed its packaging to include any disclaimer that the Products contain (or are at the risk of containing) Heavy Metals.

## IX.    Privity Exists with Plaintiffs and the Proposed Classes

165.    Defendant knew that reasonable consumers such as Plaintiffs and the proposed members of the Classes would be the end purchasers of the Products and the targets of its advertising.

166. Defendant intended that the packaging and implied warranties would be considered by the end purchasers of the Products, including Plaintiffs and the proposed members of the Classes.

167. Defendant directly marketed to Plaintiffs and the proposed Classes through the Products' packaging.

168. Plaintiffs and the proposed members of the Classes are the intended beneficiaries of the implied warranties.

## **CLASS ACTION ALLEGATIONS**

169. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and all others similarly situated, as members of the following classes against Defendant:

All persons who, from February 15, 2018, to the present, purchased the Products for household use, and not for resale (the "Class").

All persons who, from February 15, 2018, to the present, purchased the Products for household use, and not for resale in the State of New York (the "New York Subclass").

All persons who, from February 15, 2018, to the present, purchased the Products for household use, and not for resale in the State of California (the "California Subclass").

All persons who, from February 15, 2018, to the present, purchased the Products for household use, and not for resale in the State of Illinois (the "Illinois Subclass").

All persons who, from February 15, 2018, to the present, purchased the Products for household use, and not for resale in the State of Washington (the "Washington Subclass").

170. Excluded from the Class and Subclasses (collectively, "Classes") are Defendant, any of Defendant's parent companies, subsidiaries and/or affiliates,

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

officers, directors, legal representatives, employees, or co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

171.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

172.    The members of the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

173.    Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

      a.    Whether Defendant owed a duty of care;

      b.    Whether Defendant owed a duty to disclose;

      c.    Whether Defendant knew or should have known that the Products contained or may contain Heavy Metals;

      d.    Whether Defendant failed to disclose that the Products contained or may contain Heavy Metals;

      e.    Whether the claims of Plaintiffs and the Classes serve a public benefit;

      f.    Whether Defendant's packaging is false, deceptive, and misleading based on the Omissions;

      g.    Whether the Omissions are material to a reasonable consumer;

      h.    Whether the inclusion of Heavy Metals in the Products is material to a reasonable consumer;

      i.    Whether the Omissions are likely to deceive a reasonable consumer;

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

j.  Whether Defendant had knowledge that the Omissions were material and false, deceptive, and misleading;

k.  Whether Defendant breached its duty of care;

l.  Whether Defendant breached its duty to disclose;

m. Whether Defendant violated the laws of the State of California;

n.  Whether Defendant violated the laws of the State of New York;

o.  Whether Defendant violated the laws of the State of Illinois;

p.  Whether Defendant violated the laws of the State of Washington;

q.  Whether Defendant breached its implied warranties;

r.  Whether Defendant engaged in unfair trade practices;

s.  Whether Defendant engaged in false advertising;

t.  Whether Plaintiffs and members of the Classes are entitled to actual, statutory, treble, and punitive damages; and

u.  Whether Plaintiffs and members of the Classes are entitled to declaratory and injunctive relief.

174.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes.  Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

175.  Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

176.  Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

177.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would not be feasible for members of the Classes to redress the wrongs done to them.

178.    Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

179.    As a result of the foregoing, class treatment is appropriate.

## <u>COUNT I</u>
**Violations of The California Unfair Competition Law, California Business & Professions Code §§17200, *et seq.*, Against Defendant on Behalf of the Class, or Alternatively, the California Subclass**

180.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

181.    Plaintiffs bring this claim individually and on behalf of the Class members against Defendant.

182.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

183.    Plaintiffs, the Class members, and Trader Joe's are each a "person" under California Business & Professions Code §17201.

**Fraudulent**

184.    Defendant's failure to disclose the presence (or material risk of presence) of Heavy Metals in the Products is likely to deceive the public.

