**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            lsironski@bursor.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Rebecca A. Peterson (State Bar No. 241858)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
E-mail: rapeterson@locklaw.com

*Attorneys for Plaintiffs*

*(Additional Counsel listed on Signature Page)*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE TRADER JOE'S COMPANY DARK CHOCOLATE LITIGATION | Case No. 3:23-cv-00061-RBM-KSC |
|  | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT** |
|  | Honorable Ruth Bermudez Montenegro |
|  | Hearing Date: August 7, 2023 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

    I.    PLAINTIFFS SUFFICIENTLY ALLEGE VIOLATIONS OF
          CONSUMER PROTECTION STATUTES .............................................2

          A.    Plaintiffs Plausibly Allege Reasonable Consumers Would
                be Deceived by Defendant's Omissions .........................................3

          B.    Defendant Had a Duty to Disclose the Presence of Heavy
                Metals in its Dark Chocolate Products ...........................................7

               1.    Defendant Had a Duty to Disclose Under
                       Non-California Law ..............................................................7

               2.    Defendant Had A Duty Disclose Under
                       California Law......................................................................10

          C.    Economic Injury Is Easily Satisfied Here....................................14

          D.    Plaintiffs Plausibly Allege They Did Not Know The Dark
                Chocolate Products Contained or Risked Containing
                 Heavy Metals ................................................................................16

    II.    PRIMARY JURISDICTION SHOULD NOT BE INVOKED
          HERE ...................................................................................................19

    III.    PLAINTIFFS SUFFICIENTLY ALLEGE BREACH OF
          IMPLIED WARRANTY .....................................................................24

    IV.    UNJUST ENRICHMENT IS PROPERLY PLED ...............................27

    V.    PLAINTIFFS HAVE STANDING TO BRING NATIONWIDE
          CLASS CLAIMS .................................................................................28

    VI.    PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE
          RELIEF ...............................................................................................30

    VII.    PLAINTIFFS HAVE STANDING TO PURSUE CLAIMS
          INVOLVING DEFENDANT'S SIMILAR DARK
          CHOCOLATE PRODUCTS..................................................................32

CONCLUSION.....................................................................................................34

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ablaza v. Sanofi-Aventis U.S. LLC*,
   2022 WL 19517298 (N.D. Cal. July 12, 2022)......................................29

*Abrantes v. Northland Grp., Inc.*,
   2015 WL 1738255 (N.D. Cal. Apr. 13, 2015) ........................................24

*Almeida v. Apple, Inc.*,
   2023 WL 3149252 (N.D. Cal. Mar. 1, 2023) .........................................19

*Ang v. Bimbo Bakeries USA, Inc.*,
   2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)........................................32

*Ashton v. J.M. Smucker Co.*,
   2020 WL 8575140 (C.D. Cal. Dec. 16, 2020) .......................................29

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015)...............................................................19

*Axon v. Fla.'s Nat. Growers, Inc.*,
   813 F. App'x 701 (2d Cir. 2020)..........................................................16

*Barnes v. Nat. Organics, Inc.*,
   2022 WL 4283779 (C.D. Cal. Sept. 13, 2022)................................11, 13

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019)........................................................4, 5, 6

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020)..................................................................2

*Bland v. Sequel Nat. Ltd.*,
   2019 WL 4674337 (N.D. Cal. Aug. 2, 2019)....................................12, 13

*Boysen v. Walgreen Co.*,
   2012 WL 2953069 (N.D. Cal. July 19, 2012).........................................14

*Brass v. Am. Film Techs., Inc.*,
   987 F.2d 142 (2d Cir. 1993).................................................................18

PLAINTIFFS' OPPOSITION TO MTD                          CASE NO. 3:23-CV-00061-RBM-KSC

*Brown v. MCI WorldCom Network Servs., Inc.*,
   277 F.3d 1166 (9th Cir. 2002)............................................................20

*Browning v. Unilever United States, Inc.*,
   2017 WL 7660643 (C.D. Cal. Apr. 26, 2017) ........................................8

*Bruton v. Gerber Prods. Co.*,
   703 F. App'x 468 (9th Cir. 2017) .......................................................28

*Capaci v. Sports Rsch. Corp.*,
   445 F. Supp. 3d 607 (C.D. Cal. 2020)..................................................22

*Castillo v. Unilever United States, Inc.*,
   2022 WL 704809 (N.D. Ill. Mar. 9, 2022) ...........................................11

*Cheslow v. Ghirardelli Chocolate Co.*,
   472 F. Supp. 3d 686 (N.D. Cal. 2020) ...............................................5, 6

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008)............................................................19

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001)...............................................................6

*Clinger v. Edgewell Pers. Care Brands, LLC*,
   2023 WL 2477499 (D. Conn. Mar. 13, 2023)............................7, 11, 15

*Cohen v. ConAgra Brands, Inc.*,
   16 F.4th 1283 (9th Cir. 2021)............................................................19

*Colpitts v. Blue Diamond Growers*,
   527 F. Supp. 3d 562 (S.D.N.Y. 2021)...................................................8

*Connick v. Suzuki Motor Co.*,
   675 N.E.2d 584 (Ill. 1996) ...................................................................9

*Cooper v. Anheuser-Busch, LLC*,
   553 F. Supp. 3d 83 (S.D.N.Y. 2021)...................................................18

*Cortina v. Goya Foods, Inc.*,
   94 F. Supp. 3d 1174 (S.D. Cal. 2015) .................................................23

*Cuevas v. United Brands Co., Inc.*,
   2012 WL 760403 (S.D. Cal. Mar. 8, 2012)..........................................19

iii

*Curtis v. Philip Morris Cos. Inc.*,
　2004 WL 2776228 (Minn. Dist. Ct. Nov. 29, 2004)..................................................2

*Dachauer v. NBTY, Inc.*,
　913 F.3d 844 (9th Cir. 2019)....................................................................................12

*Davel Commc'n Inc. v. Qwest Corp.*,
　460 F.3d 1075 (9th Cir. 2006)..................................................................................20

*Davidson v. Kimberly-Clark Corp.*,
　889 F.3d 956 (9th Cir. 2018)....................................................................................30

*DeCoursey v. Murad, LLC*,
　2023 WL 3478459 (N.D.N.Y. May 16, 2023).........................................................17

*Estrada v. Johnson & Johnson*,
　2015 WL 1440466 (E.D. Cal. Mar. 27, 2015).........................................................14

*Favors v. Matzke*,
　770 P.2d 686 (Wash. Ct. App. 1989).......................................................................18

*Ferry v. Mead Johnson & Co., LLC*,
　514 F. Supp. 3d 418 (D. Conn. 2021)......................................................................26

*Fisher v. Monster Beverage Corp.*,
　125 F. Supp. 3d 1007 (C.D. Cal. 2013)....................................................................23

*Forcellati v. Hyland's Inc.*,
　876 F. Supp. 2d 1155 (C.D. Cal. 2012)....................................................................33

*Forrett v. Gourmet Nut Inc.*,
　2023 WL 3749556 (N.D. Cal. June 1, 2023)...........................................................31

*Gagetta v. Walmart, Inc.*,
　2022 WL 17812924 (N.D. Cal. Dec. 19, 2022) ...........................................11, 13, 14

*Gasser v. Kiss My Face, LLC*,
　2017 WL 4773426 (N.D. Cal. Oct. 23, 2017)..........................................................28

*Gitson v. Trader Joe's Co.*,
　2014 WL 1048640 (N.D. Cal. Mar. 14, 2014)....................................................33, 34

*Graves v. Arpaio*,
　623 F.3d 1043 (9th Cir. 2010) (per curiam ..............................................................8

iv

*Guajardo v. Skechers USA, Inc.*,
   2021 WL 4302532 (C.D. Ill. Sept. 21, 2021) ............................................................9

*Guido v. L'Oreal, USA, Inc.*,
   2013 WL 454861 (C.D. Cal. Feb. 6, 2013) ................................................................9

*Hamman v. Cava Grp., Inc.*,
   2023 WL 3450654 (S.D. Cal. Feb. 8, 2023) ............................................................15

*Henning v. Luxury Brand Partners, LLC*,
   2023 WL 3555998 (N.D. Cal. May 11, 2023) ....................................11, 12, 14, 24

*Hrapoff v. Hisamitsu Am., Inc.*,
   2022 WL 2168076 (N.D. Cal. June 16, 2022) ........................................................29

*In re Aqua Data Prods. Liab. Litig.*,
   654 F.3d 748 (7th Cir. 2011) ..................................................................................16

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................................8

*In re Evenflo Co., Inc., Mktg., Sales Pracs. and Prods. Liab. Litig.*,
   54 F.4th 28 (1st Cir. 2022) ......................................................................................16

*In re Fruit Juice Prods. Mktg. and Sales Pracs. Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011) ...............................................................15, 16

*In re Hydroxycut Mktg. and Sales Pracs. Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ....................................................................29

*In re Juul Labs, Inc. Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) ....................................................................24

*In re Natera Prenatal Testing Litig.*,
   2023 WL 3370737 (N.D. Cal. Mar. 28, 2023) ..................................................passim

*In re Plum Baby Food Litigation*,
   2022 WL 16640802 (N.D. Cal. Jan. 12, 2022) ............................................21, 23, 31

*In re Plum Baby Food Litigation*,
   2023 WL 3493319 (N.D. Cal. May 3, 2023) ..........................................................21

*In re Recalled Abbott Infant Formula Products Liability Litigation*,
   2023 WL 3585759 (N.D. Ill. May 22, 2023) ....................................................21, 22

PLAINTIFFS' OPPOSITION TO MTD                    CASE NO. 3:23-CV-00061-RBM-KSC

*In re Sling Media Slingbox Advert. Litig.*,
  202 F. Supp. 3d 352 (S.D.N.Y. 2016) ......................................................................... 8

*Jones v. ConAgra Foods, Inc.*,
  2012 WL 6569393 (N.D. Cal. Dec. 17, 2012) ........................................................... 22

*Jovel v. Boiron Inc.*,
  2013 WL 12164622 (C.D. Cal. Aug. 16, 2013) .......................................................... 22

*Kinman v. Kroger Co.*,
  604 F. Supp. 3d 720 (N.D. Ill. 2022) ........................................................................ 10

*Kosta v. Del Monte Corp.*,
  2013 WL 2147413 (N.D. Cal. May 15, 2013) ............................................................ 22

*Krause-Pettai v. Unilever United States, Inc.*,
  2021 WL 1597931 (S.D. Cal. Apr. 23, 2021) ............................................................. 33

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) ......................................................................... 6

