1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

8
9
10

IN RE TRADER JOE'S COMPANY
DARK CHOCOLATE LITIGATION

Case No.: 3:23-CV-0061-RBM-KSC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINITFFS' CONSOLIDATED COMPLAINT**

**[Doc. 34]**

11
12
13
14
15
16
17
18

Defendant Trader Joe's Company ("Defendant" or "Trader Joe's") has filed a Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("CAC") (Doc. 20),[1] which is now pending before the Court.  (Doc. 34.)  Plaintiffs filed an Opposition (Doc. 35), and Defendant a Reply (Doc. 36).

Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument.  For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART,** and Plaintiffs are **GRANTED** leave to file an amended consolidated complaint.

---

[1] The CAC was filed after the Court approved consolidation of five cases.  (Doc. 13.)

## I.   BACKGROUND

### A.   Defendant's Statements

The CAC identifies numerous "statements … [that] appear in Defendant's stores and marketing materials," including Defendant's use of "quality ingredients" and "colors derived only from naturally available products" and Defendant not using artificial flavors or preservatives, MSG, genetically modified ingredients, or partially hydrogenated oils. (*Id.* ¶ 11–12.)   Defendant's website—including its "About Us" page and "'FAQs' section"—is alleged to contain positive statements about the quality of its products and a list of things its product do and do not contain.  (*Id.* ¶¶ 10–11.)  The website also includes statements such as: "nothing is more important than the health and safety of [its] customers;" that Defendant would "never sell any product [it] believe[s] to be unsafe;" and that Defendant complies with all applicable laws regarding the production, harvesting, manufacturing, processing, packaging, labeling, transporting of, and delivery of products. (*Id.* ¶¶ 13–14.)   Plaintiffs do not allege they read or relied on these statements on Defendant's website.

### B.   The Products

The CAC then identifies the following Trader Joe's dark chocolate products ("the Products") that Plaintiffs allege contain undisclosed lead, cadmium, and arsenic ("Heavy Metals"):

- Trader Joe's 72% Cacao Dark Chocolate Bar,
- Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao),
- Trader Joe's Dark Chocolate Bar with Almonds (73% Cacao),
- Trader Joe's Uganda Dark Chocolate Bar (85% Cacao),
- Trader Joe's Mini 70% Cacao Dark Chocolate Bars,
- Trader Joe's 73% Cacao Super Dark Dark Chocolate Bar,
- Trader Joe's Swiss 72% Cacao Dark Chocolate Bar,
- Trader Joe's Pound Plus 72% Cacao Dark Chocolate Bar

(CAC ¶ 1.)

///

2

Plaintiffs allege "contrary to Defendant's assurances that its Products are manufactured under strict quality standards, the Products have been shown to contain detectable levels of Heavy Metals which are known to pose human health risks." (*Id.* ¶ 16.) The Products' packaging does not disclose "that they contain (or have a material risk of containing) Heavy Metals (hereinafter collectively referred to as 'Omissions')." (*Id.* ¶ 17.) "It was only through testing conducted by Consumer Reports that the general public became aware of the Heavy Metal content in [the] Products." (*Id.*)  Plaintiffs assert that based on this lack of disclosure "no reasonable consumer had any reason to know, suspect, or expect that the Products contained Heavy Metals," and that "Plaintiffs and other reasonable consumers would not have purchased the Products or would have paid substantially less for them but for the Omissions." (*Id.* ¶¶ 18, 22.)

Plaintiffs allege Defendant has known about Heavy Metals in it dark chocolate products since 2014 when testing done by a non-profit consumer group "informed Defendant that its dark chocolate products contained levels of cadmium and lead[.]" (*Id.* ¶¶ 94–95.)  The CAC alleges the Products "include undisclosed levels of Heavy Metals due to Defendant's failure to sufficiently monitor for their presence in the ingredients and finished products." (*Id.* ¶ 96.)

## C.   Amounts of Heavy Metals in the Products

The CAC indicates that "[t]he Products contain (or have a material risk of containing)" three Heavy Metals: arsenic, cadmium, and lead. (*Id.* ¶¶ 107, 112, 119.)  The CAC relies, in part, on a December 2022 report from *Consumer Reports* (hereinafter, "December 2022 Report") which found that two of the Products identified above contained undisclosed cadmium and lead. (*Id.* ¶ 73.)  The December 2022 Report found Trader Joe's 72% Cacao Dark Chocolate Bar contains lead and cadmium with cadmium "at 192% above [Maximum Allowable Dose Levels, ("MADL")]" and "Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao)" also contained cadmium and lead with cadmium at 127% and 229% above the MADL, respectively." (*Id.* ¶ 76.)  Testing conducted by Plaintiffs and a non-profit consumer group also found Heavy Metals in the Products. (*Id.*

3

¶¶ 132–33.)   Those results show specific levels of arsenic, cadmium, and lead in the Products with some in excess of MADL-levels for at least one of the three Heavy Metals. (*Id.*; Ex. L (showing which results are above MADL for four of the Products).)   Plaintiffs assert that "[e]ven modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions." (*Id.* ¶ 89.)

### D.   Harm from Heavy Metals

In addressing the harm from the Heavy Metals, the CAC asserts that "[a]ny cadmium exposure should be avoided" and "[e]xposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and bone loss." (*Id.* ¶¶ 113–114.)   The CAC contains similar allegations as to lead. (*Id.* ¶ 122 ("Exposure to lead in foods builds up over time … and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organ and body systems.").) Plaintiffs assert that "[c]admium, like lead, displays a troubling ability to cause harm at low levels of exposure." (*Id.* ¶ 117.)   Similarly, the CAC alleges "no amount of lead is known to be safe." (*Id.* ¶ 119.)

Plaintiffs allege that "Defendant knew or should have known that it owed a duty to consumers [to] prevent, or at the very least, minimize the presence of Heavy Metals in the Products to the extent reasonably possible." (*Id.* ¶ 98.)   The CAC also identifies another dark chocolate producer with levels of lead and cadmium below MADL and the December 2022 Report's finding that five of the dark chocolate products tested were relatively low in heavy metals. (¶¶ 81, 124–25.)   The CAC also points to specific solutions identified in the December 2022 Report for minimizing or omitting lead and cadmium in cacao. (¶¶ 78–81.)

///

///

///

///

4

### E.    Plaintiffs' Purchases

Each Plaintiff alleges they purchased one or more of the Products,[2] believed they were purchasing "high quality dark chocolate products from Trader Joe's[,]" and "relied upon the packaging of the Products."  (*Id.* ¶¶ 27, 29–30, 32–33, 35–36, 38–39, 41–42, 44–45, 47–48, 50–51, 53–54, 56–57, 59–60, 62–63, 65.)

Each Plaintiff also alleges they were "unaware the Products contained (or had a material risk of containing) any level of Heavy Metals … and would not have purchased the Products if that information had been fully disclosed."  (*Id.* ¶¶ 29, 32, 35, 38, 41, 44, 47, 50, 53, 56, 59, 62, 65.)  Most of the Plaintiffs assert they "would be willing to purchase Trader Joe's dark chocolate products in the future if [they] could be certain that they do not contain (or have a material risk of containing) Heavy Metals."  (*Id.* ¶¶ 29, 32, 35, 38, 41, 44, 47, 50, 53, 59, 62.)  However, Plaintiffs Salerno and Ferrante allege that they "will not purchase Trader Joe's dark chocolate products in the future even if [they] could be certain that they do not contain (or have a material risk of containing) Heavy Metals."  (*Id.* ¶¶ 56, 65.)

