# EXHIBIT 11

ORIGINAL

THE CARRICK LAW GROUP
A PROFESSIONAL CORPORATION
Roger Lane Carrick (State Bar No. 96342)
Arthur R. Angel (State Bar No. 214611)
350 S. Grand Avenue, Suite 2930
Los Angeles, California 90071-3406
Telephone: (213) 346-7930
Facsimile: (213) 346-7931

Attorney for Plaintiff
AMERICAN ENVIRONMENTAL SAFETY INSTITUTE

FILED
LOS ANGELES SUPERIOR COURT
MAY 0 8 2002
JOHN A. CLARKE, CLERK
BY STEPHANIE SIANEZ, DEPUTY

Case assigned to Judge James C. Chalfant

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

BC 273433

| | |
|---|---|
| AMERICAN ENVIRONMENTAL SAFETY INSTITUTE, a non-profit corporation, and PLAINTIFF DOES 1 through 100,000, inclusive, <br><br>Plaintiffs, <br><br>v. <br><br>MARS, INCORPORATED, a DELAWARE corporation; HERSHEY FOODS CORPORATION, a DELAWARE corporation; NESTLÉ USA, INC., a DELAWARE corporation; KRAFT FOODS NORTH AMERICA, INC., a DELAWARE corporation; ROCKY MOUNTAIN CHOCOLATE FACTORY, a COLORADO corporation; SEE'S CANDIES, INC., a CALIFORNIA corporation; and DEFENDANT DOES 1 through 200, inclusive, <br><br>Defendants. | Case No. _____ <br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES AND DAMAGES; DEMAND FOR JURY TRIAL** <br><br>Health & Safety Code §25249; <br>Bus. & Prof. Code §17200; <br>Bus. & Prof. Code §17500; <br>Civil Code §1709; <br>Civil Code §1710; <br>Common Law Tort Claims of Misrepresentation, Making Affirmative Misleading Statements, and Failure to Disclose Material Facts |

Plaintiff, by its undersigned counsel, for its complaint against Defendants alleges and states as follows:

### INTRODUCTION

1. This complaint seeks to hold the defendants Mars, Incorporated ("Mars"); Hershey Foods Corporation ("Hershey"); Nestlé USA, Inc. ("Nestlé"); and Kraft Foods North America, Inc. ("Kraft"); Rocky Mountain Chocolate Factory ("Rocky Mountain"); and See's

Candies, Inc. ("See's") (collectively "Defendants") accountable for various breaches of duties associated with their exposure of hundreds of thousands of California citizens to toxic lead and cadmium contained in various chocolate products manufactured and sold by Defendants.

2.  Defendants are large and nationally prominent manufacturers and sellers of chocolate products – candies, syrups, cocoas and others – throughout the United States and in specifically in California. These companies know that literally millions of their products are consumed each year in California (and elsewhere) by small children. In various ways (*e.g.* by animated advertising figures, toys, advertising campaign theme product placements in movies and the like) they seek to make children mass consumers of their chocolate products.

3.  These Defendants know, while the general public does not, that a number of their products contain lead and cadmium, which are poisonous metals. Consumers of Defendants' products, including small children, take these poisonous chemicals into their bodies each time they consume the Defendants' products that contain these toxins. While the quantities of these poisons in Defendants' products are small in an absolute sense, they are significant in relation to the total intake that children under six get from all food sources. More importantly, they are significant in their adverse impact on small children's health. They are also significant in relation to the warning-requiring levels set under the Safe Drinking Water and Toxic Enforcement Act of 1986, California Health & Safety Code Sec. 25247 *et seq.* (popularly known as Proposition 65).

4.  The State of California has officially determined that both lead and cadmium are known to cause reproductive damage and that lead and lead compounds are known to cause cancer, all by exposure through ingestion. Both lead and cadmium can cause various other adverse health effects, such as kidney damage, because each of these toxic metals accumulates in the body and adds to the total lead and cadmium stored in the body, which toxins derive from a variety of environmental and food sources.

