# EXHIBIT 13

**F I L E D**
Superior Court of California
County of San Francisco

FEB 15 2018

CLERK OF THE COURT
BY: _____ Deputy Clerk

1  ELLISON FOLK (State Bar No. 149232)
LAURA D. BEATON (State Bar No. 294466)
2  SHUTE, MIHALY & WEINBERGER LLP
396 Hayes Street
3  San Francisco, California 94102
Telephone:    (415) 552-7272
4  Facsimile:    (415) 552-5816
Folk@smwlaw.com
5  Beaton@smwlaw.com

6  DANIELLE R. FUGERE (State Bar No. 160873)
AS YOU SOW
7  1611 Telegraph Avenue, Suite 1450
Oakland, California 94612
8  Telephone:    (510) 735-8141
Dfugere@asyousow.org
9
Attorneys for Plaintiff
10  AS YOU SOW

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                  **COUNTY OF SAN FRANCISCO**

13  AS YOU SOW, a California Non-Profit        Case No. CGC-15-548791
Public Benefit Corporation,
14                                            ~~[PROPOSED] ORDER GRANTING~~
                Plaintiff,                     ~~MOTION TO ENTER~~ CONSENT
15                                             JUDGMENT
16        v.
                                              Date:    February 14, 2018
17  TRADER JOE'S COMPANY, et al.,             Time:    ~~2:00 p.m.~~  3:00 PM
                                              Dept.:   504
18                Defendants.                 Judge:   Hon. Suzanne R. Bolanos

19                                            Complaint Filed:  November 3, 2015
                                              Trial Date:       April 9, 2018
20

21

22

23

24

25

26

27

28

1    The motion of Plaintiff As You Sow came on for hearing on February 14, 2018. Having

2    considered all papers filed and arguments presented by the parties and Abbott Laboratories Inc.,

3    the Court finds that the Consent Judgment, which has been modified by the parties to substitute

4    Exhibit D* for its original Exhibit D, meets the requirements of Health & Safety Code Section

5    25249.7 (f)(4) and is in the public interest.

6    IT IS HEREBY ORDERED ~~that the motion to approve and enter~~ the Consent Judgment

7    as modified is GRANTED. ~~The clerk shall therefore proceed to enter the Consent Judgment in~~

8    ~~the form attached hereto as Exhibit 1.~~

9    DATED: _2/15_____, 2018

10

11    _____

12    Hon. Suzanne R. Bolanos
       Judge of the Superior Court

13    971633.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1  ELLISON FOLK (State Bar No. 149232)
   LAURA D. BEATON (State Bar No. 294466)
2  SHUTE, MIHALY & WEINBERGER LLP
   396 Hayes Street
3  San Francisco, California 94102
   Telephone:   (415) 552-7272
4  Facsimile:   (415) 552-5816
   Folk@smwlaw.com
5  Beaton@smwlaw.com

6  DANIELLE R. FUGERE (State Bar No. 160873)
   AS YOU SOW
7  1611 Telegraph Avenue, Suite 1450
   Oakland, California  94612
8  Telephone:   (510) 735-8141
   Dfugere@asyousow.org
9
   Attorneys for Plaintiff
10 AS YOU SOW

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                       COUNTY OF SAN FRANCISCO

14 AS YOU SOW, a California Non-Profit          Case No. CGC-15-548791
   Public Benefit Corporation,
15                                              CONSENT JUDGMENT
                   Plaintiff,                   (as modified to contain Exhibit D* in
16                                              lieu of prior Exhibit D)
           v.
17
   TRADER JOE'S COMPANY, and DOES
18 1 through 10, inclusive,
                                                Complaint Filed:  November 3, 2015
19                                              Trial Date:       April 9, 2018
                   Defendants.
20

21

22

23

24

25

26

27

28

TJID 20240823_0000333

## 1. INTRODUCTION

1.1     As You Sow ("AYS") is a non-profit corporation dedicated to, among other causes, the protection of the environment, the promotion of human health, the improvement of worker and consumer rights, environmental education, and corporate accountability.  AYS is based in Oakland, California and is incorporated under the laws of the State of California.

1.2     Between July 18, 2014 and November 10, 2017, AYS sent Proposition 65 (California Health & Safety Code Sections 25249.5, et seq.) 60-day Notices of Violation ("Notices") to various companies, including all of those companies identified as "Initial Settling Defendants" (as defined in Section 2) that are listed in **Exhibit A**.  The Notices were also sent by AYS to all relevant public enforcers, as required by Health & Safety Code Section 25249.7(d).

1.3     In the Notices, AYS states that that the Chocolate Products manufactured, distributed, and/or sold by the noticed companies, which are offered for sale to California consumers, and/or which are used in products offered for sale to consumers in California, cause exposures to lead and/or cadmium and that such Chocolate Products require warnings under Health and Safety Code Section 25249.6.

1.4     After AYS's October 24, 2017 Notice has run its course, and assuming no authorized public prosecutor has filed a superseding claim, AYS individually and on behalf of the public interest, will amend a Proposition 65 enforcement action concerning lead and cadmium in the Chocolate Products that it had previously filed in the Superior Court of the State of California for the County of San Francisco, Case No. CGC-15-548791 (the "Action") in contemplation of a motion for approval and entry of this Consent Judgment.  The amended complaint filed in the Action asserted a cause of action against each of the Initial Settling Defendants for the alleged failure to warn under Proposition 65 on the basis of the allegations contained in the Notices.

1.5     Each Initial Settling Defendant (as defined in Section 2 and listed on **Exhibit A**) employs ten or more employees and manufactures, imports, distributes, sells, and/or directly or indirectly offers for sale in California Chocolate Products or has done so in the past.  Each Initial

2

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1  Settling Defendant represents that, as of the date it executes this Consent Judgment, no public

2  enforcer is diligently prosecuting a Proposition 65 action against it related to lead or cadmium in

3  its Chocolate Products.

4      1.6    For the purpose of avoiding prolonged and costly litigation concerning the claims

5  and defenses in this Action, the Parties (as defined in Section 2) enter into this Consent

6  Judgment as a full settlement of all Proposition 65 claims that were raised in the Action, or

7  which could have been raised in the Action, based on the facts alleged therein.  By execution of

8  this Consent Judgment, Settling Defendants do not admit any violation of Proposition 65 or any

9  other law.  Nothing in this Consent Judgment shall be construed as an admission by the Parties

10  of any fact, finding, conclusion, issue of law, or violation of law.  However, this paragraph shall

11  not diminish or affect the responsibilities and duties of the Parties under this Consent Judgment.

12  **2. DEFINITIONS**

13      2.1    "Chocolate Product" means chocolate candy; chocolate bars, pieces, chips,

14  beverages, and chocolate-based confections with or without inclusions; cocoa nibs and cocoa

15  powder; chocolate and cacao-based compounds in any form; and other products derived

16  primarily (i.e., in excess of 50%) from cacao.  Chocolate Products include the preceding as sold

17  on a standalone basis and/or as sold to be used as ingredients in other foods into which they are

18  incorporated.

19      2.2    "Compliance Date" means one year following the Effective Date.

20      2.3    "Consensus Basis" means a creative and dynamic way of reaching agreement

21  between all members of a group.  Instead of simply voting for an item and having the majority

22  of the group dictate the outcome, a group using consensus is committed to finding solutions that

23  each member of the group actively supports, or at least can live with and that all opinions, ideas

24  and concerns are taken into account.  A Consensus Basis does not reflect compromise or

25  unanimity – it aims to go further by weaving together everyone's best ideas and key concerns.  It

26  is an acceptable resolution, one that can be supported, even if not the "favorite" of each

27  individual.  Multiple concerns and information shall be shared until the sense of the group is

28  clear.  Ideas and solutions belong to the group; no names are recorded.  The group as a whole is

3

1 | responsible for the decision and the decision belongs to the group.  The goal is unity, not
2 | unanimity.

3 |     2.4    "Covered Product" means a Chocolate Product that is manufactured, imported,
4 | distributed, or sold by a Settling Defendant, including, but not limited to, the exemplar
5 | Chocolate Product identified in a 60-Day Notice of Violation served on the Settling Defendant
6 | by AYS.

7 |     2.5    "Effective Date" means the date on which this Consent Judgment is entered by the
8 | Court.

9 |     2.6    "Feasible" means capable of being accomplished in a successful manner within a
10 | reasonable period of time, taking into account public health,  and economic, environmental,
11 | social, and technological factors.  In considering whether an action or performance level is
12 | Feasible, consideration shall be given, among other things, to scaling as to the size and resources
13 | of the potential implementing enterprise involved, the implementing enterprise's place and role
14 | within the chain of commerce, the prior demonstration of the viability of the concept or
15 | technology at issue at both the research and actual commercial application scale, and the nature
16 | of the issue being addressed.

17 |     2.7    "Lot" means all units of a given Chocolate Product bearing the same lot number,
18 | best-by, or sell-by date.

19 |     2.8    "Opt-In Settling Defendants" refers to Settling Defendants that join into this
20 | Consent Judgment pursuant to the procedure established in Section 7.

21 |     2.9    "Opt-In Stipulation" means a Stipulation for Entry of Judgment in the form
22 | attached hereto as **Exhibit B**, for execution by a prospective Opt-In Settling Defendant pursuant
23 | to the procedure established in Section 7.

24 |     2.10    "Parties" means AYS and Settling Defendants taken together; a "Party" means As
25 | You Sow or any particular Settling Defendant taken individually.

26 |     2.11    "Settling Defendant" means a defendant who is a Party to this Consent Judgment
27 | at the time it is entered, or who opts in to this Consent Judgment any time after its entry
28 | pursuant to the procedure established in Section 7.  The former are also specifically referred to

herein as "Initial Settling Defendants" (i.e., the companies specifically listed on **Exhibit A**) and the latter are also specifically referred to herein as "Opt-In Settling Defendants."

## 3. INVESTIGATION REGARDING SOURCES AND POTENTIAL FOR REDUCTION OF LEAD AND CADMIUM IN CHOCOLATE PRODUCTS

3.1 **Overview.** An expert committee ("Committee") shall be formed to investigate and report on the predominant sources of lead and cadmium in Chocolate Products, and to make findings and recommendations on Feasible measures that may be taken, if any, to meaningfully reduce levels of lead and cadmium found in Chocolate Products. The Committee's charges include:

3.1.1. Researching and identifying the sources of lead and cadmium levels in chocolate products, including both natural and anthropogenic sources ("Root Cause Phase");

3.1.2. Identifying and making recommendations regarding Feasible means to reduce lead and cadmium levels over the nearer and longer term, such as through agricultural practices, manufacturing practices, and handling practices ("Reduction Recommendations Phase");

3.1.3. Evaluating and making recommendations as to whether, and, if so, when, the lead and cadmium concentration levels in Chocolate Products that trigger Proposition 65 warnings shall be modified from the "drop down" levels described in Sections 6.2.1 and 6.2.2 of this Consent Judgment based on Feasible means to reduce lead and cadmium levels over time ("Warning Trigger Phase");

3.1.4. Preparing and submitting a final report with all Consensus Based Committee findings and recommendations, including an appendix setting forth significant areas where consensus could not be achieved, an appendix setting forth any significant conflicting opinions on aspects of a Consensus Based finding where they exist, and an appendix containing complete citations for all source materials used ("Final Report Phase"); and

3.1.5. Providing an oral presentation to the Parties to address follow up questions or inquiries regarding the final report at a Committee member's discretion.

5

TJID 20240823_0000337

1    3.2    **Formation and Direction of the Committee.** The Committee shall consist of four

2   subject matter experts ("SMEs") and be supported by a retained project manager ("Project

3   Manager").  Within one hundred and twenty (120) days of the Effective Date, AYS, on the one

4   hand, and the Initial Settling Defendants, on the other hand, shall each appoint a qualified SME

5   to the Committee and shall jointly agree upon and appoint a third and fourth SME to the

6   Committee.  These four individuals shall form the Committee.

7         3.2.1.  SMEs shall be selected based on the following criteria:

8              (a)    One SME selected by the Chocolate Industry with a relevant

9   background and expertise.

10             (b)    One SME selected by As You Sow with a relevant background and

11  expertise.

12             (c)    One additional SME with potential cadmium and cocoa expertise as

13  mutually identified with relevant backgrounds and expertise.

14             (d)    One additional SME with potential lead and cocoa expertise as

15  mutually identified with relevant background and expertise.

