# EXHIBIT 34

## Prop. 65 enforcers' chocolate crusade goes too far

Pasadena Star-News (Pasadena, CA)

October 12, 2002 Saturday

Copyright 2002 MediaNews Group, Inc. and Los Angeles Newspaper Group, Inc.

**Section:** OPINION

**Length:** 1050 words

**Byline:** Jeffrey B. Margulies

## Body

FOR the last 15 years, countless consumer products have come within the sights of bounty hunters suing under Califor nia's Proposition 65, and the law's inexplicable and single- minded obsession with remote and even non-existent risks.

The last two years alone haveseen enforcement actions alleg ing that California citizens are exposed to carcinogens and re productive toxins from products as diverse as crystal drinking vessels, photo frames, light bulbs, Christmas lights, keys, electrical tape, orthodontic products, implanted medical de vices, game darts, dietary sup plements, Tiffany-style stained glass lamps, irrigation products, fire logs, exercise weights, ham mers, terrariums, tools, cue chalk, cosmetics, and even Slim-Fast.

Yet now a former Proposition65 defense attorney and his cli ent have gone a bridge too far, filing a bounty hunter lawsuit alleging that chocolates expose consumers to lead that requires a warning.

Proposition 65 allows privatecitizens, even if completely un harmed by alleged misconduct, to sue "in the public interest" and enforce the law's require ment that "clear and reasonable warnings" be given for expo sures to chemicals "known to the state to cause cancer or re productive toxicity."

If successful, the enforcer retains 25 percent of any civil penalties assessed [up to $2,500 per violation per day]. The en forcer can also seek an injunc tion requiring that warnings be provided and restitution on be half of allegedly defrauded con sumers. It can also seek an or der that the defendant pay attorneys' fees under Califor nia's private attorney general statute.

Once the enforcer shows a "detectable" exposure, the burden shifts to the defendant to estab lish a "highly technical, scien tific" defense by showing that the level of exposure does not require a warning. Because of this burden, the cost of litiga tion, and the crippling penalties imposed if a company is liable, most businesses have opted to settle rather than fight.

On May 8, 2002, a group calledthe American Environmental Safety Institute filed a Proposi tion 65 enforcement action against several chocolate manu facturers, including Hershey, Nestle, Kraft and See's Candies, Inc. According to the complaint and plaintiffs' well-timed public ity blitz [three days before Mother's Day], chocolates ex pose consumers to lead and cadmium in amounts that re quire a warning under Proposi tion 65.

Armed with knowledge of thedefense strategies used in previ ous Proposition 65 litigation that required the defendants to choose between reducing the minuscule lead content in their products or provide a product- killing warning, the plaintiff has now decided to put the chocolate industry to the same test. The plaintiff claims that the lead exposures in chocolate can be reduced by "an order of magnitude" if the industry would make what it claims are minor changes in their practic es. It also claims that the lead content in a typical chocolate candy is double the average daily amount of lead ingested in the diet of American con sumers.

## Prop. 65 enforcers' chocolate crusade goes too far

The manufacturers will be quick to point out that trace levels of metals in chocolates are well below industry and government standards, and like many foods, have never been shown to cause harmful effects. However, manufacturers are in for an uphill battle, considering that Prop. 65 shifts the burden to the manufacturers to establish that no warning is required, even for exposures to trace levels of metals that regulatory bodies have found safe, and the courts' strict interpretation of that burden.

The California Attorney General's office has taken the self-described "unusual" step of publicly commenting that the merits of the chocolate case appear to be lacking, based on the industry's substantial data demonstrating the naturally occurring level of heavy metals in cocoa, from which the chocolate is made.

On the one hand, this is very positive. The Attorney General is not known for being particularly friendly to industries that it believes can reduce lead exposures, and has brought litigation over exposures to trace amounts of lead in food and other products. On the other hand, it probably will be of no benefit. Even where the Attorney General believes a case is frivolous, he is powerless to prevent a plaintiff from proceeding.

Regardless of the technical merits of the risk assessment defense and the Proposition 65 "naturally occurring" exemption, the concept that eating chocolates is harmful due to exposure to lead is counterintuitive. Humankind has been eating chocolate for centuries, and if heavy metals in chocolate were really harmful, one would think that we would have long ago seen signs of lead toxicity in chocoholics. The claims made in this and other Proposition 65 lawsuits just make one wonder why Californians are not keeling over daily from the exposures alleged by citizen enforcers and public prosecutors intent on bringing these supposedly dangerous products to justice.

On a different level, even if the plaintiff is correct that there is some way to reduce exposure to heavy metals in chocolate, it seems highly unlikely that the outcome of this lawsuit will ever lead to a warning. It is extremely improbable that the manufacturers will ever voluntarily agree to warn that a chocolate candy bar causes cancer or birth defects.

If the plaintiff can demonstrate some technical violation of Proposition 65, any resolution of the case [like previous enforcement actions involving calcium supplements, antacids, multivitamins and other similar products] likely would create some new ultra-low "acceptable" level of lead that has little relationship to any harm actually caused by the product, but which would allow the plaintiff to claim a victory.

Fortunately, to date consumers seem not to care about the plaintiffs' claims. It could be that they are tired of hearing about yet another unfounded health scare. More likely, the lack of public outcry is due to the fact that chocolate is already perceived as "sin" food.

Although it clearly is not the plaintiffs' plan, public sentiment can remain neutral, and the resolution of these dubious claims can proceed without undue hysteria.

Jeffrey B. Margulies is a shareholder with the Los Angeles law firm Parker, Milliken, Clark, O'Hara & Samuelian.

**Load-Date:** October 21, 2003

---

End of Document

TJID 20240823_0000033