1   DAWN SESTITO (S.B. #214011)
    dsestito@omm.com
2   DANIELLE R. FEUER (S.B. #324174)
    dfeuer@omm.com
3   O'MELVENY & MYERS LLP
    400 South Hope Street
4   18th Floor
    Los Angeles, California  90071-2899
5   Telephone:  +1 213 430 6000
    Facsimile:  +1 213 430 6407
6
    MARTHA HUTTON (S.B. #279335)
7   mhutton@omm.com
    O'MELVENY & MYERS LLP
8   1625 Eye Street, NW
    Washington, DC 20006
9   Telephone:  +1 202 383 5300
    Facsimile:  +1 202 383 5414
10
    Attorneys for Defendant
11  Trader Joe's Company

12                  UNITED STATES DISTRICT COURT

13                SOUTHERN DISTRICT OF CALIFORNIA

14

15  IN RE TRADER JOE'S COMPANY          Case No. 3:23-cv-00061-RBM-DTF
16  DARK CHOCOLATE LITIGATION
                                        **DEFENDANT TRADER JOE'S**
17                                      **COMPANY'S REPLY IN**
                                        **SUPPORT OF ITS MOTION FOR**
18                                      **SUMMARY JUDGMENT**

19                                      Judge:  Ruth Bermudez Montenegro

20                                      NO ORAL ARGUMENT UNLESS
                                        ORDERED BY THE COURT
21

22

23

24

25

26

27

28

Plaintiffs double down on their novel theory that retailers must disclose the bare presence or risk of presence of heavy metals in dark chocolate—and in millions of other everyday grocery items—even though no regulator imposes such a requirement and even though publicly available information has shown for over two decades that heavy metals are present in dark chocolate and throughout the food supply.  No such obligation exists.  Only the FDA or state regulators—not Plaintiffs—could impose one, and doing so would not help consumers because *every* dark chocolate bar (and every other food made from plants that grow in soil) contains or risks containing some trace heavy metals.

Rather than confront the flaws in their theory, Plaintiffs try to distract from them by discussing irrelevant statements that no Plaintiff claims to have seen, misstating the evidentiary record, and arguing about an active-concealment theory they already disclaimed and that would not change the summary-judgment analysis. Plaintiffs' claims cannot proceed, and this Court should grant Trader Joe's Motion.

## ARGUMENT

### A. Plaintiffs Cannot Satisfy the Exclusive-Knowledge Requirement, an Indispensable Element of Each of Their Remaining Claims.

#### 1.    New York Law

Plaintiffs agree they must show they could not "reasonably have obtained" information indicating that the Products contained or risked containing heavy metals in any amount.  Opp. 13; *Paradowski v. Champion Petfoods USA*, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023).  Though they argue this "reasonably have obtained" standard is an issue of fact reserved for a jury, the Second Circuit said just the opposite in *Paradowski*, granting summary judgment for the defendant on this exact issue.  *Id.* at *3.  There, the Second Circuit *rejected* the argument that it could not decide what information was "reasonably" available to consumers.  *Id.*; *see Paradowski v. Champion Petfoods USA*, No. 22-962, Dkt. 61 at 15-21 (2d Cir.).[1]

---

[1] Plaintiffs' quotation from *Tomassini v. FCA US LLC*, 2016 WL 11707888, at *5

REPLY ISO MOT. FOR SUMM. J.
3:23-CV-00061-RBM-DTF

Trader Joe's presented extensive evidence of publicly accessible information about the presence of heavy metals in the overall food supply, in chocolate products generally, and in dark chocolate bars (including Trader Joe's products) specifically. *See* Mot. 2-6.  The only evidence Plaintiffs proffer to offset this trove of public information—Plaintiffs' own affidavits and two pages of Google search results—does not move the needle.  The affidavits, asserting Plaintiffs' own subjective lack of knowledge about the potential presence of heavy metals in the Products, are irrelevant because "courts apply an objective standard" to GBL claims.  *Paradowski*, 2023 WL 3829559, at *2.  And the two pages of Google results for "trader joe's dark chocolate" support *Trader Joe's* position: they disclose the presence or potential presence of heavy metals in Trader Joe's dark chocolate without having to click on a single entry. Dkt. 99-20 at 2, 6.  Plaintiffs also cross-reference a purported consumer survey and other allegations from their Complaint, but allegations are not evidence, and Plaintiffs cannot use them to oppose summary judgment.[2]

