# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRADER JOE'S COMPANY DARK CHOCOLATE LITIGATION | Case No.: 3:23-cv-0061-RBM-DTF<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. 85] |

Plaintiffs brought this class action against Defendant Trader Joe's Company ("Defendant" or "Trader Joe's") on behalf of purchasers of specific Trader Joe's dark chocolate bars. Plaintiffs allege the dark chocolate bars contain or have a material risk of containing lead, cadmium, and arsenic (collectively, "Heavy Metals") that were not disclosed on the package labels. Defendant now moves for summary judgment on Plaintiffs' claims brought under New York, Washington, and Illinois state law based on two issues. (Doc. 85-1.) Defendant argues it is entitled to summary judgment because Defendant did not have exclusive knowledge that the dark chocolate bars contained or had a material risk of containing Heavy Metals, a requirement for each state law claim, and because Illinois state law does not permit a pure-omission claim. (*Id.*) Plaintiffs have filed an Opposition arguing that Defendant's exclusive knowledge is a factual dispute that must

be decided by a jury and that Plaintiffs' Illinois fraud-by-omission claim is not precluded. (Doc. 99.) Defendant has filed a Reply. (Doc. 100.)

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons set forth below, Defendant Trader Joe's Company's Motion for Summary Judgment ("the Motion") is **GRANTED**.

## I. BACKGROUND

### A. Procedural History

The operative complaint in this action is Plaintiffs' Consolidated Class Action Complaint ("CAC"). (Doc. 20) On March 27, 2024, the Court granted in part Defendant's Motion to Dismiss the CAC and dismissed Plaintiffs' claims for: violations of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200 *et seq.*; violations of California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*; violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; Breach of the Implied Warranty of Merchantability; and Unjust Enrichment. (Doc. 55.) The Court granted Plaintiffs leave to amend these claims. (*Id.* at 22, 27, 34). However, Plaintiffs elected to stand on the CAC rather than amend. (Doc. 60.)

Plaintiffs are proceeding only on the claims of the CAC that were not dismissed: (1) violation of Deceptive Practices Act, New York General Business Law ("GBL") § 349; (2) violation of New York GBL § 350; (3) violation of Washington's Unfair Business Practices and Consumer Protection Act, RCW §§ 19.86.010, *et seq.* ("WCPA"); and (4) violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Compiled Statute §§ 505/1, *et seq.* ("ICFA"). (CAC ¶¶ 180–287[1].)

///

---

[1] The Court cites the paragraphs of the CAC and the CM/ECF electronic pagination for cites to the Parties' briefs. Exhibits are cited by exhibit number.

Defendant Answered the CAC (Doc. 62), and the assigned Magistrate Judge held an Early Neutral Evaluation Conference and Case Management Conference on July 12, 2024. (Doc. 82.) The Magistrate Judge set an August 26, 2024 deadline for Defendant to file an anticipated motion for summary judgment. (*Id.*) The Magistrate Judge did not issue a full scheduling order because Defendant was planning to file a limited motion for summary judgment on two threshold legal issues—Defendant's exclusive knowledge[2] of the potential presence of Heavy Metals in the Products and whether Plaintiffs could pursue an omission claim under the ICFA. (Doc. 82.)

Defendant filed the Motion on August 26, 2024 raising only these two issues. (Docs. 85–89.) At the time the Motion was filed, the Parties agreed they would jointly move for a modified briefing schedule to allow Plaintiffs sufficient time to identify the discovery needed to oppose the Motion. (Doc. 92 at 2.) The Parties sought and obtained two extensions of Plaintiffs' time to file an opposition to the Motion to allow Plaintiffs additional time to complete necessary discovery. (Docs. 92, 95 (Joint Motions); Docs. 93, 96 (orders granting extensions).) Plaintiffs filed their Opposition to Plaintiffs' Motion on January 21, 2025. (Doc. 99.[3]) Defendant filed its Reply on January 31, 2025. (Doc. 100.)