**Unlawful**

185.    As alleged herein, Defendant's failure to disclose the presence (or material risk of presence) of Heavy Metals in the Products violates at least the following laws:

- The CLRA, California Business & Professions Code §§1750, *et seq.*;

45

- The False Advertising Law, California Business & Professions Code §§17500, *et seq.*, and

- The Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code §§109875, *et seq.*

**Unfair**

186.   Defendant committed unfair practices by selling the Products without adequate testing or screening for the Heavy Metals, which rendered the Products adulterated and misbranded.

187.   Defendant's conduct with respect to the packaging and sale of the Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of Defendant's conduct, if any, does not outweigh the gravity of the harm to its victims.

188.   Defendant's conduct with respect to the packaging and sale of the Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

189.   Defendant's conduct with respect to the packaging and sale of the Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

190.   Defendant was obligated to disclose the presence of Heavy Metals in the Products because:

a.  Defendant had exclusive knowledge of the presence of Heavy Metals in the Products that was not known or reasonably accessible to Plaintiffs and the Class; and

b.  Defendant actively concealed the presence of Heavy Metals from Plaintiffs and the Class.

191.   Plaintiffs and the Class members relied upon the Products' packaging provided to them by Defendant when making their purchasing decisions.   Had Plaintiffs and the Class members known Defendant failed to disclose the presence of Heavy Metals on the Products' packaging, they would not have purchased the Products.

192.   In accordance with California Business & Professions Code §17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

193.   Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future if they can be assured that the Products are safe for consumption and do not contain Heavy Metals.

194.   On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## **<u>COUNT II</u>**
**Violation of California's False Advertising Law, California Business & Professions Code §§17500, *et seq.*, Against Defendant on Behalf of the Class, or Alternatively, the California Subclass**

195.   Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

196.   Plaintiffs bring this claim individually and on behalf of the Class members against Defendant.

197.   California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

198.    As set forth herein, Defendant's failure to disclose the presence (or risk of presence) of Heavy Metals in the Products is likely to deceive the public.

199.    Defendant knew the Products contained undisclosed levels of Heavy Metals.  Defendant had a duty to disclose the presence of Heavy Metals, and by omitting their presence, misled consumers.

200.    Defendant knew, or reasonably should have known, that these Omissions were misleading to reasonable consumers.

201.    Had Defendant disclosed the presence (or risk of presence) of Heavy Metals in the Products or made consumers aware of its failure to disclose, Plaintiffs and members of the Class would not have purchased the Products.

202.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future if they can be assured that the Products do not contain Heavy Metals.

203.    Plaintiffs and the members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

## COUNT III

**Violations of California's Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*., Against Defendant on Behalf of the Class, or Alternatively, the California Subclass**

204.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

205.    Plaintiffs bring this claim individually and on behalf of the Class members against Defendant.

206.    Plaintiffs and each proposed Class member are "consumers," as that term is defined in California Civil Code §1761(d).

207. The Products are "goods," as that term is defined in California Civil Code §1761(a).

208. Plaintiffs, the Class members, and Defendant are each a "person" as that term is defined in California Civil Code §1761(c).

209. Plaintiffs and each of the Class member's purchases of the Products constitute "transactions" as that term is defined in California Civil Code §1761(c).

210. Defendant's conduct alleged herein violates at least the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

    a. California Civil Code §1770(a)(5), by failing to make any mention of Heavy Metals in the Products;

    b. California Civil Code §1770(a)(7), by knowingly, recklessly, and/or intentionally representing that the Products were of a particular standard, quality, or grade, when they were of another; and

    c. California Civil Code §1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Products with intent not to sell them as advertised.

211. The Omissions were material as reasonable consumers such as Plaintiffs and the members of the Class would deem the presence of Heavy Metals important in determining whether to purchase the Products.

212. Defendant was obligated to disclose the presence of Heavy Metals in the Products because:

    a. Defendant had exclusive knowledge of the presence of Heavy Metals in the Products, which was not known or reasonably accessible to Plaintiffs and the members of the Class; and

    b. Defendant actively concealed the presence of Heavy Metals from Plaintiffs and the members of the Class.