*Kutza v. Williams-Sonoma, Inc.*,
  2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ............................................................. 29

*Kyszenia v. Ricoh USA, Inc.*,
  583 F. Supp. 3d 350 (E.D.N.Y. 2022) ....................................................................... 17

*Landau v. Viridian Energy PA LLC*,
  223 F. Supp. 3d 401 (E.D. Pa. 2016) .......................................................................... 2

*Loeb v. Champion Petfoods USA Inc.*,
  2018 WL 2745254 (E.D. Wis. June 7, 2018) ............................................................. 15

*Madenlian v. Flax USA Inc.*,
  2014 WL 7723578 (C.D. Cal. Mar. 31, 2014) .......................................................... 2, 3

*Mattel, Inc. v. MCA Records, Inc.*,
  28 F. Supp. 2d 1120 (C.D. Cal. 1998) ......................................................................... 6

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ..................................................................................... 27

*McGee v. S-L Snacks Nat'l*,
  982 F.3d 700 (9th Cir. 2020) ..................................................................................... 16

*Melendres v. Arpaio*,
  784 F. 3d 1254 (9th Cir. 2015)..........................................................................28, 29

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021)....................................................................................4

*Mueller v. Puritan's Pride, Inc.*,
  2021 WL 5494254 (N.D. Cal. Nov. 23, 2021).........................................................31

*Pappas v. Pella Corp.*,
  844 N.E.2d 995 (Ill. Ct. App. 2006).......................................................................9

*Paradowski v. Champion Petfoods USA, Inc.*,
  2023 WL 3829559 (2d Cir. June 6, 2023) ......................................................18, 21

*Parker v. J.M. Smucker Co.*,
  2013 WL 4516156 (N.D. Cal. July 20, 2012).........................................................32

*Pecanha v. Hain Celestial Grp.*,
  2018 WL 534299 (N.D. Cal. Jan. 24, 2018) ..........................................................29

*People ex rel. Spitzer v. Gen. Elec. Co.*,
  302 A.D.2d 314 (N.Y. App. Div. 2003)...................................................................2

*Pershing Pac. W., LLC v. Ferretti Grp., USA, Inc.*,
  2013 WL 275676 (S.D. Cal. Jan. 24, 2013)...........................................................25

*Prescott v. Bayer Healthcare LLC*,
  2020 WL 4430958 (N.D. Cal. July 31, 2020)...................................................23, 24

*Prescott v. Nestlé USA, Inc.*,
  597 F. Supp. 3d 1377 (N.D. Cal. 2022) ..................................................................5

*Raymo v. FCA US LLC*,
  475 F. Supp. 3d 680 (E.D. Mich. 2020) ................................................................15

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015)..................................................................20, 22, 24

*Rhoades v. Avon Prods., Inc.*,
  504 F.3d 1151 (9th Cir. 2007)...............................................................................20

*Rieger v. Volkswagen Grp. of Am., Inc.*,
  2023 WL 3271116 (D.N.J. May 4, 2023) .............................................................8, 9

*Robles v. Domino's Pizza, LLC*,
    913 F.3d 898 (9th Cir. 2019) .................................................................... 19, 20

*Romero v. Flowers Bakeries, LLC*,
    2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ....................................................... 27

*Roney v. Miller*,
    705 F. App'x 670 (9th Cir. 2017) ................................................................... 34

*Rydman v. Champion Petfoods USA, Inc.*,
    2020 WL 4347512 (W.D. Wash. July 29, 2020) ................................................ 18

*Samet v. Procter & Gamble Co.*,
    2015 WL 5012828 (N.D. Cal. Aug. 24, 2015) ................................................... 28

*Schneider v. Chipotle Mexican Grill, Inc.*,
    328 F.R.D. 520 (N.D. Cal. 2018) ................................................................... 15

*Soo v. Lorex Corp.*,
    2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) ................................................... 28

*Souter v. Edgewell Pers. Care Co.*,
    542 F. Supp. 3d. 1083 (S.D. Cal. 2021) .......................................................... 22

*Staley v. Gilead Sciences, Inc.*,
    446 F. Supp. 3d 578 (N.D. Cal. 2020) ............................................................ 29

*Steele v. Extendicare Health Servs. Inc.*,
    607 F. Supp. 2d 1226 (W.D. Wash. 2009) ....................................................... 17

*Stella v. LVMH Perfumes and Cosms. USA, Inc.*,
    564 F. Supp. 2d 833 (N.D. Ill. 2008) .............................................................. 10

*Stewart v. Electrolux Home Prods., Inc.*,
    304 F. Supp. 3d 894 (E.D. Cal. 2018) ............................................................ 25

*Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*,
    2023 WL 3856722 (N.D. Cal. May 19, 2023) .................................................. 31

*Turtle Island Restoration Network v. U.S. Dep't of Commerce*,
    672 F.3d 1160 (9th Cir. 2012) ......................................................................... 8

*Viggiano v. Hansen Nat. Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................................... 24, 26

*Watec Co. Ltd. v. Liu*,
   2002 WL 34373489 (C.D. Cal. May 21, 2002) ........................................5

*Watson v. Solid Gold Pet, LLC*,
   2019 WL 3308766 (C.D. Cal. Feb. 22, 2019).........................................4

*White v. DaimlerChrysler Corp.*,
   856 N.E.2d 542 (Ill. Ct. App. 2006)...........................................................9

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008)..............................................................2, 3

*Wilson v. Frito-Lay N. Am., Inc.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ...................................................32

*Womack v. EVOL Nutrition Assocs.*,
   2021 WL 5906340 (N.D.N.Y. Dec. 14, 2021).........................................17

*Woods v. Maytag Co.*,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011)......................................................18

*Zarinebaf v. Champion Petfoods USA Inc.*,
   2022 WL 980832 (N.D. Ill. Mar. 31, 2022)............................................10

*Zeiger v. WellPet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ...........................................2, 4, 14

*Zeiger v. WellPet LLC*,
   526 F. Supp. 3d 652 (N.D. Cal. 2021) .....................................................5

**REGULATIONS**

21 C.F.R. § 1.21(a)(2)...............................................................................12

PLAINTIFFS' OPPOSITION TO MTD                    CASE NO. 3:23-CV-00061-RBM-KSC

Plaintiffs Valerie Morrison, Tamakia Herd, Vyacheslav Shausmanov, Robert Waring, Rita Ade, Lillian Brennessel, Rome Ish-Hurwitz, Adam Thaler, Ginger Chapman, Louis Salerno, Rob Costin, Ahana Ganguly, and Thomas Ferrante ("Plaintiffs") respectfully submit this Opposition to the Motion to Dismiss (Dkt. 34) (the "Motion" or "MTD") filed by Trader Joe's Company ("Trader Joe's" or "Defendant").

## **INTRODUCTION**

This is a consumer protection case concerning the misleading and deceptive packaging of certain chocolate bars manufactured by Defendant. Specifically, the Consolidated Class Action Complaint alleges that Defendant's packaging was misleading because of the material omission of the presence (or material risk) of arsenic, cadmium, and lead ("Heavy Metals") in its dark chocolate bars at issue here (the "Products"). (*See* Dkt. 20, the "CAC".)[1] As a direct result of this omission, Trader Joe's caused injury to consumers who would not have purchased or would not have paid premium prices for the Products had they been aware that the Products contain, or have a material risk of containing, Heavy Metals beyond any level that can reasonably be deemed inevitable, naturally occurring, or safe.

Trader Joe's now improperly asks this Court to dismiss the CAC in its entirety, despite admitting that the Products, which are represented to consumers as being manufactured under strict quality standards, contain significant levels of arsenic, cadmium, and lead. In doing so, Trader Joe's cavalierly brushes aside test results cited by Plaintiffs that show levels of lead and cadmium above the Maximum Allowable Dose Levels ("MADLs") established under California's Proposition 65 and simply asserts that the Products contain "safe, miniscule" levels of heavy metals and "are completely safe to consume." (Dkt. 34-1 (Defendant's Memorandum in Support of Motion to Dismiss) at 10–11.) Trader Joe's also ignores evidence that the

---

[1] The "Products" are, at a minimum, those defined at CAC ¶ 69.

Products could be manufactured in ways that would reduce the levels of Heavy Metals below the MADLs for lead and cadmium. Instead, Defendant seeks to hide behind existing, and confusing at best, environmental and food regulations (also not disclosed or otherwise made available to consumers by Trader Joe's) that do not actually serve as the basis for any of Plaintiffs' claims.

As set forth in the CAC and below, Plaintiffs sufficiently allege the Products contain Heavy Metals that can cause a variety of serious illnesses, including necrosis, cardiovascular disease, diabetes, and cancer (CAC at ¶¶ 107–23), thereby representing a real safety threat that Trader Joe's has a legal obligation to disclose to consumers under both statutory and common law. Plaintiffs respectfully request that the Motion be denied.

## ARGUMENT

## I. PLAINTIFFS SUFFICIENTLY ALLEGE VIOLATIONS OF CONSUMER PROTECTION STATUTES

Plaintiffs properly assert claims under the consumer protection statutes of California, New York, Illinois, and Washington. Trader Joe's seeks dismissal of these claims, purportedly because "no reasonable consumer could have been misled by something Trader Joe's did *not* say and that does *not* present a safety issue." Dkt. 34-1 at 18:6–8.

Conduct is deceptive or misleading if it is likely to deceive a reasonable consumer. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also People ex rel. Spitzer v. Gen. Elec. Co.*, 302 A.D.2d 314, 315 (N.Y. App. Div. 2003); *Curtis v. Philip Morris Cos. Inc.*, 2004 WL 2776228, at *4 (Minn. Dist. Ct. Nov. 29, 2004); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020). "[T]he issue of whether a business practice is deceptive is a fact question that cannot properly be resolved on a motion to dismiss." *Madenlian v. Flax USA Inc.*, 2014 WL 7723578, at *2 (C.D. Cal. Mar. 31, 2014); *see also Zeiger v. WellPet LLC*, 304 F.

Supp. 3d 837, 852 (N.D. Cal. 2018); *Williams*, 552 F.3d at 938. It is only "in 'rare' cases, the Court can grant a motion to dismiss based upon its review of the disputed packaging." *Madenlian*, 2014 WL 7723578, at *2 (quoting *Williams*, 552 F.3d at 938-39). This is not such a "rare" case.