Plaintiffs assert that "[r]easonable consumers expect the dark chocolate products they purchase for their individual and family consumption [are not] contaminated (or [do not] have a material risk of being contaminated) with Heavy Metals, substances that are known to accumulate in the body and pose significant and dangerous health consequences."  (*Id.* ¶¶ 5, 9, 137 ("No reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing Heavy Metals.").)  Plaintiffs' counsel conducted a consumer survey that shows the vast majority of consumers did not expect their dark chocolate products would contain arsenic, cadmium, or lead based on the Product

---

[2] The CAC also includes the location where each Plaintiff purchased the Products.  (CAC ¶¶ 27, 30, 33, 36, 39, 42, 45, 48, 51, 57, 60, 63.)  The number of each type purchased ranges from one to four, and the purchases were made at numerous locations throughout California, including San Diego, as well as locations in Illinois, Washington, New York, and Maryland.  (*Id.*)

labels. (*Id.* ¶ 138.)

"Defendant knew that properly and sufficiently monitoring the Products for Heavy Metals in the ingredients and finished products was critical." (*Id.* ¶ 142.) "Defendant knew or should have known that a reasonable consumer would consume the Products regularly, leading to exposure to and accumulation of Heavy Metals." (*Id.* ¶ 143.) The CAC alleges the Omissions were misleading, deceptive, and material because reasonable consumers "would consider the presence or risk of Heavy Metals in the Products a material fact when considering which dark products to purchase" and "that reasonable consumers paid higher prices for the Products and expected Defendant to sufficiently test and monitor the Products ingredients for the presence of Heavy Metals." (*Id.* ¶¶ 146, 148, 151.) Plaintiffs also allege that "without full disclosure, reasonable consumers believe the Products are 'safe, high-quality products,' that would not contain or have a material risk of containing Heavy Metals." (*Id.* ¶ 152.)

### F.    Claims

The CAC asserts claims for: (1) violations of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200 *et seq.*; (2) violations of California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (4) Breach of the Implied Warranty of Merchantability; (5) Unjust Enrichment; (6) violation of Washington's Unfair Business Practices and Consumer Protection Act, RCW §§ 19.86.010, *et seq.*; (7) violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Compiled Statute §§ 505/1, *et seq.*; (8) violation of Deceptive Practices Act, New York General Business Law § 349; and (9) violation of New York General Business Law § 350. (CAC ¶¶ 180–287.)

Plaintiffs' UCL, FAL, CLRA, Breach of Implied Warranty of Merchantability, and Unjust Enrichment claims are brought "individually and on behalf of the Class members," although as discussed further below, the Breach of Implied Warranty of Merchantability

and Unjust Enrichment claims do not indicate which state law they are brought under. (CAC ¶¶ 181, 196, 205, 218, 232.[3])  Each of the claims based on Washington (claim six), Illinois (claim seven), and New York (claims eight and nine) consumer protection laws are brought "individually and on behalf of the members of the proposed [specified state] Subclass." (CAC ¶¶ 240, 253, 267, 278.)

## II.    REQUEST FOR JUDICAL NOTICE

The Court will first address Defendant's Request for Judicial Notice (Doc. 34-2) of the following fourteen documents pursuant to Federal Rule of Evidence 201 (*id.* at 2[4]):

- Ex. A: Complaint in *As You Sow v. Trader Joe's, Inc.*, No. CGC-15-548791 (San Francisco Cty. Super. Ct. Nov. 3, 2015),

  …

- Ex. B: Consent Judgment in *As You Sow v. Trader Joe's, Inc.*, No. CGC-15-548791 (San Francisco Cty. Super. Ct. Feb. 15, 2018),

  …

- Ex. C: FDA publication entitled "Guidance for Industry: Lead in Candy Likely To Be Consumed Frequently by Small Children" (Nov. 2006),

  …

- Ex. D: FDA publication entitled "Supporting Document for Recommended Maximum Level for Lead in Candy" (Nov. 2006),

  …

- Ex. E: FDA publication entitled "Supporting Document for Action Level for Inorganic Arsenic in Rice Cereal for Infants" (Aug. 2020),

  …

- Ex. F: FDA publication entitled "Closer to Zero: Reducing Childhood Exposure to Contaminants from Foods" (Mar. 3, 2023),

  …

- Ex. G: FDA publication entitled "FDA Releases Action Plan for Reducing Exposure to Toxic Elements from Foods for Babies, Young Children" (Apr. 8, 2021),

  …

---

[3] As to the UCL, FAL, CLRA claims, the CAC indicates in headings that they are brought "on [b]ehalf of the Class, or [a]lternatively, the California [s]ubclass."  (Doc. 20 at 46, 48–49.)  Headings for the Breach of Implied Warranty of Merchantability and Unjust Enrichment claims indicate they are brought "on [b]ehalf of the Class, or [a]lternatively, the [s]tate [s]ubclasses." (*Id.* at 51.)

[4] The Court cites the CM/ECF electronic pagination except for citations to the CAC.

- Ex. H: FDA publication entitled "FDA Announces New Actions Aimed at Further Reducing Toxic Elements in Food for Babies, Young Children" (Mar. 5, 2021),

…

- Ex. I: FDA publication entitled "FDA Announces Action Levels for Lead in Categories of Processed Baby Foods" (Jan. 24, 2023),

…

- Ex. J: *Consumer Reports* article by Kevin Loria entitled "Lead and Cadmium Could Be in Your Dark Chocolate" (Dec. 15, 2022),

…

- Ex. K: *Consumer Reports* publication entitled "Test Methodology: Heavy Metals in Chocolate Bars" (Jan. 2023),

…

- Ex. L: Screenshot of As You Sow's purported 2022 test results, filtered to "Trader Joe's," as published on As You Sow's website

…

- Ex. M: California Office of Environmental Health Hazard Assessment publication entitled "Proposition 65 in Plain Language" (Aug. 1, 2017),

…

- Ex. N: Front and back label designs for Trader Joe's The Dark Chocolate Lover's Chocolate Bar, Trader Joe's 73% Cacao Super Dark Dark Chocolate Bar, Trader Joe's Swiss 72% Cacao Dark Chocolate Bar, and Trader Joe's Pound Plus 72% Cacao Dark Chocolate Bar— which are partially depicted in paragraph 69 of Plaintiffs' Complaint.

(Doc. 34-2 at 3–4.)

## A.    Applicable Standards

Here, Defendant primarily requests the Court consider these documents based on judicial notice under Rule 201, but also requests the Court consider some documents under the incorporation-by-reference doctrine.   A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  Judicial notice and incorporation-by-reference are exceptions to this Rule.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

8

Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id.* at 999 (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Rule 201(b)(1)–(2)). This means that "'a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment,'" but "cannot take judicial notice of disputed facts contained in such public records." *Id.* (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

Under the incorporation by reference doctrine, courts may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations and citations omitted). "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself," *Khoja*, 899 F.3d at 1002, so long as "the plaintiff refers extensively to the document, or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

However, "[t]he overuse and improper application of judicial notice and the incorporation-by-reference doctrine … can lead to unintended and harmful results [because] [d]efendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage." *Khoja*, 899 F.3d at 998. "[U]nscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.* "If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near[ly] impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id.* at 999. Significantly here, "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint.

Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Khoja*, 899 F.3d 1002.

## B.    Analysis

Defendant argues Exhibits C through I and M are subject to judicial notice under Federal Rule of Evidence 201 because they are public records and government documents. (*Id.* at 4–5.)   As to Exhibits A, B, J, K, L, and N, Defendant argues they should be incorporated by reference because they are cited in Plaintiffs' CAC. (*Id.* at 5–6.)