5.  Because of the accumulating scientific research showing the toxic effects of lead, particularly to children at very low levels, there have been a number of programs aimed at reducing lead in the environment and in foods. The elimination of lead from gasoline and paints

and from soldered cans has dramatically reduced the average lead levels in blood. Notwithstanding the progress these efforts have achieved, efforts continue at all levels of government to reduce lead exposures whenever and however possible. One illustration is the enactment in California of the Childhood Lead Poisoning Prevention Act of 1991, Health & Safety Code §105275 *et seq.* The public health protection aims of this lawsuit are in accord with these efforts.

6.  Defendants have not provided, and have actively resisted, any disclosures or warnings that their products contain lead and cadmium, nor have they warned anyone of the health dangers posed by those substances' presence in their products. Defendants also have not done all they could to minimize the amounts of lead and cadmium in their products. For example, Defendants Mars, Hershey and Nestlé are among the largest and most prominent buyers and users of cacao or raw chocolate in the world. They have a substantial ability to bring about changes in growing, cultivation, storage, processing and quality control concerning chocolate products so as to reduce the lead and cadmium in the chocolate products sold to the public in California. The Defendants have resisted Plaintiff's efforts to get them to tighten the tolerances for lead and cadmium in their products, including for the raw ingredients from which their finished products are made. Major chocolate manufacturers, including Mars and Hershey, have spent considerable money and efforts on advertising and public relations campaigns which seek to minimize any health concerns that the public might have regarding their products (*e.g.* cavities, obesity, heart disease, etc.) and to extol the possible health benefits of chocolate (*e.g.* the fact that they contain antioxidants). Through trade groups such as the Chocolate Manufacturers Association ("CMA"), The American Cocoa Research Institute ("ACRI"), and the Chocolate Information Center ("CIC") – which is funded by Defendant Mars – major chocolate manufacturers have sought to control the research and information that is available concerning chocolate products and any related health issues in the same manner as the Tobacco Research Institute did for the tobacco industry.

7.  By knowingly and intentionally exposing unwitting California consumers to poisonous metals without proper warnings, Defendants have violated Proposition 65, which is

also known as The Safe Drinking Water and Toxic Enforcement Act of 1986, Health & Safety Code §25249.6; as well as the Unfair Competition Law, Business & Professions Code §§17200 and 17500, and also the Defendants' legal duties to disclose material facts so as not to mislead purchasers of their products.

8. This case is filed to remedy Defendants' violations of law in the public interest.

(a) Plaintiffs seek injunctive relief to compel Defendants to provide California purchasers and users of the products with clear and reasonable warnings regarding certain known health hazards of exposure to chemicals listed under Proposition 65 that are contained in certain chocolate products, as well as to disclose the presence and identity of such chemicals to purchasers of those products.

(b) Plaintiffs also seek civil penalties against Defendants for their violations of Prop. 65, as provided for by Health & Safety Code §25249.7(b), and restitution, disgorgement of profits and other remedies as provided for by Health & Safety Code §25249.7 and Business & Professions Code §§17203 and 17535.

**PARTIES**

9. Plaintiff American Environmental Safety Institute ("Institute") is a non-profit corporation dedicated to the investigation of environmental and public health hazards affecting children and adults. Based upon its scientific research, both alone and working with other experts, the Institute undertakes appropriate public education and/or legal action before state and federal government administrative agencies and the courts to correct violations of public policy and/or law. The Institute is located at 555 Bryant Street, Suite 218, Palo Alto, CA 94301, and was incorporated under the laws of the State of California in 1998. The Institute is a "person" within the meaning of California Health & Safety Code §25249.11(a),[1] and is bringing this enforcement action in the public interest pursuant to Health & Safety Code §25249.7(d) and on behalf of the general public pursuant to Business & Professions Code §17204.