16         3.2.2.  In addition to the SMEs, one Project Manager shall be mutually identified

17  with relevant project management experience, who will provide administrative and logistical

18  support to the Committee, facilitate discussion among the Committee members, and help

19  manage its budget and keep it organized and on schedule in addressing the requirements and

20  timelines set forth in this Consent Judgment.

21         3.2.3.  In the event a member of the Committee can no longer perform their duties,

22  a replacement member shall be appointed by the original nominating Party or Parties.  AYS and

23  the Initial Settling Defendants shall jointly agree on the replacement for a member who was

24  originally jointly appointed.  The Party or Parties appointing a replacement member shall first

25  confer with the remaining members of the Committee concerning potential replacement

26  nominees and solicit their input on appropriate candidates and qualifications.  In the event of a

27  resignation of the retained project manager, AYS and the Initial Settling Defendants shall jointly

28  agree upon and arrange for the prompt retention of a replacement.

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1          3.2.4.  Within one hundred fifty (150) days of the Effective Date, AYS and the

2  Initial Settling Defendants, or a representative acting on the Initial Settling Defendants'

3  collective behalves, shall hold a kickoff meeting with the Committee and the retained project

4  manager to review the Scope of Work attached hereto as **Exhibit C**, which shall be provided to

5  the Committee members and the Project Manager along with a copy of this Consent Judgment

6  upon the Committee's formation.  The Scope of Work shall, following clarifications or

7  modifications agreed upon by AYS and the Initial Settling Defendants made at or after the

8  kickoff meeting, guide the Committee's investigation and be binding on the Parties.

9      3.3    **Operation of Committee.**

10          3.3.1.  The Committee shall operate on a Consensus Basis and within the budget

11  agreed upon by the Parties.  It shall accept reasonable and relevant input from any willing source

12  available and evaluate its content based on professional standards and judgment consistent with

13  the Committee members' prior experience.  The preliminary allocation of this budget to

14  different aspects of the Committee's work is set forth below, but it and the overall level of

15  expenditure will be subject to adjustment by mutual agreement of AYS and the Initial Settling

16  Defendants based on a request received from the Project Manager at or following the kickoff

17  meeting referred to in Section 3.2.4.  In no event shall the budget, inclusive of the cost of the

18  Project Manager, exceed the aggregate cap agreed upon by the Parties under Section 8.5 of this

19  Consent Judgment.

20          3.3.2.  Approximately three quarters (3/4ths) of the Committee's overall budget

21  shall be devoted to its investigative and assessment activities (including as supported by the

22  Project Manager), and one quarter (1/4th) of the Committee's overall budget shall be devoted to

23  formulating its findings and preparing the final report, unless the Committee determines that

24  another allocation of funds is more appropriate, and the Project Manager informs and obtains the

25  approval of AYS and the Initial Settling Defendants of such a revised allocation.  The

26  Committee shall complete the Root Cause Phase within nine (9) months from the date of the

27  kickoff meeting established pursuant to Section 3.2.4; the Committee shall complete the

28  Reduction Recommendations Phase within eighteen (18) months from the date of the kickoff

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

7

1  meeting established pursuant to Section 3.2.4.  Through the Project Manager, the Committee

2  shall provide AYS and the Initial Settling Defendants with brief quarterly progress reports

3  concerning the status of the relevant investigation and the overall budget and identify any

4  significant obstacles that may have arisen relative to timely completion of the Committee's

5  work.  The deadlines set forth in this Section 3.3.2 may be modified with the agreement of both

6  AYS and the Initial Settling Defendants based on a significant obstacle to timely completion that

7  has been identified in a progress report or otherwise presented by Project Manager due to

8  unforeseeable circumstances or other reasonable and justifiable need.

9         3.3.3.  Members of the Committee and the Project Manager shall sign a

10  confidentiality agreement concerning their work undertaken pursuant to this Consent Judgment

11  and shall not be subject to deposition concerning such work.  Nor shall internal working

12  documents created by members of the Committee or the Project Manager during the course of

13  their work pursuant to this Consent Judgment, such as notes and drafts reflecting their mental

14  impressions, be discoverable or otherwise disclosed.  Documents the Committee or its members

15  have obtained from public sources that members of the Committee have relied on to reach the

16  recommendations they provide pursuant to Section 3.3.4 are not subject to the discovery

17  restrictions of this Section. The final report the Committee issues pursuant to Section 3.3.4 shall

18  likewise be subject to disclosure and may be made publically available by any Party, as long as

19  any information that is subject to the requirements of Section 3.4.4 have been redacted from it.

20         3.3.4.  No later than one hundred eighty (180) days after the conclusion of the

21  Root Cause Phase and the Reduction Recommendation Phase, the Committee shall complete the

22  Warning Trigger Phase and Final Report Phase and issue its final report to the Parties regarding

23  the findings and recommendations the Committee.  Subject to Sections 3.3.3 and 3.4.4, AYS

24  and the Initial Settling Defendants shall have access to review the materials upon which the

25  Committee has relied in performing its work, which the Project Manager shall arrange to

26  preserve for a period of five (5) years.

27

28

8

TJID 20240823_0000340

1    3.4    **Means of Investigation by the Committee.**

2         3.4.1.  As described in the Scope of Work, the Committee's investigation should

3    be based on a number of sources (whether existing or produced at the Committee's request),

4    including an initial literature review (including peer-reviewed published articles to the extent

5    possible); reviewing test data regarding cocoa beans and Chocolate Products; testing of

6    production equipment, packaging and equipment and materials used in the drying and storage of

7    cocoa beans and testing of cocoa beans and Chocolate Products (including in relation to testing

8    of production equipment, product packaging, and drying and storage methods); travel to cocoa

9    growing areas and processing plants; and interviews with academics, government agencies,

10   chocolate growers, chocolate suppliers, and chocolate manufacturers or others who have

11   relevant expertise on the subject.  The Committee may also consult with outside subject matter

12   experts that are necessary to assist in the Committee's work.

13        3.4.2.  To inform the investigation, each Initial Settling Defendant shall make

14   available to the Committee, on a rolling basis and, at most, within one hundred twenty (120)

15   days of the Effective Date, relevant information in its possession regarding lead and cadmium in

16   chocolate, including relevant test data regarding cocoa beans, cocoa butter, and/or Chocolate

17   Products and the results of any prior non-privileged substantive investigations into the sources

18   of lead and cadmium in cocoa beans and/or Chocolate Products.

19        3.4.3.  The Committee may, at any time, reasonably request further information

20   (including existing test data) and/or samples of cocoa beans and Chocolate Products from one or

21   more Settling Defendants relevant to the Scope(s) of Work and the relevant Settling Defendants

22   shall make a good-faith effort to provide such requested information to the Committee within

23   thirty (30) days of the Committee's reasonable request.

24        3.4.4.  Any information provided to the Committee may be provided anonymously

25   (i.e., on a blinded basis and through an intermediary entity such as a trade association or law

26   firm) in order to protect proprietary or commercially sensitive business information, and the

27   members of the Committee shall not disclose or disseminate to others any information they

28   receive from a Settling Defendant or, if it has been provided to the Committee through another

9

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1 entity, the source from which the Committee obtained such Settling Defendant-originated

2 information.

## 4. IMPLEMENTATION OF INVESTIGATION FINDINGS

4   4.1   Within one hundred twenty (120) days of the issuance of the Committee's final

5 report pursuant to Section 3.3.4, AYS and the Initial Settling Defendants (or a designated

6 representative thereof) shall begin to meet and confer to determine whether the drop down

7 warning triggers set forth under Sections 6.2.1 and 6.2.2 of the Consent Judgment should be

8 modified based on the final report of the Committee.  Such meet and confer period should

9 extend for a period of at least ninety (90) days, unless AYS and the Initial Settling Defendants

10 mutually agree to extend it, including to allow for the involvement of a mediator.  Following the

11 conclusion of this meet and confer process, and no earlier than one hundred and twenty (120)

12 days after the commencement of the meet and confer process, AYS and/or the Initial Settling

13 Defendants may, as informed by the Committee's final report, jointly stipulate to or individually

14 move for a modification of this Consent Judgment pursuant to Section 10, including with respect

15 to any upward or downward adjustments of the drop down lead and cadmium warning triggers

16 set forth under Sections 6.2.1 and 6.2.2.   Any Party may oppose such a modification before the

17 Court.  If entered by the Court, such a modification shall be binding on and effective as to all

18 Settling Defendants, including Opt-In Settling Defendants, one year following written notice to

19 them of the Court's action approving of the modification.

20   4.2   If no modification is entered by the Court pursuant to Section 4.1, the "drop

21 down" warning triggers set forth in Sections 6.2.1 and 6.2.2 shall automatically go into effect as

22 scheduled.

## 5. BEST PRACTICES AND COMPLIANCE VERIFICATION TESTING

24   5.1   **Required Provisional Efforts to Ensure Lowest Level Currently Feasible.**

25 During the Committee's investigation and while the resulting meet and confer and any

26 modification process is underway, all Settling Defendants who are cocoa, chocolate, or candy

27 manufacturers (as opposed to retailers or distributors) must certify to AYS annually for five (5)

28 years following the Compliance Date that they have complied with FDA's applicable Good

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1  Manufacturing Practice and Preventive Controls for Human Food  requirements (21 C.F.R. Part

2  117) for their Covered Products distributed and sold in the United States as reviewed by a

3  qualified internal or third party food safety auditor.

4      5.2    **Compliance Verification Testing and Enforcement Procedures.**  Utilizing the

5  funding provided by the Settling Defendants under Section 8.6, AYS will conduct compliance

6  verification testing after the requirements of Section 6 of this Consent Judgment become

7  effective.  Any such testing and the provisions set forth in the remainder of this Section 5 shall

8  govern AYS's enforcement of Section 6 of this Consent Judgment.  AYS's compliance

9  verification testing conducted pursuant to this Section 5 shall only utilize Covered Product

10  samples that (a) AYS obtains only from the California market or which are shipped to a

11  California address as the result of a purchase by AYS or its investigators via the internet, (b)

12  have been manufactured following the Compliance Date as identified by the Covered Product's

13  Lot identifier, and (c) do not bear the warning required by Section 6.3.

14      5.3    In conducting compliance verification testing, AYS shall use a laboratory that

15  employs inductively coupled plasma mass spectrometry ("ICP-MS") utilizing scientifically

16  appropriate adherence to the protocols set forth in AOAC Method 2015.01 with a LOD/LOQ of

17  0.010 ppm or less.

18      5.4    **Outlier Test Results.**

19      5.4.1.  Any single test result obtained that exceeds 0.300 ppm of lead for a product

20  with less than 95% cacao content or 0.450 ppm of lead for a product with 95% or greater cacao

21  content; or 0.900 ppm of cadmium for a product with less than 95% cacao content or 1.92 ppm

22  of cadmium for a product with 95% or greater cacao content shall be deemed a potential

23  "Outlier."

24      5.4.2.  At a Settling Defendant's option, any single Outlier test result must be

25  subject to validation before it is deemed to be an effective result for purposes of this Consent

26  Judgment.  The validation process shall consist of two steps:

27      (a)    First, the laboratory from which the test result in question was

28  obtained shall be required to check its equipment, test processes, validation procedures,

11

1    laboratory contamination, operator error, and any other factors which could have produced an

2    erroneous result.  If the result is determined erroneous due to testing error or failure to satisfy

3    quality assurance or quality control procedures, the result shall be discarded and not used for any

4    purpose under this Consent Judgment.  The Covered Product may then be re-tested as if such

5    test were the first test.

6            (b)      Second, if the steps in Section 5.4.2(a) have not invalidated the

7    result, then the Settling Defendant may, in preparation for the meet and confer process set forth

8    in Section 5.5.4 and no later than sixty (60) days after the notice of violation is sent, collect up to

9    three (3) or more randomly selected samples of the Covered Product from the same Lot as the

10   Covered Product subject to the Notice of Violation. AYS, at its option, can also test up to three

11   (3) more products from the same Lot and have those additional products tested.  The arithmetic

12   mean of these test results and the original Outlier test result shall then be determined.  That

13   mean result shall be deemed the final result concerning the sample in question and shall

14   constitute the applicable test result for purposes of this Consent Judgment.  If, between a

15   Settling Defendant and AYS, less than two (2) additional Covered Product samples from the

16   same Lot remain in either the Settling Defendant's or AYS's control or can reasonably be

17   acquired through purchase, the Settling Defendant and/or AYS may use such randomly selected

18   samples of the Covered Product as produced in the same calendar quarter as is indicated by the

19   Lot identifier of the potential Outlier sample.

20       5.5    **Stipulated Enforcement Process.**

21           5.5.1.  <u>Notice of Violation</u>.  In the event that AYS obtains qualified laboratory test

22   results showing that the Covered Product exceeds the applicable limit or limits set forth in

23   Section 6.2, it may issue a Notice of Violation pursuant to this Section 5.5.  For the purposes of

24   this Consent Judgment, "Notice of Violation" shall mean violations of the Consent Judgment

25   and is not a sixty day notice subject to the requirements of California Code of Regulations Title

26   27 § 25903.