Plaintiffs' remaining arguments fare no better.  They fault Trader Joe's for citing sources published before Plaintiffs' purchases—as if Trader Joe's could refute exclusive knowledge *without* citing pre-existing information.  The age of Trader Joe's evidence shows that public knowledge dates back to the early 2000s, supporting its position.  *Paradowski*, 2023 WL 3829559, at *3 (citing regulatory guidelines from 2005 to show public awareness of heavy metals "for some time").  Similarly, Plaintiffs' assertion that Trader Joe's evidence is relevant only if it post-dates the *As You Sow* Consent Judgment makes no sense.  If consumers knew about the Consent Judgment, they knew (1) that dark chocolate may contain heavy metals and (2) that it allowed dark chocolate bars containing detectable heavy metals to be

(N.D.N.Y. Nov. 23, 2016), does not help them; it does not concern the GBL's exclusive-knowledge requirement at all.  And *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017), evaluates *California* statutory claims.

[2] Trader Joe's, by contrast, may cite the Complaint's allegations as they are judicial admissions by Plaintiffs.  *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008).

REPLY ISO MOT. FOR SUMM. J.
3:23-CV-00061-RBM-DTF

1   sold without a warning about them.  Nothing in the Consent Judgment suggests it is

2   possible to eliminate heavy metals from dark chocolate—and its use of non-zero

3   warning triggers, and non-zero drop-down warning triggers even for 2025, indicates

4   the opposite.  Dkt. 86-12 § 6.2.  And while Plaintiffs question the recency of some

5   of the tests Trader Joe's cites, Trader Joe's introduced archived web pages posting

6   test results for its chocolate products in 2018 and 2019.  Dkts. 86-16, 86-17.

7       Plaintiffs raise other hodgepodge complaints about Trader Joe's sources, but

8   each falls flat.  They dismiss many of the articles as "non-mainstream" and/or "non-

9   national," Opp. 10, but Trader Joe's supplied a variety of sources (including those

10  local to the jurisdictions at issue) to best capture a cross-section of the information

11  available to the public.  They ask the Court to ignore articles about non-chocolate

12  products, but evidence that heavy metals pervade the food supply would suggest to

13  a reasonable consumer that any product—including dark chocolate—might contain

14  trace heavy metals.  Indeed, *Paradowski* relied on exactly that type of information

15  for its exclusive-knowledge holding.  2023 WL 3829559, at *3.

16      For a similar reason, Plaintiffs cannot escape the 2006 FDA guidance on

17  heavy metals in candy: knowledge that heavy metals occur in dark chocolate

18  generally encompasses knowledge that they occur in Trader Joe's dark chocolate

19  specifically.  As *Paradowski* instructs, that is the natural consequence of Plaintiffs'

20  legal theory that the actionable omission is the bare presence or risk of presence of

21  heavy metals in the Products.  *Id*.  Plaintiffs also ask the Court to set aside the study

22  Trader Joe's introduced—a systematic review of *16 peer-reviewed scientific papers*

23  from 2002 to 2018 on heavy metals in chocolate and cocoa—because it found that

24  heavy-metal levels can vary from product to product.  But the study shows some

25  level of heavy metals across the board, and that is unquestionably relevant because

26  Plaintiffs' claims turn on the bare presence or risk of presence—not the amount—of

27  heavy metals in the Products.  Dkt. 86-18 at 4, 7.  Under their own theory, it is