---

[2] The Court follows the Parties' categorizing of this requirement as an "exclusive knowledge" requirement, recognizing that it is based on the premise that an omission of material information is deceptive or misleading because the omitted information is not reasonably obtainable by consumers. The specific standards under each state's laws that consider whether the information is reasonably obtainable, easily discoverable, or available are addressed below.

[3] Plaintiffs accuse Defendant of "[l]ooking to avoid Plaintiffs' ability to obtain a full record on which to prove their case, including expert discovery[,]" and characterize Defendant's Motion as a "premature." (Doc. 99 at 9.) However, Rule 56(b) allows "a party [to] file a motion for summary judgment at any time until 30 days after the close of all discovery." Additionally, Plaintiffs have not opposed the Motion under Federal Rule of Civil Procedure 56(d), which allows courts to defer or deny a summary judgment motion, allow time for the nonmovant to obtain needed discovery or declarations, or "issue any other appropriate order," but only "[i]f [the] nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Plaintiffs have not raised Rule 56(d) or complied with its requirements.

**B.   Facts**

Given the limited issues raised in the Motion and the more detailed discussion of the Parties' evidence below (*see infra* III.B), the Court only briefly summarizes the allegations of the CAC and the evidence submitted by the Parties.

Plaintiffs identify the following eight dark chocolate bars as "contain[ing] (or hav[ing] a material risk of containing" Heavy Metals not disclosed on the packaging:

- Trader Joe's 72% Cacao Dark Chocolate Bar
- Trader Joe's The Dark Chocolate Lover's Chocolate Bar (85% Cacao)
- Trader Joe's Dark Chocolate Bar with Almonds (73% Cacao)
- Trader Joe's Uganda Dark Chocolate Bar (85% Cacao)
- Trader Joe's Mini 70% Cacao Dark Chocolate Bars
- Trader Joe's 73% Cacao Super Dark Dark Chocolate Bar
- Trader Joe's Swiss 72% Cacao Dark Chocolate Bar
- Trader Joe's Pound Plus 72% Cacao Dark Chocolate Bar

(collectively, "the Products"). (CAC ¶¶ 1, 8.) There is no dispute that: the Products' labels do not disclose the presence or material risk of the presence of Heavy Metals on the Products' labels or on Defendant's website; Defendant does not itself test for Heavy Metals in the Products, relying on its vendors to test for regulatory compliance; and Defendant does not publicly share test results, disclose test results in response to customer inquiries, or tell consumers that it does not itself test the Products. (Joint Statement 21, 24–28.) There is also no dispute that the Products contain or have a material risk of containing Heavy Metals based on Consumer Reports test results in 2022, although Defendant notes that these results indicate every dark chocolate bar tested across 20 brands contained Heavy Metals and that the levels in Defendant's Products complied with California Proposition 65 ("Proposition 65") and the 2018 Consent Judgment. (Joint Statement 23.)

As discussed further below, Defendant is moving for summary judgment on the exclusive knowledge requirement under each of three states' laws. (*See infra* III.C.) Although there are differences between the standards (*see infra* III.C, 1–3), the requirement precludes claims based on an omission of information when the omitted information was

reasonably obtainable or easily discoverable by consumers.  Here, Defendant asserts the presence of or risk of the presence of Heavy Metals in the Products was information reasonably obtainable and easily discoverable because it was widely publicized over decades.  In support of its Motion, Defendant submitted as exhibits a variety of articles, studies, product test results posted online, regulatory guidance documents, and litigation filings that publicly identify the presence of Heavy Metals in the broader food supply, chocolate, candy, and dark chocolate, including some of Defendant's dark chocolate products.  (Docs. 86–89, Exs. 3–15, 17–65.)  Plaintiffs raise numerous challenges to this evidence that are discussed further below.  (*See infra* III.B.)

## II.     LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fortune Dynamic*, 618 F.3d at 1031 (internal quotation marks and citations omitted); *accord Anderson*, 477 U.S. at 248.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323.  To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Jones v. Williams*, 791 F.3d 1023, 1030–31 (9th Cir. 2015) (quoting *Nissan Fire & Marine*

*Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).  Once the moving party has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file," to show that a genuine issue of disputed fact remains.  *Celotex Corp.*, 477 U.S. at 324; *T.W. Elec. Serv.*, 809 F.2d at 630 (citations omitted).  The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (citation omitted).