213.   As a direct and proximate result of these violations, Plaintiffs and the Class members have been harmed, and such harm will continue unless and until Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

214.   On January 5, 2023, counsel for Plaintiffs and the Class members sent Defendant written notice (via U.S. certified mail, return receipt requested) that its conduct is in violation of the CLRA.

215.   Defendant failed to provide appropriate relief for its violations of the CLRA §§1770(a)(5), (7), and (9) within thirty days of receipt of Plaintiffs' notification. In accordance, with CLRA §1782(b), Plaintiffs and the Class are entitled, under CLRA §1780, to recover and obtain the following relief for Defendant's violations of CLRA §§1770(a)(5), (7), and (9):

       a.   Actual damages under CLRA §1780(a)(1);

       b.   Restitution of property under CLRA §1780(a)(3);

       c.   Punitive damages under CLRA §1780(a)(4); and

       d.   Any other relief the Court deems proper under CLRA §1780(a)(5).

216.   Plaintiffs seek an award of attorneys' fees pursuant to, *inter alia*, California Civil Code §1780(c) and California Code of Civil Procedure §1021.5.

## COUNT IV
### Breach of Implied Warranty of Merchantability Against Defendant on Behalf of the Class or, Alternatively, the State Subclasses

217.   Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

218.   Plaintiffs bring this claim individually and on behalf of the Class members against Defendant.

219.   Defendant is a merchant engaging in the sale of goods to Plaintiffs and the members of the Class.

220.   There was a sale of goods from Defendant to Plaintiffs and the members of the Class.

221.   As set forth herein, Defendant manufactured and sold the Products, and prior to the time the Products were purchased by Plaintiffs and the members of the Class, impliedly warranted that the Products were of merchantable quality and fit for their ordinary use (consumption by consumers).

222.   Plaintiffs relied on these implied warranties when they purchased the Products.

223.   The Products were not fit for their ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals that do not conform to the packaging.

224.   These promises became part of the basis of the bargain between Defendant and Plaintiffs and the members of the Class, and thus constituted implied warranties.

225.   Defendant breached its implied warranties by selling Products that contain Heavy Metals.

226.   Defendant was on notice of this breach as it was aware of the inclusion of Heavy Metals in the Products as a result of the As You Sow litigation and Consent Judgment, as well as the public investigation and report published by Consumer Reports that showed the Products contain Heavy Metals.

227.   Privity exists because Defendant manufactured and sold the Products directly to Plaintiffs and the members of the Class.

228.   Defendant impliedly warranted to Plaintiffs and the members of the Class that the Products did not contain contaminants such as Heavy Metals by failing to mention or disclose the presence of Heavy Metals while making promises about

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

the quality and nature of the Products, including that its products must meet stringent quality expectations.

229.    As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiffs and the members of the Class suffered actual damages as they purchased the Products that were worth less than the price paid and that they would not have purchased at all had they known of the presence of Heavy Metals.

230.    Plaintiffs, on behalf of themselves and the members of the Class, seek actual damages for Defendant's failure to deliver goods that conform to its implied warranties and resulting breach.

### **COUNT V**
**Unjust Enrichment Against Defendant on Behalf of the Class or, Alternatively, the State Subclasses**

231.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

232.    Plaintiffs bring this claim individually and on behalf of the Class members against Defendant.

233.    Substantial benefits have been conferred on Defendant by Plaintiffs and the members of the Class through the purchase of the Products.    Defendant knowingly and willingly accepted and enjoyed these benefits.

234.    Defendant either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Products would not contain Heavy Metals.    As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

235.    Defendant was obligated to disclose the presence of Heavy Metals in the Products because:

a. Defendant had exclusive knowledge of the presence of Heavy Metals in the Products that were not known or reasonably accessible to Plaintiffs and the members of the Class; and

b. Defendant actively concealed the presence of Heavy Metals from Plaintiffs and the members of the Class.

236. Defendant's acceptance and retention of the benefits of the payments from Plaintiffs and the members of the Class under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the members of the Class.