### A.   Plaintiffs Plausibly Allege Reasonable Consumers Would be Deceived by Defendant's Omissions

Defendant argues that "Plaintiffs' pure omission theory fails because the absence of a warning label would not cause a reasonable consumer to infer that a product is 'completely free' of trace amounts of heavy metals, much less that it bears no risk of containing heavy metals." Dkt. 34-1 at 19:14–17. Not only does this raise a question of fact, it is baseless and inconsistent with responses from a survey of actual consumers conducted by Plaintiffs' counsel:

| Expectations Survey of Reasonable Consumers | |
|---|---|
| Based on the labels, consumers would expect the dark chocolate products to contain arsenic. | 1.9% |
| Based on the labels, consumers would expect the dark chocolate products to contain lead. | 2.1% |
| Based on the labels, consumers would expect the dark chocolate products to contain cadmium. | 3.9% |
| After seeing the labels, consumers would not expect there to be a presence or material risk of Heavy Metals in the dark chocolate products. | 78.9% |
| Consumers would expect a company to disclose if its dark chocolate products contained detectable levels or a risk of Heavy Metals. | 86.7% |
| Consumers would expect a company to test for Heavy Metals in its dark chocolate products. | 86.8% |
| Consumers believe a company should disclose Heavy Metals testing results to consumers. | 93.3% |

CAC at ¶ 138. In other words, the vast majority of *actual* consumers believe the absence of any warning label would mean the Products do not contain or risk containing Heavy Metals. This is in addition to other allegations, such as: (i) consumers purchase dark chocolate products "due to its health benefits" (CAC at ¶ 127); (ii) Defendant consistently maintains its Products are "best quality products" that meet Defendant's "stringent quality and safety expectations" (CAC at ¶ 145); and (iii) the Products do not have to be manufactured with Heavy Metals above California's MADL (CAC ¶¶ at 124–126). Such alleged facts are sufficient to satisfy the reasonable consumer standard. *See*, *e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) ("[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."); *see also Watson v. Solid Gold Pet, LLC*, 2019 WL 3308766, at *5 (C.D. Cal. Feb. 22, 2019) (sustaining fraudulent omission claim where the plaintiff alleged "the presence of Heavy Metals … is a material fact for a reasonable consumer when purchasing the products, that she would not have purchased the products or paid a premium if she had known about the contaminants, and that she had no way of acquiring this information on her own"); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018) (sustaining omission claim where the plaintiffs allege the "Products' labels are misleading because they fail to disclose that they contain arsenic, lead, or BPA, all the while claiming that they are healthy, safe, pure, and/or natural").

Defendant urges the Court to ignore the consumer survey cited in the CAC, but the case cited, *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019), does not support that approach. The plaintiffs in *Becerra* could not expect a consumer survey "on its own" to "shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean." *Id*. at 1231. Considering the dictionary definition of diet, the *Becerra* court held that "no reasonable consumer would assume that Diet Dr. Pepper's use of the term 'diet'

promises weight loss or management." *Id.* at 1229. Unlike in *Becerra*, Plaintiffs here do not seek to use the consumer survey to alter consumers' understandings of Heavy Metals in dark chocolate, but rather to assess whether consumers believe Heavy Metals are present based on the Product labels at issue.

Defendant's reliance on *Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686 (N.D. Cal. 2020), and *Prescott v. Nestlé USA, Inc.*, 597 F. Supp. 3d 1377 (N.D. Cal. 2022), is similarly misplaced. In *Cheslow*, "plaintiffs commissioned a consumer survey that resulted in nearly 92 percent of respondents who viewed the front panel of [the defendant's 'white chips'] product indicating that they thought it contained white chocolate" when it did not. 472 F. Supp. 3d at 693. Unlike here, the court noted that, "the survey only showed respondents the front panel of the product," and therefore "deprived respondents of relevant information, namely the ingredient list" before dismissing the *Cheslow* plaintiffs' claims. *Id*. at 695. Similarly, *Prescott* tracks the facts and ruling in *Cheslow*. *Prescott*, 597 F. Supp. 3d at 1381–84. Both *Cheslow* and *Prescott*, however, are easily distinguished from this case.

Plaintiffs do not misconstrue or overlook the contents of the Product labels. Instead, they "allege[] pure omissions, so there is no 'meaning' that could be learned to remedy [the] alleged failure to disclose." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 688 (N.D. Cal. 2021). This is an omissions case where non-disclosure is the entire basis of Plaintiffs' claims. Plaintiffs' survey supports their allegations on the issue of reasonable understanding regarding heavy metal content in Defendant's products. Trader Joe's failed to provide to this Court any survey similar to those relied on in *Becerra*, *Prescott*, or *Cheslow* to assess "reasonable understanding." *See Becerra*, 945 F.3d at 1230; *Cheslow*, 472 F. Supp. 3d at 695; *Prescott*, 597 F. Supp. 3d at 1383–84.

Courts indeed recognize that it is appropriate for a party to rely on a consumer survey to support claims, as Plaintiffs do here. *See*, *e.g.*, *Watec Co. Ltd. v. Liu*, 2002

WL 34373489, at *2 (C.D. Cal. May 21, 2002) ("At the summary judgment stage, survey evidence, even if flawed, may be sufficient to raise a triable issue of fact and defeat summary judgment."); *see also Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001); *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1132–35 (C.D. Cal. 1998)). Like the court in *Becerra*, this Court "must accept the allegations surrounding the survey as true at this stage of the litigation." *Becerra*, 945 F.3d at 1231; *see also Cheslow*, 472 F. Supp. 3d at 694. Here, Plaintiffs also point to various sources, including Defendant's representations and a Consumer Reports article, to show their position is reasonable. (*See* CAC at ¶¶ 74, 84.) In short, Plaintiffs do not rely on the survey alone, but appropriately use it to bolster their claims.

Further, Defendant's argument that no reasonable consumer would be deceived by the omission regarding Heavy Metals in the Products due to general knowledge that heavy metals are ubiquitous in the food supply, in addition to raising a fact question, was rejected by another district court in California. *See Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) (ruling that allegedly "widely known" risk of overconsuming sugar did not render misrepresentation claims implausible). Another court rejected a similar argument in the context of a case concerning benzene contamination:

> [T]he defendants argue that the plaintiffs have failed to establish that their label was misleading, because no reasonable consumer would believe that Banana Boat sunscreens could never contain trace amounts of a substance not on the ingredients list. But this argument is overbroad. The question is whether any reasonable consumer could believe that Banana Boat sunscreens contain *benzene* when it is not on the ingredients list. Assuming the truth of the plaintiffs' claim that exposure to even low levels of benzene carries serious health risks, it is plausible that most consumers would not expect their sunscreen to contain such an ingredient without a warning label.

*Clinger v. Edgewell Pers. Care Brands, LLC*, 2023 WL 2477499, at *16 (D. Conn. Mar. 13, 2023) (internal footnote omitted). Plaintiffs allege that "[c]onsumers lack the scientific knowledge necessary to determine whether Defendant's Products do in fact contain Heavy Metals," and that they must reasonably rely on Defendant to test, confirm, and disclose their products' contents. CAC at ¶ 6.

Finally, Defendant claims that "no rule, regulation, or guideline requires warning labels for products that contain or may contain trace heavy metals." (Dkt. 34-1 at 19:13–14.) Defendant also claims that there is no violation under Proposition 65 or the Consent Judgment. *Id*. at 12. Defendant's arguments on these points miss the mark. The main issue of liability turns on whether reasonable consumers were misled based on information omitted from the packaging of Defendant's Products, not whether the information, or lack thereof, on the packaging violates any rules or regulations.

### B.   Defendant Had a Duty to Disclose the Presence of Heavy Metals in its Dark Chocolate Products

#### 1.   Defendant Had a Duty to Disclose Under Non-California Law

According to the Motion, "[t]here is no duty to disclose—and thus, no actionable omission—where, as here, the plaintiff fails to allege that the undisclosed information 'caused an unreasonable safety hazard,' … and also where the alleged omission does not affect the central functionality of the product." Dkt. 34-1 at 23:6–9 (internal citations omitted). This sets forth what constitutes a material fact under *California* law. But Plaintiffs also allege violations of the Washington, Illinois, and New York consumer protection statutes. *See* CAC at Counts VI-IX. Crucially, the requirements for what constitutes a "material fact" under the laws of these states are different, which Defendant's Motion largely fails to address. *See In re Natera Prenatal Testing Litig.*, 2023 WL 3370737, at *8 (N.D. Cal. Mar. 28, 2023)

(distinguishing requirements of California law from other states' consumer protection acts, including Illinois').[2]

For instance, New York law defines "material" as simply "one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 583 (S.D.N.Y. 2021) (quoting *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016)). In Washington, "the WCPA [Washington Consumer Protection Act] demands a 'broad duty of disclosure' and recognizes a general duty to disclose when facts are known by the seller and not easily discoverable by the consumer[.]" *Rieger v. Volkswagen Grp. of Am., Inc.*, 2023 WL 3271116, at *21 (D.N.J. May 4, 2023) (quoting *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1124 (N.D. Cal. 2015)).

As the CAC alleges, whether a dark chocolate product—a product understood by consumers to be associated with "health benefits" (CAC at ¶¶ 127–28)—contains Heavy Metals is important to reasonable consumers due to the serious health issues associated with Heavy Metals. *See*, *e.g.*, CAC at ¶¶ 74, 89–123, 127–28, 138. And, the presence of Heavy Metals was not reasonably discoverable by Plaintiffs, as argued below. *See* Argument § I.D, *infra*. Such allegations are sufficient to give rise to a duty to disclose under New York and Washington law. *See Browning v. Unilever United States, Inc.*, 2017 WL 7660643, at *2 (C.D. Cal. Apr. 26, 2017) (sustaining New York General Business Law ("GBL") claims where "[p]laintiffs allege that they relied on the *omission* that the Product isn't fit to be used as a facial scrub when they purchased it and that they wouldn't have purchased it if they had

---

[2] To the extent Defendant has failed to address the laws of these states in its Motion, it has waived those arguments on reply. *See*, *e.g.*, *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1166, n.8 (9th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are waived.") (quoting *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (per curiam)).

been aware of that omission"); *Guido v. L'Oreal, USA, Inc.*, 2013 WL 454861, at *8 (C.D. Cal. Feb. 6, 2013) (court found plaintiffs successfully pled claims under New York and California state consumer protection statutes when they "allege[d] that defendants failed to disclose the fact that the Serum was flammable, and this omission was material because, as explained above, if a reasonable consumer using the Serum knows it is flammable, she will be (sic) 'behave differently' if she has reason to believe that she might encounter a source of ignition."); *Rieger*, 2023 WL 3271116, at *21 (finding duty to disclose under WCPA where plaintiffs alleged that defendant "violated the WCPA by failing to disclose and actively concealing the piston defect, marketing class vehicles as safe and high quality, and representing itself as a reputable manufacturer[.]").