Plaintiffs oppose the request for judicial notice as to Exhibits A through I (the two court documents and seven FDA documents) "to the extent they are being introduced to establish the truth of their contents." (Doc. 35-1 at 2–3.)   Plaintiffs explain that Defendant is asking the Court to accept the truth of these documents to establish that: "heavy metals and arsenic in their Products are safe[;] that the Products do not contain heavy metals or arsenic[;] and that the Products do not violate Proposition 65." (Doc. 35-1 at 3.)   As to the court documents (Exhibits A and B), Plaintiffs acknowledge they may be subject to judicial notice as court records, but argue that the disputed facts within them cannot be judicially noticed.   (Doc. 35-1 at 4–5 (noting Defendant relies on these documents as proof of safe levels of heavy metals in conflict with the allegations of the CAC).)   Similarly, Plaintiffs argue the Court may take judicial notice of the FDA publications (Exhibits C through I), but not the facts within them because those facts, particularly concerning whether and to what extent heavy metals in food are avoidable and the amount of heavy metals that pose a significant risk to human health, are disputed in this case.   (*Id.* at 5.)   Plaintiffs do not address whether Exhibits A and B may be considered under the incorporation-by-reference doctrine.[5]

The Court **<u>GRANTS</u>** Defendant's request for judicial notice of Exhibits A and B because they are court documents subject to judicial notice under Federal Rule of Evidence

---

[5] Plaintiffs do not address the incorporation-by-reference doctrine, but the only exhibits Defendant seeks to incorporate by reference that Plaintiffs oppose are Exhibits A and B.

10

201 and because they are subject to the doctrine of incorporation by reference.  (*See CAC* ¶¶ 162, 226 (CAC relying on these court documents as informing Defendant that their products contained Heavy Metals).)  However, to the extent Defendant relies on them to dispute facts alleged in the CAC, they will not be considered.[6]

The Court also **GRANTS** Defendant's request for judicial notice of Exhibits C through I, the FDA documents, because the Court can take judicial notice of government documents from a reliable source; however, they will not be considered for purposes of disputing the allegations of the CAC.[7]  *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1066–67 (N.D. Cal. 2010) (taking judicial notice of SEC filings but indicating they will not be considered for the truth of the matter asserted if inappropriate);

Plaintiffs do not oppose the Court's consideration of the remaining exhibits, including the Products' full labels (Exhibit N), the December 2022 Report (Exhibit J), the "Test Methodology: Heavy Metals in Chocolate Bars" publication from *Consumer Reports* (Exhibit K), As You Sow's 2022 test results for lead and cadmium (Exhibit L), and a California Office of Environmental Health Hazard Assessment, "Proposition 65 in Plain Language," (Exhibit M).  The Court GRANTS the request to incorporate the full product labels, the December 2022 Report, *Consumer Reports'* Test Methodology publication, and As You Sow 2022 test results because they are relied on in the CAC.  *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1182 (S.D. Cal. 2021) ("[C]ourts addressing motions to dismiss product-labeling claims take judicial notice of images of the product packaging if they are reference or the images are in the complaint.") (citation omitted);

---

[6] As explained below in considering Defendant's arguments for dismissal of Plaintiffs' consumer protection claims, the Court is not going to decide as a matter of law at this stage that Defendant's preferred threshold for Heavy Metals (the levels in its Consent Judgment for purposes of Proposition 65) disposes of all of Plaintiffs' claims at this stage.

[7] As noted below, the Court does consider Exhibit F, the FDA's "Closer to Zero, Reducing Childhood Exposure to Contaminants from Foods" ("FDA Initiative"), in considering Defendant's argument for dismissal or a stay under the primary jurisdiction doctrine because both parties rely on it.

*Ritchie*, 342 F.3d at 908 (documents "plaintiff refers to extensively … or the document forms the basis of the plaintiff's claim" may be considered under incorporation by reference.) The Court **GRANTS** the request for judicial notice of Exhibit M because it is a reliable government record that Plaintiffs do not oppose the Court considering.

### III.   MOTION TO DISMISS

Defendant only moves to dismiss under Rule 12(b)(6).  Defendant does not raise any pleading deficiencies under Federal Rule of Civil Procedure 9(b).[8]

### A.   Legal Standards

Under Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556–57).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive

---

[8] Defendant references Rule 9(b) in its legal standard section, (Doc. 34-1 at 16), but never raises it in the briefing as a basis for dismissal.

a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### B.   Claims

Defendant moves to dismiss Plaintiffs' California UCL, FAL, and CLRA claims, "as well as … parallel claims under Washington, Illinois, and New York laws." (Doc. 34-1 at 18.) Defendant asserts four reasons for dismissal of these claims: (1) "no reasonable consumer could have been misled by something [Defendant] did *not* say and that does *not* present a safety issue[;]" (2) [Defendant] had no duty to disclose information about the alleged presence of trace heavy metals[;]" (3) "[t]he presence (or mere 'risk') of trace heavy metals in dark chocolate does not affect those products' value[;]" and (4) as to Plaintiffs' New York and Washington claims, "Plaintiffs knew or could have found out that dark chocolate products may contain trace levels of heavy metals." (Doc. 34-1 at 18.)

Plaintiffs counter that: (1) Defendant's arguments regarding a reasonable consumer raise questions of fact, are baseless, and conflict with Plaintiffs' consumer survey results (Doc. 35 at 16–17); (2) Plaintiffs have sufficiently pled the presence of Heavy Metals in the Products made them unsafe and that this is an issue of fact (*id.* at 17–23); (3) they have pled economic injury under a price premium theory (*id.* at 24–26); (4) they have alleged they did not know the Products contained Heavy Metals until the December 2022 Report disclosed it and whether a consumer could obtain information about the presence of Heavy Metals in the Products is a question of fact (*id.* at 26–29).

The Court addresses each of Defendant's arguments below.

### a)   Plaintiffs' UCL, FAL, and CLRA Claims

"The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (quoting Cal. Bus. & Prof. Code § 17200). "The false advertising law prohibits any 'unfair, deceptive, or misleading advertising.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code 17500). The CLRA "prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'" *Id.* (quoting Cal. Civ. Code § 1770). "Courts often analyze these statutes together," as the Court does here, "because they share similar attributes." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014); *see also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (same).

Here, Plaintiffs' claims are based on the alleged Omissions. (Doc. 35 at 15 ("This is an omissions case where non-disclosure is the entire basis for Plaintiffs' claims.").) Courts also analyze these three claims together in omissions cases. *See Grauz v. Hershey Co.*, Case No. 23-cv-0028, 2024 WL 312688, at *3 (S.D. Cal. Jan. 25, 2024) ("Because the omissions theories of liability for the CLRA, FAL, and UCL claims overlap, the Court considers them in tandem.") (citing *Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-CV-1345-DMS-AGS, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020)).

### (1)   Reasonable Consumer[9]

"Whether a business practice is deceptive or misleading 'under these California statutes is governed by the 'reasonable consumer' test." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (citing *Williams*, 552 F.3d at 938). "The California Supreme Court has recognized that these statutes prohibit explicitly false advertising and

---

[9] Although the Court finds below that Plaintiffs' California UCL, FAL, and CLRA claims cannot proceed as pled for failing to sufficiently plead an unreasonable safety hazard or that the Products are unfit for human consumption, the Court addresses the parties' arguments concerning the reasonable consumer test because Plaintiffs are being granted leave to amend and because Defendant relied on this test for purposes of other states' laws.

advertising that is 'either actually misleading, or which has a capacity, likelihood, or tendency to deceive or confuse the public.'" *McGinty v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).

"'Whether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer' or motions to dismiss." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Williams*, 552 F.3d at 938); *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (same). Rather, it is a "rare situation" when dismissal is appropriate at the pleading stage. *Williams*, 552 F.3d at 939 ("The facts of this case, on the other hand, do not amount to the rare situation in which granting a motion to dismiss is appropriate."); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (reversing district court dismissal because plaintiff's claim was plausible and "questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations.")(quotations and citation omitted) "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 16 (N.D. Cal. 2020) (quoting *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014)).