10. Plaintiff DOES 1 through 100,000 are each a "person" under Health & Safety Code §25249.11, Business & Professions Code §§17204 and 17535. Plaintiff DOES 1 through

---

[1] All statutory references are to California Codes unless otherwise indicated.

1  100,000 are customers of Defendants who have purchased the products since May 1, 1998.
2  Their true names and identities are unknown to Plaintiff Institute at this time.

3  11.  The term "Plaintiffs," as used herein, is defined to mean Plaintiff Institute, as well
4  as all Plaintiff DOES referred to above.

5  12.  Defendant Mars, Incorporated, is a Delaware corporation with its headquarters
6  and principal place of business located at 6885 Elm Street, McLean, VA 22101.

7  13.  Defendant Mars is one of the largest privately held companies in the United
8  States, and is the second largest manufacturer (after Defendant Hershey) of chocolate products.
9  Mars does not publicly report its total sales. However, Mars' purported annual sales of only one
10 of its many products – M&M's, the world's most popular candy – reportedly are in excess of $2
11 billion. Mars also makes and sells Mars Bars, Milky Way, Snickers, and Dove Bars in milk
12 chocolate and dark chocolate varieties, and other chocolate products such as chocolate bunnies,
13 chocolate eggs and the like.

14 14.  Defendant Hershey Foods Corporation, is a Delaware corporation with its
15 headquarters and principal place of business located at 100 Crystal A Drive, Hershey, PA 17033.

16 15.  Defendant Hershey is the largest manufacturer of chocolate products in the United
17 States, with annual sales exceeding $4 billion. Hershey makes a wide variety of chocolate
18 products, including but not limited to Hershey Bars, Hershey Kisses, Reese's Peanut Butter
19 Cups, Kit Kat, Oh Henry, Peter Paul Almond Joy, Peter Paul Mounds, chocolate chips,
20 chocolate syrups, cocoas and other chocolate products such as chocolate bunnies and chocolate
21 eggs.

22 16.  Defendant Nestlé USA, Inc., is a Delaware corporation with its headquarters and
23 principal place of business located at 383 Main Avenue, 5th Floor, Norwalk, CT 06851.

24 17.  Defendant Nestlé is the world's largest food company, with annual sales
25 exceeding $50 billion. Nestlé is also one of the predominant manufacturers of chocolate
26 products in the United States, including but not limited to Nestlé Crunch, Baby Ruth,
27 Butterfinger, Willy Wonka Bars, cocoas (including, Nesquick and Nestlé Double Chocolate

1  Meltdown), semi-sweet morsels, Perugina Bittersweet Chocolate, chocolate drinks and various
2  others.

3      18.    Defendant Kraft Foods North America, Inc., is a Delaware corporation with its
4  headquarters and principal place of business located at Three Lakes Drive, Northfield, IL 60093.

5      19.    Defendant Kraft is an operating subsidiary of Phillip Morris Companies, Inc. and
6  the maker of a wide variety of food products.  Kraft's chocolate products include but are not
7  limited to Tobler chocolates, Jacobs Suchard chocolate, Baker's chocolate chips(in several
8  varieties), and Jell-O and Handi-Snacks chocolate puddings.

9      20.    Defendant Rocky Mountain Chocolate Factory, is a Colorado corporation with its
10  headquarters and principal place of business located at 265 Turner Drive, Durango, CO 81301.

11      21.    Defendant Rocky Mountain makes and sells a variety of chocolate candies
12  through retail outlets that are either company owned stores or franchises, including products that
13  relate to particular holidays, such as chocolate bunnies for Easter.  There are more than 30
14  Rocky Mountain Chocolate retail stores located in California.

15      22.    Defendant See's Candies, Inc., is a California corporation with its headquarters
16  and principal place of business located at 210 El Camino Real, South San Francisco, CA 94080.