27

28
                                    12

1    5.5.2.   Service of Notice of Violation and Supporting Documentation.

2           (a)    The Notice of Violation shall be sent to the person(s) identified in

3    Section 19 to receive notices for the Settling Defendant in question, and must be served within

4    sixty (60) days of the later of the date the Covered Product at issue was tested or the test result in

5    question was acquired by AYS, provided, however, that AYS may have up to an additional sixty

6    (60) days to send the Notice of Violation if, notwithstanding AYS's good faith efforts, the test

7    data required by Section 5.4.2(a) cannot be obtained by AYS from the laboratory before

8    expiration of the initial sixty (60) day period.

9           (b)    The Notice of Violation shall, at a minimum, set forth: (a) the date

10   the Covered Product was purchased; (b) the location at which the Covered Product was

11   purchased; (c) the name of the Covered Product giving rise to the alleged violation, including

12   the name and address of the retail entity from which the sample was obtained and pictures of the

13   product packaging, which identifies the product's UPC number and lot number/best-by/sell-by

14   date; and (d) all compliance verification test data obtained by AYS regarding the Covered

15   Product, including any laboratory reports, quality assurance reports, and quality control reports

16   associated with testing of the Covered Product.

17          5.5.3.   Notice of Election of Response.  No more than thirty (30) days after

18   effectuation of service of a Notice of Violation, the Settling Defendant in question shall provide

19   written notice to AYS whether such Settling Defendant elects to contest the allegations

20   contained in a Notice of Violation ("Notice of Election").  Upon notice to AYS, Settling

21   Defendant may have up to an additional thirty (30) days to elect if, notwithstanding Settling

22   Defendant's good faith efforts, a Settling Defendant is unable to verify the test data provided by

23   AYS before expiration of the initial thirty (30) day period.

24          (a)    If a Notice of Violation is contested, the Notice of Election shall

25   include all documents upon which the Settling Defendant is relying to contest the alleged

26   violation, including any test data that it wishes to rely on, including any laboratory reports,

27   quality assurance reports, and quality control reports associated with testing of the Covered

28

13

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1   Product.  (Such test data may include, but not be limited to, the test results obtained under

2   Section 5.4.2(b), if applicable.)

3           5.5.4.  Meet and Confer.  If a Notice of Violation is contested, AYS and the

4   Settling Defendant shall meet and confer to attempt to resolve their dispute.  Within thirty (30)

5   days of serving a Notice of Election, a Settling Defendant may withdraw the original Notice of

6   Election contesting the violation and serve a new Notice of Election to not contest the violation,

7   provided, however, that, in this circumstance, such Settling Defendant shall pay AYS's actual

8   documented fees and costs up to a cap of $5,000, in addition to the payments specified in

9   Sections 5.5 and 5.6. for violations of the Consent Judgment.  At any time, AYS may withdraw

10  a Notice of Violation, in which case for purposes of Section 5.6, the result shall be as if AYS

11  never issued any such Notice of Violation.  If no informal resolution of a Notice of Violation

12  results within thirty (30) days of a Notice of Election to contest, AYS may file an enforcement

13  motion or application pursuant to Section 16.  In any such proceeding, AYS may seek whatever

14  fines, costs, penalties, attorneys' fees, or other remedies are provided by law for an alleged

15  failure to comply with Proposition 65 or this Consent Judgment.

16          5.5.5.  Non-Contested Notices.  If a Settling Defendant elects to not contest the

17  allegations in a Notice of Violation, it shall undertake corrective action and make payments as

18  set forth below.

19          (a)     A Settling Defendant electing to not contest shall include in its

20  Notice of Election a detailed description with supporting documentation of the corrective

21  action(s) that it has undertaken or proposes to undertake to address the alleged violation.  Any

22  such correction shall provide reasonable assurance that all Covered Products having the same

23  UPC number and Lot identifier as that of the Covered Product identified in AYS's Notice of

24  Violation (the "Noticed Covered Products") will not be thereafter sold in the State of California

25  or offered for sale to California customers by the Settling Defendant without the product

26  warning language specified in Section 6.3 having been provided prior to its sale, and that the

27  Settling Defendant has sent instructions to any retailers or customers that offer the Noticed

28  Covered Products for sale to cease offering the Noticed Covered Products for sale to California

14

TJID 20240823_0000346

1  consumers unless such product warning language is provided in conjunction with its sale.

2  Settling Defendant shall also document the additional steps, including product testing and/or

3  modification, that it will take to ensure that future Lots of the same Covered Product comply

4  with the requirements of the Consent Judgment. A Settling Defendant shall keep for a period of

5  one year and provide to AYS documentation confirming its implementation regarding the

6  foregoing. If there is a dispute over the corrective action, the Settling Defendant and AYS shall

7  meet and confer before seeking any remedy in court. In no case shall AYS issue to a Settling

8  Defendant more than one Notice of Violation per Covered Product within a calendar quarter.

9            (b)    If the Notice of Violation is the first Notice of Violation received by

10  the Settling Defendant for a type of Covered Product (as identified by its UPC code) under

11  Section 5.5.1 that was not successfully contested or withdrawn, then a Settling Defendant as

12  defined by Sections 8.1.1 or 8.1.4 shall pay $10,000,  a Settling Defendant as defined by

13  Sections 8.1.2, 8.1.5, or 8.1.7 shall pay $7,500, and a Settling Defendant as defined by Sections

14  8.1.3, 8.1.6, or 8.1.8 shall pay $5,000, for each Notice of Violation. If the Notice of Violation is

15  the second Notice of Violation received by the Settling Defendant for a Covered Product under

16  Section 5.5.1 that was not successfully contested or withdrawn, then a Settling Defendant as

17  defined by Sections 8.1.1 or 8.1.4 shall pay $15,000, a Settling Defendant as defined by Sections

18  8.1.2, 8.1.5, or 8.1.7 shall pay $12,500, and a Settling Defendant as defined by Sections 8.1.3,

19  8.1.6, or 8.1.8 shall pay $10,000, for each Notice of Violation. If the Notice of Violation is the

20  third or fourth Notice of Violation received by the Settling Defendant for a Covered Product

21  under Section 5.5.1 that was not successfully contested or withdrawn, then a Settling Defendant

22  as defined by Sections 8.1.1 or 8.1.4 shall pay $25,000, a Settling Defendant as defined by

23  Sections 8.1.2, 8.1.5, or 8.1.7 shall pay $20,000, and a Settling Defendant as defined by Sections

24  8.1.3, 8.1.6, or 8.1.8 shall pay $15,000, for each Notice of Violation.

25            (c)    If a Settling Defendant produces with its Notice of Election test data

26  for the Covered Product (as identified by its UPC code and a best-by or sell-by date falling

27  within the same calendar quarter) that: (i) was obtained prior to the date AYS gave Notice of

28  Violation; (ii) was conducted on the same type of Covered Product (as identified by its UPC

15

TJID 20240823_0000347

1  code); and (iii) demonstrates levels below the applicable warning triggers set forth in Section

2  6.2.1 and 6.2.2, then any payment under this Section shall be reduced by one hundred percent

3  (100%) for the first Notice of Violation, except that the Settling Defendant shall reimburse AYS

4  for AYS's actual documented fees and costs associated with testing the Covered Product up to

5  limit of $5,000.  Pursuant to Section 5.5.5(a), the Settling Defendant shall also document the

6  measures, including product testing, warnings, and/or modification, that it will take to ensure

7  that future Lots of the same Covered Product comply with the requirements of the Consent

8  Judgment.

9          5.5.6.  <u>Payments</u>.  Any payments under Section 5.5.5 shall be made by check

10  payable to "As You Sow" and shall be paid within thirty (30) days of service of a Notice of

11  Election triggering a payment and shall be used by AYS as reimbursement for costs for

12  investigating, preparing, sending, and prosecuting Notices of Violation, and to reimburse

13  attorneys' fees and costs incurred in connection with these activities.  To the extent such

14  reimbursement exceeds AYS's associated costs, AYS will use these funds to replenish the

15  Compliance Testing Fund established pursuant to Section 8.6 of this Consent Judgment.

16      5.6    **Repeat Violations.**  If a Settling Defendant has received more than four (4)

17  Notices of Violation concerning the same Covered Product that were not successfully contested

18  or withdrawn in any two (2) year period then, at AYS's option, AYS may seek whatever fines,

19  costs, penalties, attorneys' fees, or other remedies that are provided by law for failure to comply

20  with Proposition 65.  Prior to seeking such relief, AYS shall meet and confer with the Settling

21  Defendant for at least thirty (30) days to determine if the Settling Defendant and AYS can

22  instead agree on measures that the Settling Defendant can undertake to prevent future alleged

23  violations.

24  **6. INJUNCTION GOVERNING COVERED PRODUCT FORMULATIONS AND
        WARNINGS**

25

26      6.1    **Applicability.**  Covered Products subject to this Consent Judgment are subject to

the requirements for Proposition 65 warnings set forth in Sections 6.3, 6.4, and 6.5, as

27

applicable, depending on their cacao content (by %) and lead and cadmium levels as further

28

16

1  specified in Section 6.2.  The requirements set forth in this Section 6 shall apply only to Covered

2  Products:  (a) manufactured on or following the Compliance Date, and (b) which are (i) sold or

3  may be offered for sale to California consumers ("consumer products") or (ii) sold or may be

4  offered for sale as inputs to Covered Products ("non-consumer products") which are sold or may

5  be offered for sale to California consumers.

6      6.2    **Product Warning Triggers.**

7      6.2.1.  **Product Warning Triggers Based on Lead Concentration Levels.**

8      (a)    For Covered Products with up to 65% cacao content: Product

9  Warnings are required if the Covered Product's associated lead concentration level exceeds

10  0.100 ppm, provided, however, that as of the sixth anniversary of the Compliance Date, the

11  foregoing lead concentration level shall be deemed to have been reduced to 0.065 ppm unless (i)

12  the Committee has recommended that the 0.100 ppm lead concentration level be continued, a

13  lead concentration level between 0.100 and 0.065 ppm be instituted, or that a lead concentration

14  level less than 0.065 ppm replace the 0.065 ppm level, and (ii) a modification of this Consent

15  Judgment has been entered which reflects the level that shall supersede the drop down to 0.065

16  ppm.

17      (b)    For Covered Products with greater than 65% and up to 95% cacao

18  content: Product Warnings are required if the Covered Product's associated lead concentration

19  level exceeds 0.150 ppm, provided, however, that as of the sixth anniversary of the Compliance

20  Date, the foregoing lead concentration level shall be deemed to have been reduced to 0.100 ppm

21  unless (i) the Committee has recommended that the 0.150 ppm lead concentration level be

22  continued, a lead concentration level between 0.150 and 0.100 ppm be instituted, or that a lead

23  concentration level less than 0.100 ppm replace the 0.100 ppm level, and (ii) a modification of

24  this Consent Judgment has been entered which reflects the level that shall supersede the drop

25  down to 0.100 ppm.

26      (c)    For Covered Products with greater than 95% cacao content: Product

27  Warnings are required if the Covered Product's associated lead concentration level exceeds

28  0.225 ppm, provided, however, that as of the sixth anniversary of the Compliance Date, the

17

TJID 20240823_0000349

1   foregoing lead concentration level shall be deemed to have been reduced to 0.200 ppm unless (i)

2   the Committee has recommended that the 0.225 ppm lead concentration level be continued, a

3   lead concentration level between 0.225 and 0.200 ppm be instituted, or that a lead concentration

4   less than 0.200 ppm replace the 0.200 ppm level, and (ii) a modification of this Consent

5   Judgment has been entered which reflects the level that shall supersede the drop down to 0.200

6   ppm.

7        6.2.2.   **Product Warning Triggers Based on Cadmium Concentration Levels.**

8        (a)    For Covered Products with up to 65% cacao content: Product

9   Warnings are required if the Covered Product's associated cadmium concentration level exceeds

10  0.400 ppm, provided, however, that as of the sixth anniversary of the Compliance Date, the

11  foregoing cadmium concentration level shall be deemed to have been reduced to 0.320 ppm

12  unless (i) the Committee has recommended that the 0.400 ppm cadmium concentration level be

13  continued, a cadmium concentration level between 0.400 and 0.320 ppm be instituted, or that a

14  cadmium concentration level less than 0.320 ppm replace the 0.320 ppm level, and (ii) a

15  modification of this Consent Judgment has been entered which reflects the level that shall

16  supersede the drop down to 0.320 ppm.