28  immaterial whether Plaintiffs could have "discover[ed] the exact quantity of heavy

metals in [the subject] products." *Colangelo v. Champion Petfoods USA, Inc.*, 2022 WL 991518, at *25 (N.D.N.Y. Mar. 31, 2022), *aff'd sub nom. Paradowski*, 2023 WL 3829559. And while Plaintiffs try to avoid the *As You Sow* lawsuit on the basis that it presented different legal claims, the factual core of that case is squarely on point, focusing on heavy metals in dark chocolate, including Trader Joe's products.[3]

Plaintiffs attempt to distinguish *Paradowski* and *Plum*—which foreclose their claims—but they fail both factually and legally. Legally, though they say this case is different because "not all dark chocolate contains detectable levels of heavy metals," Opp. 17, that allegation lines up with *Paradowski* and *Plum*. In both cases, the plaintiffs claimed that some competing products did not contain heavy metals. 2023 WL 3829559, at *3; *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *2 (N.D. Cal. Mar. 28, 2024). Plaintiffs themselves cite *Paradowski*'s finding that "nearly all"—not all—pet food contains heavy metals. Opp. 17; 2023 WL 3829559, at *3. And factually, no evidence supports Plaintiffs' assertion that any dark chocolate is completely free of heavy metals.[4] The levels of heavy metals in dark chocolate may vary from product to product, and certain preventive measures may decrease those levels, but it is not possible to eliminate them altogether (and certainly not the "risk" of their presence). Plaintiffs cannot identify a single dark chocolate bar that does not contain heavy metals. That is consistent with Consumer Reports' test results, which Plaintiffs rely on, and which "detected cadmium and lead in all of" the dark chocolate bars it tested from more than 20 brands,

---

[3] Plaintiffs also belatedly raise superficial evidentiary objections in the Parties' Joint Statement, but on summary judgment, courts "do not focus on the admissibility of the evidence's form," but "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). And their hearsay refrain ignores that Trader Joe's uses the articles not for their truth, but to show what was publicly available.

[4] In their Statement of Facts, Plaintiffs make the very different statement that "it is possible to manufacture dark chocolate products with undetectable levels of cadmium and/or lead or within levels below California's MADL"—and cite test results showing that all dark chocolate bars tested contained heavy metals. Opp. 4.

concluding that even "safer options" contain heavy metals.  Dkt. 86-13 at 2, 5-7.[5]

Finally, Plaintiffs question whether exclusive knowledge can be "defeated by the existence of information online."  Opp. 18.  It routinely is, and Plaintiffs' contrary position finds no support in their cited cases.[6]  The internet is the most accessible information source on the planet, and Trader Joe's sources exist on paper too (*e.g.*, regulatory materials and newspaper articles from dual online/print publications).

*2.    Washington Law*

Plaintiffs do not—and cannot—dispute the well-settled principle under Washington law that "[s]ellers have a duty to disclose *only facts not easily discoverable* by the buyer."  *Cole v. Keystone RV Co*., 2021 WL 3111452, at *4 (W.D. Wash. July 22, 2021), *aff'd* 2022 WL 4234958 (9th Cir. Sept. 14, 2022) (emphasis added).  When allegedly omitted facts are easily discoverable by the buyer, there is no "unfair or deceptive act or practice."  *AVH & BJ Holdings 2, LLC v. LaClare Invs., LLC*, 7 Wash. App. 2d 1066, 2019 WL 1049521, at *1 (Mar. 5, 2019).  Plaintiffs concede that the "easily discoverable" standard applies to their Washington CPA claim, but they confuse the relevant legal analysis, misconstrue the case law, and urge a legal position that would lead to absurd consequences.

---

[5] Plaintiffs' reference to statements on Trader Joe's website (which Plaintiffs never viewed) and its response to a one-on-one customer email inquiry (which actually *acknowledged* heavy metals, Dkt. 99-15 at 2) is nothing but misdirection.  Those statements are beyond the scope of this case and did not affect Plaintiffs' decisions.