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "Rather, it draws all inferences in the light most favorable to the nonmoving party."  *Id.*

### III.  DISCUSSION

Defendant argues Plaintiffs cannot satisfy the exclusive knowledge requirement for each of Plaintiffs' remaining claims under New York, Washington, and Illinois state law because the presence of Heavy Metals in chocolate and the food supply in general, was information reasonably obtainable and easily discoverable by consumers. (Doc. 85-1 at 1–23.)  Additionally, Defendants assert Plaintiffs' Illinois claim fails because the ICFA does not recognize a pure omission theory of liability—a claim based on an omission of material information without an affirmative statement or communication—as Plaintiffs assert here. (Doc. 85-1 at 23–27.)  Plaintiffs argue Defendant had exclusive knowledge of the presence or risk of presence of Heavy Metals in the Products and consumers could not have reasonably learned this information. (Doc. 99 at 1–29.)  Plaintiffs also argue their ICFA claim is not precluded as a pure omission because the labels on the Products are a communication from Defendant to consumers that communicates other information, but not the presence of Heavy Metals. (Doc. 99 at 12–13, 30–32.)

The specific claims are discussed further below, but generally, these remaining claims require a showing that the information Defendant failed to disclose was possessed by the business alone or that the information could not have been reasonably obtained or was not easily discoverable by a consumer. *See Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-CV, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023). The Court first addresses several issues that impact all the claims and then determines whether summary judgment should be granted on each claim under each states' standard.

### A. Containing or Material Risk of Containing Heavy Metals

Plaintiffs' claims are based on Defendant's failure to disclose that "the Products contain (or have a material risk of containing) Heavy Metals." (CAC ¶ 17 (defining this as Defendant's "Omissions").) Like other cases decided on summary judgment concerning Heavy Metals in food, Plaintiffs' claims are not based on Defendant's failure to disclose any "specific *quantities* of heavy metals present," high levels of Heavy Metals in the Products, or even that the levels exceed any regulatory or safe threshold. *Paradowski*, 2023 WL 3829559, at *3 ("[I]t is worth clarifying that Plaintiff has not pleaded an omissions claim based on specific *quantities* of heavy metals in Champion's product" or "quantities of heavy metals in excess of safe thresholds."); *see also In re Plum Baby Food Litig.*, Case No. 4:21-CV-00913-YGR, 2024 WL 1354447, at *8 (N.D. Cal. Mar. 28, 2024) (granting summary judgment on New York GBL claims based on the "*presence* or risk of heavy metals … in their Baby Food products.") (emphasis added). If that were the case, the information Defendant might have exclusive knowledge of or that might not be reasonably obtainable by a consumer would be the high levels or exceedances of safe threshold for Heavy Metals. *Paradowski*, 2023 WL 3829559, at *3.

However, when a plaintiff's claim is that the defendant failed to "disclose[] … [that] its products contained—or had a material risk of containing—*any* amount of heavy metals," the question is whether reasonably obtainable information disclosed that the product "contained heavy metals." *Id.* ("fact that [defendant's] pet foods contained heavy metals" was reasonably obtainable information). When, as here, the basis for the omission

is "that the Products contain (or have a material risk of containing) Heavy Metals,"[4] the "precise question presented is whether [Defendant] had exclusive knowledge of the presence or [material] risk of heavy metals … in [the Products]." *See In re Plum Baby Food Litig.*, 2024 WL 1354447, at *8 (granting summary judgment on New York GBL claims based on the presence of Heavy Metals in the food supply and ingredients in the defendant's product being "the subject of media coverage for years prior to this lawsuit."); *see also Paradowski*, 2023 WL 3829559, at *3 (affirming grant of summary judgment based on finding that the products containing Heavy Metals was reasonably obtainable).

### B. Presence of Heavy Metals in Dark Chocolate

The Court will not individually address the more than sixty exhibits Defendant submitted and Plaintiffs' challenges to them as a basis for summary judgment. However, the Court briefly summarizes the evidence submitted by Defendant.