237. Plaintiffs and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

238. Plaintiffs and the members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT VI

**Violation of Washington's Unfair Business Practices and Consumer Protection Act, RCW §§19.86.010, *et seq*., Against Defendant on Behalf of Plaintiff Brennessel and the Washington Subclass**

239. Plaintiff Brennessel incorporates by reference the allegations contained in the paragraphs above, as though fully set forth herein.

240. Plaintiff Brennessel brings this claim individually and on behalf of the members of the proposed Washington Subclass against Defendant.

241. Plaintiff Brennessel, the members of the Washington Subclass, and Defendant are considered "persons" as that term is defined in RCW §19.86.010(1).

242. Plaintiff Brennessel, the members of the Washington Subclass, and Defendant engaged in "commerce" as that term is defined in RCW §19.86.010(2).

243.    Defendant's misleading Omissions failed to disclose that the Products contained (or had a material risk of containing) Heavy Metals.

244.    Defendant omitted this material information with the intent to induce consumers such as Plaintiff Brennessel, to purchase the Products.

245.    Defendant engaged in deceptive practices in the conduct of its trade or commerce.

246.    Defendant's deceptive trade practices significantly affected the public interest.

247.    Plaintiff Brennessel and the Washington Subclass were purchasers of Defendant's Products.

248.    Plaintiff Brennessel and the members of the Washington Subclass were deceived by Defendant's deceptive trade practices and purchased the Products due to Defendant's deceptive trade practices.

249.    Plaintiff Brennessel and the members of the Washington Subclass suffered damages and losses as described above as a result of Defendant's deceptive trade practices.

250.    As a direct and proximate result of Defendant's deceptive, misleading, unfair, and unconscionable practices as set forth above and as provided in RCW §19.86.090, Plaintiff Brennessel and the Washington Subclass are entitled to actual damages, treble damages, attorneys' fees, costs, and any other just and proper relief available thereunder.

251.    Plaintiff Brennessel and the members of the Washington Subclass seek injunctive relief and declaratory relief and any other just and proper relief available thereunder.

## COUNT VII

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Compiled Statute §§505/1, *et seq*., Against Defendant on Behalf of Plaintiff Ish-Hurwitz and the Illinois Subclass**

252. Plaintiff Ish-Hurwitz incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

253. Plaintiff Ish-Hurwitz brings this claim individually and on behalf of the members of the proposed Illinois Subclass against Defendant.

254. Plaintiff Ish-Hurwitz, the Illinois Subclass, and Defendant are "persons" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. §505/1(c).

255. The Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. §505/1(b).

256. There was a sale of merchandise within the meaning of 815 Ill. Comp. Stat. §505/1(d).

257. Defendant's Omissions, concealment, and other deceptive conduct as described herein constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. §505/1, *et seq*.

258. Defendant violated the ICFA when it knowingly concealed, omitted, or failed to disclose that the Products contained (or had a material risk of containing) Heavy Metals.

259. Defendant knew or should have known the Products did not have the quality, ingredients, or standards as described above because they contained (or had a material risk of containing) undisclosed levels of Heavy Metals.

260. Defendant intended that the Plaintiff Ish-Hurwitz and the Illinois Subclass would rely on its Omissions, concealment, and other deceptive conduct regarding the Products' quality, ingredients, and standards when deciding to purchase the Products, unaware of the undisclosed material facts.

261.   The facts concealed or not disclosed by Defendant were material facts in that Plaintiff Ish-Hurwitz, the Illinois Subclass, and other reasonable consumers would have considered them in deciding whether to purchase the Products.  Had Plaintiff Ish-Hurwitz and members of the Illinois Subclass known the Products did not have the quality, ingredients, and standards as advertised by Defendant and contained (or had a material risk of containing) Heavy Metals, they would not have purchased the Products or paid the premium price.

262.   Defendant's Omissions, concealment, and other deceptive conduct as described herein repeatedly occurred in the course of Defendant's trade or commerce and were capable of deceiving a substantial portion of the consuming public.