Trader Joe's contests its duty to disclose under Illinois law, arguing "[t]he standard under Illinois law" to state a claim for omission "is even higher" and, under Illinois law, "a plaintiff must allege 'direct statements that contain material omissions,' rather than mere 'opportunities or locations where [defendant] could have disclosed the alleged defect.'" Dkt. 34-1 at 13 n.7 (citing *Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *3–5 (C.D. Ill. Sept. 21, 2021)). But under Illinois law, "[f]or a claim based on an omission, plaintiffs are required only to allege an omission of a 'material fact' in the course of trade or commerce." *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 549 (Ill. Ct. App. 2006) (quoting *Pappas v. Pella Corp.*, 844 N.E.2d 995, 1001 (Ill. Ct. App. 2006)); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996) ("[I]t is unnecessary to plead a common law duty to disclose in order to state a valid [Illinois Consumer Fraud Act ("ICFA")] claim … based on an omission or concealment."); *In re Natera Prenatal Testing Litig.*, 2023 WL 3370737, at *8 (holding "Plaintiffs need not plead an independent duty to disclose for omission-based claims brought under the … [ICFA.]"). Indeed, courts applying Illinois law have specifically found that omission of heavy metals like lead from a product's ingredient list is actionable. *See Stella v. LVMH Perfumes*

*and Cosms. USA, Inc.*, 564 F. Supp. 2d 833, 836 (N.D. Ill. 2008) (plaintiff successfully stated ICFA claim where lipstick manufacturer "failed to include lead in its ingredient list for the lipstick"); *see also Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 729 (N.D. Ill. 2022) (denying motion to dismiss complaint alleging omissions under ICFA where "plaintiff has alleged she would not have purchased the sliced cheese had she known it was not smoked over hardwood, so she has adequately alleged that such an omission was material to her").

Moreover, the CAC identifies myriad ways in which Trader Joe's communicates to consumers about the alleged safety and purity of its products, and, based on those communications, reasonable consumers, by a vast majority, believed the Products would not contain Heavy Metals. *See* CAC ¶ 138; *see also id.* ¶ 4 ("Trader Joe's makes specific representations to consumers, including, 'We want to make absolutely clear that we would never sell any product we believe to be unsafe.'"); *id.* ¶¶ 10–15 (detailing representations made by Defendant in stores, marketing materials, and on the Trader Joe's website).

Given such representations, it is reasonable that consumers would assume that Heavy Metals were not present in the Products (or, at least, not in the amounts found), rendering Defendant's omission of these facts deceptive. These allegations are sufficient under ICFA. *See Zarinebaf v. Champion Petfoods USA Inc.*, 2022 WL 980832, at *10 (N.D. Ill. Mar. 31, 2022) ("Whether Champion improperly omitted the risk of the presence of heavy metals … is a question of fact"); *see also Kinman*, 604 F. Supp. 3d at 730 ("Whether plaintiff can prove [that the label claims were material to reasonable consumers] is a question for another day.").

### 2.  *Defendant Had A Duty Disclose Under California Law*

As to California law, although Defendant acknowledges it has an obligation to disclose a safety hazard, it is wrong that the "heavy metals in the products do[] not create an unreasonable safety hazard." Dkt. 34-1 at 24:9–10 (internal quotations omitted).) As an initial matter, whether the Heavy Metal content in the Products was

10

unsafe "is a hotly contested issue of fact" and is thus "inappropriate to resolve on a motion to dismiss because [it] go[es] to the merits of the plaintiffs' claims." *Gagetta v. Walmart, Inc.*, 2022 WL 17812924, at *5 (N.D. Cal. Dec. 19, 2022); *see also Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779, at *6 (C.D. Cal. Sept. 13, 2022) (rejecting defendant's "argument that the alleged levels of Heavy Metals fall within Proposition 65's safe harbor provision" because it was "premature" and noting that "[f]actual challenges are not typically adjudicated at this stage of litigation"); *Henning v. Luxury Brand Partners, LLC*, 2023 WL 3555998, at *3 (N.D. Cal. May 11, 2023) (finding the "actual amount of benzene that leads to harm is a factual matter that is inappropriate for resolution at this stage" and "[a]s such, plaintiff's allegations are sufficient to infer that the products contain a level of benzene and that the level of benzene present is harmful."); *Clinger*, 2023 WL 2477499, at *5 (whether "there is no safety risk posed by less than 2 ppm of benzene in sunscreen products" is a "fact-based conclusion"); *Castillo v. Unilever United States, Inc.*, 2022 WL 704809, at *3 (N.D. Ill. Mar. 9, 2022) ("Pressing the contrary result, Unilever insists that DMDM hydantoin is safe.  Maybe so, but at the pleading stage, the Court must accept Plaintiffs' allegations that DMDM hydantoin, and thus the TRESemmé products containing that ingredient, are unsafe."). Thus, to the extent Defendant's duty to disclose rests on whether the Heavy Metal content in the Products was unsafe, that issue is not ripe for determination at this stage.

Regardless, Plaintiffs allege arsenic, cadmium, and lead cause a variety of serious health problems including "liver and kidney necrosis" (CAC ¶ 114), cardiovascular disease (*id.* ¶¶ 107, 115, 120), diabetes (*id.* ¶ 107), and cancer (*id.* ¶¶ 108, 112, 115, 122). Moreover, these "Heavy Metals bioaccumulate in the body, meaning the body cannot excrete the toxins as quickly as they are absorbed and the risk they pose increases over time and can remain in one's body for years." *Id.* ¶ 104. Because of this, "long-term exposure to even small amounts of heavy metals can lead to a variety of health problems." *Id.* ¶ 103 (internal quotations omitted). In fact,

"'[n]o amount of lead is known to be safe,' and its harmful effects cannot be reversed or remediated." *Id.* ¶ 119 (quoting *Lead Levels Below EPA Limits Can Still Impact Your Health*, NPR, (Aug. 13, 2016)); *see also id.* ¶ 123 ("Even very low exposure levels to lead can cause lower academic achievement, attention deficits, and behavior problems. No safe level of exposure has been identified.") (quotation omitted).) "Cadmium, like lead, 'displays a troubling ability to cause harm at low levels of exposure.'" *Id.* at ¶ 117 (internal quotations omitted); *see also id.* ¶ 113 ("[E]ven low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and bone loss.").

These allegations, accepted as true, plausibly establish a safety risk such that Defendant had a duty to disclose. *See Bland v. Sequel Nat. Ltd.*, 2019 WL 4674337, at *5 (N.D. Cal. Aug. 2, 2019) (denying defendant's motion for judgment on the pleadings under the Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act, and finding plaintiff "pled sufficient facts to support a plausible inference that Defendant's products pose a significant health risk to consumers" where "a single serving [of the products] exceeds the reproductive toxicity limit for lead set by Proposition 65, and one to three servings exceed the limit for cadmium."); *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 849 (9th Cir. 2019) (finding "an increased risk of death" associated with consuming a dietary supplement as recommended would be "a material fact 'with respect to consequences which may result from use of the article'" such that "the FDCA would deem it misleading not to reveal that fact on the label.") (quoting 21 C.F.R. § 1.21(a)(2)); *Henning*, 2023 WL 3555998, at *3 ("Plaintiff's allegations are sufficient to infer that the Products contain a level of benzene and that the level of benzene present is harmful.").

Trader Joe's asserts that "regulatory authorities have set non-zero thresholds for lead, cadmium, and arsenic in food products, demonstrating that the mere presence of these heavy metals does not render food unsafe to consume." Dkt. 34-1 at 24:16–18. This argument simply disputes Plaintiffs' allegations that there is "[n]o

safe level of exposure" to lead (CAC ¶ 123), and that "even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and bone loss" (*id.* ¶ 113). As noted above, these arguments raise a question of fact that cannot be resolved at this stage. *See Bland*, 2019 WL 4674337, at *4 ("The question whether Defendant's products actually pose a risk to health is ultimately a question of fact that cannot be decided at this stage."); *see also Gagetta*, 2022 WL 17812924, at *5; *Barnes*, 2022 WL 4283779, at *6.

As Trader Joe's concedes (*see* Dkt. 34-1 at 25:17-26:13), the *As You Sow* Consent Judgment stipulated to agreed-upon levels of lead and cadmium that were linked *only* with reproductive harm and, potentially, some forms of cancer. Notably, the only remedy for an ongoing violation of the Consent Judgment is for a neutered warning that lead and cadmium "are known to the State of California to cause birth defects or other reproductive harm," and only at the manufacturer's option would the warning language even include reference to cancer (although it is unclear why a manufacturer would ever voluntarily include it, rendering it illusory). (*See* Dkt. 34-5 (Req. for Judicial Notice Ex. B, Consent Judgment) at 23.) A far cry from demonstrating that "Plaintiffs' own test results show that Trader Joe's products are safe," (Dkt. 34-1 at 26:14), neither Proposition 65 nor the Consent Judgment contemplate the myriad health risks beyond birth defects that result from consuming unsafe levels of lead, cadmium, and arsenic. *See* CAC ¶¶ 89, 101–123.

While Defendant claims that "trace heavy metals in the products [are] not 'related to the chocolate's function as chocolate'" (Dkt. 34-1 at 23:13–19), it conveniently ignores Plaintiffs' allegations that the levels of Heavy Metals in the Products exceed the MADL and that chocolate with appreciable amount levels of Heavy Metals are not suitable for consumption (at least for the reasonable consumer). Accordingly, the Products in this case no longer serve their "central functionality" as food.

**C.      Economic Injury Is Easily Satisfied Here**

Plaintiffs easily show economic injury under the price premium theory. Contrary to Defendant's arguments, Plaintiffs specifically allege that various dark chocolate manufacturers "are able to produce dark chocolate products with levels of lead and cadmium below California's MADL." (CAC ¶ 124; *see also id.* ¶¶ 125–126; *compare* Dkt. 134-1 at 27:10–11.) Defendant's authorities are distinguishable for this reason alone. *See* Dkt. 34-1 at 27:13-20 (citing *Estrada v. Johnson & Johnson*, 2015 WL 1440466 (E.D. Cal. Mar. 27, 2015); *Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012)). *Boysen* and *Estrada* are further distinguishable because "[P]laintiffs' claims in this matter are not solely based on the theory that defendants' Products are unsafe due to the presence of [Heavy Metals], but also that those products omit on their labeling their presence altogether." *Zeiger*, 304 F. Supp. 3d at 846–47 (distinguishing *Boysen*); *Estrada*, 2015 WL 1440466, at *4 ("Plaintiff received the benefit-of-the-bargain because she received the exact product she intended to purchase, *unlike the cases she cites where the consumers received products that were mislabeled or defective*.") (emphasis added). In addition, unlike here, the levels of heavy metals in the products in *Boysen* were "all below the FDA's guidance levels." 2012 WL 2953069, at *5.