The reasonable consumer test "requires more than a mere possibility that [a] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2019) (quoting *Lavie v. Proter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *McGinty*, 69 F.4th at 1097; *see also Davis*, 691 F.3d at 1162 ("A reasonable consumer is the ordinary consumer acting reasonably under the circumstances.") (quotation omitted); *see also Souter v. Edgewell Personal Care Co.*, No. 22-55898, 2023 WL 5011747, at *1 (9th Cir. Aug. 7, 2023) ("This standard is evaluated from the perspective of the 'ordinary consumer within the larger population,' who is not typically

'exceptionally acute or sophisticated' or 'wary and suspicious of advertising claims.'") (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1305 (2011)). "The touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers." *McGinty*, 69 F.4th at 1097.

Here, the Court finds Plaintiffs have plausibly alleged a reasonable consumer could be misled by the lack of any disclosure on the Products indicating that they contain Heavy Metals when they contain the levels of Heavy Metals listed in the CAC. However, the Court notes that this conclusion is based in part on Plaintiffs' allegations, that this Court must accept as true, that the Products all actually contain undisclosed Heavy Metals, including some exceeding MADL levels on one or two of the Heavy Metals. (*See* Exhibit L (As You Sow Testing); CAC ¶¶ 76, 132–33.)

Defendant argues "*trace* quantities of heavy metals, like all common elements and minerals, are ubiquitous in the food supply" and "even if they were not, it would still be unreasonable for Plaintiffs to subjectively interpret the lack of any references to heavy metals on the [P]roducts labels as a promise that they contain no *trace* of those elements." (Doc. 34-1 at 20 (emphasis added).) Defendant also asserts that a reasonable consumer would not expect the "*trace* amounts of heavy metals, … far below the amount deemed tolerable by the FDA," to be disclosed. (*Id.* (emphasis added)). Defendant also challenges Plaintiffs' consumer survey results and asserts a reasonable consumer would know Defendant's dark chocolate bars contain Heavy Metals based on Defendant entering into a Consent Judgment in 2018 with thresholds for Heavy Metals in its chocolate. (Doc. 34-1 at 20–21.)

As to this last argument, the Court is not persuaded that an "ordinary consumer … who is not typically exceptionally acute or sophisticated or wary and suspicious of advertising claims" would be aware of Defendant's litigation history or its Consent Judgment and the levels that were set as to Defendant's chocolate products. *Souter*, 2023 WL 5011747, at *1. While a consumer that is particularly focused on the contents or safety of their food might expend the time to find out Defendant's litigation history, the resulting

Consent Judgment, and that it continues to apply, the Court is not persuaded ordinary consumer would know these tolerances or agreed upon levels for Heavy Metals in the Consent Judgment even exist.  It is more likely "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" into thinking their chocolate bars do not contain Heavy Metals at these levels because that information is not disclosed on the packaging.  *McGinty*, 69 F.4th at 1097.[10]

Similarly, Defendant's arguments regarding the specific levels of Heavy Metals in the Products is not well suited to this stage of the litigation on this issue.  Even assuming a reasonable consumer would only be misled by the lack of disclosure of Heavy Metals if the amount of Heavy Metals were at a particularly high level, determining what that level would be for a reasonable consumer is not amenable to resolution on a motion to dismiss. Defendant seems to argue that if anything, the Court should use the Consent Judgment levels, but as noted above, it is not clear why a consumer would only be deceived by the non-disclosure of that amount.  Plaintiffs argue any level or even just the risk of any level, that is not disclosed would mislead a reasonable consumer.  The Court is not inclined to pick a threshold level of each Heavy Metal in each Product at which a reasonable consumer would be misled by the absence of a label disclosing its presence, particularly in ruling on a motion to dismiss.  At this stage of the case, it is sufficient that Plaintiffs allege the Products all contain Heavy Metals and at least some exceed MADL levels in one or two Heavy Metals.

Additionally, Defendant's assertion that the levels are trace and low, particularly when the CAC includes allegations of test results for some of the Products that exceed MADL levels (*see* CAC ¶ 76; Exhibit L (As You Sow 2022 test results on some of the Products showing they exceed MADLs as to some Heavy Metals), raises a factual

---

[10] Although Plaintiffs' consumer survey results also bolster their allegations a reasonable consumer would be misled by the Products' packaging, the Court need not address Defendant's arguments regarding the consumer survey because the Court finds the Plaintiffs' other allegations sufficient on this particular test.

challenge not properly raised at this stage. *Grausz v. Hershey Co.*, Case No. 23-cv-0028-AJB-SBC, 2023 WL 6206449, at *7 (S.D. Cal. Sept. 11, 2023) (rejecting a defendant's calculations showing a plaintiff's test results were below relevant MADL's because "factual challenges are not typically adjudicated at this stage of litigation."); *see also In re Plum Baby Food Litig.*, Case No. 4:21-CV-913-YGR, 2022 WL 16640802, at *2 (N.D. Cal. Jan. 12, 2022) *reconsideration denied,* No. 4:21-CV-00913-YGR, 2023 WL 3493319 (N.D. Cal. May 3, 2023) (finding the determinations "that 'consumers know and understand that trace amounts of heavy metals are ubiquitous' and that 'the mere presence of heavy [metals] is not material to reasonable consumers' … are factual issues … ."); *Rodriguez v. Mondelēz*, Case No. 23-cv-00057-DMS-AHG, 2023 WL 8115773, 2023 WL 8115773, at *5 (S.D. Cal. Nov. 22, 2023) ("What constitutes an 'unsafe level' of lead or cadmium is a question of fact not appropriately resolved on a motion to dismiss.").[11]

Plaintiffs have plausibly alleged a reasonable consumer could be misled by the lack of any disclosure on the Products indicating that they contain Heavy Metals when they do contain the levels of Heavy Metals alleged in the CAC.[12]

---

[11] The Court notes, however, to the extent Plaintiffs are attempting to state these claims based solely on the allegations that the Products only have a material risk of containing Heavy Metals, rather than actually containing them, the claims could not proceed on that basis alone.  It is somewhat unclear if this is Plaintiffs' intention, or they are simply asserting that Defendant should have disclosed a material risk based on the actual presence of Heavy Metals in all the Products at the levels asserted in the CAC.  The CAC repeatedly asserts as a basis for the claims that Defendant's "Products contain (or have a material risk of containing) Heavy Metals."  (CAC ¶ 17.)  Regardless, given the Court's grant of leave to amend, the Court notes this for purposes of any amendment.

[12] Defendant asserts the claims under Illinois, Washington, and New York should also fail under the reasonable consumer standard under those states' consumer protection laws. (Doc. 34-1 at 22 (Defendant indicates "[b]ecause Plaintiffs' allegations fail the reasonable consumer test, their claims fail not only under California law, but also under the parallel laws of New York, Illinois, and Washington.")  Defendant then includes a lengthy footnote citing cases that presumably apply the same or a very similar reasonable consumer test under those states' laws.  (*Id.* n.6.)  Given the Court has found the claims do not fail under the reasonable consumer test and Defendant does not identify any distinction in these state

### (2)   Unreasonable Safety Hazard or Unfit for Human Consumption

As stated above, Plaintiffs agree this is only an omissions case.  (Doc. 35 at 15.) "[A] defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors."  *Hammerling v. Google*, 615 F. Supp. 3d 1069, 1085 (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021)); *see also Grauz*, 2023 WL 6206449, at *9 (relying on this standard for a claim that a defendant failed to disclose lead and cadmium in chocolates); *Rodriguez*, 2023 WL 8115773, at *10 (same).[13]  "The *LiMandri* factors are: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts."  *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri*, 52 Cal. App. 4th at 336).