17      23.    Defendant See's makes and sells directly, through extensive Internet sales as well
18  as through 200 retail outlets, more than 100 different varieties of chocolate products that are
19  packaged individually or in various boxed assortments.

20      24.    DEFENDANT DOES 1 through 200 are each a person in the course of doing
21  business within the meaning of Health & Safety Code §25249.11 and a person within the
22  meaning of Business & Professions Code §17201.  DEFENDANT DOES 1 through 200
23  manufacture and/or distribute chocolate products that contain lead and/or cadmium for sale
24  and/or use in California.

25      25.    The true names of DEFENDANT DOES 1 through 200 are unknown to Plaintiffs
26  at this time.  When their identities are ascertained, the complaint shall be amended to reflect their
27  true names.
28

26. The term "Defendants," as used herein is defined to mean all parties named, as well as all DEFENDANT DOES referred to herein.

## STATUTORY AND REGULATORY BACKGROUND

27. The People of the State of California declared, in adopting Proposition 65 in 1986 as an initiative statute, their right "[t]o be informed about exposures to chemicals that cause cancer, birth defects and other reproductive harm." Proposition 65, §1(b).

28. To effectuate this goal, Proposition 65 requires that individuals be provided with a "'clear and reasonable warning'" before being exposed to chemicals listed by the State of California as causing cancer or birth defects and other reproductive harm, unless the business responsible for the exposure can prove that such exposure is otherwise lawful. The Proposition 65 initiative, *inter alia*, included the Safe Drinking Water and Toxic Enforcement Act of 1986 (hereinafter "Prop. 65"), which is codified in Health & Safety ("H&S") Code §25249.6 *et seq.*, and states, in pertinent part:

> No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual.... H&S Code §25249.6.

29. Under Prop. 65, an exposure is "knowing" where the party responsible for such exposure has:

> knowledge of the fact that a discharge of, release of, or exposure to a chemical listed pursuant to Health & Safety Code §25249.8(a) is occurring. No knowledge that the discharge, release or exposure is unlawful is required. 22 California Code of Regulations §12201(d).

This knowledge may be either actual or constructive. Final Statement of Reasons, 22 California Code of Regulations, Section 12201.

30. On February 27, 1987, the Governor of the State of California officially listed lead as a chemical known to cause reproductive toxicity. Lead became subject to the Prop. 65 "clear and reasonable" reproductive toxicity warning requirement one year later, beginning on February 27, 1988. 22 California Code of Regulations §12000; Health & Safety Code §25249.5 *et seq.*

31. On October 1, 1992, the State of California officially listed lead and lead compounds (collectively referred to herein as "Lead") as chemicals known to cause cancer. Lead became subject to the Prop. 65 "clear and reasonable" carcinogen warning one year later beginning on October 1, 1993. 22 California Code of Regulations §12000; Health & Safety Code §25249.5 et seq.

32. Lead, even in small doses, is well known to cause damage to both the male and female reproductive systems. Agency For Toxic Substances and Disease Registry ("ATSDR"), *ToxFAQs: Lead*, 1993 and *Toxicological Profile*, 1999. Prenatal exposure to Lead can have harmful developmental effects, including premature births, smaller babies, decreased mental ability in the infant, learning difficulties, and reduced growth in young children, as well as teratogenic effects including brain damage and abortion. *Id*. Childhood exposure to Lead can also have harmful effects, including neurological damage and cancer. *Id*.

33. On May 1, 1997, the State of California officially listed cadmium ("Cadmium") as a chemical known to cause reproductive toxicity. Cadmium became subject to the Prop. 65 "clear and reasonable" reproductive toxicity warning one year later, beginning on May 1, 1998. 22 California Code of Regulations §12000; Health & Safety Code §25249.5 et seq.