17       (b)    For Covered Products with greater than 65% and up to 95% cacao

18  content:  Product Warnings are required if the Covered Product's associated cadmium

19  concentration level exceeds 0.450 ppm, provided, however, that as of the sixth anniversary of

20  the Compliance Date, the foregoing cadmium concentration level shall be deemed to have been

21  reduced to 0.400 ppm unless (i) the Committee has recommended that the 0.450 ppm lead

22  concentration level be continued, a cadmium concentration level between 0.450 and 0.400 ppm

23  be instituted, or that a cadmium concentration level less than 0.400 ppm replace the 0.400 ppm

24  level, and (ii) a modification of this Consent Judgment has been entered which reflects the level

25  that shall supersede the drop down to 0.400 ppm.

26       (c)    For Covered Products with greater than 95% cacao content: Product

27  Warnings are required if the Covered Product's associated cadmium concentration level exceeds

28  0.960 ppm, provided, however, that as of the sixth anniversary of the Compliance Date, the

18

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1 | foregoing cadmium concentration level shall be deemed to have been reduced to 0.800 ppm

2 | unless (i) the Committee has recommended that the 0.960 ppm cadmium concentration level be

3 | continued, a cadmium concentration level between 0.960 and 0.800 ppm be instituted, or that a

4 | cadmium concentration level less than 0.800 ppm replace the 0.800 ppm level, and (ii) a

5 | modification of this Consent Judgment has been entered which reflects the level that shall

6 | supersede the drop down to 0.800 ppm.

7 |     **6.3**    **Product Warning Language.**  Following the Compliance Date, the following

8 | Product Warning statement shall be used on any Covered Product authorized or offered for sale

9 | in the State of California which exceeds an applicable trigger as set forth in Section 6.2:

10 |     **WARNING:**  Consuming this product may expose you to chemicals including lead and

11 |     cadmium, which are known to the State of California to cause [cancer and] birth defects

12 |     or other reproductive harm.  For further information go to www.p65warnings.ca.gov

13 | The bracketed language in the preceding Product Warning statement may be deleted or included

14 | at a Settling Defendant's option.

15 |     **6.4**    **Method of Transmission for Product Warnings.**

16 |         **6.4.1.**  **Labeling Requirement.** Where required pursuant to Sections 6.1 and 6.2,

17 | the Product Warning statement set forth in Section 6.3 shall be placed on a consumer Covered

18 | Product's labeling with such conspicuousness as compared with other words, statements, or

19 | designs on the labeling or packaging as to render it likely to be read and understood by an

20 | ordinary individual under customary conditions of use or purchase. The Product Warning

21 | statement shall be displayed in at least the same size as the largest of any other health or safety

22 | warnings or chemical or allergen disclosures on the Covered Product's label. The Product

23 | Warning statement shall be contained in the same section of the label that states other safety

24 | warnings or chemical/allergen disclosures about the Covered Product.

25 |         **6.4.2.**  **Warning for a Settling Defendant's Internet Sales.**  In addition to

26 | complying with the labeling requirement in subsection 6.4.1, Settling Defendants who maintain

27 | their own websites that sell Covered Products to a California consumer, must also provide

28 | Product Warnings, where required for a Covered Product under Sections 6.1 and 6.2, by

19

1  including either the Product Warning statement set forth in Section 6.3 or a clearly marked

2  hyperlink using the word "WARNING" to such a Product Warning statement, either: (a) on the

3  product display page for the Covered Product, (b) on the same page as serves as the order form

4  for the Covered Product, (c) on the same page as where the price for the Covered Product is

5  otherwise displayed; or (d) in a dialogue box that appears and is visible when a California

6  address for delivery is provided by the consumer (but only if the dialogue box appears prior to

7  the completion of the internet sale).

8      6.5    **Non-Consumer Chocolate Products.**  The Product Warning requirements set

9  forth in this Section 6 do not directly apply to commercial, non-consumer Chocolate Products

10  that are intended to be used as ingredients in consumer products, as long as such products are

11  not made available for sale directly to California consumers.  However, Settling Defendants that

12  manufacture, distribute or sell commercial, non-consumer Chocolate Products that do exceed the

13  limits set forth in Section 6.2 shall advise their customers in writing at least annually that

14  consumer products made with their commercial products may not be offered for sale in the State

15  of California without the applicable warning as set forth in Section 6.3 and 6.4, unless the

16  resulting consumer products do not exceed the limits as set forth in Sections 6.2.1 and 6.2.2.

17      6.6    Any changes to the language or format of the Product Warnings required under

18  this Section 6 shall be made only after Court approval and following written notice to AYS and

19  to the California Attorney General.

20  **7. OPT-IN PROGRAM**

21      7.1    This Consent Judgment is executed with the understanding that additional persons

22  and entities who manufacture, distribute, sell, or offer for sale Chocolate Products in the State of

23  California may wish to subscribe to the terms of this Consent Judgment.  Each Opt-In Settling

24  Defendant that has not already received a 60-Day Notice of Violation from AYS concerning the

25  range of Chocolate Products it wishes to address through the Opt-In must be able to certify to

26  the facts enumerated in Section 7.3.

27      7.2    At any time before one hundred eighty (180) days following the Effective Date,

28  prospective Opt-In Settling Defendants who are willing to confirm the representations listed in

20

1  Section 7.3 may become Settling Defendants under this Consent Judgment by executing an Opt-

2  In Stipulation as provided in Section 7.3 and tendering the applicable payment amounts, as set

3  forth in Section 8.  Each Opt-In Defendant that has not received a 60-day Notice of Violation

4  from AYS for the Chocolate Products to be covered by this Consent Judgment shall cooperate

5  with AYS in providing an evidentiary basis upon which AYS can complete a certificate of merit

6  for the 60-day Notice of Violation, as required by Health and Safety Code section

7  25249.7(d)(1).

8       7.3    Each Opt-In Settling Defendant shall execute and deliver to AYS an Opt-In

9  Stipulation in the general form appearing as **Exhibit B** hereto identifying whether the Opt-In

10  Settling Defendant has manufactured, imported, distributed, sold, or offered for use and sale in

11  the State of California Chocolate Products, and certifying to the following facts: (1) it employs

12  ten or more persons; (2) it manufactured, imported, distributed, sold, or offered for use and sale

13  in the State of California one or more specifically identified Chocolate Products without a "clear

14  and reasonable" Proposition 65 warning during the preceding year; and (3) it knows or has

15  reason to believe that one or more of the identified Chocolate Products has in the past contained

16  or presently contains lead or cadmium in excess of at least one of the drop down levels set forth

17  in Section 6.2.1 or 6.2.2.

18       7.4    Not later than ninety (90) days after AYS receives a completed Opt-In Stipulation

19  for a prospective Opt-In Settling Defendant for which a 60-day Notice of Violation has not been

20  issued, any additional information and representations necessary to support a 60-day Notice of

21  Violation, and payment of the applicable payments required in Section 8, AYS shall serve a

22  Notice of Violation pursuant to California Health and Safety Code section 25249.7(d) on the

23  Opt-In Settling Defendant, to the California Attorney General, to every California District

24  Attorney and every California city attorney required to receive such a notice pursuant to

25  California Health and Safety Code section 25249.7.

26       7.5    No earlier than seventy (70) days from the date specified in the Notice of

27  Violation sent to an Opt-In Settling Defendant, and provided that no authorized public

28  prosecutor of Proposition 65 has filed an action against that Opt-In Settling Defendant for

21

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1  alleged exposures to lead or cadmium in the Covered Products and is diligently prosecuting it,

2  AYS shall file in this Court an application for entry of the executed Opt-In Stipulation that AYS

3  has received pursuant to this Section 7 and shall serve notice thereof on all other Settling

4  Defendants.  If the Court approves the application for entry of the Opt-In Stipulation, the

5  Complaint shall be deemed to have been amended to specifically name the Opt-In Settling

6  Defendant that executed the Opt-In Stipulation as named defendants in this Action, and each

7  such Opt-In Settling Defendant shall be deemed to be a full Settling Defendant under this

8  Consent Judgment, with all applicable obligations and rights conferred by this Consent

9  Judgment.

10          7.6      In the event that a public prosecutor is diligently prosecuting an Opt-In Settling

11  Defendant's alleged Proposition 65 violation prior to the expiration of the 60-day notice period,

12  AYS shall refund the full payment made by that Opt-In Settling Defendant and have no further

13  obligation to that Opt-In Settling Defendant under this Section 7.

14          7.7      At the time AYS files the final application for entry of the Opt-In Stipulations with

15  the Court pursuant to Section 7.5, it shall prepare and file with the Court and serve on the

16  California Attorney General, an application for approval of the Opt-In Stipulations pursuant to

17  Section 8.2.  The application shall be supported by one or more declarations reporting the results

18  of the opt-in program, including all expenses and attorneys' fees incurred by AYS's counsel

19  with respect to the lead and cadmium enforcement process and opt-in process to date.  In the

20  event that the application demonstrates that the total amount of the expenses and attorneys' fees

21  incurred by AYS is less than the total amount of reimbursement provided pursuant to Section

22  8.2, AYS shall within thirty (30) days disgorge any attorneys' fees and costs reimbursements in

23  excess of its costs actually incurred in AYS's chocolate-related Proposition 65 matters to the

24  Initial Settling Defendants as set forth in Section 8.2 below.

25          7.8      Opt-In Settling Defendants are subject to the timelines as set forth in Sections 5

26  and 6 of this Consent Judgment, without modification.

27

28                                                        22

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

**8. MONETARY RELIEF**

8.1    For the purposes of this Section 8 regarding monetary relief, Settling Defendants shall fall into one of the following categories and provide certification of their qualifications therefore to AYS upon request:

8.1.1.    <u>Large Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: Total annual U.S. sales of Covered Products of $500 Million or more

8.1.2.    <u>Medium Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: Total annual U.S. sales of Covered Products in excess of $50 Million but less than $500 Million

8.1.3.    <u>Small Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: Total annual U.S. sales of Covered Products of less than $50 Million

8.1.4.    <u>Not Otherwise Completely Released Large Candy Manufacturer</u>: Total annual U.S. sales of Covered Products of $500 Million or more

8.1.5.    <u>Not Otherwise Completely Released Medium Candy Manufacturer</u>: Total annual U.S. sales of Covered Products of $50 Million but less than $500 Million

8.1.6.    <u>Not Otherwise Completely Released Small Candy Manufacturer</u>: Total annual U.S. sales of Covered Products of less than $50 Million

8.1.7.    <u>Large Retailer With Exposure Not Covered By a Downstream Release</u>: Total annual U.S. sales of Covered Products not subject to downstream release of $100 Million or more

8.1.8.    <u>Small Retailer With Exposure Not Covered By a Downstream Release</u>: Total annual U.S. sales of Covered Products not subject to downstream release of less than $100 Million.