[6] *Brass v. Am. Film Techs., Inc.* did not concern the GBL, did not discuss online sources, and found only that a plaintiff could not have been expected to "contact[] the Securities and Exchange Commission" to obtain omitted information.  987 F.2d 142, 151 (2d Cir. 1993).  *Feliciano v. Gen. Motors LLC* was decided on a motion to dismiss, with the court holding only that it could not rule on exclusive knowledge "at this stage," and concerned complaints the court could not determine "contained material information relevant to the defect."  2016 WL 9344120, at *9 (S.D.N.Y. Mar. 31, 2016).  *Bayne v. Target Corp.* dismissed an omission-based GBL claim for lack of exclusive knowledge based on information available online.  630 F. Supp. 3d 544, 552-53 (S.D.N.Y. 2022).  And *Anderson v. Apple, Inc.* is a California case that does not address New York law at all.  500 F. Supp. 3d 993 (N.D. Cal. 2020).

*First*, Plaintiffs argue that there is a "rebuttable presumption" that they relied on the omission of information about trace heavy metals in Trader Joe's chocolate and claim that Trader Joe's has not presented evidence to rebut causation. Opp. 19-20. But this puts the cart before the horse: before the Court can consider causation or what information Plaintiffs relied on, Plaintiffs first need to show that Trader Joe's engaged in an unfair or deceptive act or practice, and they have not done so. *See, e.g., Shellenberger v. AIG WarrantyGuard Inc.*, 2024 WL 4144108, at *8 (W.D. Wash. Sep. 11, 2024) (causation "is not a component of the deception element"). Whether an act or practice is unfair or deceptive is a "question of law," and if a plaintiff cannot establish that legal requirement, "the Court need not discuss the other elements" of a claim. *Cole*, 2021 WL 3111452, at *2-4.

*Second*, Plaintiffs misconstrue the case law about when information is "readily available" from public sources under the Washington CPA. They assert that a defendant is itself required to disclose the omitted information and that it is not enough for the information to be available from other sources, pointing to *Steele v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1226 (W.D. Wash. 2009); *AVH*, 2019 WL 1049521; and *Cole*, 2021 WL 3111452. These cases say just the opposite.

In *Steele*, the plaintiffs claimed they would not have chosen to live at the defendant's nursing home if they had known its "history of violating State health statutes and regulations as cited by the Department of Social and Health Services." *Steele*, 607 F. Supp. 2d at 1233. The court granted summary judgment to the defendant because this "regulatory history [was] easily available to [p]laintiffs and the general public" even though defendant did not disclose it. *Id.* at 1234. Similarly, in *AVH*, the plaintiff argued that it would not have purchased commercial real estate "bounded by operating train tracks" if it knew that a local transportation authority would likely seek to acquire and condemn the land. 2019 WL 1049521, at *1. But the court held there was no duty to disclose the information because the transportation authority "publicized its proposed expansion . . . through public

REPLY ISO MOT. FOR SUMM. J.
3:23-CV-00061-RBM-DTF

media, its website, mass mailings, and public events." *Id*. at \*12. And in *Cole*, the plaintiffs argued that the defendant, a manufacturer of recreation vehicles susceptible to toxic mold and mildew, failed to disclose that "common varieties of mold are known to be toxic to humans" and that "the health hazard is greater the longer one is exposed." 2021 WL 3111452, at \*5. The court rejected those claims, finding that failure to disclose this information was neither unfair nor deceptive because it was "easily discoverable" from public sources. *Id*.

Finally, Plaintiffs note that the Washington CPA was adopted "to protect the public" and is "to be liberally construed." Opp. 18 (cleaned up). But the legislature also expressly limited the statute so that it "shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest." Wash. Rev. Code § 19.86.920. Recognizing Plaintiffs' legal theory would allow *any consumer* to sue *any food retailer* for not disclosing the trace presence (or risk) of heavy metals that occurs in virtually *all* food items. The Court should reject that absurd result.