The earliest articles and publications submitted by Defendant are from 2002 through 2006 with most of the articles published in 2002. (Exs. 20–35.) They address chocolate containing Heavy Metals and report on a 2002 case against numerous companies based on the presence of Heavy Metals in their chocolate products. (*Id.*) The Complaint in the 2002 case was also submitted by Defendant and alleges that numerous companies (but not Defendant) were selling chocolate products that contained Heavy Metals above Proposition 65 levels. (Ex. 11.) The articles do not discuss dark chocolate specifically, but they repeat concerns about Heavy Metals in chocolate. (Exs. 20–36.) A 2005 article notes the higher levels of lead in dark chocolate. (Ex. 35.) Defendant also identifies a 2006 FDA guidance

---

[4] *See* CAC ¶¶ 8, 17 (failed to disclose on packaging that Products contain (or have a material risk of containing) Heavy Metals); *see also* CAC ¶¶ 32, 35, 38, 41, 44, 50, 53, 56, 59, 62, 65 ("due to the Omissions by Defendant, … unaware the Products contained (or had a material risk of containing) any level of Heavy Metals"); CAC at page 26 (Due to the Presence and/or Material Risk of the *Presence* of Heavy Metals in the Products, the Omissions are Misleading") (emphasis added); ¶ 148 ("Omissions were misleading due to Defendant's failure to sufficiently or adequately monitor or test for and disclose the *presence (or material risk)* of Heavy Metals in the Products") (emphasis added).

document that set maximum lead levels for candy likely to be consumed by children and specifically identifies dark chocolate as generally having higher levels of lead. (Exs. 7–8.)

Defendant also submitted more recent articles and other publications from approximately 2014 through December 2022 that discuss the presence of Heavy Metals in chocolate products and dark chocolate in particular. (Exs. 36–55.[5]) The articles repeatedly report on As You Sow[6] test results regarding the presence of Heavy Metals in chocolate products, as well as 2017 Consumer Reports test results showing that chocolate, and dark chocolate in particular, contain Heavy Metals with some articles identifying Defendant's dark chocolate products specifically. (*Id.*) Many of the articles reference a 2015 case (Ex. 12) brought by As You Sow against numerous companies that sell chocolate products, including Defendant, either when the case was filed in 2015, or in 2018 after the Consent Judgment was entered in that litigation (Ex. 13). From this same time frame, Defendant includes archival copies of As You Sow's test results filtered to Defendant's chocolate products in 2018 and 2019 showing the presence of Heavy Metals. (Exs. 17–18.) Defendant has also submitted articles focused on Heavy Metals in the general food supply, baby food, fruit juice, protein powders, and rice with some of the articles also noting chocolate specifically, and dark chocolate in particular, as containing Heavy Metals. (Ex. 51, 55–65.)

Defendant has also submitted a scientific journal article that reviewed numerous other scientific papers from 2002 to 2018 about the presence of Heavy Metals in chocolate and cocoa (Ex. 19) and FDA publications from 2018, 2021, and 2022 addressing levels of Heavy Metals in food. (Exs. 4–7.)

Plaintiffs attempt to undermine the breadth of this publicly available information by challenging how high in a list of search engine results these specific articles might appear,

---

[5] Exhibit 41 is incorrectly identified as being from "February 18, 2005," (*see* Decl. of Dawn Sestito ("Sestito Decl.") ¶ 43), but it was published on February 18, 2015 (Ex. 43).

[6] As You Sow is an organization that has conducted regular testing for Heavy Metals in chocolate products, including some of Defendant's, since 2014. (Exs. 16–18.)

that some are too old or too close in time to the 2018 Consent Judgment, and that they concern the food supply in general. (Doc. 99 at 14–16, 19–20.) They also attempt to dispute that this information was reasonably obtainable or easily discoverable because the individual Plaintiffs assert they lacked awareness that the Products they purchased "contained (or had a material risk of containing) any level of Heavy Metals." (Ex. 11 (repeating through each Plaintiffs' declaration).) Plaintiffs also argue Defendant concealed information on the presence of Heavy Metals by not affirmatively disclosing it on the website and not providing customer's inquiring about Heavy Metals in dark chocolate products with test results.