263.   Defendant's Omissions and other deceptive acts or practices caused Plaintiff Ish-Hurwitz and the Illinois Subclass to suffer injury in the form of actual damages when they purchased the Products that were worth less than the price they paid and that they would not have purchased had they known the Products contained (or had a material risk of containing) Heavy Metals.

264.   As a direct and proximate result of Defendant's deceptive, misleading, unfair, and unconscionable practices as set forth above, Plaintiff Ish-Hurwitz and the Illinois Subclass are entitled to actual damages, compensatory damages, injunctive relief, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

265.   Defendant's deceptive, misleading, unfair, and unconscionable practices as set forth above were done willfully, wantonly, and maliciously, entitling Plaintiff Ish-Hurwitz and the Illinois Subclass to an award of punitive damages defined under the ICFA, 815 ILCS 505/1(f).

## COUNT VIII

**Violation of Deceptive Practices Act, New York General Business Law §349, Against Defendant on Behalf of Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass**

266.    Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

267.    Plaintiffs Herd, Thaler, Shausmanov, Ganguly and Ferrante bring this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

268.    New York General Business Law Section 349 ("GBL §349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

269.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL §349, and as such, Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass members seek monetary damages against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products and from charging consumers moneys in the future.

270.    Defendant misleadingly, inaccurately, and deceptively advertised and marketed the Products to consumers. By misrepresenting the true contents of the Products and failing to disclose the Products contain (or have a material risk of containing) Heavy Metals, Defendant's marketing and labeling misleads a reasonable consumer.

271.    Defendant had exclusive knowledge of the Heavy Metals levels in the Products.

272. Defendant's Omissions were material because consumers are concerned with the quality of food that they purchase, and the ingredients contained therein.

273. Defendant's improper consumer-oriented conduct—including Defendant's Omissions regarding the presence of Heavy Metals in the Products—is misleading in a material way in that, *inter alia*, it induced Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass members to purchase and pay a premium for Defendant's Products when they otherwise would not have.

274. Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass members have been injured as they paid a premium for Products that—contrary to Defendant's Omissions—contain or risked containing Heavy Metals. Accordingly, Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass members received less than what they bargained and/or paid for in that they would not have purchased the Products but for Defendant's Omissions.

275. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass members have been damaged thereby.

276. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IX
### Violation of New York General Business Law §350, Against Defendant on Behalf of Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass

277. Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

278. Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante bring this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

279. N.Y. Gen. Bus. Law §350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

280. N.Y. Gen. Bus. Law §350-a(1) provides, in part, as follows:

> The term 'false advertising' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual. . . .

281. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products by failing to disclose the

59

presence (or risk of the presence) of Heavy Metals in the Products, thereby misleading reasonable consumers.

282.    Defendant had exclusive knowledge of the Heavy Metals levels in the Products.

283.    Defendant's Omissions were material because consumers are concerned with the quality of food that they purchase, and the ingredients contained therein.

284.    Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass members have been injured as they paid a premium for the Products based on Defendant's failure to disclose the presence or risk of the presence of Heavy Metals in the Products. Accordingly, Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass members received less than what they bargained and/or paid for.

285.    Defendant's advertising and Products' labeling induced Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and the New York Subclass members to buy Defendant's Products.

286.    Defendant's Omissions have been consistent throughout the Class Period as Defendant has never included a disclosure that the Products contain (or had a risk of containing) Heavy Metals.

287.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs Herd, Thaler, Shausmanov, Ganguly, and Ferrante and New York Subclass members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as to each and every count, including:

(a)    An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Classes, and requiring Defendant to bear the costs of class notice;

(b)    An order enjoining Defendant from selling the Products until the Heavy Metals are removed or full disclosure of the presence of same appears on all packaging;

(c)    An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Products;

(d)    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

(e)    An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

(f)    An order requiring Defendant to disgorge or return all moneys, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

(g)    An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

(h)    An order requiring Defendant to pay punitive damages on any count so allowable;

(i)    An order awarding attorneys' fees and costs to Plaintiffs and the Classes; and

(j)    An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs request a trial by jury of all claims so triable.