Regardless, allegations concerning *other* products are not required under governing law here. *See Henning* 2023 WL 3555998, at *3 ("Plaintiff plausibly alleged the risk of benzene and that she would not have purchased the Products had she known about the risk. This is sufficient to plead standing based on economic injury."); *Gagetta*, 2022 WL 17812924, at * 4 ("[T]he plaintiffs' allegations that the risk existed and that they would not have purchased the products had they known the risk are plausible. The plaintiffs successfully pleaded economic injury for standing."). Plaintiffs allege they bargained for "high quality dark chocolate products" but instead received Products contaminated with—or at risk of being contaminated with—dangerous levels of Heavy Metals. (CAC ¶¶ 27–65, 130, 138.);

*see also Loeb v. Champion Petfoods USA Inc.*, 2018 WL 2745254, at *5 (E.D. Wis. June 7, 2018) (standing alleged where "Plaintiff complains about paying too much for what she maintains was a low-quality product."). And here, Plaintiffs reasonably believed, based on Defendant's omissions, that they would not be receiving Products contaminated with Heavy Metals (or the risk thereof). It is common sense that a dark chocolate bar contaminated with dangerous levels of Heavy Metals (or the risk thereof) is worth less than one without Heavy Metals. *See Clinger*, 2023 WL 2477499, at *15 ("The plaintiffs' claim is that the presence of benzene in sunscreen undermines its protective function by exposing them to carcinogenic benzene. In other words, the sunscreen was defective in some way and therefore worth less than the price the plaintiffs paid for it."); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 692 (E.D. Mich. 2020) ("Because defective trucks are just not worth as much as defect-free trucks, Plaintiffs have adequately alleged an economic injury sufficient to establish standing under Article III[.]"). Accordingly, Plaintiffs sufficiently allege economic injury because they received Products worth less than what they bargained for and would not have purchased the Products had Defendant properly disclosed the presence of Heavy Metals (or risk thereof).

Defendant's arguments as to whether Plaintiffs should recover a full refund or partial refund based on a price premium theory "addresses a question of damages, not one of standing" and are, therefore, premature. *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 530–31 (N.D. Cal. 2018); *compare with* Dkt. 34-1 at 27–28:19. Here, Plaintiffs establish "economic injury by asserting that they would not have purchased Defendant's Products or would have paid less for them had they known the truth about the Products."[3] *Hamman v. Cava Grp., Inc.*, 2023 WL

---

[3] *In re Fruit Juice Prods. Mktg. and Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 513 (D. Mass. 2011), is inapposite because the plaintiffs there "failed to allege that the fruit juice products had any diminished value because of the presence of lead or that they would have purchased different or cheaper fruit juice products had they known about the lead." Regardless, Defendant cites *In re Fruit Juice* for the proposition that

3450654, at *5 (S.D. Cal. Feb. 8, 2023); *see also*, *e.g.*, CAC ¶ 29; *Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) (summary order) (finding standing where the plaintiff "suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury—paying a premium—as a result"); *In re Aqua Data Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing.").

Finally, Plaintiffs allege a cognizable benefit of the bargain theory. Unlike *McGee v. S-L Snacks Nat'l,* 982 F.3d 700, 705-6 (9th Cir. 2020), where the presence of trans fat was disclosed, Plaintiffs' case centers on Defendant's failure to disclose any presence of Heavy Metals. *See*, *e.g.*, CAC ¶¶ 82–88. Furthermore, Defendant makes affirmative representations that safety is important and that it would "never sell any product [it] believe[s] to be unsafe." *Id.* at ¶ 13.

### D. Plaintiffs Plausibly Allege They Did Not Know The Dark Chocolate Products Contained or Risked Containing Heavy Metals

According to Trader Joe's, it had no obligation to warn consumers about the presence of Heavy Metals in the Products because of a 2015 lawsuit and resulting 2018 Consent Judgment. *See* Dkt. 34-1 at 29:8–10 ("Plaintiffs cannot allege that Trader Joe's had exclusive knowledge of the possible presence of heavy metals in dark chocolate or that this information was not reasonably available to the public.").

---

Plaintiffs received the benefit of their bargain because they do not allege any physical injuries. *Id.* at 512 ("The fact is that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm."); (*see also* Dkt. 34-1 at 28:3–5.) The First Circuit has since overruled this proposition of law. *In re Evenflo Co., Inc., Mktg., Sales Pracs. and Prods. Liab. Litig.*, 54 F.4th 28, 35 (1st Cir. 2022) ("We first address Evenflo's more sweeping argument: that 'where a plaintiff is not actually injured by an allegedly unsafe product, she does not have standing to pursue a claim for damages.' We disagree. This court has repeatedly recognized overpayment as a cognizable form of Article III injury.").

In other words, because there was litigation against Trader Joe's relating to the same or similar issues, Defendant's position is that this information was readily available to the public. *Id.* Defendant is wrong.[4]

An omission is "actionable where it is shown that 'a consumer could not reasonably obtain' the omitted information." *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022) (finding that complaints "on a handful of websites" were insufficient to show "that consumers were entirely capable of discovering the information on their own."). Here, the allegations in the CAC are sufficient to establish that the information was not readily accessible to the Plaintiffs. *See* CAC at ¶ 17 ("It was only through testing conducted by Consumer Reports that the general public became aware of the Heavy Metal content in Defendant's Products."). It is unreasonable to expect consumers to cross-reference the litigation history for every product they purchase to see if the manufacturer has been accused of producing an unsafe product in the past. *See*, *e.g.*, *DeCoursey v. Murad, LLC*, 2023 WL 3478459, at *15-16 (N.D.N.Y. May 16, 2023) (denying defendant's motion to dismiss the GBL § 349 claim to the extent it is based on a failure to warn or omission finding it is a question of fact whether a reasonable consumer could be expected to cross-reference a product's ingredient list with relevant FDA regulations, despite the regulations being publicly available).

The cases Defendant cites do not support the idea that Plaintiffs could reasonably obtain information regarding the presence (or risk) of Heavy Metals in the Products. *See Steele v. Extendicare Health Servs. Inc.*, 607 F. Supp. 2d 1226, 1234 (W.D. Wash. 2009) (information at issue was considered a "publicly available resource of a United States government website"); *Womack v. EVOL Nutrition Assocs.*, 2021 WL 5906340, *10 (N.D.N.Y. Dec. 14, 2021) (finding the complaint

---

[4] Defendant only makes this argument as to Plaintiffs' New York and Washington claims. (*See* Dkt. 34-1 at 28:16.)

failed to allege the defendant itself possessed knowledge the product at issue was causing health problems to consumers or an ingredient in the product was dangerous and addictive in nature). Defendant's reliance on *Paradowski v. Champion Petfoods USA, Inc.*, 2023 WL 3829559, at *3 (2d Cir. June 6, 2023), is similarly misplaced because that case was decided at the summary judgment stage based on a factual record. *Id.*, at *3 ("[T]he factual record establishes that a reasonable consumer could have discovered that Champion's pet foods had a material risk of containing some measurable amount of heavy metals."). Here, the question of whether a consumer could reasonably obtain information about the Products containing (or having a material risk of containing) Heavy Metals is a question of fact that cannot be resolved at the motion to dismiss stage. *See Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 97 (S.D.N.Y. 2021) ("as in most cases, the question of whether Defendant's labeling would prove misleading to the reasonable consumer is a question of fact that cannot be resolved on a motion to dismiss.").

Regardless, Plaintiffs are not required to allege Defendant had *exclusive* knowledge of the Heavy Metal contamination. Instead, *superior* knowledge is sufficient under both New York and Washington law. *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 124 (E.D.N.Y. 2011) (duty to disclose arises "where one party possesses superior knowledge, not readily available to the other, and know[s] that the other is acting on the basis of mistaken knowledge") (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *Rydman v. Champion Petfoods USA, Inc.*, 2020 WL 4347512, at *2 (W.D. Wash. July 29, 2020) ("[A] duty to disclose arises 'where one party is relying upon the superior specialized knowledge and experience of the other [or] where a seller has knowledge of a material fact not easily discoverable by the buyer.'") (quoting *Favors v. Matzke*, 770 P.2d 686, 690 (Wash. Ct. App. 1989)).

Trader Joe's unquestionably had superior knowledge here because it was involved in "sourcing of ingredients, manufacturing of products, and conducting of

all relevant quality assurance protocols, including testing of both the ingredients and finished products." CAC ¶ 68. Moreover, Trader Joe's was required as part of a prior consent judgment to be testing its products for Heavy Metals. *Id*. ¶ 162. Where testing would have revealed the defect, Plaintiffs' allegations that a failure to disclose that defect is sufficient. *See Cuevas v. United Brands Co., Inc.*, 2012 WL 760403, at *6 (S.D. Cal. Mar. 8, 2012) ("The FAC suggests that Defendant had superior knowledge regarding the risks of consuming caffeine and alcohol simultaneously and therefore had a duty to disclose those material facts to unsuspecting consumers."); *Almeida v. Apple, Inc.*, 2023 WL 3149252, at *3 (N.D. Cal. Mar. 1, 2023) (superior knowledge alleged where "Apple's pre-release testing … would have revealed the alleged defect.").

## II.     PRIMARY JURISDICTION SHOULD NOT BE INVOKED HERE

Primary jurisdiction should not be invoked here based on the FDA's "Closer to Zero" Initiative (the "Initiative"). *See* Dkt. 34-1 at 32. Trader Joe's largely ignores that the Initiative prioritized reducing childhood exposure in baby foods, implying (erroneously) that the FDA is already looking at dark chocolate. Even if the Initiative considered chocolate (which it does not), there is nothing in this Initiative that addresses product packaging. As the Ninth Circuit has held *multiple times*:

> Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. Rather, the doctrine is reserved for a "limited set of circumstances" that "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency."

*Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)); *see also Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1291 (9th Cir. 2021) (finding the primary jurisdiction doctrine inapplicable in product label case); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019) (in rejecting the application of primary jurisdiction: "[t]he purpose of the doctrine is not to 'secure expert advice' from an

agency 'every time a court is presented with an issue conceivably within the agency's ambit.'") (quoting *Brown v. MCI WorldCom Network Servs., Inc*., 277 F.3d 1166, 1172 (9th Cir. 2002)).