Defendant argues "Plaintiffs do not and cannot show that Trader Joe's had a duty to disclose trace levels of heavy metals, much less a duty to disclose the mere risk of them." (Doc. 34-1 at 22.)  Defendant argues "[t]here is no duty to disclose—and thus, no actionable omission—where, as here, the plaintiff fails to allege that the undisclosed information 'caused an unreasonable safety hazard.'"  (*Id.* at 23 (citing *Wilson v. Hewlett-Packard Co.*,

_____

laws that would compel a different conclusion, the Court does not address the other states on this point.

[13] *Hammerling* acknowledges that this area of law has been "marked by general disarray" with two tests in the case law.  615 F. Supp. 3d at 1085 (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1101.  The first is above.  *Id.*  The second finds a duty to disclose when "(1) the defect relates to an unreasonable safety hazard; (2) the defect is material and related to the product's central function; <u>or</u> (3) the presence of one of the four *LiMandri* factors.  *Id.* (citing *In re Toyota RAV4 Hybrid Fuel Tank Litig*, 534 F. Supp. 3d at 1102) (emphasis in original).  The parties do not seek application of the second test.

668 F.3d 1136, 1141 (9th Cir. 2012)).)   Additionally, Defendant argues "the alleged presence (or risk of presence) of trace heavy metals in the [P]roducts is not related to the chocolate's function as a chocolate" and that "containing any amount of heavy metals does not objectively render the products unfit for consumption."  (Doc. 34-1 at 23 (citing *Hodson*, 891 F.3d at 864).)[14]

In response, Plaintiffs assert that this "is a hotly contested issue of fact" and whether the Products were "unsafe … is not ripe for determination at this stage."  (Doc. 35 at 20–21.)  Plaintiffs also point to their allegations that: arsenic, cadmium, and lead cause a variety of health problems; that Heavy Metals accumulate, and even small amounts can lead to health issues with long term exposure; and that no amount of lead is safe and that even low levels of cadmium can be harmful.  (*Id.* (citing CAC ¶¶ 104–03, 107–08, 112–15, 117 119–20, 122–23).)  Plaintiffs also briefly assert that "the Products in this case no longer serve their 'central function' as food" because Plaintiffs allege "the levels of Heavy Metals in the Products exceed the MADL and that chocolate with appreciable amounts … of Heavy Metals are not suitable for consumption … ."  (*Id.* at 23.)

The Court finds that Plaintiffs have not plausibly alleged an unreasonable safety hazard or that the Products' defect is central to their function.  Again, the Court is not persuaded by Defendant's characterization of the amounts of Heavy Metals as trace,

---

[14] Defendant also relies on numerous FDA documents and its Consent Judgment-levels in arguing the levels alleged in the CAC cannot represent an "unreasonable safety hazard." (Doc. 34-1 at 24–26.)  However, the Court cannot find as a matter of law *on a motion to dismiss* that Consent Judgment-levels that Defendant asserts supplant Proposition 65 MADL-levels, preclude Plaintiffs' claims that are based in part on health issues not covered by Proposition 65.  *See Rodriguez*, 2023 WL 8115773, at *8 (finding a plaintiff's claims regarding Heavy Metals in dark chocolate independent of Proposition 65 because in addition to cancer causing and reproductive harm covered by Proposition 65, the plaintiff alleged, as Plaintiffs do here, that Heavy Metals also cause other health problems).  As discussed above, the Court is not taking judicial notice of these documents for purposes of disputing Plaintiffs' allegations (*see supra* II.B), and the Court need not rely on them to conclude the CAC does not plausibly allege the amounts of Heavy Metals allegedly in these Products have created an unreasonable safety hazard.

particularly at this stage of the case.  However, there is a disconnect in the CAC between Plaintiffs' allegations about the potential harms posed by Heavy Metals as a general matter and whether these Heavy Metals are unreasonably hazardous at the particular levels in the specific Products at issue in this case.  The allegations that some are above MADL levels in some Heavy Metals is certainly a significant step closer to plausibility.  But that alone, particularly when it is so unclearly stated,[15] is not enough.  Plaintiffs ask the Court to find the levels of Heavy Metals alleged in the CAC plausibly allege an unreasonable safety hazard and that humans should not be consuming them based only on general allegations that there can be health issues with these Heavy Metals at low levels of exposure.  While the Court recognizes Plaintiffs may not be able to pinpoint a specific level at which these Products would become an unreasonable safety hazard or unfit for human consumption, they have to at least provide some connection between the general harms possible from Heavy Metals and the levels of Heavy Metals in these Products.  For example, the CAC alleges "the Products have been shown to contain detectable levels of Heavy Metals which are known to pose human health risks." (*Id.* ¶ 16.)  However, alleging that Heavy Metals can pose human health risks at some unidentified level does not mean the levels in these Products pose a human health risk, particularly not one great enough to constitute an unreasonable safety hazard or make them unfit for human consumption.

Plaintiffs argue that whether the presence of these Heavy Metals makes them an unreasonable safety hazard is a hotly contested fact issue.  However, the issue here is not a factual dispute; it is a pleading deficiency.  To put it another way, Plaintiffs cannot just say Heavy Metals can be unhealthy and these Products contain some level of Heavy Metals.  They have to connect the health risks alleged to the levels of Heavy Metals in these Products and they have to be significant enough to be unfit for human consumption or an unreasonable safety hazard.  Other decisions on chocolate products in this district have

---

[15] For example, as summarized above, Plaintiffs identify test results showing the levels of Heavy Metals in the Products (CAC ¶¶ 132–33), but they do not allege that these levels can cause the harms alleged.

identified the same problem with pleadings.  *See Grausz*, 2023 WL 6206449, at *10 (finding the plaintiff "does not plead that the amounts of the substances in [the] Products have caused harm or create an unreasonable safety hazard" after noting similar allegations); *see also Rodriguez*, 2023 WL 8115773, at *10 (finding "nowhere do Plaintiffs allege that the safety hazard was unreasonable.")  Because the CAC fails to adequately plead an unreasonable safety hazard or that the Products are unfit for human consumption, Plaintiffs' California UCL, FAL, and CLRA omissions claims[16] are **DISMISSED WITHOUT PREJUDICE** and the Court **GRANTS** Plaintiffs leave to amend.[17]

### (3)   Economic Injury

Although the Court has already determined Plaintiffs' consumer protection claims must be dismissed for the reasons stated above, the Court briefly addresses Defendant's additional argument that Plaintiffs have failed to plead economic injury.  Defendant asserts the CAC fails to plead Plaintiffs "suffered a cognizable injury as a result of [Defendant's] conduct."  (Doc. 34-1 at 27 (citing *Ries v. Arizona Beverages, USA LLC*, 287 F.R.D. 523, 529 (N.D. Cal. 2012).)  Defendant challenges Plaintiffs' premium price theory, arguing it

---

[16] Plaintiffs are correct that Defendant's Motion does not address Plaintiffs' claims under Washington, Illinois, and New York consumer protection statutes on this issue, i.e. an omission Defendant had duty to disclose.  Defendant includes only a single footnote on this issue that briefly addresses a way in which Defendant argues Illinois law is more restrictive than California.  (Doc. 34-1 at 22 n.7 (stating the standard is even higher in Illinois because it requires direct statements that contain material omissions).  Plaintiffs accurately note that Defendant does not otherwise address this issue beyond California law.  (Doc. 35 at 17.)  Given Defendant did not address Plaintiffs' consumer protection claims under other states' laws on this issue in its Motion and only included a footnote that would not appear to provide a basis for dismissal here, the Court does not dismiss those claims on this basis.