34. Any person has standing to enforce violations of Prop. 65 provided that such person has supplied the requisite public enforcers with a valid 60-Day Notice of Violation and such public enforcers are not diligently prosecuting the action within their respective jurisdictions within such time. Health & Safety Code §25249.7(d).

35. Proposition 65 provides for injunctive relief and civil penalties up to $2,500 per day for each violation of Prop. 65. An action for injunctive relief, restitution and disgorgement of profits, among other remedies, is also specifically authorized under Business & Professions Code §§17203 and 17535.

36. Health & Safety Code §25249.13 provides that "Nothing in this chapter shall alter or diminish any legal obligation otherwise required in common law or by statute or regulation, and nothing in this chapter shall create or enlarge any defense in any action to enforce such legal

obligation. Penalties and sanctions imposed under this chapter shall be in addition to any penalties or sanctions otherwise prescribed by law."

37. Business & Professions Code §17205 provides that "the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state."

38. Defendants' failure to provide proper warnings in violation of Prop. 65 constitutes an act of unfair competition that may be enjoined by the Court pursuant to Health & Safety Code §25249.7(a) and Business & Professions Code §§17203 and 17535.

## JURISDICTION AND VENUE

39. The Court has jurisdiction over this action pursuant to Health and Safety Code §25249.7(a) and Business & Professions Code §§17203, 17204 and 17535, which individually and collectively allow enforcement in any court of competent jurisdiction. The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all cases except those given by statute to other trial courts." The statutes under which this action is brought do not grant jurisdiction to any other trial court.

40. This Court has jurisdiction over Defendants because, based on information and belief, each is a corporation that has sufficient minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself of the California market either through the distribution or sale of the products in the state of California or by having a manufacturing, distribution or other facility located in California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

41. Venue is proper in the Los Angeles Superior Court because substantial numbers of the violations at issue arise in the County of Los Angeles.

## FACTUAL BACKGROUND

42. Various chocolate products manufactured and sold by the Defendants in and for use in California contain Lead and Cadmium at levels above those permitted by Proposition 65 (the "products").

43. The products at issue are all sold to be ingested. Defendants know, foresee, and intend that their products be ingested, thus exposing users to the Lead and Cadmium contained in Defendants' products.

44. Since February 27, 1988, Defendants have failed, and continue to fail, to provide clear and reasonable warnings regarding the reproductive toxicity, carcinogenicity or any other adverse health effects caused by exposure to Lead from their products. Moreover, Defendants have failed and continue to fail to disclose the facts that their products contain Lead and will expose people to Lead.

45. Defendants have, since May 1, 1998, failed and continue to fail, to provide clear and reasonable warnings regarding the reproductive toxicity or any of the other adverse health effects caused by exposure to Cadmium from use of their products. Moreover, Defendants have failed, and continue to fail, to disclose the fact that their products contain Cadmium and expose Product users to Cadmium.

46. Defendants know or reasonably should know that their failure to disclose the presence of Lead and Cadmium in the products, and that their failure to warn of their adverse health effects, is likely to deceive and is deceiving the public in California regarding the nature and safety of Defendants' products.

47. On or about March 5, 2001, September 18, 2001 and April 3, 2002, the Institute provided the required 60-Day "Notice of Violation of Proposition 65" (the "Notices") to the California Attorney General, the District Attorneys of every county in California, the City Attorneys of every California city with a population greater than 750,000, and to each named Defendant and complied with the Notice requirements. None of the public enforcer recipients of said Notices have commenced any legal actions against these Defendants.

48. Each of the Defendants is a "person in the course of doing business," within the meaning of Health & Safety Code §25249.11 and a "person" within the meaning of Business & Professions Code §17201.

///

///

# FIRST CAUSE OF ACTION

### (Violations Of Health & Safety Code §25249.6 et seq.
### By All Defendants Regarding Lead As A Reproductive Toxicant)

49. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 48, inclusive.

50. Defendants have failed, and continue to fail, to provide clear and reasonable warning regarding the reproductive toxicity of Lead to users of the products.