8.2    **Fee Reimbursement.**  Within thirty (30) days of the Effective Date, the Initial Settling Defendants, or an entity acting on their behalves, shall collectively reimburse AYS's attorneys' fees, investigative costs, and other reasonable litigation costs and expenses in the aggregate amount of $900,000.  The individual amounts set forth in Sections 8.2.1 through 8.2.8 shall apply to the calculation of fee reimbursement payments for Opt-In Settling Defendants pursuant to Section 7 and shall be reimbursed to the Initial Settling Defendants by AYS within sixty (60) days of the Court's action on the application AYS must file pursuant to Section 7.7. AYS shall make this reimbursement through a lump sum payment to Morrison and Foerster Client Trust LLP (or an alternate designee of the Initial Settling Defendants), which will distribute the funds on a pro rata basis based on each Initial Settling Defendant's total payments

23

1  made under this Section 8.2 relative to all other Initial Settling Defendants' total payments made

2  under this Section 8.2 or pursuant to such other allocation as has been agreed upon among the

3  Initial Settling Defendants.  In the event the amount provided to the Initial Settling Defendants

4  under this Section 8.2 and Section 8.5 exceeds the fees and costs the Initial Settling Defendants

5  have incurred with respect to this Consent Judgment, excluding any payments made under

6  Sections 8.3, 8.4, or 8.6, but including the legal fees they have incurred in its development and

7  approval and entry by the Court ("Settlement Related Costs"), the Initial Settling Defendants

8  shall disgorge any such excess amount to the California Office of Environmental Health Hazard

9  Assessment ("OEHHA").

10          8.2.1.  <u>Large Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $95,000

11          8.2.2.  <u>Medium Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $45,000

12          8.2.3.  <u>Small Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $20,000

13          8.2.4.  <u>Not Otherwise Completely Released Large Candy Manufacturer</u>: $95,000

14          8.2.5.  <u>Not Otherwise Completely Released Medium Candy Manufacturer</u>: $45,000

15

16          8.2.6.  <u>Not Otherwise Completely Released Small Candy Manufacturer</u>: $20,000

17          8.2.7.  <u>Large Retailer With Exposure Not Covered By a Downstream Release</u>: $12,500

18          8.2.8.  <u>Small Retailer With Exposure Not Covered By a Downstream Release</u>: $10,000

19

20      8.3  **Civil Penalties.**  Within thirty (30) days of the Effective Date, each Initial Settling

21  Defendant, or an entity acting on their collective behalves, shall also make the following

22  payments to AYS as civil penalties, pursuant to Health and Safety Code section 25249.7(b), as

23  set forth in Sections 8.3.1 through 8.3.8.  The individual amounts set forth in Sections 8.3.1

24  through 8.3.8 shall also apply to the calculation of payments for Opt-In Settling Defendants

25  pursuant to Section 7.  AYS shall remit 75% of the amount to the State of California pursuant to

26  Health and Safety Code section 25249.12(b).  Settling Defendants shall have no liability if

27  payments to the State of California are not made by AYS.

28

24

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

8.3.1.  <u>Large Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $22,000

8.3.2.  <u>Medium Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $16,500

8.3.3.  <u>Small Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $11,000

8.3.4.  <u>Not Otherwise Completely Released Large Candy Manufacturer</u>: $22,000

8.3.5.  <u>Not Otherwise Completely Released Medium Candy Manufacturer</u>: $16,500

8.3.6.  <u>Not Otherwise Completely Released Small Candy Manufacturer</u>: $11,000

8.3.7.  <u>Large Retailer With Exposure Not Covered By a Downstream Release</u>: $16,500

8.3.8.  <u>Small Retailer With Exposure Not Covered By a Downstream Release</u>: $11,000.

8.4    **Additional Settlement Payments In Lieu Of Penalties.**  Additionally, within thirty (30) days of the Effective Date, each Initial Settling Defendant, or an entity acting on their collective behalves, shall make the following additional payments to AYS in lieu of additional civil penalties, as set forth in Sections 8.4.1 through 8.4.8.  The individual amounts set forth in Sections 8.4.1 through 8.4.8 shall also apply to the calculation of payments for Opt-In Settling Defendants pursuant to Section 7.  These additional settlement payments may be used by AYS for grants to California 501(c)(3) non-profit organizations and by AYS itself for research and educational purposes associated with reducing or remediating exposures to lead and cadmium contained in consumer products sold in California and/or to increase consumer awareness of the health hazards posed by these chemicals in consumer products sold in California and how such hazards may be mitigated, but may not be used by AYS or its grantees in support of litigation, or for public relations, directed at the Settling Defendants or their Covered Products.  In deciding among grantee proposals, the AYS Board of Directors ("Board") takes into consideration a number of important factors, including: (1) the nexus between the harm posed by lead and cadmium in consumer products sold in California and the grant program work; (2) the potential for lead or cadmium reduction, prevention, mitigation, remediation, or education benefits to California citizens from the proposal; (3) the budget requirements of the proposed grantee and the alternate funding sources available to it for its project; and (4) the Board's assessment of the

25

TJID 20240823_0000357

1  grantee's chances for success in its program work. AYS shall ensure that all funds will be

2  disbursed and used in accordance with this Section 8.4, as well as with AYS's mission

3  statement, articles of incorporation, bylaws, and applicable state and federal laws and

4  regulations. AYS shall obtain and maintain adequate records to document that the funds are

5  spent on the activities described in this Section 8.4, and shall provide the Attorney General,

6  within thirty (30) days of any request, copies of all documentation demonstrating how such

7  funds have been spent. No party to this Consent Judgment, or counsel of record, or spouse or

8  dependent child thereof, has an economic interest in any entity or individual, besides itself, that

9  is designated in this paragraph to receive all or a party of any Additional Settlement Payments.

10  The payments required under this Section 8.4 are as follows:

11         8.4.1. <u>Large Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $3,875

12         8.4.2. <u>Medium Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $2,125

13         8.4.3. <u>Small Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $500

14         8.4.4. <u>Not Otherwise Completely Released Large Candy Manufacturer</u>: $3,875

15         8.4.5. <u>Not Otherwise Completely Released Medium Candy Manufacturer</u>: $2,125

16         8.4.6. <u>Not Otherwise Completely Released Small Candy Manufacturer</u>: $500

17         8.4.7. <u>Large Retailer With Exposure Not Covered By a Downstream Release</u>:
18              $2,125

19         8.4.8. <u>Small Retailer With Exposure Not Covered By a Downstream Release</u>:
            $500.

20      8.5  **Payments to Fund Committee's Work.** Additionally, within thirty (30) days of

21  the Effective Date, as contemplated in Section 3.3.2, the Initial Settling Defendants, or an entity

22  acting on their behalves, shall collectively tender to AYS an aggregate amount of $500,000 to

23  fund the Committee investigation. The individual amounts of payments set forth in Sections

24  8.5.1 through 8.5.8 shall apply to the calculation of payments towards the Committee's work for

25  Opt-In Settling Defendants pursuant to Section 7. The first $100,000 of payments received by

26  AYS from Opt-In Settling Defendants pursuant to this Section 8.5 will be used exclusively to

27  fund the remaining expense, if any, associated with the Committee's investigation and final

28  report pursuant to Section 3. Any portion of the $100,000 that is not required for the remaining

1  expense of the Committee shall be transferred to the Compliance Testing Fund established under

2  Section 8.6. Any funds raised from Opt-In Settling Defendants pursuant to this Section 8.5 in

3  excess of the $100,000 amount shall be paid to the Initial Settling Defendants by AYS within

4  sixty (60) days of the Court's action on the application AYS must file pursuant to Section 7.7.

5  AYS shall make this reimbursement through a lump sum payment to the Morrison and Foerster

6  LLP Client Trust (or an alternate designees of the Initial Settling Defendants), which will

7  distribute the funds on a pro rata basis based on each Initial Settling Defendant's total payments

8  made under this Section 8.5 relative to all other Initial Settling Defendants' total payments made

9  under this Section 8.5 or pursuant to such other allocation as has been agreed upon by the Initial

10  Settling Defendants. If the funds raised from the Opt-In Settling Defendants under this Section

11  8.5 are not sufficient to generate the additional $100,000, the Initial Settling Defendants shall

12  collectively tender the difference to AYS within one year of the Effective Date. The payments

13  required by Opt-In Settling Defendants under this Section 8.5 shall be:

14      8.5.1. Large Grinders/Wholesalers/Chocolate Ingredient Suppliers: $77,500

15      8.5.2. Medium Grinders/Wholesalers/Chocolate Ingredient Suppliers: $35,000

16      8.5.3. Small Grinders/Wholesalers/Chocolate Ingredient Suppliers: $15,000

17      8.5.4. Not Otherwise Completely Released Large Candy Manufacturer: $77,500

18      8.5.5. Not Otherwise Completely Released Medium Candy Manufacturer: $35,000

19

20      8.5.6. Not Otherwise Completely Released Small Candy Manufacturer: $15,000

21      8.5.7. Large Retailer With Exposure Not Covered By a Downstream Release: $7,500

22      8.5.8. Small Retailer With Exposure Not Covered By a Downstream Release: $2,500.

23

24      8.6    **Payments to Fund Compliance Verification Testing and Oversight Program.**

25  Additionally, within thirty (30) days of the Effective Date, each Initial Settling Defendant, or an

26  entity acting on their collective behalves, shall make the following additional payments to AYS

27  to provide seed funding for the compliance verification testing and oversight program set forth

28  in Sections 5.2 to 5.5 ("Compliance Testing Fund"). The individual amounts of payments set

27

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

forth in Sections 8.6.1 through 8.6.8 shall also apply to the calculation of payments towards the compliance verification testing and oversight program for Opt-In Settling Defendants pursuant to Section 7. The payments received by AYS pursuant to this Section 8.6 shall be used exclusively to fund the compliance verification testing and oversight program described in Sections 5.2 through 5.5. The payments required under this Section 8.6 shall be:

8.6.1. <u>Large Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $12,500

8.6.2. <u>Medium Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $10,000

8.6.3. <u>Small Grinders/Wholesalers/Chocolate Ingredient Suppliers</u>: $7,500

8.6.4. <u>Not Otherwise Completely Released Large Candy Manufacturer</u>: $12,500

8.6.5. <u>Not Otherwise Completely Released Medium Candy Manufacturer</u>: $10,000

8.6.6. <u>Not Otherwise Completely Released Small Candy Manufacturer</u>: $7,500

8.6.7. <u>Large Retailer With Exposure Not Covered By a Downstream Release</u>: $10,000

8.6.8. <u>Small Retailer With Exposure Not Covered By a Downstream Release</u>: $7,500.

8.7    Initial Settling Defendants, or an entity acting on their collective behalves, shall issue all payments as required under this Section 8 with a check made payable to Shute, Mihaly & Weinberger LLP Client Trust Account and delivered to Ellison Folk, Shute, Mihaly & Weinberger LLP, 396 Hayes Street, San Francisco, CA 94102 or via wire or ACH electronic funds transfer if mutually arranged with Shute, Mihaly & Weinberger LLP in advance. Funds tendered by the Opt-In Defendants for purposes of Section 8.2 shall be provided along with the other documentation and payments required under Section 7.4 and maintained in the Shute, Mihaly & Weinberger LLP Client Trust Account until disbursed for fee and cost reimbursement approved by the Court or, if there is a surplus, until disbursed to the Initial Settling Defendants. Funds tendered for purposes of Section 8.5 shall be maintained in the Shute, Mihaly & Weinberger LLP Client Trust Account until disbursed for the Committee's expenses or, if there is a surplus, until disbursed to the Initial Settling Defendants.

28

1        8.8     Except as provided in Sections 5.5, 5.6, and 16.1, the payments made pursuant to

2  this Section 8 shall be the only monetary obligation of Settling Defendants with respect to this

3  Consent Judgment, including as to any fees, costs, or expenses AYS has incurred in relation to

4  this Action.

5  **9. COMPLIANCE WITH HEALTH & SAFETY CODE § 25249.7(f)**

6        AYS agrees to comply with the reporting requirements referenced in California Health

7  and Safety Code section 25249.7(f).  Pursuant to the regulations promulgated under that section,

8  AYS shall present this Consent Judgment to the California Attorney General's Office within two

9  (2) days after receipt of all necessary Initial Settling Defendant signatures.  The Parties

10  acknowledge that, pursuant to Health and Safety Code section 25249.7, a noticed motion must

11  be filed to obtain judicial approval of the Consent Judgment.  Accordingly, a motion for

12  approval of the Consent Judgment shall be prepared and filed by AYS within a reasonable

13  period of time after the date this Consent Judgment is signed by all Parties.

14  **10. MODIFICATION OF SETTLEMENT**

15        This Consent Judgment may be modified by: (1) written agreement among the Parties

16  and upon entry of a modified Consent Judgment by the Court thereon, or (2) motion of AYS or a

17  Settling Defendant as provided by law and upon entry of a modified Consent Judgment by the

18  Court thereon.  All Parties and the California Attorney General's Office shall be served with

19  notice of any proposed modification to this Consent Judgment in advance of its consideration by

20  the Court.

21  **11. APPLICATION OF CONSENT JUDGMENT**

22        This Consent Judgment shall apply to and be binding upon AYS, acting in the public

23  interest, and the Settling Defendants and the predecessors, successors or assigns of each of them.