### 3.    Illinois Law

Plaintiffs do not dispute that their ICFA claim fails if consumers reasonably could have obtained information that the Products contained or risked containing some amount of heavy metals. And they do not address, much less refute, the Northern District of Illinois' summary judgment holding in *Caracci v. Am. Honda Motor Co.*, 726 F. Supp. 3d 840, 849-50 (N.D. Ill. 2024), dispensing with an ICFA claim where the omitted information—that Honda's soy-based wiring insulation was susceptible to rodent damage—was not "uniquely within [defendant's] ken" in light of news reports and articles about the general "problem of rodents gnawing on vehicle wiring." *Caracci* confirms that the ICFA's knowledge prong can be resolved at summary judgment—and on evidence similar to Trader Joe's here.

Plaintiffs argue otherwise, relying on *Zarinebaf v. Champion Petfoods USA Inc.*, 2022 WL 980832 (N.D. Ill. March 31, 2022), but that case is off point. There,

REPLY ISO MOT. FOR SUMM. J.
3:23-CV-00061-RBM-DTF

the defendant tried to establish knowledge about heavy metals in dog food based on the general fact that heavy metals "are near-ubiquitous in society," not specific public information about heavy metals *in pet food*. *Id.* at \*6, \*11. By contrast, Trader Joe's has shown extensive public information not only about heavy metals in the general food supply, but about heavy metals in dark chocolate products and specifically in Trader Joe's dark chocolate products. *Zarinebaf* is further inapposite in that its ICFA claim was premised on the defendant's representation that the products were "Biologically Appropriate," which the court concluded could be interpreted to affirmatively suggest they did not contain heavy metals. *Id.* at \*10. No comparable representation exists here. Plaintiffs' further efforts to stave off summary judgment fail for the same reasons discussed above as to the other states.

### B. Plaintiffs' Pure-Omission Claim Is Not Cognizable Under Illinois Law.

As Trader Joe's laid out in its opening brief, Illinois law does not recognize pure-omission claims like the one Plaintiffs bring here. *See* Mot. 19-21. Plaintiffs' attempt to avoid that clear rule has no basis in law.

*First*, Plaintiffs manipulate the basic rule statement of *Ko v. Univ. of Potomac at Chicago*, 2024 WL 3694489, at \*5 (N.D. Ill. Aug. 7, 2024), adding an "only" modifier that suits their position but that has no grounding in the actual case. *Ko* does not suggest that a pure-omission claim is cognizable in any context.

*Second*, Plaintiffs also make no headway by citing a single outlier, out-of-circuit district court decision in *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 850 (S.D. Ohio 2012)—a case that Illinois' own district courts have repeatedly rejected for misinterpreting Illinois precedent. *See, e.g.*, *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1057 n.1 (N.D. Ill. 2022); *Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at \*3-4 (C.D. Ill. Sept. 21, 2021).

*Third*, the passage of *Zarinebaf* that Plaintiffs cite concerns omissions from *affirmative representations* on the subject products' labels, like omitting reference to frozen ingredients in statements on the packaging that advertised they were made

with "fresh, raw or dehydrated animal ingredients."  2022 WL 980832, at *2, *10.
As to the "risk of the presence of heavy metals"—a passage Plaintiffs tellingly do
not cite—the court noted that a "'general failure to disclose' is insufficient for an
omission claim" under ICFA; it allowed the claim to proceed because of the
affirmative statement that the products were "Biologically Appropriate."  *Id.*

Here, Trader Joe's did not communicate with Plaintiffs about the Products,
so Plaintiffs look to the basic labels to try to fill that gap.[7]  But unlike in *Zarinebaf*,
the labels say nothing about the Products' safety or about the presence or absence
of heavy metals.  *In re Plum*, 2024 WL 1354447, at *9.  They are exactly the sort of
mere "opportunities or locations where [the defendant] could have disclosed the
alleged defect" that do not suffice under ICFA.  *Guajardo*, 2021 WL 4302532, at
*3-5.  The best Plaintiffs can muster is reference to the ingredients list in the
Nutrition Facts Panel—mandated under federal law, 21 U.S.C. § 343(i); 21 C.F.R.
§ 101.4—but heavy metals are not an "ingredient" in the Products and naturally
occur in cocoa.  Even Plaintiffs repeatedly alleged heavy metals are *in* the Products'
ingredients, not ingredients unto themselves.  Compl. ¶¶ 96, 99, 142, 147, 150-51,
161.  Not only would this theory swallow the rule against pure-omission claims
under ICFA, but it would require Trader Joe's to violate federal law by adding
"disclosures" that are not allowed in the ingredients list.  That cannot be the case—
which is why such a mandate would be preempted.  21 U.S.C. § 343-1(a).