However, the Court is not persuaded that these challenges create a genuine dispute of material fact. *Fortune Dynamic*, 618 F.3d at 1031 ("A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")(citations omitted); *see also T.W. Elec. Serv., Inc.*, 809 F.2d at 630 ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.") (citations omitted). Whether information on the presence of Heavy Metals in the Products was reasonably obtainable (or easily discoverable) does not depend on what individual Plaintiffs were or were not aware of, what consumers said in response to a survey inquiring about what specific labels suggested, or whether Defendant disclosed test results to individual customer inquiries. Rather, it turns on what information was reasonably obtainable or easily discoverable by consumers about the presence of Heavy Metals in dark chocolate. (*See infra* III.C (state specific exclusive knowledge requirements).)

As noted above, two cases addressing Heavy Metals in foods are particularly persuasive. In *Paradowski*, the Second Circuit found the presence of Heavy Metals in pet food was reasonably obtainable based on studies demonstrating seafood contains high concentrations of Heavy Metals and the products at issue listed fish-based ingredients. 2023 WL 3829559, at*3. The court additionally relied on the publication of guidelines regarding acceptable concentrations of Heavy Metals in dog food as "demonstrat[ing] that the public has been aware of the occurrence (or the risk) of this phenomenon for some

time." *Id.* The court concluded that this "factual record establishes that a reasonable consumer could have discovered that [Defendant's] pet foods had a material risk of containing some measurable amount of heavy metals." *Id.* Here, the information available is even more directly disclosed. The Court need not rely on the presence of Heavy Metals in an ingredient that is the product. Rather, it is the product itself, chocolate, that is known to contain Heavy Metals. Additionally, here, there are also regularly reported test results showing the presence of Heavy Metals in chocolate, and in dark chocolate in particular. While As You Sow is not a regulator publishing guidelines with acceptable levels of Heavy Metals in chocolate, like those in *Paradowski* for dog foods, As You Sow has repeatedly published test results on the levels of Heavy Metals in chocolate using Proposition 65 thresholds as a marker. In this respect, these results similarly establish "that the public has been aware of the occurrence (or risk) of this phenomenon for some time" and "establish[] that a reasonable consumer could have discovered that [the Products] had a material risk of containing some measurable amounts of heavy metals." *Id.*

*In re Plum* is also instructive in that the court relies, in part, on a similar collection of articles to find the presence of Heavy Metals in the products at issue had "been covered by the media before [the] lawsuit was filed." *See In re Plum Baby Food Litig.*, 2024 WL 135447, at *5–6, n.8 (listing numerous publications in footnote). The articles and other publications submitted by Defendant here establish that the presence of Heavy Metals in chocolate has been widely publicized. Even if older publications and more technical documents were not considered because of their age and readability, by 2015, before the Plaintiffs began purchasing Defendant's dark chocolate products, the presence of Heavy Metals in dark chocolate was widely publicized, including by the 2015 case against numerous chocolate companies and As You Sow's publication of test results on dark chocolate products. Additionally, while some of the articles focus on Heavy Metals in the food supply more generally, and those publications alone might be insufficient to grant summary judgment, that information is not completely irrelevant, as Plaintiffs assert. In concluding "that 'nearly all pet food contains measurable quantities of Heavy Metals,'"

one piece of information the court relied on was "measurable quantities of heavy metals occur[ing] naturally in the environment and [being] prevalent in a wide variety of food products." *Paradowski*, 2023 WL 3829559, at *3 (affirming grant of summary judgment).

The Court is not persuaded that the lower levels of Heavy Metals in some dark chocolate products and indications in the 2022 Consumer Reports article that Heavy Metals can be reduced (Ex. 14), means information on their presence was not reasonably obtainable or easily discoverable, as Plaintiffs assert. As Defendant notes, the same test results Plaintiffs rely on to show levels can be lower or reduced (because the levels are different from product to product) also show Heavy Metals remain at least present on some level because every single dark chocolate product tested had some level of Heavy Metals. (*Id.*) Similarly, Defendant not monitoring the levels of Heavy Metals in the Products itself and relying instead on its vendors' declarations indicating compliance with Proposition 65 and the As You Sow Consent Judgment requirements goes only to the levels in the Products, not to their mere presence or risk of their presence. Being able to reduce the level by some amount does not undermine the breadth of publicly available information indicating that chocolate, and dark chocolate in particular, contains or has a risk of containing Heavy Metals.