Dated: May 11, 2023          LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By:  s/ Rebecca A. Peterson
Rebecca A. Peterson (241858)
Robert K. Shelquist*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
E-mail: rapeterson@locklaw.com
          rkshelquist@locklaw.com

GEORGE FELDMAN MCDONALD, PLLC
Lori G. Feldman*
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
E-mail: LFeldman@4-Justice.com

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

BURSOR & FISHER, P.A.
L. Timothy Fisher
Luke Sironski-White
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4448
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          lsironski@bursor.com

FREED KANNER LONDON AND MILLEN, LLC
Jonathan M. Jagher
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6486
E-mail: jjagher@fklmlaw.com

GEORGE FELDMAN MCDONALD, PLLC
David J. George*
Brittany L. Brown*
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
E-mail: DGeorge@4-Justice.com
          BBrown@4-justice.com

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson*
Catherine Sung-Yun K. Smith*
Shashi Gowda
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
          csmith@gustafsongluek.com
          sgowda@gustafsongluek.com

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

WEXLER BOLEY & ELGERSMA LLP
Kenneth A. Wexler*
Kara A. Elgersma*
311 S. Wacker, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
E-mail: kaw@wbe-llp.com
           kae@wbe-llp.com

BARRACK, RODOS & BACINE
Stephen R. Basser*
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
E-mail: sbasser@barrack.com

FREED KANNER LONDON AND MILLEN, LLC
Steven A. Kanner
Nia-Imara Binns
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
E-mail: skanner@fklmlaw.com
           nbinns@fklmlaw.com

MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
Nick Suciu
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
E-mail: nsuciu@milberg.com

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

LEVI & KORSINSKY, LLP
Mark S. Reich*
Courtney E. Maccarone*
55 Broadway, 4th Floor, Suite 427
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
E-mail: mreich@zlk.com
        cmaccarone@zlk.com

THE SULTZER LAW GROUP P.C.
Jason P. Sultzer*
Daniel Markowitz*
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
E-mail: sultzerj@thesultzerlawgroup.com
        markowitzd@thesultzerlawgroup.com

LAUKAITIS LAW LLC
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
E-mail: klaukaitis@laukaitislaw.com

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

FITZGERALD JOSEPH LLP
Jack Fitzgerald
Paul K. Joseph
Melanie Persinger
Trevor M. Flynn
Caroline S. Emhardt
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741
E-mail: jack@fitzgeraldjoseph.com
          paul@fitzgeraldjoseph.com
          melanie@fitzgeraldjoseph.com
          trevor@fitzgeraldjoseph.com

LEVIN SEDRAN & BERMAN LLP
Charles E. Schaffer
510 Walnut St., Suite. 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
E-mail: cschaffer@lfsblaw.com

LIPPSMITH LLP
Graham B. LippSmith
MaryBeth LippSmith
Jaclyn L. Anderson
555 S. Flower Street, Suite 4400
Los Angeles, CA  90071
Telephone: (213) 344-1820
Facsimile: (213) 513-2495
E-mail: g@lippsmith.com
          mb@lippsmith.com
          jla@lippsmith.com

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC

ALMEIDA LAW GROUP LLC
David S. Almeida (*Pro Hac Vice*)
Elena A. Belov (*Pro Hac Vice*)
849 W. Webster Avenue
Chicago, IL 60614
Telephone: (312) 576-3024
E-mail: david@almeidalawgroup.com
        elena@almeidalawgroup.com

KAPLAN FOX & KILSHEIMER LLP
Laurence D. King
Matthew B. George
Blair E. Reed
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
E-mail: lking@kaplanfox.com
        mgeorge@kaplanfox.com
        breed@kaplanfox.com

KAPLAN FOX & KILSHEIMER LLP
Joel B. Strauss*
850 Third Avenue
New York, NY  10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
E-mail: jstrauss@kaplanfox.com

KUZYK LAW, LLP
Michael D. Braun
1999 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
E-mail: mdb@kuzykclassactions.com

***Attorney for Plaintiffs***

*\*Pro hac vice forthcoming*

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-cv-00061-RBM-KSC