Setting aside that the FDA is not considering chocolate, liability here does not turn on food regulations, as Plaintiffs' claims relate only to whether reasonable consumers were misled based on omitted packaging information. Primary jurisdiction requires consideration of: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Robles*, 913 F.3d at 910 (quoting *Davel Commc'n Inc. v. Qwest Corp*., 460 F.3d 1075, 1086-87 (9th Cir. 2006)). "The 'deciding factor' in determining whether the primary jurisdiction doctrine should apply is 'efficiency.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) (quoting *Rhoades v. Avon Prods., Inc*., 504 F.3d 1151, 1165 (9th Cir. 2007)).

Trader Joe's argues that the Court should "either dismiss or stay these proceedings in deference to the FDA's primary jurisdiction over food labeling and safety." Dkt. 34-1 at 29:18–20. But Trader Joe's fails to satisfy its burden of meeting the stringent factors for finding primary jurisdiction, instead relying heavily on a few cases involving baby food, which, unlike dark chocolate, is the direct subject of the Initiative. Dkt. 34-1 at 30:6–9. That the FDA has responsibilities relating to food labeling and safety does not end the inquiry. It merely responds to one of the four primary jurisdiction factors. Moreover, the Initiative sets forth neither labeling requirements nor labeling prohibitions, and it does not address what constitutes known *safe levels* of heavy metals in baby food (and does not address chocolate at all).[5]

---

[5] Defendant's cited out-of-jurisdiction district and state court cases are not binding on this Court. *See* Dkt. 34-1 at 30:6–10.

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Faced with similar arguments in a case involving baby food, a judge in the United States District Court for the Northern District of California rejected the application of the primary jurisdiction doctrine twice. In *In re Plum Baby Food Litigation*, 2022 WL 16640802, at *1 (N.D. Cal. Jan. 12, 2022), the court denied a motion to dismiss on primary jurisdiction grounds, holding: "[t]he Court need not rely on the FDA's expertise or its potential guidance on action levels to determine whether Plum's alleged omissions are actionable given the allegations of the operative complaint." *Id.*, at *1. Plum later sought reconsideration after some of the decisions cited by Trader Joe's were issued,[6] and the court again rejected invoking primary jurisdiction. *See generally In re Plum Baby Food Litig.*, 2023 WL 3493319 (N.D. Cal. May 3, 2023). The court reiterated that the FDA's draft guidance is "not binding," is "not intended to set the lowest levels for the industry to achieve," and most significantly, does not address the *labeling*." *Id.*, at *1 (emphasis added) (citation omitted).

15
16
17
18
19
20
21
22
23

In *In re Recalled Abbott Infant Formula Products Liability Litigation*, 2023 WL 3585759, at *6–7 (N.D. Ill. May 22, 2023), a judge in the United States District Court for the Northern District of Illinois also recently considered and rejected invoking primary jurisdiction in a case alleging the lack of disclosures of heavy metals in infant formula. There, the defendant also asserted that the FDA's Closer to Zero Initiative and draft guidance served as a basis for primary jurisdiction. The court declined to apply primary jurisdiction noting that the "draft guidance does not apply to infant formula," "will not establish any rights for any person and is not

24
25
26
27
28

[6] To the extent Trader Joe's relies on the Second Circuit's *summary order* in *Paradowski*, 2023 WL 3829559, such reliance is improper. The *Paradowski* summary order does not have precedential effect in its own circuit, nor is it binding here. *See* 2d Cir. R. 32.1.1(a) ("Rulings by summary order do not have precedential effect."). In addition, the statement in the opinion that Congress or the FDA, and not the courts, should determine what information to disclose on consumer packaging is improper *dicta*, as primary jurisdiction was not at issue.

PLAINTIFFS' OPPOSITION TO MTD                    CASE NO. 3:23-CV-00061-RBM-KSC

binding," and "does not address product labeling." *Id.*, at *7 (internal quotations and citations omitted); *see also id.* (stating "that any guidance from the FDA would be neither binding nor retroactive"). The *Abbott* court held that (1) the requested monetary damages would not be provided by the FDA; (2) the case involves state laws, not federal law; and (3) there was no timeline concerning infant formula and invoking primary jurisdiction would cause delay and added expense. *See id.*, at *7-8.

Contrary to Defendant's argument, this case does not involve "complicated" or "multifaceted" issues requiring "scientific, technical, and policy expertise." Dkt. 34-1 at 32:8. It solely concerns misleading packaging and whether reasonable consumers were misled under state laws. In this Circuit, courts repeatedly find that they are competent to weigh these questions, even if they arise in the context of parallel or potential regulatory activity arguably within the purview of the FDA's statutory mandate. *See, e.g.*, *Reid*, 780 F.3d at 967 (declining primary jurisdiction where "this case ultimately turns on … whether a reasonable consumer would be misled by McNeil's marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *10 (N.D. Cal. May 15, 2013) ("[T]he FDA's expertise … is not necessary to determine whether the labels are misleading [and t]he reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.") (quoting *Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393, at *7 (N.D. Cal. Dec. 17, 2012)); *Capaci v. Sports Rsch. Corp.*, 445 F. Supp. 3d 607, 623 (C.D. Cal. 2020) (declining to invoke primary jurisdiction because "plaintiffs' claims concern defendant's allegedly misleading labeling with promises of 'weight management' and 'appetite control,' a determination this court is equipped to make"); *Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d. 1083, 1095-96 (S.D. Cal. 2021) (Whether labels are misleading is "'not a technical area in which the FDA [has] greater technical expertise than the courts.'") (internal citation omitted) (quoting *Jovel v. Boiron Inc.*, 2013 WL 12164622, at *12 (C.D. Cal. Aug.

16, 2013)). Instead, "false advertising suits [] are squarely within the conventional experiences of judges and courts." *Prescott v. Bayer Healthcare LLC*, 2020 WL 4430958, at *4 (N.D. Cal. July 31, 2020).

Trader Joe's incorrectly contends that allowing courts to act before the FDA completes its work on the Action Plan will disrupt the regulatory process and destroy national uniformity. Dkt. 34-1 at 31:18–32:5. Courts routinely rule on deceptive packaging claims like those alleged here, even while the FDA is considering future action, and these rulings do not interfere with that process. *See Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1191 (S.D. Cal. 2015) ("The determination of labeling violations based in law is not within the discretion of the FDA, nor does the resolution of such claims require FDA expertise or undercut uniformity in regulation."). Regardless, that argument is irrelevant because this case is *not* about any potential FDA regulations on packaging that would govern the state law consumer protection claims alleged here, and there is no such regulation proposed about chocolate.

Even if the claims at issue here were implicated by actions the FDA is planning or considering (which they are not), the FDA has set forth only a generalized and long period of review for the baby foods. In fact, the Initiative merely "projects that it will finalize that plan by 2025,"[7] so the "uncertainty over how and when the FDA will act counsels against an indefinite stay." *In re Plum Baby Food Litig.*, 2022 WL 16640802, at *1 (citation omitted); *see also Fisher v. Monster Beverage Corp.*, 125 F. Supp. 3d 1007, 1031 (C.D. Cal. 2013) (primary jurisdiction in food cases is highly disfavored where FDA does not appear imminently about to resolve a key question to the litigation). In considering an

---

[7] *Closer to Zero Action Plan: Impacts of Toxic Element Exposure and Nutrition at Different Crucial Developmental Stages for Babies and Young Children*, Public Meeting Docket No. FDA-2021-N-0966 (Nov. 18, 2021), https://www.fda.gov/media/155396/download (last visited on July 11, 2023).

efficient course of action, courts must appraise whether the application of the primary jurisdiction doctrine would needlessly delay resolution. *Reid*, 780 F.3d at 966-67. Primary jurisdiction should not be invoked where awaiting related uncertain agency action would result in undue delays. *See Abrantes v. Northland Grp., Inc.*, 2015 WL 1738255, at *2 (N.D. Cal. Apr. 13, 2015); *Prescott*, 2020 WL 4430958, at *3; *In re Juul Labs*, 497 F. Supp. 3d 552, 581–82 (N.D. Cal. 2020). For instance, in *Henning*, the court found the primary jurisdiction doctrine applied but still declined to stay or dismiss the action. *Henning*, 2023 WL 3555998, at *9. The court found that "although the FDA has expressed that it is evaluating the … Citizen Petition, there is no indication that the FDA will engage in rulemaking or issue a guidance on this issue in a timely manner." *Id*. Accordingly, the court found "it would be inappropriate to delay the resolution of Plaintiff's claims for an indefinite period." *Id*. So too, here. The unspecified time frame for FDA final action (which only relates to baby foods), juxtaposed with the fact that the FDA's plan has nothing to do with product labeling, militates against dismissal or staying the action.

## III. PLAINTIFFS SUFFICIENTLY ALLEGE BREACH OF IMPLIED WARRANTY

Trader Joe's argues that Plaintiffs' claim for breach of the implied warranty of merchantability fails because they "fail to plead facts demonstrating … the products were not fit for human consumption." Dkt. 34-1 at 32:25–33:1. Trader Joe's is wrong.

*First*, Plaintiffs do not have to "demonstrate" the safety risks posed by the Heavy Metal contamination in the Products at this stage of the litigation. *See*, *e.g.*, *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 883 (C.D. Cal. 2013) ("The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party."). Plaintiffs must only plausibly allege that the Products' safety hazards render them unfit for their ordinary use.

*Second*, Plaintiffs state a valid claim for breach of the implied warranty of merchantability because they allege "the product[s] lack[] even the most basic degree of fitness *for ordinary use*." *Pershing Pac. W., LLC v. Ferretti Grp., USA, Inc.*, 2013 WL 275676, at *7 (S.D. Cal. Jan. 24, 2013) (emphasis added) (internal quotations and citations omitted). Whether a product is fit for its ordinary purpose "is shown if the product is in safe condition and substantially free from defects." *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 912 (E.D. Cal. 2018) (cleaned up). "[A] defective product that causes a safety hazard will generally render that product unfit for its ordinary purpose." *Id.* at 913 (internal footnote omitted).

Here, Plaintiffs allege the Products are not fit for ordinary use because they contain levels of Heavy Metals in excess of the MADL. *See* CAC ¶¶ 131–133, 223. The ordinary use for chocolate bars is human consumption, and Plaintiffs allege that the contamination of these Products by Heavy Metals poses a safety hazard to the consuming public. *Id.* ¶¶ 89–92, 101–123. Specifically, Plaintiffs allege:

> Reasonable consumers expect the dark chocolate products they purchase for their individual and family consumption will not be contaminated (or have a material risk of being contaminated) with Heavy Metals, substances that are known to accumulate in the body and pose significant and dangerous health consequences.