[17] As to amendment, the Court notes that just adding an allegation that these Products pose an unreasonable safety hazard or are unfit for human consumption would be too conclusory to survive a motion to dismiss.  However, if those allegations were combined with more specific allegations as to the danger or severity of harm caused by these particular levels of Heavy Metals in a food product, it might be sufficient to plausibly allege they pose an unreasonable safety hazard or are unfit for human consumption.

cannot succeed when all competing products suffer from the same flaw, i.e. all dark chocolate products "contain trace heavy metals." (*Id.* at 27.) Defendant also argues that because Plaintiffs do not allege the Products "were not edible or otherwise lacked the qualities of chocolate, this theory fails." (*Id.* at 28.) Defendant also asserts the Products are not "valueless by trace heavy metals" because Plaintiffs still received some benefit, i.e. "flavor, energy, or anything else of value" from the Products. (*Id.* (quoting *In re Pom Wonderful LLC*, No. ML 10-02199 DDP (RZx), 2014 WL 1225184, at *3 n.2 (C.D. Cal. Mar. 25, 2014) and citing *In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011).)

The Ninth Circuit has "consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that [they] paid more for a product than [they] otherwise would have due to a defendant's false representations about the product." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020). "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). "To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she would not have purchased the goods in question absent this misrepresentation." *Id.* at 966.

Here, each of the Plaintiffs allege they purchased one or more of the Products, believed they were purchasing "high quality dark chocolate products from Trader Joe's[,]" and "relied upon the packaging of the Products." (*Id.* ¶¶ 27, 29–30, 32–33, 35–36, 38–39, 41–42, 44–45, 47–48, 50–51, 53–54, 56–57, 59–60, 62–63, 65.) They also allege they were "unaware the Products contained (or had a material risk of containing) any level of Heavy Metals … and would not have purchased the Products if that information had been

fully disclosed."[18]  (*Id.* ¶¶ 29, 32, 35, 38, 41, 44, 47, 50, 53, 56, 59, 62, 65.)  Similarly, Plaintiffs allege they "would not have purchased the Products or would have paid substantially less for them but for the Omissions."  (*Id.* ¶¶ 18, 22 ("Plaintiffs paid more for the Products than they would have had they known the truth about the Products … .").)  Although, as discussed above, there is a deficiency in the CAC as to Defendant's omission, assuming that deficiency were remedied, Plaintiffs have sufficiently alleged they suffered an economic injury.  *Grausz*, 2023 WL 6206449, at *4 (finding a plaintiff plausibly alleged an injury based on allegations she "bought a product that she otherwise would not have purchased, or would have only purchased at a lower price, had she known it contained heavy metals.");  *Moore*, 966 F.3d at 1020 (reversing the district court and finding plaintiffs allegations, while not detailed were sufficient to survive a motion to dismiss when plaintiffs alleged each plaintiff paid more for the product at issue than each would have paid in the absence of the misrepresentation).  The CAC is not subject to dismissal for failing to sufficiently plead economic injury.

### (4)   Plaintiffs' Knowledge

Defendant argues Plaintiffs' New York and Washington claims fail because Plaintiffs cannot allege they had no way of knowing the Products might contain Heavy Metals.  (Doc. 34-1 at 28.)  Defendant points to the 2015 lawsuit and resulting Consent Judgment that are referenced in the CAC.  (*Id.* at 29.)  Plaintiff relies on these in the CAC to establish Defendants were aware their Products contained undisclosed Heavy Metals, but here Defendant relies on them as proof that Plaintiffs could have or should have known the Products contained Heavy Metals.  (*Id.* at 29.)

"[A] plaintiff claiming an omission constitutes actionable deception must show either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information."  *See Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d

---

[18] The Court recognizes there is a difference between being misled by false information and an omission, however, at this stage, if Plaintiffs adequately alleged Defendant failed to disclose information it had a duty to disclose, the economic injury is adequately stated.

350, 360 (E.D.N.Y. 2022) (finding public discussions about the issue alleged undercut a claim the "defendant alone possessed the knowledge," it was "not fatal to the plaintiffs' claims because "an omission can still be actionable where it is shown that that 'a consumer could not reasonably obtain' the omitted information.") (quoting *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003) (collecting cases); *see also Levy v. Hu Prods. LLC*, 23 Civ. 1381 (AT), 2024 WL 897495, at *5 (S.D.N.Y. Mar. 1, 2024) (finding the plaintiff has sufficiently alleged "that a consumer could not reasonably determine how much lead the Products contained, as detecting these chemicals requires expensive scientific testing."); *see also Favors v. Matzke*, 53 Wash. App. 789, 796 (1989) ("In Washington, the court will find a duty to disclose … where a seller has knowledge of a material fact not easily discoverable by the buyer … .").

As discussed above in addressing the reasonable consumer standard (*see supra* III.B.a)(1)), the Court is not persuaded that Plaintiffs had or should have had knowledge of Defendant's litigation history and the resulting Consent Judgment.  Additionally, Plaintiffs have pled the opposite, i.e. that "it was only through testing conducted by Consumer Reports that the general public became aware of the Heavy Metal content in Defendant's Products."  (CAC ¶ 17.)  The CAC sufficiently alleges Plaintiffs did not have knowledge that the Products contained Heavy Metals and that Defendant did.  At this stage of the proceeding, the Court is not inclined to find as a matter of law that Plaintiffs should have known about the Heavy Metals in the Products.

### b) Breach of Implied Warranty of Merchantability and Unjust Enrichment

Defendant argues Plaintiffs' claim for breach of the implied warranty of merchantability should be dismissed because the "trace levels alleged … do not render the products dangerous, let alone unsafe to consume," i.e. "that the Products are unfit for human consumption."  (Doc. 34-1 at 33; Doc. 36 at 19 (challenges sufficiency of pleading "mere presence of even trace levels is unsafe or renders the [P]roducts unfit for human consumption" and asserting "trace heavy metals permeate … the food supply.").)

25

Defendant also asserts Plaintiffs have failed to allege the Products "were a 'market outlier" in allegedly containing heavy metals." (*Id.* at 33–34 (citing *Ferry v. Mead Johnson & Co., LLC*, 514 F. Supp. 3d 418, 452 (D. Conn. 2021).)   As to the unjust enrichment claim, Defendant moves to dismiss it because it is duplicative of Plaintiffs' statutory claims, and the variance in state law precludes a nationwide unjust enrichment claim.  (Doc. 34-1 at 34–35.)

As to both claims Defendant seeks dismissal because "Plaintiffs fail to allege which state law governs either common law claim." (Doc. 34-1 at 35.)   On this issue, as to the breach of implied warranty of merchantability claim, Plaintiffs assert "[t]he CAC makes clear that California law would apply to the Class," including this claim.  (Doc. 35 at 37 (citing CAC ¶¶ 156–57, 25–26).)   As to the unjust enrichment claim, Plaintiffs state "[t]his argument should be rejected for the same reasons set forth above," referring to its position on this issue for the breach of implied warranty of merchantability claim.  (*Id.*)

The Court finds the CAC does not allege which state law governs either of these claims.  (*See* CAC ¶¶ 217–230 (breach of implied warranty of merchantability); ¶¶ 231–38 (unjust enrichment claim).)   The Court should not have to speculate as to the law applicable to any claim.  Neither claim identifies the state law applicable and Plaintiffs' citation of four paragraphs of their 287-paragraph CAC, none of which are listed under these two claims, does not persuade the Court that the CAC "makes clear" Plaintiffs assert these claims only under California law.  (Doc. 35 at 37 (citing ¶¶ 25–26, 156–57).)   The law under which a claim is brought is important for any claim, but it is particularly important in a case where Plaintiffs bring claims on behalf of a nationwide class and state subclasses and also bring claims under other states' laws.  (CAC ¶¶ 239–87.)   Neither the Defendant nor the Court should have to speculate as to the legal basis for a claim particularly when assessing whether claims on behalf of a nationwide class should be dismissed.  *See Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1333, (S.D. Cal. 2019) (finding "Plaintiffs failure to identify which state laws govern their common law claims means the claims brought on behalf of the nationwide class have not

26

been adequately pled.").