51. By committing the acts alleged above, Defendants have, since February 27, 1988, violated Prop. 65 by knowingly and intentionally exposing individuals to Lead without first giving them clear and reasonable warning regarding the reproductive toxicity of Lead.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

# SECOND CAUSE OF ACTION

### (Violations Of Health & Safety Code §25249.6 et seq.
### By All Defendants Regarding Cadmium As A Reproductive Toxicant)

52. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 51, inclusive.

53. Defendants know that users of the products are exposed to Cadmium through the reasonably foreseeable use of the products. Defendants intend that the products be used in a manner that results in users of the products being exposed to the Cadmium in the products.

54. Defendants have failed, and continue to fail, to provide clear and reasonable warning regarding the reproductive toxicity of Cadmium to users of the products.

55. By committing the acts alleged above, Defendants have, since May 1, 1998, violated Prop. 65 by knowingly and intentionally exposing individuals to Cadmium without first giving them clear and reasonable warning regarding the reproductive toxicity of Cadmium.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

///

///

///

## THIRD CAUSE OF ACTION

**(Violations Of Business & Professions Code §17200 *et seq.*
Based On Unlawful Acts Of Knowingly And Intentionally
Exposing Individuals To Lead And Cadmium, Violating Health & Safety
Code §25249.6 and Business & Professions Code §17500, By All Defendants)**

56. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 55, inclusive.

57. Since February 27, 1988, Defendants have engaged in conduct which violates Health & Safety Code §25249.6 *et seq.* The Defendants' conduct includes knowingly and intentionally exposing individuals to Lead and/or Cadmium contained in their products without first providing such individuals with a clear and reasonable warning regarding the carcinogenicity and reproductive toxicity of Lead and Cadmium.

58. By committing the acts alleged above, Defendants have engaged in an unlawful business practice that constitutes unfair competition within the meaning of Business & Professions Code §17200.

59. As detailed more fully below, Defendants have also committed violations of Business & Professions Code §17500 *et seq.* by knowingly disseminating false and misleading advertising, which constitute separate and cumulative acts of unfair competition pursuant to Business & Professions Code §17200.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

## FOURTH CAUSE OF ACTION

**(Violations Of Business & Professions Code §17200 *et seq.*
Based On Violations Of Health & Safety Code §110545
(Adulterated Products), By All Defendants)**

60. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 59, inclusive.

61. California Health & Safety Code section 110545 provides the following:

> "Any food is adulterated if it bears or contains any poisonous or deleterious substance that may render it injurious to health of man

or any animal that may consume it. The food is not considered adulterated if the substance is a naturally occurring substance and if the quantity of the substance in the food does not render it injurious to health."

62. The various chocolate products at issue in this case that contain Lead and Cadmium, poisonous chemicals, are each an adulterated food product, in that the Governor of the State of California has determined that the toxic metals Lead and Cadmium each cause reproductive toxicity, and thus are injurious to the health of humans.

63. Plaintiff is informed and believes that the Lead and Cadmium contained in the products are injurious to human health in violation of California Health & Safety Code section 110545.

64. By committing the acts alleged above in violation of California Health & Safety Code section 110545, Defendants have been and continue to be engaged in unlawful and/or unfair business practices within the meaning of California Business & Professions Code section 17200 *et seq.*

65. By committing the acts alleged above in violation of California Health & Safety Code section 110545, Defendants have been and continue to be engaged in unlawful and/or unfair business practices within the meaning of California Business & Professions Code section 17203 *et seq.*

66. A request for restitution under California's Unlawful Competition Law for disgorgement of unlawfully earned profits is specifically authorized by California Business & Professions Code section 17200 *et seq.*

67. Injunctive relief under California's Unlawful Competition Law is specifically authorized under California Business & Professions Code section 17203 and 17204 to prevent the continuation of unlawful and/or unfair business practices.