24  **12. CLAIMS COVERED/RELEASES**

25        12.1    **Release of Settling Defendants.** This Consent Judgment is a full, final, and

26  binding resolution between AYS, on behalf of itself and in the public interest, and the Settling

27  Defendants, of any alleged violation of Proposition 65 for failure to provide Proposition 65

28  warnings of exposure to lead and/or cadmium in the Covered Products.  AYS, on behalf of

29

1  itself, its affiliates, agents, officers, directors, representatives, attorneys, successors and/or

2  assignees, and on behalf of the general public in the public interest, hereby releases and

3  discharges: (a) Settling Defendants and their parent companies, subsidiaries, affiliates, and

4  divisions; (b) their respective joint venturers and partners; and (c) each of the respective officers,

5  directors, shareholders, employees, agents, and representatives of the persons and entities

6  described in (a) and (b) (including the predecessors, successors and assigns of any of them, are

7  collectively referred to as the "Released Parties") from any and all claims, actions, causes of

8  action, suits, demands, liabilities, damages, penalties, fees (including but not limited to

9  investigation fees, attorneys' fees, and expert fees), costs, and expenses (collectively, "Claims")

10  as to any alleged violation of Proposition 65 arising from the failure to provide Proposition 65

11  warnings regarding alleged exposures to lead and/or cadmium in the Chocolate Products

12  manufactured, imported distributed, or sold before the Effective Date.

13        12.2 **Settling Defendants' Waiver and Release of Plaintiff.** Settling Defendants, on

14  behalf of themselves and their affiliates, agents, officers, directors, representatives, attorneys,

15  successors and/or assignees, hereby release AYS and its affiliates, agents, officers, directors,

16  representatives, attorneys, successors and/or assignees from and waive any claims against AYS

17  for injunctive relief or damages, penalties, fines, sanctions, mitigation, fees (including fees of

18  attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which

19  could have been claimed for matters related to the Notices or Complaint[s].

20        12.3 **Effect of Judgment.** From the Effective Date forward, compliance with the terms

21  of this Consent Judgment shall be deemed to constitute compliance by any Settling Defendant or

22  Released Party with Proposition 65 regarding alleged exposures to lead and/or cadmium in the

23  Covered Products.

24        12.4 **Downstream Release.** A distributor, wholesaler, retailer, customer, user, or other

25  entity that is downstream in the chain of commerce from a Settling Defendant or Released Party

26  ("Downstream Entity") shall be released from any liability under Proposition 65 as to the lead or

27  cadmium contribution from the cocoa-based ingredients or chocolate in a Covered Product

28  provided that the cocoa-based ingredients or chocolate in the Covered Product contains

30

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1  concentrations of lead and cadmium at or below the applicable warning trigger levels set forth in

2  Section 6.2.1 and 6.6.2.  This release to Downstream Entities does not extend to the cocoa-based

3  ingredients or chocolate used in the protein bar and nutritional drink products whose names

4  appear on **Exhibit D**.

5      12.5    Nothing in this Section 12 shall affect or limit any Party's right to seek to enforce

6  the terms of this Consent Judgment.

7  **13. RETENTION OF JURISDICTION**

8      This Court shall retain jurisdiction of this matter to implement this Consent Judgment.

9  **14. COURT APPROVAL**

10      If this Consent Judgment is not approved by this Court, it shall be of no force or effect

11  and cannot be used in any proceeding for any purpose.

12  **15. DURATION OF CONSENT JUDGMENT**

13      15.1    At any time after the seventh anniversary of the Effective Date, any Party may

14  move for the Court to terminate the Consent Judgment for good cause shown and any Party may

15  oppose such motion.

16      15.2    At least six (6) months prior to bringing a motion to terminate pursuant to Section

17  15.1, a Party shall first offer to meet and confer with all other Parties concerning the basis on

18  which they intend to seek termination and set forth its position as to:  (a) how Section 6 of this

19  Consent Judgment could be modified to address their position, and (b) why such modifications

20  and the means to achieve them have become Feasible or why Feasible technologies or methods

21  have not become available or proven Feasible.  To the extent that the meet and confer does not

22  result in a stipulated modification of the Consent Judgment being submitted to the Court for

23  approval pursuant to Section 10 within three (3) months after a Party gives notice of its intention

24  to bring a motion for termination, the Party or Parties which elect to oppose the proposed motion

25  for termination may seek to have the matter referred to a mutually acceptable mediator, to be

26  paid for at its or their sole expense, who shall be given another three (3) months to attempt to

27  resolve the matter in a manner that allows the Consent Judgment to remain in effect by mutual

28  agreement.

31

1    15.3    The Committee's findings concerning Feasible measures or limits shall be

2 admissible but not be dispositive for purposes of this Section 15.

3    15.4    The meet and confer and potential mediation deadlines specified under Section

4 15.2 may be modified in writing by the Parties pursuant to Section 10.

5 **16. ENFORCEMENT**

6    16.1    In the event that a dispute arises with respect to any provisions of this Consent

7 Judgment, the respective Parties shall meet and confer within thirty (30) days of receiving

8 written notice of the alleged violation. In the event that the respective Parties are unable to

9 resolve their dispute through the meet and confer process, this Consent Judgment may be

10 enforced using any available provision of law. If AYS is the prevailing Party in any dispute

11 regarding compliance with the terms of this Consent Judgment, it may seek any fines, costs,

12 penalties, or remedies provided by law for failure to comply with California Health and Safety

13 Code sections 25249.5, et seq. A prevailing Party in such a dispute regarding compliance with

14 the terms of this Consent Judgment is entitled to seek recovery of its reasonable attorneys' fees

15 and costs incurred in any such motion or proceeding pursuant to the provisions of Code of Civil

16 Procedure section 1021.5. Notwithstanding any language to the contrary in Sections 3, 5, or

17 otherwise herein, AYS may disclose test results received from a Settling Defendant in a court

18 filing in support of any motion to enforce this Consent Judgment provided that AYS first

19 provides the Settling Defendant an opportunity to make a motion for leave to seal such data

20 pursuant to a protective order.

21    16.2    In the event that a Settling Defendant misses any deadline required under this

22 Consent Judgment for the submission of reports, testing, or of any other notifications to AYS,

23 the Settling Defendant shall nonetheless be deemed to be in compliance with such a deadline if

24 it submits the required information or notification to AYS within fourteen days of discovering

25 the missed deadline. If AYS brings a missed deadline to the attention of a Settling Defendant,

26 such Settling Defendant shall pay penalties to AYS in the amount of up to $5,000 per incident as

27 may be reasonably requested by AYS given the nature of the deadline and materiality of the

28

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1  timeliness of the information involved.  All missed deadlines within a calendar quarter shall be

2  deemed to constitute a single "incident."

3  **17. GOVERNING LAW**

4      The terms of this Consent Judgment shall be governed by the laws of the State of

5  California.

6  **18. EXCHANGE IN COUNTERPARTS**

7      Stipulations to this Consent Judgment may be executed in counterparts (and, without

8  limitation, by facsimile or by electronic mail in "portable document format" (".pdf"), each of

9  which shall be deemed an original, and all of which, when taken together, shall be deemed to

10  constitute one and the same instrument.

11  **19. NOTICES**

12      All correspondence and notices required to be provided by a Party to the other Parties

13  pursuant to this Consent Judgment shall be in writing and personally delivered or sent by: (a)

14  first-class, registered mail, certified return receipt requested, or (b) by overnight or Two Day

15  courier at the addresses set forth below.  AYS or the Settling Defendants may specify in writing

16  to the other Parties a change of address to which all notices and other communications shall be

17  sent.

18      Whenever notice or a document is required to be sent to AYS, it shall be sent to:

19          Danielle Fugere
        President

20          As You Sow
        1611 Telegraph Ave, Suite 1450

21          Oakland, CA 94612

22          and

23          Ellison Folk
        Shute, Mihaley & Weinberger LLP

24          396 Hayes Street
        San Francisco, CA 94104

25

26      Whenever notice or a document is required to be sent to a Settling Defendant, it shall be

27  sent to the contact name(s) and address(es) identified in **Exhibit E**, which shall also be

28  completed and appended to each Opt-In Stipulation submitted pursuant to Section 7.3.

33

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

**20. SEVERABILITY**

If, subsequent to court approval of this Consent Judgment, any of the provisions of this Consent Judgment are held by a court to be unenforceable or preempted, the validity of the enforceable provisions remaining shall not be adversely affected.

**21. ENTIRE AGREEMENT**

This Consent Judgment contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all prior discussions, negotiations, commitments, and understandings related hereto. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any Party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**22. AUTHORIZATION TO ENTER INTO AGREEMENT**

Each signatory to this Consent Judgment certifies that he or she is fully authorized by the Party that he or she represents to enter into and execute the Consent Judgment on behalf of the Party represented and legally bind that Party.

DATED: 12/4/17

AS YOU SOW

Andrew Behar, CEO

DATED: _____

BARRY CALLEBAUT U.S.A., LLC

Name: _____
Title: _____

34

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

**20. SEVERABILITY**

If, subsequent to court approval of this Consent Judgment, any of the provisions of this Consent Judgment are held by a court to be unenforceable or preempted, the validity of the enforceable provisions remaining shall not be adversely affected.

**21. ENTIRE AGREEMENT**

This Consent Judgment contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all prior discussions, negotiations, commitments, and understandings related hereto. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any Party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**22. AUTHORIZATION TO ENTER INTO AGREEMENT**

Each signatory to this Consent Judgment certifies that he or she is fully authorized by the Party that he or she represents to enter into and execute the Consent Judgment on behalf of the Party represented and legally bind that Party.

DATED: _____          AS YOU SOW

                                  _____
                                  Andrew Behar, CEO

DATED: _12/6/2017_                BARRY CALLEBAUT U.S.A., LLC

                                  _____
                                  Name: _JAMES G. HAGEDORN_
                                  Title: _EVP_

1

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1  DATED: _12/8/17_

        BLOMMER CHOCOLATE CO.

Name: _PETER W. BLOMMER_
Title: _CEO_

7  DATED: _____

        GUITTARD CHOCOLATE CO.

Name: _____
Title: _____

12  DATED: _____

        THE HERSHEY COMPANY

Name: _____
Title: _____

18  DATED: _____

        LINDT & SPRUNGLI (NORTH AMERICA), INC.

Name: _____
Title: _____

35

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1  DATED: _____        BLOMMER CHOCOLATE CO.

2

3                                _____
4                                Name: _____
                                 Title: _____
5

6

7  DATED: _12/6/17__             GUITTARD CHOCOLATE CO.

8

9                                _____
                                 Name: _GARY W. GUITTARD_____
10                               Title: _CEO_____

11

12 DATED: _____        THE HERSHEY COMPANY

13

14                               _____
15                               Name: _____
                                 Title: _____
16

17

18 DATED: _____        LINDT & SPRUNGLI (NORTH AMERICA), INC.

19

20                               _____
                                 Name: _____
21                               Title: _____

22

23

24

25

26

27

28
                                      35
   [PROPOSED] CONSENT JUDGMENT
   CASE NO. CGC-15-548791

1   DATED: _____        BLOMMER CHOCOLATE CO.

2

3                                           _____
4                                           Name: _____
                                            Title: _____
5

6

7   DATED: _____        GUITTARD CHOCOLATE CO.

8

9                                           _____
10                                          Name: _____
                                            Title: _____
11

12  DATED: 11-30-2017                        THE HERSHEY COMPANY

13

14                                          _____
                                            Name: ____Adrian D. Mebane_____
15                                          Title: ____Assistant Secretary_____

16

17

18  DATED: _____        LINDT & SPRUNGLI (NORTH AMERICA), INC.

19

20                                          _____
21                                          Name: _____
                                            Title: _____
22

23

24

25

26

27

28
                                        35
    ~~[PROPOSED]~~ CONSENT JUDGMENT
    CASE NO. CGC-15-548791

1   DATED: _____          BLOMMER CHOCOLATE CO.

2

3                                    _____
4                                    Name: _____
                                     Title: _____
5

6

7   DATED: _____          GUITTARD CHOCOLATE CO.

8

9                                    _____
10                                   Name: _____
                                     Title: _____
11

12  DATED: _____          THE HERSHEY COMPANY

13

14                                   _____
15                                   Name: _____
                                     Title: _____
16

17

18  DATED: _11/30/2017____            LINDT & SPRUNGLI (NORTH AMERICA) INC.

19

20                                   _____
                                     Name: _Andreas    Pfluger_____
21                                   Title: _President_____

22

23

24

25

26

27

28
                                          35
    [PROPOSED] CONSENT JUDGMENT
    CASE NO. CGC-15-548791

1   DATED: _12 - 7 - 17_         CARGILL, INC., on behalf of itself, its affiliates, and
2                               subsidiaries

3
4                               Name: _FLORIAN GIRTGÖTER_
5                               Title: _President, Managing Director of Cargill Cocoa_
6                                              and chocolate

7   DATED: _____         MARS, INC.
8
9
10                             Name: _____
11                             Title: _____
12