Plaintiffs also make no headway with their eleventh-hour pivot to "active
concealment."  Plaintiffs have long asserted this is "an omissions case" in which
"non-disclosure is the entire basis of Plaintiffs' claims."  Dkt. 35 at 5.  They cannot
take a different tack now, much less argue that Trader Joe's waived any rights.

---

[7] Plaintiffs feign ignorance as to whether the *Plum* plaintiffs presented this same
label-based theory, though they share the same counsel.  The *Plum* summary
judgment papers confirm those plaintiffs advanced the same failing argument that
their ICFA claim was not subject to the pure-omission bar because "the Products'
packaging" constituted "the required communication."  *In re Plum*, Dkt. 238 at 19.

REPLY ISO MOT. FOR SUMM. J.
3:23-CV-00061-RBM-DTF

Even if the Court allowed such a last-minute change, it would make no difference because Illinois courts make no distinction between "omission" and "concealment" claims under ICFA on the issues presented in Trader Joe's Motion. Plaintiffs cite no authority showing otherwise, and certainly no authority suggesting that labeling a non-disclosure as "concealment" could somehow circumvent ICFA's mandate that an actionable non-disclosure be a non-disclosure from a communication. Plaintiffs' citation to *Connick v. Suzuki Motor Co.* only undermines their position, as it treats concealment and omission interchangeably. 174 Ill. 2d 482, 505 (1996) (describing the same alleged ICFA violation as fraud "based on a material omission" and "fraud by concealing material facts"). And Plaintiffs' reliance on *JPMorgan Chase Bank, N.A. v. E.-W. Logistics, L.L.C.*, 9 N.E.3d 104 (Ill. App. Ct. 2014), is also misplaced; it does not address ICFA at all.

In reality, the case law on ICFA's affirmative-communication requirement concerns claims with the same dual omission-and-concealment framing Plaintiffs now advance. For example, in *Guajardo*, the plaintiff had alleged the defendant "concealed, suppressed, and intentionally omitted material facts" about the product at issue. 2021 WL 4302532, at *3. In *O'Connor v. Ford Motor Co.*, the plaintiff similarly had alleged the defendant acted deceptively by "failing to disclose and actively concealing" risks posed by a product. 477 F. Supp. 3d 705, 713 (N.D. Ill. 2020). And in *Plum*, the plaintiffs attempted the very same ploy of trying to conjure an "active concealment" theory at summary judgment to circumvent ICFA's pure-omission bar. *In re Plum*, No. 4:21-cv-00913, Dkt. 238 at 11-12, 19 (N.D. Cal. Sept. 29, 2023). The *Plum* court saw right through that argument and granted summary judgment for the defendant for lack of an affirmative "statement regarding safety that conveys a material omission upon which they relied." *In re Plum*, 2024 WL 1354447, at *8-9. The same result should follow here.

## CONCLUSION

Trader Joe's Motion for Summary Judgment should be granted in full.

REPLY ISO MOT. FOR SUMM. J.
3:23-CV-00061-RBM-DTF

1

2    Dated:  January 31, 2025          **O'MELVENY & MYERS LLP**
                                       DAWN SESTITO
3                                      MARTHA HUTTON
                                       DANIELLE R. FEUER
4

5                                      By:    _/s/ Dawn Sestito_

6                                             Dawn Sestito
                                       Attorneys for Defendant
7                                      Trader Joe's Company

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOT. FOR SUMM. J.
3:23-CV-00061-RBM-DTF