The Court concludes that these many articles, the As You Sow test results, and reporting on test results and litigation establish that information on *the presence* of Heavy Metals in chocolate has been reasonably obtainable, easily discoverable, and available (*see infra* III.C.1–2) to consumers for many years, including at the time the Plaintiffs were purchasing Defendant's dark chocolate Products.

C.  **Exclusive Knowledge**

Although there is significant overlap in the analysis of the exclusive knowledge requirement across the states' laws and the Court has discussed the issue above (*see supra* III.B), the Court analyzes this requirement under each states' applicable standards.

### 1. New York

Plaintiffs' New York claims are brought under two overlapping consumer protection statutes, GBL §§ 349 and 350. *See Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1027–28 (9th Cir. 2024) (describing GBL § 349 and § 350 as "two overlapping New York consumer protection laws" and explaining § 350 "specifically addresses false advertising but otherwise has the same broad scope and standard for recovery"). To succeed on their New York claims, plaintiffs "must show that: '(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered injury as a result of the deception.'" *Paradowski.*, 2023 WL 3829559, at *2 (quoting *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1197 (N.Y. 2021)); *see also Montera*, 111 F.4th at 1028 (citations omitted). "When evaluating whether an act was deceptive or misleading, New York courts apply an objective standard, asking whether the representation or omission is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Paradowski*, 2023 WL 3829559, at *2 (quoting *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611–12 (N.Y. 2000)).

When claims are based on omissions, as Plaintiffs' claims are here, a plaintiff "must show that 'the business alone possesses material information that is relevant to the consumer and fail[ed] to provide this information' or that plaintiffs could not 'reasonably have obtained the relevant information they now claim the [defendant] failed to provide.'" *Id.* (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)); *see also In re Plum Baby Food Litig.*, 2024 WL 1354447, at *8 (quoting *Oswego Laborer' Loc. 214 Pension Fund*, 647 N.E.2d at 745)) (noting "New York authority suggests that plaintiffs can satisfy either condition to prevail").

Here, the Products containing or having a material risk of containing Heavy Metals was not information Defendant "alone possess[ed]." *Paradowski*, 2023 WL 3829559, at *2. While, as discussed above, Plaintiffs challenge the availability and timing of many of the publications Defendant relies on, given the breadth of types of publications and sources

of information on chocolate containing Heavy Metals, the Court cannot find Defendant alone possessed information. (*See supra* III.B)  The Court need not and does not find that information about the presence of Heavy Metals in each specific chocolate bar identified by Plaintiffs was reasonably obtainable, although some are.  The reasonable obtainability of information on the risk of and presence of Heavy Metals in the category of products is sufficient.  *See In re Plum Baby Food Litig.*, 2024 WL 1354447, at *8 ("risk of heavy metals and perchlorate in baby foods is publicly available"); *Paradowski*, 2023 WL 3829559, at *3 (Heavy Metals in an ingredient in product and guidelines for level permissible in dog food establish material risk of containing some amount).

Here, the Court concludes that no reasonable jury could find the presence of Heavy Metals or risk of the presence of Heavy Metals in the Products was exclusively within Defendant's possession or that a consumer could not reasonably obtain such information given the presence of Heavy Metals has been well publicized for many years.  *See Paradowski*, 2023 WL 3829559, at *2 (affirming district court's grant of summary judgment based on finding "no reasonable jury could find that the relevant omitted information was exclusively within [the defendant's] possession, or that a consumer could not reasonably obtain such information."); *see also In re Plum Baby Food Litig.*, 2024 WL 135447, at*8 (granting summary judgment on §§ 349–350 claims).