*Id.* ¶ 5. Plaintiffs further allege "[e]ven modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions." *Id.* ¶ 89. "Cadmium, like lead, 'displays a troubling ability to cause harm at low levels of exposure.'" *Id.* ¶ 117 (internal citations omitted). And, Trader Joe's "knew or should have known that Heavy Metals pose health risks to consumers." *Id.* ¶ 97. Plaintiffs very plainly allege that the Heavy Metals in the Products pose a safety hazard such that the Products are unfit for their ordinary purpose. In addition, Plaintiffs allege the "industry standard" is not to have excessive levels of Heavy Metals in dark chocolate products, because various dark chocolate manufacturers produce products that do not have such levels of Heavy Metals. *Id.*

¶¶ 124–126. Thus, Plaintiffs state a valid claim for breach of the implied warranty of merchantability.

While Trader Joe's cites to *Viggiano*, it is distinguishable. In *Viggiano*, the plaintiff claimed that the defendant breached the implied warranty of merchantability because its beverage products labeled as containing "all natural flavors" contained two synthetic ingredients. *Viggiano*, 944 F. Supp. 2d at 881–82. However, the plaintiff did not allege that defendant's drinks lacked fitness for their ordinary use. *Id*. at 896. The plaintiff did not "allege[] that the beverage was not drinkable, that *it was contaminated* or contained foreign objects, etc." *Id.* (emphasis added). Contamination by Heavy Metals is exactly what is alleged, here, and Plaintiffs have alleged that the contamination renders the Products unsafe and unfit for their ordinary use.

Trader Joe's also cites to *Ferry v. Mead Johnson & Co., LLC*, 514 F. Supp. 3d 418, 452 (D. Conn. 2021), to argue Plaintiffs' claim fails to allege the Products are a "market outlier." Dkt. 34-1 at 33:24. *Ferry* recites and concerns Connecticut law on the warranty of merchantability and does not hold that a plaintiff must allege that the subject product is a "market outlier" to state a claim for breach of the implied warranty of merchantability. Rather, *Ferry* notes that a product "will *normally* be merchantable" if it "conforms to the quality of other brands on the market" while listing a number of reasons the plaintiff's claim failed. *Id.* at 452 (internal citations omitted). Regardless, the *Consumer Reports* article referenced extensively in the CAC and which Trader Joe's seeks to have incorporated by reference into the CAC, (*see* Dkt. 34-13 (Request for Judicial Notice, Ex. J)), provides "Safer Choices" of chocolates on the market that do not contain the high levels of Heavy Metals found in the Products, supporting the inference that the Products are a "market outlier" due to their Heavy Metal contaminants. *See also* CAC ¶¶ 124–126 (noting that dark chocolate does not need to be produced with dangerous levels of Heavy Metals).

1    Finally, Trader Joe's contends "the implied-warranty … claim[] also should be
2    dismissed for the simple, independent reason that Plaintiffs fail to allege which state
3    law governs [the] … claim." Dkt. 34-1 at 35:12–14 (internal quotations omitted).
4    Count IV for breach of implied warranty is brought on behalf of the Class and, in the
5    alternative, the State Subclasses. The CAC makes clear that California law would
6    apply to the Class, which would include Count IV. *See* CAC ¶¶ 156–157.    In
7    addition, Plaintiffs allege that Trader Joe's is located in California, conducts its
8    business in California, contracts to supply goods in California, and the acts giving
9    rise to this action occurred in California. *Id.* ¶¶ 25–26. *See Mazza v. Am. Honda*
10   *Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012) ("California has a constitutionally
11   sufficient aggregation of contacts to the claims of each putative class member in this
12   case because Honda's corporate headquarters, the advertising agency that produced
13   the allegedly fraudulent misrepresentations, and one fifth of the proposed class
14   members are located in California.").

15       While Plaintiffs submit that this choice-of-law analysis is premature before the
16   class certification stage, should the Court find that a more direct statement that
17   California law applies to these claims and should be included in the CAC, such a
18   change is easily cured by amendment. *See e.g.*, *Romero v. Flowers Bakeries, LLC*,
19   2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016) (granting leave to amend when
20   dismissing common law claims for failure to state choice of law).

21   **IV.    UNJUST ENRICHMENT IS PROPERLY PLED**

22       Defendant attacks the legal sufficiency of Plaintiffs' unjust enrichment claim
23   but all of Defendant's arguments fail for similar reasons as those stated above.

24       *First*, as with the implied warranty claim, Trader Joe's argues Plaintiffs'
25   unjust enrichment claim fails because Plaintiffs did not identify which state's law the
26   Court should apply. Dkt. 34-1 at 35:12–14. This argument should be rejected for the
27   same reasons set forth above. *See* Argument § III, *supra*.

28

*Second*, Defendant contends Plaintiffs' unjust enrichment claim must fail because it is duplicative of their other claims. Dkt. 34-1 at 34:9–16. Notwithstanding that Plaintiffs' other claims are sufficiently alleged, "[u]nder California law, a cause of action for unjust enrichment may be pled as an independent claim—no underlying contract claim is required." *Soo v. Lorex Corp.*, 2020 WL 5408117, at *8 (N.D. Cal. Sept. 9, 2020); *see also Gasser v. Kiss My Face, LLC*, 2017 WL 4773426, at *9 (N.D. Cal. Oct. 23, 2017) ("The Ninth Circuit recently held in an unpublished but citable decision that under California law unjust enrichment may be pled as an 'independent claim'[.]") (quoting *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017)). "Ninth Circuit law establishes that the duplicative nature of an unjust enrichment/quasi-contract claim is not a valid reason to dismiss it." *In re Natera Prenatal Testing Litig.*, 2023 WL 3370737, at *10, n.12 (quoting *Samet v. Procter & Gamble Co.*, 2015 WL 5012828, at *1 (N.D. Cal. Aug. 24, 2015)).

*Finally*, Defendant argues "state-by-state variance in unjust-enrichment law precludes Plaintiffs from bringing a certifiable nationwide unjust-enrichment claim." Dkt. 34-1 at 34:17–18. That argument is premature, as addressed below. *See* Argument § V, *infra*.

## V.   PLAINTIFFS HAVE STANDING TO BRING NATIONWIDE CLASS CLAIMS

Defendant argues Plaintiffs lack standing to bring nationwide claims under any state's laws except their own. *See* Dkt. 34-1 at 35:27–28. Defendant's argument is contrary to *Melendres v. Arpaio*, 784 F. 3d 1254 (9th Cir. 2015), in which the Ninth Circuit explained that there are two rubrics for determining whether a plaintiff may pursue claims on behalf of unnamed class members: the "standing approach" and the "class certification approach."

> The "standing approach" treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the "standing" of the named plaintiff to represent the class.  In other words, if there is a disjuncture between the injuries suffered by named and unnamed plaintiffs, courts applying the standing approach would say the

> disjuncture deprived the named plaintiff of standing to obtain relief for the unnamed class members … The "class certification approach," on the other hand, "holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."

*Melendres*, 784 F. 3d at 1261–62 (internal citations omitted). The Ninth Circuit "adopt[ed] the class certification approach and warned against "conflat[ing] standing and class certification." *Id.* at 1261-62. As a result, "[r]epresentative parties who have a direct and substantial interest have standing," and "the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Id.* at 1262. Further, "[a]lthough *Melendres* 'involved a dissimilarity in injuries suffered,' while this case involves named plaintiffs bringing legal claims pursuant to state laws for states they do not reside in, 'the distinction is not material for purposes of taking the class certification approach.'" *Ablaza v. Sanofi-Aventis U.S. LLC*, 2022 WL 19517298, at *2 (N.D. Cal. July 12, 2022) (citing *Melendres*, 784 F.3d at 1261–62).

Following *Melendres*, California courts have consistently rejected arguments to dismiss nationwide class allegations at the pleading stage based on standing arguments. *See, e.g.*, *In re Natera Prenatal Testing Litig.*, 2023 WL 3370737, at *11 ("The Court will not dismiss the complaint for failure to establish nationwide class standing."); *Hrapoff v. Hisamitsu Am., Inc.*, 2022 WL 2168076, at *2 (N.D. Cal. June 16, 2022) (same); *Ashton v. J.M. Smucker Co.*, 2020 WL 8575140, at *7-8 (C.D. Cal. Dec. 16, 2020) (same); *Staley v. Gilead Sciences, Inc.*, 446 F. Supp. 3d 578, 621 (N.D. Cal. 2020) (same); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *2–3 (N.D. Cal. Nov. 9, 2018) (same); *Pecanha v. Hain Celestial Grp.*, 2018 WL 534299, at *8-9 (N.D. Cal. Jan. 24, 2018) (same); *In re Hydroxycut Mktg. and Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011) ("'The relevant

29

question … is not whether the Named Plaintiffs have standing to sue Defendants-they most certainly do-but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action. This question is … appropriately answered through the class certification process.") (internal citations omitted).

In short, there is no question that Plaintiffs have standing to bring claims against Defendant under the laws of their home states. Class certification will address whether Plaintiffs' injuries are sufficiently similar to the injuries of others to justify a nationwide class.[8]

## VI.    PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE RELIEF

Defendant next argues that Plaintiffs lack Article III standing to pursue injunctive relief. Dkt. 34-1 at 37–38. However, Plaintiffs' allegations concerning their desire to purchase an uncontaminated version of the Product in the future confers standing based on Ninth Circuit precedent.

In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), the Ninth Circuit addressed an ongoing split amongst district courts concerning whether a previously deceived consumer can demonstrate standing sufficient to obtain injunctive relief. Ultimately, the Court "resolve[d] this district court split in favor of plaintiffs seeking injunctive relief." *Id*. In so doing, the Court noted that for a prior purchaser of a product, "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id*. at 970.

Here, Plaintiffs allege that (a) they have a "desire to purchase the Products in the future if they can be assured that the Products are safe for consumption and do not contain Heavy Metals" and (b) they "would be willing to purchase Trader Joe's

---

[8] Nationwide class discovery will not be overly burdensome because much of the discovery on Plaintiffs' end will focus on Defendant's manufacturing processes.

dark chocolate products in the future if [they] could be certain that they do not contain (or have a material risk of containing) Heavy Metals." *See* CAC ¶¶ 29, 32, 35, 38, 41, 44, 47, 50, 53, 59, 62, 193. These statements demonstrate an intention to purchase the Products in the future sufficient to confer standing to seek injunctive relief. *See*, *e.g.*, *In re Plum Baby Food Litig.*, 2022 WL 16640802, at *1 (sustaining claims for injunctive relief where "all of the plaintiffs … allege that they would 'be willing to purchase Plum Organic products in the future if [plaintiffs] could be certain that they do not contain (o[r] have a material risk of containing) Heavy Metals or perchlorate.'") (citation omitted); *Forrett v. Gourmet Nut Inc.*, 2023 WL 3749556, at *9 (N.D. Cal. June 1, 2023) ("Forrett would like to buy the Product again if it includes the omitted [information]. This allegation is sufficient to allege standing under *Davidson*. Plaintiff therefore has standing to seek injunctive relief."); *Mueller v. Puritan's Pride, Inc.*, 2021 WL 5494254, at *8 (N.D. Cal. Nov. 23, 2021) (standing for injunctive relief established where plaintiffs stated that "they would consider purchasing defendants' products in the future if they could be sure that the pricing and sale offers were not deceptive."); *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 2023 WL 3856722, at *3 (N.D. Cal. May 19, 2023) (standing for injunctive relief established where plaintiff alleged that "she 'would consider purchasing Defendant's milk again if Defendant were to treat cows in a manner consistent with its advertising.'") (internal citations omitted).

In addition, Defendant claims injunctive relief is unavailable because Plaintiffs "do not and cannot allege that trace heavy metals—and certainly not the risk of their presence—can be eliminated completely from dark chocolate products." Dkt. 34-1 at 38:15–16 (emphasis removed). In addition to being an improper factual argument not amenable to resolution at the pleading stage, it is also false. The CAC specifically identifies steps which can be taken to remove and/or omit heavy metals from chocolate. This includes "changes in harvesting and manufacturing processes"; "methods to remove metal contaminants when beans are cleaned at factories"; and

"breeding or genetically engineering plants to absorb less of the heavy metal." (CAC ¶¶ 78–79. Though not exhaustive, the identification of these potential solutions demonstrates that injunctive relief will ameliorate the wrongs which serve as the basis for Plaintiffs' suit.

## VII. PLAINTIFFS HAVE STANDING TO PURSUE CLAIMS INVOLVING DEFENDANT'S SIMILAR DARK CHOCOLATE PRODUCTS

As Defendant concedes, California courts "allow claims about unpurchased products if plaintiffs can demonstrate that those products are substantially similar to purchased products." Dkt. 34-1 at 39:1–2 (citing *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1140 (N.D. Cal. 2013)). In order to determine what constitutes "similar products," courts have considered factors such as "whether the products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Parker v. J.M. Smucker Co.*, 2013 WL 4516156, at *3 (N.D. Cal. July 20, 2012).   Put differently:

> "[s]ubstantial similarity" has been found when the products sued over are physically similar … where differences between the purchased products and the unpurchased products do not matter because the legal claim and injury to the consumer is the same, … and where *both* the legal claims/injury are similar and the products themselves are similar.

*Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *5 (N.D. Cal. Mar. 13, 2014) (internal citations omitted).

Here, Defendant argues that Plaintiffs' claims regarding the Trader Joe's Swiss 72% Cacao Dark Chocolate Bar ("Swiss Bar") are not substantially similar without further explanation. Dkt. 34-1 at 39. Plaintiffs, however, allege that each of the Products are dark chocolate bars marketed by Trader Joe's, which contain the same material omission regarding the presence of Heavy Metals. CAC ¶¶ 17, 67–70, 132–34. In addition, consumer expectations regarding the presence of heavy metals in chocolate bars will likely not differ based solely on the name of the product or its

country of origin. *Id.* at ¶¶ 135–38. While Defendant claims that the "supplier" or "origin, growing practices, and manufacturing practice" will alter the Court's analysis, Defendant does not explain why. Dkt. 34-1 at 39:13–18. This case does not turn on the identity of the supplier or any manufacturing processes, but whether there are Heavy Metals in the Products and whether failing to disclose their presence (or risk) is misleading to a reasonable consumer. There are simply no *material* differences between the Swiss Bar and the other Products. Indeed, similar arguments by Defendant have already been discredited in this Circuit. *See Gitson v. Trader Joe's Co.*, 2014 WL 1048640, at *9–11 (N.D. Cal. Mar. 14, 2014) (holding that differences in yogurt, which included the style and origin (*e.g.*, Greek vs. French yogurt), was not material when the claims were based on misrepresenting sugar as evaporated cane juice).

Defendant's citation to *Krause-Pettai v. Unilever United States, Inc.*, 2021 WL 1597931 (S.D. Cal. Apr. 23, 2021), is misplaced. In that case, the plaintiffs alleged that due to slack fill and the size of the defendant's packaging, "it appeared [consumers] were 'getting more product for a similar price as compared to other brands of stick deodorant which were in smaller packages.'" *Id.*, at *1 (citation omitted). The plaintiffs' claims would, therefore, turn on the exact design of the packaging of each of the stick deodorants when compared to its competitors. Thus, it is unsurprising the court held that the plaintiffs, who were asserting claims on behalf of purchasers of a "variety of products" from different deodorant brands, did not meet their burden in explaining why these products were similar. *Id.* at *7. This case does not turn on the outward appearance of the different products, but the lack of disclosure of the Heavy Metals contained therein.

Alternatively, courts often defer resolution of these questions to the class certification stage of the case. *See*, *e.g.*, *Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) (rejecting defendant's standing challenge because the "argument is better taken under the lens of the typicality or adequacy" prong of Rule

33

23); *Gitson*, 2014 WL 1048640 at *9; *In re Natera Prenatal Testing Litig.*, 2023 WL 3370737, at *11.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety. If the Court determines that the pleadings are deficient in any respect, Plaintiffs respectfully request leave to amend to cure any such deficiencies. *See e.g.*, *Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint).

Dated: July 12, 2023               Respectfully Submitted,

                                   By: */s/ L. Timothy Fisher*
                                        L. Timothy Fisher

                                   **BURSOR & FISHER, P.A.**
                                   L. Timothy Fisher (State Bar No. 191626)
                                   Luke Sironski-White (State Bar No. 348441)
                                   1990 North California Boulevard, Suite 940
                                   Walnut Creek, CA  94596
                                   Telephone: (925) 300-4455
                                   Facsimile: (925) 407-2700
                                   E-Mail: ltfisher@bursor.com
                                           lsironski@bursor.com

                                   **LOCKRIDGE GRINDAL
                                   NAUEN P.L.L.P.**
                                   Rebecca A. Peterson (State Bar No. 241858)
                                   Robert K. Shelquist*
                                   100 Washington Avenue South, Suite 2200
                                   Minneapolis, MN 55401
                                   Telephone: (612) 339-6900
                                   Fax: (612) 339-0981
                                   E-mail: rapeterson@locklaw.com
                                           rkshelquist@locklaw.com

**GEORGE FELDMAN
MCDONALD, PLLC**
Lori G. Feldman*
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
E-mail: LFeldman@4-Justice.com

**GEORGE FELDMAN
MCDONALD, PLLC**
David J. George*
Brittany L. Brown*
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
E-mail: DGeorge@4-Justice.com
        BBrown@4-justice.com

**FREED KANNER LONDON
AND MILLEN, LLC**
Jonathan M. Jagher
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6486
E-mail: jjagher@fklmlaw.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson
Catherine Sung-Yun K. Smith*
Shashi Gowda
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
        csmith@gustafsongluek.com
        sgowda@gustafsongluek.com

35

**WEXLER BOLEY & ELGERSMA LLP**
Kenneth A. Wexler*
Kara A. Elgersma
311 S. Wacker, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
E-mail: kaw@wbe-llp.com
            kae@wbe-llp.com

**BARRACK, RODOS & BACINE**
Stephen R. Basser
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
E-mail: sbasser@barrack.com

**FREED KANNER LONDON
AND MILLEN, LLC**
Steven A. Kanner
Nia-Imara Binns
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
E-mail: skanner@fklmlaw.com
            nbinns@fklmlaw.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
E-mail: nsuciu@milberg.com

**LEVI & KORSINSKY, LLP**
Mark S. Reich*
Courtney E. Maccarone*
55 Broadway, 4th Floor, Suite 427
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
E-mail: mreich@zlk.com
          cmaccarone@zlk.com

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer*
Daniel Markowitz*
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
E-mail: sultzerj@thesultzerlawgroup.com
          markowitzd@thesultzerlawgroup.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Telephone: (215) 789-4462
E-mail: klaukaitis@laukaitislaw.com

**FITZGERALD JOSEPH LLP**
Jack Fitzgerald
Paul K. Joseph
Melanie Persinger
Trevor M. Flynn
Caroline S. Emhardt
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Telephone: (619) 215-1741
E-mail: jack@fitzgeraldjoseph.com
          paul@fitzgeraldjoseph.com
          melanie@fitzgeraldjoseph.com
          trevor@fitzgeraldjoseph.com

PLAINTIFFS' OPPOSITION TO MTD                    CASE NO. 3:23-CV-00061-RBM-KSC

**LEVIN SEDRAN & BERMAN LLP**
Charles E. Schaffer
510 Walnut St., Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
E-mail: cschaffer@lfsblaw.com

**LIPPSMITH LLP**
Graham B. LippSmith
MaryBeth LippSmith
Jaclyn L. Anderson
555 S. Flower Street, Suite 4400
Los Angeles, CA  90071
Telephone: (213) 344-1820
Facsimile: (213) 513-2495
E-mail: g@lippsmith.com
         mb@lippsmith.com
         jla@lippsmith.com

**ALMEIDA LAW GROUP LLC**
David S. Almeida (*Pro Hac Vice*)
Elena A. Belov (*Pro Hac Vice*)
849 W. Webster Avenue
Chicago, IL 60614
Telephone: (312) 576-3024
E-mail: david@almeidalawgroup.com
         elena@almeidalawgroup.com

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King
Matthew B. George
Blair E. Reed
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
E-mail: lking@kaplanfox.com
         mgeorge@kaplanfox.com
         breed@kaplanfox.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss (*Pro Hac Vice* )
800 Third Avenue, 38th Floor
New York, NY  10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
E-mail: jstrauss@kaplanfox.com

**KUZYK LAW, LLP**
Michael D. Braun
1999 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
E-mail: mdb@kuzykclassactions.com

*\*Pro Hac Vice* application forthcoming

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO MTD                    CASE NO. 3:23-CV-00061-RBM-KSC