However, Plaintiffs rightly point out this particular deficiency can be cured by amendment.  (Doc. 35 at 37 ("should the Court find that a more direct statement that California law applies to these claims and should be included in the CAC, such a change is easily cured by amendment.").)  Therefore, Plaintiffs breach of implied warranty of merchantability claim and unjust enrichment claims are **<u>DISMISSED</u> WITHOUT PREJUDICE** and the Court **<u>GRANTS</u>** Plaintiffs leave to amend.[19]

### C.    Primary Jurisdiction Doctrine

Defendant seeks dismissal or a stay of this case under the primary jurisdiction doctrine.  (Doc. 34-1 at 29–32; Doc. 36 at 17–18.)  Defendant relies on the FDA's authority in the safety of the food supply (Doc. 34-1 at 30–31); the volume of recent cases being filed based on heavy metals in chocolate bars (*id.* at 31–32), and "the competing policy considerations that any solution will need to account for" (*id.* at 32).

In response, Plaintiffs explain that their claims "do[] not turn on food regulations" (Doc. 30 at 30–32); the FDA Initiative that Defendants rely on does not address labeling or safe levels of heavy metals in chocolate bars (*id.* at 30–31, 33); courts are competent to address state law claims that a reasonable consumer has been misled by packaging (*id.* at

---

[19] The Court notes for purposes of amending these claims that other decisions in this district assessing the sufficiency of implied warranty of merchantability claims in cases concerning heavy metals in chocolates have only found them sufficient when the plaintiffs alleged they did not conform to like products or contained high levels of heavy metals.  *Grausz*, 2024 WL 312688, *8–9 (finding the plaintiff failed to sufficiently plead the chocolates purchased were unfit for consumption or use as chocolates, but sufficiently pled they did not conform to like products in the trade); *Rodriguez*, 2023 WL 8115773, at *12–13 (finding the plaintiff sufficiently stated a claim because the complaint repeatedly alleged the chocolate products were unsafe for consumption because they contained high levels of heavy metals) (emphasis added); *see also Grausz*, 2023 WL 6206449, at *10–11 (dismissing this claim as to earlier version of the complaint because the plaintiff only asserted, without specific factual support, that the products at issue were unfit for human consumption and lacked allegations "showing that the chocolates purchased by [the] [p]laintiff were somehow distinct from those that are safe.").

32–33); and the FDA Initiative concerns heavy metals in baby food, not chocolate, and the FDA has set only generalized timelines to finalize a plan by 2025 (*id.* at 33–34).

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "It applies in 'limited circumstances' and is 'not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit.'" *Reid*, 780 F.3d at 966 (quoting *Clark*, 523 F.3d at 1114); *see also GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1263–64 (9th Cir. 2011) ("[T]he primary jurisdiction doctrine is not jurisdictional at all in the usual sense; 'it is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts.'") (quoting *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)). "When deciding whether to defer jurisdiction at the motion to dismiss stage, courts must 'apply a standard derived from Rule 12(b)(6) jurisprudence; whether the complaint plausibly asserts a claim that would not implicate the primary jurisdiction doctrine.'" *Liou v. Organifi, LLC*, 491 F. Supp. 3d 740, 751 (S.D. Cal. 2020) (quoting *County of Santa Clara v. Astra United States*, 588 F.3d 1237, 1251–52 (9th Cir. 2009) *rev'd on other grounds*, 563 U.S. 110 (2011)).

"In evaluating primary jurisdiction, [courts] consider '(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Syntek*, 307 F.3d at 781). Additionally, "courts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Id.* (citing *Reid*, 780 F.3d at 967–68 and *United States v. Phillip Morris USA, Inc.*, 686 F.3d 832, 838 (D.C. Cir. 2012)). "Under [Ninth Circuit] precedent, 'efficiency' is the 'deciding factor'

28

in whether to invoke primary jurisdiction." *Id.* (citing *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)).

The Court finds this case should not be dismissed or stayed under the primary jurisdiction doctrine.  Significantly here, Defendant does not address the delay that would result if this case were stayed until the FDA issues its anticipated guidance.  (Doc. 36 at 18 (only referring to the FDA Initiative guidance as "upcoming" and "pending" without addressing the delay in staying this litigation until the FDA's guidance is issued).)  Even assuming the guidance is applicable to the full scope of Plaintiffs' claims in this case and could properly be applied to dark chocolate, invoking the primary jurisdiction doctrine would cause significant delay in the resolution of Plaintiffs' claims.  *Rodriguez*, 2023 WL 8115773, at *14 ("Given the uncertainty of what action the FDA will take on lead and cadmium [through the FDA Initiative], and when, the Court declines to invoke the primary jurisdiction doctrine."); *In re Plum Baby Food Litig.*, 2022 WL 16640802, at *1 ("[U]ncertainty over how and when the FDA will act counsels against an indefinite stay."); *see also White v. Beech-Nut Nutrition Co.*, 23-220-cv, 2024 WL 194699, at *2 (2d Cir. Jan. 18, 2024) (vacating district court dismissal of case alleging presence of certain toxic metals in baby food under the primary jurisdiction doctrine because "[t]he FDA no longer expects to finalize lead action levels in April 2024 and has also revised its expected timeline for issuing draft guidance on proposed action levels for arsenic and cadmium.").

Additionally, Plaintiff's claims "present[] a typical consumer protection case within this Court's province because 'allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts." *Liou*, 491 F. Supp. 3d at 751 (quoting *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012)).  The primary jurisdiction doctrine does not "require[] that all claims within an agency's purview … be decided by the agency," rather it "'is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of particularly complicated issue that Congress has committed to a regulatory agency." *Syntek Semiconductor Co., Ltd.*, 307 F.3d at 780 (quoting *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172

(9th Cir. 2002)).  Cases concerning dark chocolate bar labeling may be on the rise of late, but cases challenging food product labels are not an issue of first impression, and these cases do not necessarily require the FDA's expertise.  *Grausz*, 2023 WL 6206449, at *1–2, 7 (finding "none of Plaintiff's claims require such FDA expertise, offer an issue of first impression, or offer an issue outside the conventional experience of judges" in case alleging the labels on certain dark chocolate bars omitted the presence of lead and cadmium).  *Rodriguez*, 2023 WL 8115773, at *1–2, 14 (finding "[t]he issues raised in Plaintiffs' claims 'do not clearly require the FDA's expertise or benefit from the uniformity in administration," and "[c]ourts can determine the viability of such claims" in cases concerning misleading labeling of dark chocolate bars); *Rodriguez v. Endangered Species Chocolate, LLC*, Case No. 23-cv-54-BTM-JLB, at 5 (S.D. Cal. March 18, 2024) (finding primary jurisdiction doctrine inapplicable in case alleging non-disclosure of lead in dark chocolate); *In re Plum Baby Food Litig.*, 2022 WL 16640802, at *1 ("The Court need not rely on the FDA's expertise or its potential guidance on action levels to determine whether [Defendant's] alleged omissions are actionable given the allegations of the operative complaint," i.e. allegations the defendant "failed to disclose that its baby food products contain (or have a risk of containing) heavy metals (namely arsenic, cadmium, lead, and mercury), and perchlorate.")

Defendant's motion to dismiss or stay Plaintiffs claims based on the primary jurisdiction doctrine is **<u>DENIED</u>**.

### D.    Standing

Defendant raises three standing challenges: (1) that Plaintiffs lack standing to bring claims on behalf of a nationwide class (Doc. 34-1 at 35–37); (2) that Plaintiffs lack standing to pursue injunctive relief (*id.* at 37–38); and (3) that Plaintiffs lack standing as to products they did not purchase (*id.* at 38–39).  Because most of Plaintiffs' claims have been dismissed, the Court only briefly addresses these issues.

3:2-cv-00061-RBM-KSC

### 1.    Standing for Nationwide Class Claims

Defendant argues Plaintiffs are improperly attempting to bring "common-law claims on behalf of a nationwide class, including putative class members in dozens of states with which they allege no connection."  (Doc. 34-1 at 36.)  Anticipating Plaintiffs' position, Defendant asserts this issue should not be deferred to class certification because the parties would waste resources on class discovery for 50 states when they only can pursue claims for "a small sliver" of them.  (*Id.* at 36.)

In response, Plaintiffs assert this is not a standing issue, but rather an issue to be raised through analysis of typicality and adequacy of representation at the class certification stage.  (Doc. 35 at 38–39.)  More specifically, Plaintiffs argue the Ninth Circuit has "warned against 'conflating standing and class certification.'"  (Doc. 35 at 39 (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1261–62 (9th Cir. 2015).)

"District courts in California are split on the issue of whether standing inquiries can be deferred until after class certification, but they note a trend that courts can address standing at the pleadings stage and dismiss claims brought under state laws that have no connection to the named plaintiff."  *Walcoff v. Innofoods USA, Inc.*, No. 22-CV-1485-MMA (AHG), 2023 WL 3262940, at *5–6 (S.D. Cal. May 4, 2023) (collecting cases and finding a plaintiff did not have standing to pursue claims under the laws of states where she did not reside or purchase products); *see also Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-2048-MMA-MDD, 2022 WL 2441303, at *10 (S.D. Cal. July 5, 2022) ("It is well within the Court's discretion to strike or dismiss Plaintiffs' nationwide class allegations at the pleadings stage [rather] than at class certification.").  Given the lack of clarity in Plaintiffs' claims for breach of the implied warranty of merchantability and unjust enrichment, as well as dismissal of most of Plaintiffs other claims with leave to amend, the Court declines to address Plaintiffs' standing to bring claims on behalf of a nationwide class.  However, the Court does not preclude Defendant from raising the issue in response to an amended pleading.

## 2.    Standing for Injunctive Relief

Defendant argues Plaintiffs lack standing to pursue injunctive relief because they have no possibility of future injury from the Products. (Doc. 34-1 at 37–38.) In Opposition, Plaintiffs explain that their allegations that they want to purchase an uncontaminated version of the Products in the future is sufficient for standing. (Doc. 35 at 40.)

"For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). In resolving a split among district courts, the Ninth Circuit settled the "split in favor of plaintiffs seeking injunctive relief" and held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969 (quoting *Summers*, 555 U.S. at 493). The court explained that "knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id.* at 969–70. The court explained that "[i]n some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the products advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70 (citations omitted). Here, the CAC includes allegations that Plaintiffs "would be willing to purchase Trader Joe's dark chocolate products in the future if [they] could be certain that they do not contain (or have a material risk of containing) Heavy Metals." (*Id.* ¶¶ 29, 32, 35, 38, 41, 44, 47, 50, 53, 59, 62.) This is sufficient at this stage.

Defendant's motion to dismiss based on lack of standing for injunctive relief is **DENIED**. *See In re Plum Baby Food Litig.*, 2022 WL 16640802, at *1 (denying dismissal based on lack of standing when plaintiffs alleged they would be willing to purchase baby food in the future "if [they] could be certain that they do not contain (or have a material risk of containing Heavy Metals or perchlorate.") (citing *Davidson*, 889 F.3d at 967); *see*

*also Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1127–28, 2021 WL 1698695 (S.D. Cal. 2021) (finding plaintiffs had standing based on being unable to rely on or check defendant's statements on its packaging and distinguishing from information available on the products).

### 3.    Standing as to Products Plaintiffs Did Not Purchase

Defendant argues Plaintiffs lack standing as to the Trader Joe's Swiss 72% Cacao Dark Chocolate Bar because, unlike the other seven bars identified, none of the Plaintiffs purchased this bar.  (Doc. 34-1 at 38.)  Defendant acknowledges that "some courts allow claims about unpurchased products if plaintiffs can demonstrate that those products are substantially similar to purchased products" but argues Plaintiffs have not pled "that the Swiss Bar is substantially similar to products they did purchase."  (*Id.* at 39.)  Defendant specifically points to the Swiss Bar being imported from a different country that other bars and explains this is significant because the CAC points to the point of origin, growing practices, and manufacturing practices having a role in the levels of heavy metals in chocolate.  (*Id.*)  In Opposition, Plaintiff points to the Swiss Bar being similar to the other Products because it is a dark chocolate bar, has the same omission regarding Heavy Metals, and that is has similar consumer expectations.  (Doc. 35 at 42–43.)

As the Court explained in a recent decision, "there is no controlling authority on whether plaintiffs have standing for products they did not purchase."  *Anderberg v. Hain Celestial Grp., Inc.*, 652 F. Supp. 3d 1232, 1240 (S.D. Cal. 2023), *reconsideration denied,* No. 3:21-CV-01794-RBM-SBC, 2023 WL 7311200 (S.D. Cal. Nov. 6, 2023).  "Some federal courts have held that a plaintiff lacks standing to assert such claims … and [o]thers 'hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.'"  *Id.* (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (other citations omitted).  Additionally, "[s]ome courts have held that the standing inquiry is more appropriately resolved on a motion for class certification."  *Id.* (citing *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984,

33

992–92 (E.D. Cal. 2012) and *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012)).  Here, while the Court recognizes there may be important distinctions in the origins of the chocolate bars, the Court finds the Swiss Bar is similar to the other Products in that they are all chocolate bars, they all have higher cacao percentages, they all lacked any disclosure of Heavy Metals, but they all contain Heavy Metals.  Accordingly, the Court declines to require dismissal of the Swiss Bar, although the issue may be revisited if the case proceeds to class certification.

## IV.   CONCLUSION

Plaintiffs UCL, FAL, CLRA, Breach of Implied Warranty of Merchantability, and Unjust Enrichment claims (claims one through five) are **DISMISSED with leave to amend**.  Assuming Plaintiffs amend, the amended complaint must be filed by **April 22, 2024**[20] and Defendant's response to the amended pleading must be filed by **May 13, 2024**.

**IT IS SO ORDERED.**

Dated:  March 27, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[20] After this Motion was briefed, the parties sought and obtained an extension of time for Defendant to respond to the Complaint in an additional related case, *Tarantino v. Trader Joe's Company*, Case No. 23-cv-853-RBM-KSC.  The parties in *Tarantino* sought an extension of Defendant's time to respond to the *Tarantino* complaint until after the Court ruled on the Motion to Dismiss in this consolidated case because the parties agreed that the *Tarantino* case should be consolidated with this action if this case was not dismissed with prejudice.  (Case No. 23-cv-853-RBM-KSC, Doc. 13.)  The Court granted the *Tarantino* parties' request to delay Defendant's response deadline and indicated the parties could file a joint motion to consolidate the *Tarantino* action with this one after the Court's ruling. (Case No. 23-cv-853-RBM-KSC, Doc. 14.)  If the parties seek to consolidate the *Tarantino* action, they should file a joint motion to consolidate in advance of the filing of an amended consolidated class action complaint.