68. Continuing commission of the acts alleged above by Defendants will irreparably harm Plaintiff and the general public of California, for which harm they have no plain, speedy or adequate remedy at law.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

## FIFTH CAUSE OF ACTION

### (Violations Of Business & Professions Code §17200 *et seq.*
### Based On Unfair Acts Of Knowingly, Intentionally And Unnecessarily
### Exposing Individuals To Lead And Cadmium, By All Defendants)

69.  Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 68, inclusive.

70.  Defendants placed their products into the stream of commerce with knowledge that, through the intended use of such products, individuals – including pregnant women and children – will be exposed to Lead and/or Cadmium.

71.  Defendants know or should know that Lead and/or Cadmium are known to cause cancer and/or birth defects or other reproductive harm. Defendants know or should know that Lead is also known to cause other adverse health effects including, but not limited to, learning disabilities, behavioral problems, and at very high levels, seizures, coma and even death, and that Cadmium is also known to cause kidney damage. The fact that the various products sold by the Defendants contain Lead and/or Cadmium and the health risks associated with the presence of those substances are material facts which consumers are entitled to know before they purchase and use the products.

72.  Nevertheless, Defendants have failed to inform consumers and users of the products, including the parents of young children, of these health hazards. Moreover, Defendants have failed to even disclose that Lead and/or Cadmium are contained in the products.

73.  Defendants have further acted to conceal and suppress the information that their products contain Lead and Cadmium and the health dangers from those substances by engaging in advertising and public relations campaigns designed to shift the public's attention away from such health dangers. Defendants have funded and disseminated research that ignores the Lead and Cadmium health risks and instead focuses consumers on taste, aesthetic issues and other apparent beneficial effects of chocolate consumption. Indeed, the "Chocolate Information Center" is financially backed by Defendant Mars.

74. The conduct described above offends established public policy, is immoral and unethical. Consequently, Defendants have engaged in and continue to engage in unfair acts pursuant to Business & Professions Code §17200 *et seq.*

75. By committing the acts alleged above, Defendants have engaged in unfair business practices which constitute unfair competition within the meaning of Business & Professions Code §17200 *et seq.*

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

## SIXTH CAUSE OF ACTION

**(Violations Of Business & Professions Code §17200 *et seq.* Based On Fraudulent Acts Of Deceptively Marketing Lead And Cadmium-Containing Products With No Warning Or Even Disclosure Regarding Presence Of Such Chemicals In The Products, By All Defendants)**

76. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 75, inclusive.

77. Defendants' failure to disclose the presence of Lead and/or Cadmium in the products to users of the products is likely to deceive the general public in California regarding the presence of Lead and/or Cadmium in the products. Moreover, Defendants' failure to inform users of the products that such products contain Lead and/or Cadmium, chemicals known to cause cancer, reproductive harm and other adverse health effects, is likely to deceive the general public in California regarding the nature and safety of Defendants' products.

78. By committing the acts alleged above, Defendants have engaged in fraudulent business practices that constitute unfair competition within the meaning of Business & Professions Code §17200.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

///

///

///

///

## SEVENTH CAUSE OF ACTION

**(Violations Of Business & Professions Code §§17200 And 17500 *et seq.***

**Predicated On Violations Of Civil Code §§1709 And 1710:**

**Negligent Misrepresentation, By All Defendants)**

79. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 78, inclusive.

80. The Lead and Cadmium in Defendants' products creates significant risks of reproductive toxicity and kidney damage for adults and even greater risks for children. This health risk from developmental toxicity and kidney damage posed by the Lead and Cadmium in Defendants' products is a material fact that Defendants have failed to disclose, along with the fact that Defendants' products contain Lead and Cadmium.

81. Defendants have negligently and carelessly failed to fulfill their legal duty to disclose material facts necessary to avoid deceiving consumers in violation of Civil Code §§1709 and 1710.

82. Accordingly, Defendants have also violated Business & Professions Code §§17200's proscription against engaging in unlawful business practices.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

## EIGHTH CAUSE OF ACTION

**(Violations Of Civil Code §§1709 And 1710:**

**Negligent Misrepresentation, By All Defendants)**

83. Plaintiffs reallege and incorporate by reference as if specifically set forth herein Paragraphs 1 through 82, inclusive.

84. Defendant's failure to disclose the presence of Lead and Cadmium, or the health risks they pose, in their products' packaging, advertising and promotional materials was and is deceptive and in violation of Civil Code §§1709 and 1710. Purchasers of Defendant's products have been damaged by Defendant's non-disclosure, as well as by Defendants' efforts to portray their products as safe and healthful.

Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants as follows:

**On The First and Second Causes of Action (Proposition 65):**

1. That the Court, pursuant to Health & Safety Code §25249.7(a), preliminarily and permanently enjoin Defendants from offering the products for sale without disclosing the presence of Lead and/or Cadmium in such products in a manner that complies with the Proposition 65 statutory disclosure requirements, as Plaintiff shall specify in further application to the Court;

**On The Third Through Seventh Causes Of Action (Unfair Competition Law and False Advertising Law):**

2. That the Court, pursuant to Business & Professions Code §§17203 and 17535, preliminarily and permanently enjoin Defendants from offering the products for sale without disclosing the presence of Lead and/or Cadmium in such products in a manner that complies with these statutory requirements, as Plaintiff shall specify in further application to the Court;

**On The Fourth Cause Of Action (Unfair Competition Law):**

3. That the Court, pursuant to Business & Professions Code §§17203 and 17535, preliminarily and permanently enjoin Defendants from offering the products for sale until this Court determines that their products are no longer "adulterated" with in the meaning of California Health & Safety Code section 110545, as Plaintiff shall specify in further application to the Court;

**On The First and Second Causes of Action (Proposition 65):**

4. That the Court, pursuant to Health & Safety Code §25249.7(b), assess civil penalties against each of the Defendants in the amount of $2,500.00 per day for each violation of Proposition 65 since March 5, 1997, as established by Plaintiff;

///

///

///

///

**On the Third Through Seventh Causes of Action (Unfair Competition Law and False Advertising Law):**

5. That the Court order each Defendant to notify each and every customer of such Defendant who purchased the products since March 5, 1997, and thereby give such customers an opportunity to obtain restitution from such Defendant;

6. That the Court order the Defendants to pay restitution, disgorge illicit profits and be subject to such other relief as may be necessary to restore any purchaser of the products any money or property, real or personal, which may have been acquired by means of the Defendants' acts alleged herein that occurred after March 5, 1997;

**On the Eighth Cause of Action (Negligent Misrepresentation):**

7. That the Defendants be held liable for damages based upon the amounts paid for their products, in an amount to be determined at trial.

**On All Causes of Action:**

8. For costs of this action;

9. For attorney's fees and costs;

10. For interest according to law;

11. For such other and further relief as this Court may deem just and proper.

Dated: May 8, 2002

Respectfully submitted,

THE CARRICK LAW GROUP, PC
ROGER LANE CARRICK
ARTHUR R. ANGEL

By _____
ARTHUR R. ANGEL
Attorney for Plaintiff
American Environmental Safety Institute

///
///
///

K:\00102-003\Pleadings\AESI v. Mars Complaint4.doc
Printed on Recycled Paper

18

COMPLAINT FOR INJUNCTIVE
RELIEF AND CIVIL PENALTIES

TJID 20240823_0000314

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on each and every cause of action.

Dated: May 8, 2002

Respectfully submitted,

THE CARRICK LAW GROUP, PC
ROGER LANE CARRICK
ARTHUR R. ANGEL

By _____
ARTHUR R. ANGEL
Attorney for Plaintiff
American Environmental Safety Institute