13  DATED: _____        MONDELEZ GLOBAL LLC, as the United States
14                             operating company for MONDELEZ
15                             INTERNATIONAL, INC.
16
17                             Name: _____
18                             Title: _____
19

20  DATED: _____        NESTLÉ USA, INC.
21
22
23                             Name: _____
24                             Title: _____
25
26
27
28

36

1   DATED: _____          CARGILL, INC., on behalf of itself, its affiliates, and
2                                     subsidiaries
3
4                                     Name: _____
5                                     Title: _____
6
7   DATED:  12-08-17                  MARS, INC.
8
9
10                                    Name:  SHAUGHAN M KENNEDY
11                                    Title:  VP RESEARCH AND DEVELOPMENT
12
13  DATED: _____          MONDELEZ GLOBAL LLC, as the United States
14                                    operating company for MONDELEZ
15                                    INTERNATIONAL, INC.
16
17                                    Name: _____
18                                    Title: _____
19
20  DATED: _____          NESTLÉ USA, INC.
21
22                                    Name: _____
23                                    Title: _____
24
25
26
27
28
                                          36
    [PROPOSED] CONSENT JUDGMENT
    CASE NO  CGC-15-548791

1  DATED: _____        CARGILL, INC., on behalf of itself, its affiliates, and
2                                  subsidiaries
3
4                                  _____
                                   Name: _____
5                                  Title: _____
6
7  DATED: _____        MARS, INC.
8
9                                  _____
                                   Name: _____
10                                 Title: _____
11
12
13  DATED: 12/6/15                  MONDELEZ GLOBAL LLC, as the United States
14                                  operating company for MONDELEZ
                                    INTERNATIONAL, INC.
15
16                                 *Valerie Oswalt*
17                                 Name: *Valerie Oswalt*
                                   Title: *President NAConfections*
18
19
20  DATED: _____        NESTLÉ USA, INC.
21
22                                 _____
                                   Name: _____
23                                 Title: _____
24
25
26
27
28

                                   36

TJID 20240823_0000374

1    DATED: _____    CARGILL, INC., on behalf of itself, its affiliates, and
2                                subsidiaries

3

4                                Name: _____
5                                Title: _____

6

7    DATED: _____    MARS, INC.

8

9                                Name: _____
10                               Title: _____

11

12

13   DATED: _____    MONDELEZ GLOBAL LLC, as the United States
14                               operating company for MONDELEZ
                                 INTERNATIONAL, INC.
15

16

17                               Name: _____
18                               Title: _____

19

20   DATED: 12 - 5 - 2017        NESTLÉ USA, INC.

21

22

23                               Name: Daniel Nugent
                                 Title: Chief Legal Officer + General Counsel
24                                                                    JL

25

26

27

28

36

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

# EXHIBIT A

## Initial Settling Defendants

Barry Callebaut USA, LLC

Blommer Chocolate Co.

Cargill, Inc.
(on behalf of itself, its affiliates, and subsidiaries)

Guittard Chocolate Co.

The Hershey Company

Lindt & Sprüngli (North America) Inc.
(on behalf of itself, its affiliates, and its subsidiaries, including Lindt & Sprüngli (USA) Inc.,
the Ghirardelli Chocolate Company, and Russell Stover Chocolates, LLC)

Mars Incorporated

Mondelez Global LLC
(as the United States operating company for Mondelez International, Inc.)

Nestlé USA, Inc.

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

TJID 20240823_0000376

1

# **EXHIBIT B**

2

## Opt-In Stipulation

3

4   ELLISON FOLK (State Bar No. 149232)
    LAURA D. BEATON (State Bar No. 294466)
5   SHUTE, MIHALY & WEINBERGER LLP
    396 Hayes Street
6   San Francisco, California 94102
    Telephone:   (415) 552-7272
7   Facsimile:   (415) 552-5816
    Folk@smwlaw.com
8   Beaton@smwlaw.com

9   Attorneys for AS YOU SOW

10

11

12

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    COUNTY OF SAN FRANCISCO

15                      UNLIMITED JURISDICTION

16

17  AS YOU SOW,                          Case No.    CGC-15-548791

18              Plaintiff,              **STIPULATION FOR ENTRY OF**
                                        **JUDGMENT**
19       v.

20  TRADER JOES COMPANY; and DOES 1
    through 150,
21
                Defendants.
22

23

24

25

26

27

28
                                38

1   1.  The following constitutes the knowing and voluntary election and stipulation of

2 the entity named below ("Company" or "Opt-In Defendant") to join as a Settling Defendant

3 under the Consent Judgment previously entered by the Court in *As You Sow v. Trader Joe's*

4 *Company, et al.*, San Francisco Superior Court Case No. CGC-15-548791 ("Action") and to

5 be bound by the terms of that "Consent Judgment."

6   2.  At any time during the three (3)-year period prior to the filing of this Stipulation

7 ("Relevant Period"), the Company has employed ten or more persons on a full or part time

8 basis and manufactured, distributed, or offered for use or sale in California, or sold in

9 California, one or more Covered Products, as defined in the Consent Judgment Section 2.4.

10   3.  Based on information and good faith belief, the Company knows or has

11 reason to believe that one or more of its Covered Products has in the past contained or

12 presently may contain lead or cadmium in excess of an applicable drop down level set forth in

13 Section 6.2.1 or 6.2.2 of the Consent Judgment.

14   4. The Company has not provided Proposition 65 warnings in conjunction with the

15 sale or use of its Covered Products in California at all times during the Relevant Period.

16   5.  The Company agrees to be bound by all terms of the Consent Judgment,

17 including, but not limited to, the injunctive relief provisions set forth in Section 6 of the

18 Consent Judgment.

19   6.  In conjunction with the execution of this Stipulation, the Company had provided

20 the payments required of it under the Consent Judgment and shall make all future payments

21 that may apply to the Company.

22   7.  At least 70 days prior to the submissions of this Stipulation to the Court for

23 entry, provided that it has been mailed to the address for notice shown in Exhibit E of the

24 Consent Judgment, a completed copy of which is attached to this Stipulation, the Company

25 agrees to be deemed to have accepted service of a 60-day notice letter from As You Sow

26 ("AYS") alleging certain violations of Proposition 65 with respect to sales of the Covered

27 Products.

28

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

8.    The Company hereby stipulates to be deemed to have voluntarily accepted service of the summons and complaint in this Action upon the filing of this Stipulation and, without waiving its rights to contest the issue in any other action, agrees to be subject to the jurisdiction of the Court for purposes of the Consent Judgment.

9.    The undersigned have read, and the person and/or entity named below knowingly and voluntarily agree to be bound by, all terms and conditions of this Stipulation and the Consent Judgment as it was previously approved and entered by the San Francisco County Superior Court in this Action.

10.    The undersigned has full authority to make the written representations above and to enter into this Stipulation for the person/entity on behalf of which he/she is signing.

**IT IS HEREBY STIPULATED AND AGREED TO:**

**On Behalf of Opt-In Defendant:**

Date:_____

By: _____
                (signature)

_____
        Name  (printed/typed)

_____
        Title  (printed/typed)

_____
    Company Name (printed/typed)

**On Behalf of Plaintiff, As You Sow:**

Date:_____

By:_____
      (signature and title)

40

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

# EXHIBIT C

## Scope of Work – Chocolate Consent Judgment[1]

I.     **Phases of Investigation and Committee Work**

A. Phase 1: Scope of Root Cause

The Root Cause Phase of the investigation is intended to identify any potential sources of lead and cadmium in chocolate across all phases of the cacao and Chocolate Products process and supply chains. For each source that the Committee identifies, the Committee should also identify the likelihood that each source would contribute lead or cadmium to chocolate (e.g., "common source," "infrequent source," "rare source," etc.). The Committee's conclusions may be based on literature review; consultation with subject matter experts and chocolate industry personnel; testing for lead/cadmium in soil, water, beans, ingredients, equipment, packaging, tools, etc.; and any information the Committee deems relevant and reliable. The Committee should evaluate all of the following as potential sources of lead/cadmium contamination in chocolate:

1. Soil;

2. Water;

3. Potential lead or cadmium pollution sources proximate to significant cocoa growing or processing locations (such as smelters, incinerators, diesel traffic), or other historic or less proximate sources (such as prior use of leaded gasoline, or deposition patterns from other sources of pollution);

4. Cacao plant fertilization, pest, disease and weed control practice and materials; and irrigation sources and practices;

5. Cacao bean harvesting, fermentation, drying, and transportation practices and materials, including but not limited to:

    a. harvesting tools;

    b. bean transportation vessels, such as sacks, tarps, baskets, and buckets;

    c. open-air drying and open-air transport of cocoa beans; and

    d. fermentation tarps, racks, cloths, or other materials that come into contact with beans.

6. Cocoa bean processing and chocolate manufacturing practices that may introduce lead or cadmium, including but not limited to:

---

[1] All defined terms as used herein shall have the meaning assigned to them in the Consent Judgment. A glossary of such terms is provided in Attachment 1.

41

a.  processing water;

b.  sugar or other inclusions;

c.  factory conveyance implements;

d.  other factory equipment, such as roasters, winnowers, crushers, melangers, grinders, blenders, melters, molds, etc.;

e.  product packaging.

The Committee's investigation is not limited to these potential sources. If the Committee identifies other potential sources of lead/cadmium in cocoa beans or Chocolate Products, it shall evaluate whether each additional potential source is a contributor of lead or cadmium, and what that source's likelihood and significance of contribution is.

B.  Phase 2: Scope of Reduction Recommendations

After identifying the likely sources of lead/cadmium in cocoa beans and Chocolate Products, the Committee will identify Feasible methods for reducing lead/cadmium in the Chocolate Products. As with the Root Cause Phase of the investigation, the Committee's recommendations will be Consensus Based and result from the Root Cause Phase as well as further literature review, consultation with outside subject matter experts, review of test results, and any other information the Committee deems relevant and reliable.

The Committee should evaluate lead/cadmium reduction options for all of the following phases of the cocoa bean and Chocolate Product production and supply chain. Then, it should identify which reduction measures are Feasible at each phase of the production process.

1.  Growing cacao, harvesting and fermentation of cocoa beans -- Some options for potential evaluation may include soil remediation, testing irrigation water and avoiding contaminated water, soil amendments to reduce heavy metal uptake, growing different varieties of cacao that uptake less heavy metals, changing fertilizers and pesticides/herbicides, etc.;

2.  Storage and transport of fermented cocoa beans -- Some options for potential evaluation may include changing storage and transportation implements; avoiding open-air drying near roads and other sources of pollution, etc.;

3.  Cacao bean processing and chocolate manufacturing -- Some options for potential evaluation may include comprehensive testing of a manufacturer's equipment, replacing outdated equipment, substituting  non-cacao ingredients, blending beans to lower lead/cadmium levels, implementing processes that extract lead/cadmium from the cacao beans or chocolate, and/or modifying product packaging.

If the Committee believes other options may prove Feasible, it should evaluate those options as well.

42

C. Phase 3: Evaluation of Future Proposition 65 Warning Triggers

The Committee shall evaluate whether the levels to trigger warnings shall be modified from the "drop down" levels described in Sections 6.2.1 and 6.2.2 of the Consent Judgement. The Committee shall make recommendations in this regard based on:

1. The identification of Feasible reduction methods (Phase 2) that could reasonably lower levels of lead and cadmium in Chocolate Products below the drop down levels to trigger warnings.

2. The inability to identify Feasible reduction methods (Phase 2) that could reasonably lower levels of lead and cadmium in Chocolate Products below the drop down levels to trigger warnings.

3. The conclusion that the drop down levels to trigger warnings are not Feasible to achieve and an identification of the levels between the drop down levels and the initial levels which are Feasible.

In the event the Committee determines that levels other than the specified drop down levels are appropriate and can be achieved through Feasible measures, the Committee shall specify what those levels are, when the levels of lead and/or cadmium in Chocolate Products can be expected to be reduced, and by whom.

As with the first two phases of the Scope of Work, the Committee's recommendations shall be Consensus Based and be based on literature review, consultation with outside subject matter experts, review of test results, and any other information the Committee deems relevant and reliable.

D. Final Report Phase

The Committee shall prepare a final, written report to describe and explain its findings, conclusions, and recommendations for all three phases of its investigation. The final report shall include supporting references with complete citations for the Committee's conclusions and identify any SMEs who advised the Committee during its deliberations. The final report shall not be edited by any persons other than the members of the Committee. The final report shall present all Consensus Based Committee findings and recommendations and may include an appendix setting forth significant areas where consensus could not be achieved and an appendix setting forth any significant conflicting opinions on aspects of a Consensus Based finding where they exist.

II.    **Deliverables and Schedule**

1. Based on a schedule developed by the Project Manager, the Committee members will commit to standing meetings (by phone conference) on a periodic basis or on an as needed basis to ensure coordination and the efficient sharing of information. The Project Manager shall develop a working agenda for each meeting and provide the Committee members with a brief written summary highlighting the discussion points and action items.

2. After the investigative portion of each of the first three phases of the Scope of Work is complete (as agreed upon by the Committee members), an outline of the findings,

43

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

conclusions, and recommendations shall be produced by the Committee and Project Manager for each investigative phase. These interim documents will be used to assist in internal discussions of the Committee and will form the basis of the final report.

3.  The Committee and the Project Manager, in providing quarterly reports as required under the Consent Judgment, will produce a list of all outside SMEs consulted with and a brief description of the information gathered.

4.  The Committee will produce an alphabetized list of all information sources with complete citations, including Internet URLs when available, to be included in the final report appendix.

5.  Following submission of the final report, the Committee may be asked to present an oral summary of its main findings, conclusions, and recommendations (including any alternative conclusions and recommendations by any Committee members) as deemed desirable by the Initial Settling Defendants and/or As You Sow.

6.  The Committee, with the approval of the Initial Settling Defendants and As You Sow, may elect to prepare the final report for submission to an appropriate trade journal for public access. The Committee shall agree not to pursue this publication until all of its work as outlined in the Scope of Work and the final report has been submitted.

Unless otherwise agreed upon by the Initial Settling Defendants and AYS, the final report shall be delivered by the Committee through the Project Manager within 18 to 24 months of the kickoff meeting that will be held pursuant to Section 3.2.2 of the Consent Judgment.

## III.    Cost/Budget

Unless revisited by AYS and the Initial Settling Defendants, all work and deliverables set forth in this Scope of Work shall be completed at a cost of $90,000 for each Committee member plus some funds to set aside for a part time Project Manager and possible outside expert consultation, up to an aggregate cap of $500,000.

## IV.    Confidentiality

All work by the Committee members and the Project Manager shall be subject to the confidentiality provisions set forth in Sections 3.3.3 and 3.4.4 of the Consent Judgment.

44

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

1

## ATTACHMENT 1 to EXHIBIT C—GLOSSARY OF DEFINED TERMS

2

3    "**Chocolate Product**" means chocolate candy; chocolate bars, pieces, chips,
beverages, and confections with or without inclusions; cocoa nibs and cocoa powder;
4    chocolate and cacao-based compounds in any form; and other products derived
primarily (i.e., in excess of 50%) from cacao.  Chocolate Products include the preceding
5    as sold on a standalone basis and/or as sold to be used as ingredients in other foods
into which they are incorporated.

6
"**Consensus Basis**" means a creative and dynamic way of reaching agreement
7    between all members of a group.  Instead of simply voting for an item and having the
majority of the group dictate the outcome, a group using consensus is committed to
8    finding solutions that each member of the group actively supports, or at least can live
with and that all opinions, ideas and concerns are taken into account.  A Consensus
9    Basis does not reflect compromise or unanimity - it aims to go further by weaving
together everyone's best ideas and key concerns.  It is an acceptable resolution, one
10   that can be supported, even if not the "favorite" of each individual.  Multiple concerns
and information shall be shared until the sense of the group is clear.  Ideas and
11   solutions belong to the group; no names are recorded.  The group as a whole is
responsible for the decision and the decision belongs to the group.  The goal is unity,
12   not unanimity.

13
"**Feasible**" means capable of being accomplished in a successful manner within a
14   reasonable period of time, taking into account public health,  and economic,
environmental, social, and technological factors.  In considering whether an action or
15   performance level is Feasible, consideration shall be given, among other things, to
scaling as to the size and resources of the potential implementing enterprise involved,
16   the implementing enterprise's place and role within the chain of commerce, the prior
demonstration of the viability of the concept or technology at issue at both the research
17   and actual commercial application scale, and the nature of the issue being addressed.

18   "**Settling Defendant**" means a defendant who is a party to the Consent Judgment at
the time it is entered, or who opts in to the Consent Judgment any time after its entry.
19   The former are also specifically referred to herein as "Initial Settling Defendants" and
the latter are also specifically referred to herein as "Opt-In Settling Defendants."

20

21

22

23

24

25

26

27

28

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

TJID 20240823_0000384

# EXHIBIT D*

*(\* = as revised by the Parties on January 31, 2018 to address a clarification request received from the Office of the California Attorney General concerning the preservation of both plaintiffs' and defendants' potential rights with regard to future litigation about certain prior claims and court-approved settlements/judgments)*

## Products Not Subject to Section 12.4 Downstream Release:

1. All nutritional, protein, diet or meal replacement/energy bars (hereinafter "Protein Bars") containing cocoa-based ingredients or chocolate which were the subject of a 60-day notice of violation issued or complaint filed by AYS pursuant to Health and Safety Code Section 25249.7(d) on or before to December 4, 2017 alleging violations of Proposition 65 with respect to a failure to warn about lead or cadmium;

2. All nutritional, protein, diet or meal replacement drinks/shakes/drink mixes (prepared or dried) (hereinafter "Nutritional Drinks") containing cocoa-based ingredients or chocolate which were the subject of a 60-day notice of violation issued or complaint filed by AYS pursuant to Health and Safety Code Section 25249.7(d) on or before December 4, 2017 alleging violations of Proposition 65 with respect to a failure to warn about lead or cadmium;

3. All Protein Bars containing cocoa-based ingredients or chocolate which are the subject of a settlement or consent judgment resolving alleged violations of Proposition 65 with respect to a failure to warn about lead or cadmium as approved by a court pursuant to Health and Safety Code Section 25249.7(f) prior to the Effective Date;

4. All Nutritional Drinks containing cocoa-based ingredients or chocolate which are the subject of a settlement or consent judgment resolving alleged violations of Proposition 65 with respect to a failure to warn about lead or cadmium as approved by a court pursuant to Health and Safety Code Section 25249.7(f) prior to the Effective Date.

967340.2

sf-3863605

TJID 20240823_0000385

**EXHIBIT E**

Designees to Receive Notices Under Consent Judgment

Company Name:    Barry Callebaut U.S.A. LLC

Attention of:    James G. Hagedorn
Address:    600 West Chicago Avenue
Suite 860
Chicago, IL 60654
Telephone:    312.496.7312
Email:    jerry_hagedorn@barry-callebaut.com

(Optional) with a CC to:
Name:    Philipp M. Muheim
(legal counsel or other designee)
Firm/Company:    Barry Callebaut U.S.A. LLC
Address:    600 West Chicago Avenue
Suite 860
Chicago, IL 60654
Telephone:    312.496.7435
Email:    philipp_muheim@barry-callebaut.com

47

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

# EXHIBIT E

## Designees to Receive Notices Under Consent Judgment

Company Name:    Blommer Chocolate Company

Attention of:    Peter Blommer
Address:    1101 Blommer Drive
P.O. Box 45
East Greenville PA 18041-0045

Telephone:    (215) 679-4472
Email:    pblommer@eg.blommer.com _

(Optional) with a CC to:
Name:    Allen C. Schlinsog, Jr.
Firm/Company:    Reinhart Boerner Van Deuren s.c.
Address:    1000 North Water Street
P.O. Box. 2965
Milwaukee, WI 53201-2965

Telephone:    (414)298-8214
Email:    aschlinsog@reinhartlaw.com

47

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

# EXHIBIT E

## Designees to Receive Notices Under Consent Judgment

Company Name:    Cargill, Incorporated

Attention of:    Managing Director, Cargill Cocoa
and Chocolate North America
Address:    15407 McGinty Road West, MS 36
Wayzata, MN 55391
Telephone:    (952) 984-5206
Email:    Florian_Girthofer@Cargill.com

(Optional) with a CC to:
Name:    Cargill, Incorporated

Firm/Company:    Attn: Law Department, Cocoa and
Chocolate North America Lawyer
Address:    15407 McGinty Road West, MS 24
Wayzata, MN 55391

Telephone:    (952) 742-0316
Email:    Kelly_McLain@Cargill.com

47

# EXHIBIT E

## Designees to Receive Notices Under Consent Judgment

Company Name: _Guittard Chocolate_

Attention of: _Gary Guittard._
Address: _10 Guittard Rd._
_Burlingame Ca. 94010_

Telephone: _650-697-4427_
Email: _Gary @guittard.com_

(Optional) with a CC to:
Name: _Robert Falk_
(legal counsel or other designee)
Firm/Company: _Morrison + Foerster LLP_
Address: _425 Market St_
_SF Ca 94105_

Telephone: _415-268-6294_
Email: _Rfalk @mofo.com_

47

TJID 20240823_0000389

# EXHIBIT E

## Designees to Receive Notices Under Consent Judgment

Company Name:    <u>The Hershey Company</u>

Attention of:    <u>Hershey Legal Department</u>
Address:    <u>100 Crystal A Drive</u>
<u>Hershey, PA 17033</u>
_____

Telephone:    <u>717-534-4200</u>
Email:    <u>legalnotices@hersheys.com</u>

(Optional) with a CC to:
Name:    <u>Robert Falk</u>
<u>(legal counsel or other designee)</u>
Firm/Company:    <u>Morrison & Foerster, LLP</u>
Address:    <u>425 Market Street</u>
<u>San Francisco, CA 94105</u>
_____

Telephone:    <u>415-268-6294</u>
Email:    <u>RFalk@mofo.com</u>

47

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

# EXHIBIT E

## Designees to Receive Notices Under Consent Judgment

Company Name:  Lindt & Sprüngli (North America) Inc. _____

Attention of:  Simon Kehl_____
Address:  4900 Oak Street _____
Kansas City, MO 64112, USA
_____

Telephone:  +1.816.855.2224 _____
Email:  sikehl@lindt.com _____

(Optional) with a CC to:
Name:  Chris Locke _____

Firm/Company:  Farella Braun + Martel LLP _
Address:  Russ Building_____
235 Montgomery Street _____
San Francisco, CA 94104 ___
Telephone:  415.954.4486 _____
Email:  clocke@fbm.com _____

47

# EXHIBIT E

## Designees to Receive Notices Under Consent Judgment

Company Name:  Mars Wrigley Confectionery US, LLC_____

Attention of:  Shaughan Kennedy_____
Address:  1132 W. Blackhawk St._____
Chicago, IL 60642_____
_____
Telephone:  (312) 241-5102_____
Email:  Shaughan.kennedy@effem.com

(Optional) with a CC to:
Name:  Katherine Fitzpatrick_____
(legal counsel or other designee)
Firm/Company:  Mars Wrigley Confectionery US, LLC_____
Address:  600 W. Chicago_____
Suite 500_____
Chicago, IL 60654_____
Telephone:  (312) 794-6245_____
Email:  Katherine.Fitzpatrick@effem.com

47

# EXHIBIT E

## Designees to Receive Notices Under Consent Judgment

**Company Name:** Mondelēz Global LLC, as the United States operating company for Mondelēz International, Inc.

**Attention of:** Ellen M. Smith, VP & Chief Legal Counsel–North America

**Address:** Mondelēz Global LLC
100 DeForest Avenue
East Hanover, NJ 07936

**Telephone:** (973) 503-2023

**Email:** ellen.smith@mdlz.com

(Optional) with a CC to:

**Name:** Trenton H. Norris; Sarah Esmaili
(legal counsel or other designee)

**Firm/Company:** Arnold & Porter Kaye Scholer LLP

**Address:** 3 Embarcadero Center, Suite 1000
San Francisco, CA 94111

**Telephone:** (415) 471-3100

**Email:** trent.norris@aporter.com
sarah.esmaili@aporter.com

47

TJID 20240823_0000393

# EXHIBIT E

## Designees to Receive Notices Under Consent Judgment

Company Name: _Nestle USA, Inc._

Attention of: _Chief Legal Officer + General Counsel_
Address: _1812 N. Moore Street_
_Arlington, VA 22209_

Telephone: _818-331-6397_
Email: _Daniel.Nugent @ us.nestle.com_

(Optional) with a CC to:
Name: _Doug Besman_
(legal counsel or other designee)
Firm/Company: _Nestle USA, Inc. -Legal Dept._
Address: _30003 Bainbridge Rd._
_Solon, OH 44139_

Telephone: _440/264-5191_
Email: _Douglas.besman @ us.nestle.com_

[PROPOSED] CONSENT JUDGMENT
CASE NO. CGC-15-548791

TJID 20240823_0000394