### 2. Washington

To prevail on a WCPA claim, a "plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (2009) (citation omitted).  "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Cole v. Keystone RV Co.*, No 21-35701, 2022 WL 4234958, at *1 (9th Cir. Sept. 14, 2022) (quoting *Panang*, 204 P.3d at 895).  "Washington 'cases establish a general duty on the part of a seller to disclose facts material to a transaction when the facts are known to the seller but not easily discoverable by the buyer.'" *Steele v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d

1226, 1233–34 (W.D. Wash. 2009) (quoting *Griffith v. Centex Real Estate Corp.,* 969 P.2d 486, 492 (1998)).

Accordingly, for Defendant to be obligated to disclose the omission—presence of Heavy Metals—for purposes of the deceptive act element, that omitted information had to be known to Defendant "but not easily discoverable by the buyer." As discussed above, that chocolate, and dark chocolate in particular, contains or has a material risk of containing Heavy Metals was easily discoverable because the information was widely publicized and test results and reporting about test results repeatedly indicated over a lengthy period of time that chocolate, and dark chocolate in particular, contain Heavy Metals. (*See supra* III.B.) The Court concludes Plaintiffs cannot prove a deceptive act based on Defendant's omission because the information omitted, that the Products contained or had a material risk of containing Heavy Metals, was "easily discoverable." *See Steele*, 607 F. Supp. 2d at 1233–34 (citations omitted).

### 3. Illinois

"To prevail on an ICFA claim based on deceptive conduct, a plaintiff must show: '(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception.'" *Caracci v. Am. Honda Motor Co., Inc.*, 726 F. Supp. 3d 840, 846 (N.D. Ill. 2024) (quoting *De Bouse v. Bayer*, 922 N. E. 2d 309, 313 (2009)). "Under the ICFA, a statement or omission is deceptive if it creates the likelihood of deception or has the capacity to deceive. *Id.* at 850 (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). "If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception." *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) (citing *Bober*, 246 F.3d at 938–939).

Here, there is no deception because information available to consumers dispels any deception based on the omission of the presence of Heavy Metals in the Products. The *Caracci* court explained that no reasonable jury could find a defendant's failure to warn

about a risk of rodent damage to vehicles was deceptive conduct under the ICFA "[g]iven the general availability of information about the risk of rodent damage to vehicles." 726 F. Supp. 3d at 849. Here, as discussed above (*see supra* III.B), "[g]iven the general availability of information about the risks of [Heavy Metals in dark chocolate products] no reasonable jury could find that [Defendant's] failure to warn plaintiffs of the risk [of the presence of Heavy Metals] amounted to deceptive conduct under the ICFA." *See id.* at 849–50 (finding risk of rodents chewing vehicle wiring generally available based on articles about protecting your car from rodents and reporting in local and national news media about "damage that rats and other rodents can cause to property in general and to vehicles in particular").

Given the analysis above, the ICFA claim cannot succeed. Nevertheless, the Court also finds Plaintiffs "have no viable omission-based ICFA claim" because there is no statement that "conveys a material omission upon which [Plaintiffs] relied." *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *9 (citing *Castillo v. Unilever United States, Inc.*, 2022 WL 17976163. At *4 (N.D. Ill. Dec. 28, 2022) and *Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *3 (C.D. Ill. Sept. 21, 2021)). "[U]nder 'the ICFA, an omission is an omission from a communication, rather than a general failure to disclose." *Id.* at 8 (quoting *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017)). As noted in *In re Plum*, an ICFA claim cannot proceed based on "only opportunities or locations where" the omitted information "could have [been] disclosed." 2024 WL 1354447, at *9 (quoting *Guajardo*, 2021 WL 4302532); *see also id.* (citing *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 719–20 (N.D. Ill. 2020) and noting ICFA claim could not proceed based on failure to disclose dangers without "identify[ing] any particular direct statements from the defendant that contained the omissions.") The Products' labels are not a statement or communication for purpose of an ICFA omission because there is nothing affirmative stated on the label on the topic at issue. Here, because Plaintiffs have only identified a "general failure to disclose" the presence of Heavy Metals and not "an omission from a communication" Plaintiffs' ICFA claim cannot proceed. *See id.* at *8.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

Dated: March 27, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE